O

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

IRVINE

LONDON

LOS ANGELES

NEWPORT BEACH

1999 Avenue of the Stars
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

NEW YORK

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

TOKYO

WASHINGTON, D.C.

OUR FILE NUMBER
008.346.163

WRITER'S DIRECT DIAL
(310) 246-6789

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

June 27, 2005

### BY FAX AND OVERNIGHT DELIVERY

Joseph M. Joyce, Esq.
Senior Vice President – General Counsel and Assistant Secretary
Best Buy Company, Inc.
7601 Penn Avenue South
Richfield, Minnesota  55423

Re:   *AMD v. Intel — Evidence Preservation Demand*

Dear Mr. Joyce:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CC1:709370.2

O'MELVENY & MYERS LLP

Joseph M. Joyce, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) & (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

*Charles P. Diamond*

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709370.2

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files, including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

For purposes of this preservation request, "your Company" refers to Best Buy Co., Inc. and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Acquisition of Computer Systems

1.   All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

2.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL conditioned upon the exclusive purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum

O'MELVENY & MYERS LLP

Joseph M. Joyce, June 27, 2005 - Page 4

volume of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's requirements of COMPUTER SYSTEMS.

3.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product.

4.   All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or "spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS containing INTEL and/or AMD MICROPROCESSORS.

5.   All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or your Company's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS or of your Company's plan to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

6.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company restrict or limit its purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

7.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company limit its retail shelf space or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing communications with suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

**Purchase History**

9.   DOCUMENTS sufficient to show:

a)   the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to your Company, broken down by type as regularly recorded in your accounting systems, in connection with your Company's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

O'MELVENY & MYERS LLP

Joseph M. Joyce, June 27, 2005 - Page 5

    b) your Company's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, in-store promotions, and sales personnel training since January 1, 2000.

    c) your Company's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

    d) your Company's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

**Comparisons of INTEL and AMD MICROPROCESSORS**

    10. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

    11. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing COMPUTER SYSTEMS with AMD and/or INTEL MICROPROCESSORS whether from a price, quality or other standpoint.

CC1:709370.2

Joseph M. Joyce, June 27, 2005 - Page 6

## Schedule B

### Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in computer purchasing. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in computer purchasing; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

**Akbar, Mehrdad**
**Arnold, Gary**
**Bernhagen, Grant**
**Boire, Ron**
**Fritz, Wendy**
**Grable, Marie**
**Hayes, Chris**
**Johnson, Amy**
**Johnson, Raquel**
**Juarie, Stephanie**
**Kallerup, Kim**
**Morrish, Dave**
**Murphy, Matt**
**Nelson, Tracy**
**Nordstrom, Kristina**
**Proulx, Justin**
**Rockman, Jacy**
**Sprosty, Dave**
**Thornton, Kara**
**Vitelli, Michael**
**Wills, Brian**
**Wing, David**
**Zuleger, Jennifer**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) computer purchasing.

CCI:709370.2

# O

## O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars | NEW YORK |
| BRUSSELS | Los Angeles, California 90067-6035 | SAN FRANCISCO |
| HONG KONG | | SHANGHAI |
| IRVINE | TELEPHONE (310) 553-6700 | SILICON VALLEY |
| LONDON | FACSIMILE (310) 246-6779 | TOKYO |
| LOS ANGELES | www.omm.com | WASHINGTON, D.C. |
| NEWPORT BEACH | | |

OUR FILE NUMBER
008.346.163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Philip J. Schoonover
President
Circuit City Stores, Inc.
9950 Mayland Drive
Richmond, Virginia 23233-1464

Re:    *AMD v. Intel -- Evidence Preservation Demand*

Dear Mr. Schoonover:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CCI:709371.1

O'MELVENY & MYERS LLP
Philip J Schoonover, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

*Charles P. Diamond*

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709371 1

O'MELVENY & MYERS LLP

Philip J Schoonover, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files, including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

For purposes of this preservation request, "your Company" refers to Circuit City Stores, Inc. and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Acquisition of Computer Systems

1.    All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

2.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL conditioned upon the exclusive purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum

CC1:709371 1

O'MELVENY & MYERS LLP

Philip J. Schoonover, June 27, 2005 - Page 4

volume of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's requirements of COMPUTER SYSTEMS.

3.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product.

4.   All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or "spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS containing INTEL and/or AMD MICROPROCESSORS.

5.   All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or your Company's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS or of your Company's plan to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

6.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company restrict or limit its purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

7.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company limit its retail shelf space or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing communications with suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

**Purchase History**

9.   DOCUMENTS sufficient to show:

a)   the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to your Company, broken down by type as regularly recorded in your accounting systems, in connection with your Company's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

CC1:709371 1

O'MELVENY & MYERS LLP

Philip J. Schoonover, June 27, 2005 - Page 5

b) your Company's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, in-store promotions, and sales personnel training since January 1, 2000.

c) your Company's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

d) your Company's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

## Comparisons of INTEL and AMD MICROPROCESSORS

10. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

11. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing COMPUTER SYSTEMS with AMD and/or INTEL MICROPROCESSORS whether from a price, quality or other standpoint.

CCI:709371 1

O'MELVENY & MYERS LLP
Philip J. Schoonover, June 27, 2005 - Page 6

## Schedule B

### Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in computer purchasing. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in computer purchasing; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

> **Becker, Elliot**
> **Brossard, Scott**
> **Carroll, Christian**
> **Engesser, Victor**
> **Farmer, Charles**
> **Hewitt, Henry**
> **Moore, Doug**
> **Nolan, Tom**
> **Schatz, Doug**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) computer purchasing.



# O'MELVENY & MYERS LLP

LOS ANGELES
IRVINE
MENLO PARK
NEWPORT BEACH
NEW YORK
SAN FRANCISCO

1999 Avenue of the Stars
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
INTERNET: www.omm.com

TYSONS CORNER
WASHINGTON, D.C.
HONG KONG
LONDON
SHANGHAI
TOKYO

OUR FILE NUMBER
008.346.163

WRITER'S DIRECT DIAL
(310) 246-6789

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

June 27, 2005

**BY FAX AND OVERNIGHT DELIVERY**

Mark Walker, Esq.
Senior Vice President, General Counsel
CompUSA, Inc.
14951 North Dallas Parkway
Dallas, Texas 75254

Re:    _**AMD v. Intel -- Evidence Preservation Demand**_

Dear Mr. Walker:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CCI:709372 1

O'MELVENY & MYERS LLP

Mark Walker, Esq., June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) & (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

*Charles P. Diamond*

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____

[Company]

By _____

Its _____

Dated: _____

CC1:709372 1

O'MELVENY & MYERS LLP

Mark Walker, Esq., June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files, including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

For purposes of this preservation request, "your Company" refers to CompUSA, Inc. and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Acquisition of Computer Systems

1.   All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

2.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL conditioned upon the exclusive purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum

CCl:709372 1

O'MELVENY & MYERS LLP

Mark Walker, Esq., June 27, 2005 - Page 4

volume of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's requirements of COMPUTER SYSTEMS.

3.    All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product.

4.    All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or "spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS containing INTEL and/or AMD MICROPROCESSORS.

5.    All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or your Company's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS or of your Company's plan to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

6.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company restrict or limit its purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

7.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company limit its retail shelf space or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.    All DOCUMENTS constituting, reflecting, or discussing communications with suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

**Purchase History**

9.    DOCUMENTS sufficient to show:

a)    the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to your Company, broken down by type as regularly recorded in your accounting systems, in connection with your Company's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

O'MELVENY & MYERS LLP

Mark Walker, Esq., June 27, 2005 - Page 5

b) your Company's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, in-store promotions, and sales personnel training since January 1, 2000.

c) your Company's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

d) your Company's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

## Comparisons of INTEL and AMD MICROPROCESSORS

10. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

11. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing COMPUTER SYSTEMS with AMD and/or INTEL MICROPROCESSORS whether from a price, quality or other standpoint.

CCI:709372.1

O'MELVENY & MYERS LLP

Mark Walker, Esq., June 27, 2005 - Page 6

## Schedule B

### Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in computer purchasing. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in computer purchasing; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

**Garner, Ross**
**Hodges, Virginia**
**Mitchell, Janine**
**Steinberg, Mark**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) computer purchasing.

CC1:709372 1



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| LOS ANGELES | 1999 Avenue of the Stars | WASHINGTON, D.C. |
| IRVINE | Los Angeles, California 90067-6035 | HONG KONG |
| NEWPORT BEACH | TELEPHONE (310) 553-6700 | LONDON |
| NEW YORK | FACSIMILE (310) 246-6779 | SHANGHAI |
| SAN FRANCISCO | INTERNET: www.omm.com | TOKYO |
| TYSONS CORNER | | |

OUR FILE NUMBER
008.346.163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E MAIL ADDRESS
cdiamond@omm.com

Lawrence P. Tu, Esq.
Senior Vice President, General Counsel
Dell Corporation
One Dell Way
Round Rock, Texas 78682

Re: *AMD v. Intel — Evidence Preservation Demand*

Dear Mr. Tu:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CC1:709355.2

O'MELVENY & MYERS LLP

Lawrence P. Tu, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512 (b) & (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

*Charles P. Diamond*

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709355 2

O'MELVENY & MYERS LLP

Lawrence P. Tu, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Dell Corporation and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

    1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

    2. All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

    3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

CCI:709355.2

O'MELVENY & MYERS LLP

Lawrence P. Tu, June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's MICROPROCESSOR requirements.

    4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

    5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

    6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

    7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of the sale or promotion of products containing AMD MICROPROCESSORS.

    8.   All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

    9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

    10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

    11.  DOCUMENTS sufficient to show:

        a)  the prices paid by your Company to INTEL for all MICROPROCESSORS since January 1, 2000.

        b)  the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

O'MELVENY & MYERS LLP

Lawrence P. Tu, June 27, 2005 - Page 5

payments, or any advertising or pricing support provided to your Company in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

c) Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1 2000.

d) Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

e) Analysis of expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

f) The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

## Miscellaneous

14. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning your Company's participation in or support of any AMD product launch or promotion.

15. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

16. All DOCUMENTS constituting or reflecting discussions within your Company about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

CC1:709355.2

O'MELVENY & MYERS LLP

Lawrence P. Tu, June 27, 2005 - Page 6

## Schedule B

Document Custodians

    Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in the procurement of x86 microprocessors or in decision-making regarding x86 microprocessor selection for particular platforms. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in the procurement of x86 microprocessors; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

       **Allen, Dan**
       **Anderson, Dan**
       **Anne, Seshu**
       **Bailey, Steve**
       **Clarke, Jeff**
       **Dell, Michael**
       **Dickson, Eddie**
       **Ellroy, Terry**
       **Faulk, Brett**
       **Gruzen, Alex**
       **Kettler, Kevin**
       **Luecke, Alan**
       **Medica, John**
       **Rollins, Kevin**
       **Schuckle, Rick**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) the procurement of x86 microprocessors or decision-making regarding x86 microprocessor selection for particular platforms.

CC1:709355 2



# O'MELVENY & MYERS LLP

| LOS ANGELES | 1999 Avenue of the Stars | TYSONS CORNER |
|---|---|---|
| IRVINE | Los Angeles, California 90067-6035 | WASHINGTON, D.C. |
| MENLO PARK | | HONG KONG |
| NEWPORT BEACH | TELEPHONE (310) 553-6700 | LONDON |
| NEW YORK | FACSIMILE (310) 246-6779 | SHANGHAI |
| SAN FRANCISCO | INTERNET: www.omm.com | TOKYO |

OUR FILE NUMBER
008.346.163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Neil Old
DSG Retail Ltd.
Maylands Avenue
Hemel Hempstead
Hertfordshire HP2 7TB
United Kingdom

Re:    *AMD v. Intel -- Evidence Preservation Demand*

Dear Mr. Old:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

CCI:709377 1

O'MELVENY & MYERS LLP
Neil Old, June 27, 2005 - Page 2

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement to retain and preserve the documents described in the attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709377 1

O'MELVENY & MYERS LLP
Neil Old, June 27, 2005 - Page 3

### Schedule A

#### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files, including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

For purposes of this preservation request, "your Company" refers to DSG Retail Ltd. and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

#### Acquisition of Computer Systems

1.  All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

2.  All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL conditioned upon the exclusive purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum

CCI:709377 1

O'MELVENY & MYERS LLP

Neil Old, June 27, 2005 - Page 4

volume of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's requirements of COMPUTER SYSTEMS.

3.    All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product.

4.    All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or "spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS containing INTEL and/or AMD MICROPROCESSORS.

5.    All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or your Company's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS or of your Company's plan to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

6.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company restrict or limit its purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

7.    All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that your Company limit its retail shelf space or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.    All DOCUMENTS constituting, reflecting, or discussing communications with suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided by INTEL to your Company in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

**Purchase History**

9.    DOCUMENTS sufficient to show:

a)   the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to your Company, broken down by type as regularly recorded in your accounting systems, in connection with your Company's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

O'MELVENY & MYERS LLP
Neil Old, June 27, 2005 - Page 5

     b)  your Company's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, in-store promotions, and sales personnel training since January 1, 2000.

     c)  your Company's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

     d)  your Company's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

### Comparisons of INTEL and AMD MICROPROCESSORS

    10.  All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

    11.  All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing COMPUTER SYSTEMS with AMD and/or INTEL MICROPROCESSORS whether from a price, quality or other standpoint.

O'Melveny & Myers llp
Neil Old, June 27, 2005 - Page 6

## Schedule B

Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in computer purchasing. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in computer purchasing; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

**Hirst, Jonathan**
**Lyons, Peter**
**Old, Neil**
**Turner, Simon**
**Van Tiel, Jean-Pierre**
**Voisin, Philippe**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) computer purchasing.

CC1:709377 1