

## O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| LOS ANGELES | 1999 Avenue of the Stars | TYSONS CORNER |
| IRVINE | Los Angeles, California 90067-6035 | WASHINGTON, D.C. |
| MENLO PARK | TELEPHONE (310) 553-6700 | HONG KONG |
| NEWPORT BEACH | FACSIMILE (310) 246-6779 | LONDON |
| NEW YORK | INTERNET: www.omm.com | SHANGHAI |
| SAN FRANCISCO | | TOKYO |

OUR FILE NUMBER
008.346 163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Michael T. Williams, Esq.
General Counsel
Sony Electronics, Inc.
16450 West Bernardo Drive
San Diego, California 92127

Re:    *AMD v. Intel — Evidence Preservation Demand*

Dear Mr. Williams:

        We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

        Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

        In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

        Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CCI:709361 2

O'MELVENY & MYERS LLP
Michael T. Williams, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

*Charles P. Diamond*

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

[Company]

By _____

Its _____

Dated: _____

CC1:709361.2

O'MELVENY & MYERS LLP
Michael T. Williams, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Sony Electronics, Inc. and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

1.    All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2.    All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3.    All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

CC1:709361 2

O'MELVENY & MYERS LLP
Michael I. Williams, June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's
MICROPROCESSOR requirements.

4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL
MICROPROCESSORS in a particular computer platform, computer model or computer type.

5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL
MICROPROCESSORS in computers sold in a particular geographic region.

6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings pertaining to INTEL's pricing of MICROPROCESSORS including without
limitation any FINANCIAL INDUCEMENT.

7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's
purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of
the sale or promotion of products containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to
withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of
products containing AMD MICROPROCESSORS, its purchases of AMD
MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD
MICROPROCESSOR.

9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to
provide discounted or free chipsets, motherboards, or other components in connection with the
purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to
discount or subsidize or provide marketing support in connection with the sale of servers
containing INTEL MICROPROCESSORS for the purpose of competing against servers
containing AMD MICROPROCESSORS.

**Purchase History**

11.  DOCUMENTS sufficient to show:

a)  the prices paid by your Company to INTEL for all MICROPROCESSORS
since January 1, 2000.

b)  the aggregate amount by quarter of any payment, subsidy, rebate,
discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

CC1:709361 2

O'MELVENY & MYERS LLP
Michael T  Williams, June 27, 2005 - Page 5

payments, or any advertising or pricing support provided to your
Company in connection with its purchase of MICROPROCESSORS (by
quarter) since January 2000.

c)  Historical MICROPROCESSOR purchase volumes (by quarter) from
    INTEL and AMD since January 1 2000.

d)  Product road maps for product lines and MICROPROCESSORS (by
    quarter or cycle) since January 1, 2000.

e)  Analysis of expected and realized revenue, cost, and profitability of
    product lines (by quarter) since January 1, 2000.

f)  The use or disposition of any discount, subsidy, or marketing support
    provided by INTEL in connection with the sale of servers containing
    INTEL MICROPROCESSORS for the purpose of competing against
    servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

12.  All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies
prepared in connection with the consideration of the purchase or use of AMD and/or INTEL
MICROPROCESSORS.

13.  All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a
price, quality or other standpoint.

## Miscellaneous

14.  All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning your Company's participation in or support of any AMD product launch or
promotion.

15.  All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning the allocation of microprocessors or other INTEL components.

16.  All DOCUMENTS constituting or reflecting discussions within your Company about
unfair or discriminatory allocations of INTEL products or the fear of such unfair or
discriminatory allocations.

17.  All DOCUMENTS furnished by your Company to the Japan Fair Trade
Commission.

CC1:709361 2

O'MELVENY & MYERS LLP
Michael T. Williams, June 27, 2005 - Page 6

## Schedule B

Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in the procurement of x86 microprocessors or in decision-making regarding x86 microprocessor selection for particular platforms. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in the procurement of x86 microprocessors; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

   **Abary, Mike
   Akahane, Ryosuke
   Mr. Akabane
   Ando, Kunitake
   Chang, Liang-Jye
   Chubachi, Ryoji
   Cole, Robin
   Furumi, Hideyuki
   Glasgow, Stan
   Hanson, Mark
   Hashimoto, Katsuhiro
   Mr. Hosoda
   Mr. Yosoda
   Mr. Hosono
   Hosono, Yoshimasa
   Idei, Nobuyuki
   Isaomurase, Zach
   Ishida, Bob
   Ishida, Yoshihisa
   Mr. Ito
   Kimura, Keiji
   Kobori, M
   Komiyama, Hideki
   Mr. Koyama
   Kuroko, Masahi
   Masaki, Teruo
   Mr. Matsutou
   Sakagami, K.
   Sakaguchi, Hirotake
   Mr. Sakamoto**

CC1:709361 2

O'MELVENY & MYERS LLP
Michael T. Williams, June 27, 2005 - Page 7

Shimada, Jun Onishi
Shimada, K.
Shimada, Y.
Sumimoto, K.
Mr. Suyama
Suzuki, Kumimosa
Takara G.
Takashino, Shizuo
Titera, Todd
Viken, Mark
Wang, John
Williams, Michael T.
Winter, Ed
Wong, Ivy
Yamamoto, E.
Yamashita, T.
Yasaki, T.
Mr. Yazaki
Yokoyama, Hiroyuki

Any other employee, or since January 1, 2000, any former employee, whose responsibilities
include(d) the procurement of x86 microprocessors or decision-making regarding x86
microprocessor selection for particular platforms.



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| LOS ANGELES | 1999 Avenue of the Stars | TYSONS CORNER |
| IRVINE | Los Angeles, California 90067-6035 | WASHINGTON, D.C. |
| MENLO PARK | | HONG KONG |
| NEWPORT BEACH | TELEPHONE (310) 553-6700 | LONDON |
| NEW YORK | FACSIMILE (310) 246-6779 | SHANGHAI |
| SAN FRANCISCO | INTERNET: www.omm.com | TOKYO |

OUR FILE NUMBER
008 346.163

June 27, 2005

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S DIRECT DIAL
(310) 246-6789

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Nicole Seligman, Esq.
Executive Vice President, General Counsel
Sony Corporation

6-7-35 Kitashinagawa
Shinagawa-ku, Tokyo, 141-0001
Japan

550 Madison Avenue
New York, New York 10022

Re:    _AMD v. Intel — Evidence Preservation Demand_

Dear Ms. Seligman:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located.

CCI:709360 2

O'MELVENY & MYERS LLP
Nicole Seligman, June 27, 2005 - Page 2

This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709360.2

O'MELVENY & MYERS LLP
Nicole Seligman, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Sony Corporation and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

1.   All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2.   All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

CC1:709360 2

O'MELVENY & MYERS LLP
Nicole Seligman, June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's MICROPROCESSOR requirements.

4.    All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

5.    All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

6.    All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.    All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of the sale or promotion of products containing AMD MICROPROCESSORS.

8.    All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.    All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.    All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

11.    DOCUMENTS sufficient to show:

      a)    the prices paid by your Company to INTEL for all MICROPROCESSORS since January 1, 2000.

      b)    the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

O'MELVENY & MYERS LLP
Nicole Seligman, June 27, 2005 - Page 5

        payments, or any advertising or pricing support provided to your
Company in connection with its purchase of MICROPROCESSORS (by
quarter) since January 2000.

   c)  Historical MICROPROCESSOR purchase volumes (by quarter) from
INTEL and AMD since January 1 2000.

   d)  Product road maps for product lines and MICROPROCESSORS (by
quarter or cycle) since January 1, 2000.

   e)  Analysis of expected and realized revenue, cost, and profitability of
product lines (by quarter) since January 1, 2000.

   f)  The use or disposition of any discount, subsidy, or marketing support
provided by INTEL in connection with the sale of servers containing
INTEL MICROPROCESSORS for the purpose of competing against
servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

       12.  All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies
prepared in connection with the consideration of the purchase or use of AMD and/or INTEL
MICROPROCESSORS.

       13.  All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a
price, quality or other standpoint.

## Miscellaneous

       14.  All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning your Company's participation in or support of any AMD product launch or
promotion.

       15.  All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning the allocation of microprocessors or other INTEL components.

       16.  All DOCUMENTS constituting or reflecting discussions within your Company about
unfair or discriminatory allocations of INTEL products or the fear of such unfair or
discriminatory allocations.

       17.  All DOCUMENTS furnished by your Company to the Japan Fair Trade
Commission.

CC1:709360.2

O'MELVENY & MYERS LLP
Nicole Seligman, June 27, 2005 - Page 6

## Schedule B

Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in the procurement of x86 microprocessors or in decision-making regarding x86 microprocessor selection for particular platforms. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in the procurement of x86 microprocessors; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

**Abary, Mike**
**Akahane, Ryosuke**
**Mr. Akabane**
**Ando, Kunitake**
**Chang, Liang-Jye**
**Chubachi, Ryoji**
**Cole, Robin**
**Furumi, Hideyuki**
**Glasgow, Stan**
**Hanson, Mark**
**Hashimoto, Katsuhiro**
**Mr. Hosoda**
**Mr. Yosoda**
**Mr. Hosono**
**Hosono, Yoshimasa**
**Idei, Nobuyuki**
**Isaomurase, Zach**
**Ishida, Bob**
**Ishida, Yoshihisa**
**Mr. Ito**
**Kimura, Keiji**
**Kobori, M**
**Komiyama, Hideki**
**Mr. Koyama**
**Kuroko, Masahi**
**Masaki, Teruo**
**Mr. Matsutou**
**Sakagami, K.**
**Sakaguchi, Hirotake**
**Mr. Sakamoto**

CC1:709360.2

O'MELVENY & MYERS LLP

Nicole Seligman, June 27, 2005 - Page 7

       Shimada, Jun Onishi
       Shimada, K.
       Shimada, Y.
       Sumimoto, K.
       Mr. Suyama
       Suzuki, Kumimosa
       Takara G.
       Takashino, Shizuo
       Titera, Todd
       Viken, Mark
       Wang, John
       Williams, Michael T.
       Winter, Ed
       Wong, Ivy
       Yamamoto, E.
       Yamashita, T.
       Yasaki, T.
       Mr. Yazaki
       Yokoyama, Hiroyuki

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) the procurement of x86 microprocessors or decision-making regarding x86 microprocessor selection for particular platforms.

CCl:709360 2



# O'MELVENY & MYERS LLP

LOS ANGELES             1999 Avenue of the Stars          TYSONS CORNER
IRVINE                   Los Angeles, California 90067-6035      WASHINGTON, D.C.
MENLO PARK            TELEPHONE (310) 553-6700        HONG KONG
NEWPORT BEACH       FACSIMILE (310) 246-6779         LONDON
NEW YORK              INTERNET: www.omm.com       SHANGHAI
SAN FRANCISCO                                                 TOKYO

OUR FILE NUMBER
008.346.163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Michael Dillon, Esq.
Senior Vice President, General Counsel and Corporate Secretary
Sun Microsystems, Inc.
4150 Network Circle
Santa Clara, CA 95054

Re:     *AMD v. Intel — Evidence Preservation Demand*

Dear Mr. Dillon:

       We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

       Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

       In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

       Preservation of relevant evidence will require adequate notice to and follow-up with the relevant custodians, and we suspect it may require the suspension of certain routine document retention procedures. To the extent this threatens to disrupt unduly any normal business operations, we invite you to contact us to discuss procedures or limitations that might address

CC1:709543 1

O'MELVENY & MYERS LLP
Michael Dillon, Esq , June 27, 2005 - Page 2

and alleviate the burdens on your Company. My partner, David Herron, will be available this week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of pending federal-court litigation, document destruction by a nonparty could lead to criminal and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512 (b) & (c); *Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators). As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the week's end any instances of non-cooperation.

We appreciate your cooperation.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachment to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709543.1

O'MELVENY & MYERS LLP
Michael Dillon, Esq., June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Sun Microsystems, Inc. and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

1.    All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2.    All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3.    All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

O'MELVENY & MYERS LLP

Michael Dillon, Esq., June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's MICROPROCESSOR requirements.

4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of the sale or promotion of products containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

11.   DOCUMENTS sufficient to show:

   a) the prices paid by your Company to INTEL for all MICROPROCESSORS since January 1, 2000.

   b) the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

CCI:709543 1

O'MELVENY & MYERS LLP

Michael Dillon, Esq., June 27, 2005 - Page 5

payments, or any advertising or pricing support provided to your Company in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

c) Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1 2000.

d) Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

e) Analysis of expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

f) The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

## Miscellaneous

14. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning your Company's participation in or support of any AMD product launch or promotion.

15. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

16. All DOCUMENTS constituting or reflecting discussions within your Company about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

CC1:709543 1

O

O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| LOS ANGELES | 1999 Avenue of the Stars | TYSONS CORNER |
| IRVINE | Los Angeles, California 90067-6035 | WASHINGTON, D.C. |
| MENLO PARK | | HONG KONG |
| NEWPORT BEACH | TELEPHONE (310) 553-6700 | LONDON |
| NEW YORK | FACSIMILE (310) 246-6779 | SHANGHAI |
| SAN FRANCISCO | INTERNET: www.omm.com | TOKYO |

OUR FILE NUMBER
008 346.163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Frank Luk
President
Supercom
4011 14th Avenue
Markham, Ontario  L3R0Z9

Re:    *AMD v. Intel -- Evidence Preservation Demand*

Dear Mr. Luk:

We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CCI:709381.1

O'MELVENY & MYERS LLP
Frank Luk, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business
operations, we invite you to contact us to discuss procedures or limitations that might address
and alleviate the burdens on your Company. My partner, David Herron, will be available this
week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his
absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of
pending federal-court litigation, document destruction by a nonparty could lead to criminal
and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c);
*Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators).
As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence
apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D.
309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to
preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or
email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by
noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the
week's end any instances of non-cooperation.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CC1:709381 1

O'MELVENY & MYERS LLP
Frank Luk, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Supercom and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

CC1:709381 1

O'MELVENY & MYERS LLP
Frank Luk, June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's MICROPROCESSOR requirements.

4.  All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

5.  All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

6.  All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.  All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of the sale or promotion of products containing AMD MICROPROCESSORS.

8.  All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

11.  DOCUMENTS sufficient to show:

   a)  the prices paid by your Company to INTEL for all MICROPROCESSORS since January 1, 2000.

   b)  the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

CCI:709381 1

O'MELVENY & MYERS LLP
Frank Luk, June 27, 2005 - Page 5

      payments, or any advertising or pricing support provided to your
Company in connection with its purchase of MICROPROCESSORS (by
quarter) since January 2000.

  c) Historical MICROPROCESSOR purchase volumes (by quarter) from
INTEL and AMD since January 1 2000.

  d) Product road maps for product lines and MICROPROCESSORS (by
quarter or cycle) since January 1, 2000.

  e) Analysis of expected and realized revenue, cost, and profitability of
product lines (by quarter) since January 1, 2000.

  f) The use or disposition of any discount, subsidy, or marketing support
provided by INTEL in connection with the sale of servers containing
INTEL MICROPROCESSORS for the purpose of competing against
servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies
prepared in connection with the consideration of the purchase or use of AMD and/or INTEL
MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a
price, quality or other standpoint.

## Miscellaneous

14. All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning your Company's participation in or support of any AMD product launch or
promotion.

15. All DOCUMENTS constituting, reflecting, or discussing communications with
INTEL concerning the allocation of microprocessors or other INTEL components.

16. All DOCUMENTS constituting or reflecting discussions within your Company about
unfair or discriminatory allocations of INTEL products or the fear of such unfair or
discriminatory allocations.

CC1:709381 1

O'MELVENY & MYERS LLP
Frank Luk, June 27, 2005 - Page 6

## Schedule B

Document Custodians

Please preserve documents described in Schedule A belonging to, stored on behalf of, or accessible in the normal course by the following named individuals, and their predecessors (since January 1, 2000) and successors, to the extent those predecessors and successors are or were also involved in the procurement of x86 microprocessors or in decision-making regarding x86 microprocessor selection for particular platforms. As to each of the foregoing, we also request that you preserve documents described in Schedule A of or accessible by (1) their administrative assistants; (2) any direct reports also involved in the procurement of x86 microprocessors; (3) any employees and officers in the corporate reporting chain above them up to your highest ranking officer; and (4) members of your Board of Directors.

**Chow, Florence
Luk, Frank
Davies, Terry
John, Jessie
John, Richard
Lamb, Charlton
Low, Dixon**

Any other employee, or since January 1, 2000, any former employee, whose responsibilities include(d) the procurement of x86 microprocessors or decision-making regarding x86 microprocessor selection for particular platforms.

CC1:709381 1



# O'MELVENY & MYERS LLP

LOS ANGELES
IRVINE
MENLO PARK
NEWPORT BEACH
NEW YORK
SAN FRANCISCO

1999 Avenue of the Stars
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
INTERNET: www.omm.com

TYSONS CORNER
WASHINGTON, D.C.
HONG KONG
LONDON
SHANGHAI
TOKYO

OUR FILE NUMBER
008 346 163

June 27, 2005

WRITER'S DIRECT DIAL
(310) 246-6789

**BY FAX AND OVERNIGHT DELIVERY**

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Charles Liang
CEO
Supermicro Computer Inc.
980 Rock Avenue
San Jose, California 95131

Re:    *AMD v. Intel -- Evidence Preservation Demand*

Dear Mr. Liang:

      We are writing to advise you that our clients, Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"), initiated antitrust litigation today against Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") in the United States District Court for the District of Delaware. A copy of the complaint is enclosed for your reference.

      Based on information we collected during our pre-filing investigation, we believe that your Company possesses important information relevant to AMD's claims against Intel. Accordingly, at the earliest possible time the District Court allows us to do so, we intend to serve on your Company a subpoena for the production of certain categories of documents bearing upon matters that AMD's complaint puts at issue.

      In the meantime, however, this letter will put you on notice of the litigation, your likely involvement as a third-party witness, and your consequent obligation to take reasonable steps to preserve relevant evidence. To assist you in doing so, we have attached as Schedule A a list of document categories that we expect to ask you to produce. To make document retention manageable, except for records necessary to respond to the "Purchase History" category, we are only asking that you retain these documents for the custodians listed on Schedule B, or documents stored on their behalf or accessible by them in the normal course wherever located. This, of course, includes documents stored in electronic format, whether in active files or on back-up media and whether in personal folders or shared files.

      Preservation of relevant evidence will require adequate notice to and follow-up with the listed custodians, and we suspect it may require the suspension of certain routine document

CC1:709385 1

O'MELVENY & MYERS LLP
Charles Liang, June 27, 2005 - Page 2

retention procedures. To the extent this threatens to disrupt unduly any normal business
operations, we invite you to contact us to discuss procedures or limitations that might address
and alleviate the burdens on your Company. My partner, David Herron, will be available this
week to assist. He can be reached at (213) 430-6230 and by email at dherron@omm.com. In his
absence, please contact James Pearl at (310) 246-8434, email jpearl@omm.com.

We encourage you to take your preservation obligations seriously. Once on notice of
pending federal-court litigation, document destruction by a nonparty could lead to criminal
and/or civil liability. *See* 18 U.S.C. § 1503; 18 U.S.C. § 1519; 18 U.S.C. § 1512(b) and (c);
*Hannah v. Heeter*, 584 S.E.2d 560 (W.Va. 2003) (recognizing tort against third-party spoliators).
As I am sure you understand, the laws and rules prohibiting destruction of tangible evidence
apply equally to electronically-stored information. *Zubalake v. UBS Warburg LLC*, 217 F.R.D.
309, 317 (S.D.N.Y. 2003).

Please kindly acknowledge receipt of this letter and of your Company's commitment to
preserve the materials we have identified by signing and returning (by fax to (310) 246-6779 or
email) the enclosed copy. We recognize that it is short notice, but would ask that you do so by
noon PDT on Thursday, June 30, 2005, since we anticipate reporting to the Court before the
week's end any instances of non-cooperation.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

Enclosures

We hereby acknowledge receipt and our agreement
to retain and preserve the documents described in the
attachments to this letter.

_____
[Company]

By _____

Its _____

Dated: _____

CCI:709385 1

O'MELVENY & MYERS LLP
Charles Liang, June 27, 2005 - Page 3

## Schedule A

### Definitions

For purposes of this preservation request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including e-mail and instant messaging, created or dated on or after January 1, 2000.

With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media stored as an "active" file or backup file, in its native format.

For purposes of this preservation request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

For purposes of this preservation request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

For purposes of this preservation request, "your Company" refers to Supermicro Computer Inc. and any of its present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation and any of its present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

For purposes of this preservation request, "MDF" refers to market development funds.

### Purchase Terms

1.    All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2.    All DOCUMENTS constituting or reflecting internal discussions or other communications within your Company concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3.    All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL conditioned upon the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL

CCI:709385 1

O'MELVENY & MYERS LLP
Charles Liang, June 27, 2005 - Page 4

MICROPROCESSORS, or upon the purchase of a minimum percentage of your Company's
MICROPROCESSOR requirements.

4. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL
MICROPROCESSORS in a particular computer platform, computer model or computer type.

5. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon your Company's agreement to use only INTEL
MICROPROCESSORS in computers sold in a particular geographic region.

6. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings pertaining to INTEL's pricing of MICROPROCESSORS including without
limitation any FINANCIAL INDUCEMENT.

7. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL conditioned upon any restriction or limitation of your Company's
purchases of AMD MICROPROCESSORS or conditioned upon any restriction or limitation of
the sale or promotion of products containing AMD MICROPROCESSORS.

8. All DOCUMENTS constituting, reflecting, or discussing any threat by INTEL to
withdraw or withhold a FINANCIAL INDUCEMENT as a result of your Company's sale of
products containing AMD MICROPROCESSORS, its purchases of AMD
MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD
MICROPROCESSOR.

9. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to
provide discounted or free chipsets, motherboards, or other components in connection with the
purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to
discount or subsidize or provide marketing support in connection with the sale of servers
containing INTEL MICROPROCESSORS for the purpose of competing against servers
containing AMD MICROPROCESSORS.

**Purchase History**

11. DOCUMENTS sufficient to show:

a) the prices paid by your Company to INTEL for all MICROPROCESSORS
since January 1, 2000.

b) the aggregate amount by quarter of any payment, subsidy, rebate,
discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition"

CCI:709385 1