

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

05-441-JJF

| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 1717 |
|---|---|

**PLAINTIFF ADVANCED MICRO DEVICES, INC.'S RESPONSE TO PLAINTIFFS MICHAEL BRAUCH AND ANDREW MEIMES' MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

                                                                          Page

SUMMARY OF ARGUMENT ................................................................................... 1

I.    THE AMD COMPETITOR ACTION SHOULD NOT BE CONSOLIDATED WITH THE INDIRECT PURCHASER CLASS ACTIONS. .................................................................................................. 4

    A.    Because of the gravity and urgency of the market exclusion being visited upon AMD, it is critical that the AMD action be adjudicated as quickly as reasonably possible. ......................................... 4

    B.    The indirect purchaser class actions, while virtually identical to one another, are fundamentally distinct from the AMD action. ................ 6

    C.    The overlap between the AMD action and the indirect purchaser actions is most efficiently accommodated by a transfer of the consolidated class actions to the District of Delaware. ............................. 9

II.   THE DISTRICT OF DELAWARE IS THE MOST APPROPRIATE FORUM FOR PRE-TRIAL PROCEEDINGS IN THESE CASES. .................... 11

    A.    Northern California is not the geographical center of gravity of witnesses or documents. ............................................................................. 11

    B.    The District of Delaware is best-suited to handle this litigation. .............. 14

        1.    AMD and Intel have both demonstrated a strong preference for litigating commercial disputes in Delaware. ........................... 14

        2.    The District of Delaware – including Judge Farnan in particular – is well-equipped to handle this litigation. .................. 16

        3.    Wilmington is easily accessible and well-equipped to handle large-scale litigation. ......................................................... 17

        4. The District of Delaware has favorable docket conditions. ................ 18

CONCLUSION ........................................................................................................ 19

Plaintiff Advanced Micro Devices, Inc. ("AMD") respectfully submits this Response to Plaintiffs Michael Brauch and Andrew Meimes' ("Movants") Motion to Transfer and to Coordinate or Consolidate for Pretrial Proceedings in the Northern District of California. It concurs with Movants that all of the indirect purchaser class actions should be consolidated for pre-trial proceedings in a single forum, but disputes both that the AMD competitor action should be part of such consolidation and that the Northern District of California is the most appropriate transferee forum.

## SUMMARY OF ARGUMENT

The motion for transfer and consolidation by the Multi-District Litigation Panel ("MDL Panel" or "Panel") implicates a series of actions, all of which followed on a single, direct-competitor action against Intel Corp. ("Intel") filed by AMD. Intel is an overwhelmingly dominant monopolist in the worldwide market for the central processing units ("CPUs" or "chips") that serve as the "brains" of most modern computers. AMD is its only rival of any consequence. AMD's action arises under Section 2 of the Sherman Act, and alleges that Intel is maintaining its monopoly by unlawful exclusionary practices – such as locking up customers in exclusive deals, retaliating against customers who try to deal with AMD, orchestrating boycotts of AMD promotional events, and manipulating technical standards to handicap AMD – which combine to deny AMD the opportunity to compete with Intel fairly on price and quality. AMD's suit targets Intel practices that have already destroyed all competition of note except AMD; AMD seeks to bring an end to those practices as expeditiously as is reasonably possible, before they destroy AMD as well.

After the *AMD* action was filed in the District of Delaware, scores of follow-on indirect purchaser class actions were filed in a matter of days, both in Delaware and the Northern District of California. As of the date of this filing, 29 such actions have been filed in Delaware, 23 in the Northern District of California, and one in the Southern District of California.[1] Although many of the class action complaints copy parts of AMD's complaint, they all assert injuries and seek damages of a categorically different nature than AMD's direct-competitor action. The class actions are brought under the laws of some 34 states, which (unlike federal antitrust law[2]) assertedly authorize "indirect purchasers" of products affected by anticompetitive practices to seek recovery for the "overcharges" passed on to them – claims that obviously raise complex accounting "pass-through" issues, which are complicated exponentially in the class action setting.

The MDL petition – which seeks consolidation of all the indirect-purchaser class actions *and* the distinct *AMD* direct-competitor action, and transfer of all cases to the Northern District of California – raises three issues: (1) whether the multi-state indirect purchaser class actions themselves should be consolidated for pretrial proceedings; (2) whether the *AMD* direct-competitor action also should be consolidated with those indirect purchaser class actions; and (3) what court should administer the consolidated cases.

The first question is not in serious dispute: the class actions assert largely identical state-law indirect-purchaser claims. Nobody can doubt the benefits of consolidation of those actions for pre-trial proceedings, especially given the class certification, overcharge, and pass-through accounting issues unique to those actions. The *AMD* action, however, is qualitatively different and should not be treated the same as

---

[1] A list of the cases pending in the District of Delaware is attached as Exhibit A, and a list of the cases pending in the respective California districts is attached as Exhibit B.
[2] *See Illinois Brick v. Illinois*, 431 U.S. 720 (1977).

the class actions for purposes of MDL consolidation. Specifically, the complex and time-consuming state law, class certification and pass-through damages issues raised by the indirect-purchaser actions have no relevance to the *AMD* action; thus, consolidating the *AMD* action with the class actions for the ostensible purpose of "efficiency" will have only the ironic consequence of delaying expeditious resolution of the *AMD* action by many months and possibly years.

On the other hand, it is true that the *AMD* action overlaps in part with the class actions and that all would benefit from some measure of coordination. But rather than subject the *AMD* action to MDL consolidation, the most efficient result would be for the Panel to consolidate the class actions and assign them to the District of Delaware and Judge Farnan, before whom the distinct *AMD* action, as well as the Delaware class actions, is already pending. Judge Farnan could then supervise informal coordination of common discovery and motions in all the class actions and the *AMD* action, without causing the *AMD* case to lie dormant while state-law idiosyncrasies, pass-through damages and class certification issues are litigated and resolved.

In any event, whether the *AMD* action is formally consolidated with the class actions or not, the District of Delaware is clearly the most appropriate forum to administer pre-trial proceedings for these cases. It is the state of incorporation for the two primary corporate actors in these cases, it was the forum of choice for AMD in the seminal action, it is Intel's forum of choice, both for this action and for many of its own recent filings, and it has become the forum of choice for the majority of the class actions as well. The District of Delaware, and Judge Farnan in particular, have extensive

experience administering complex commercial litigation. And Delaware is as convenient a forum as any, given that witnesses and documents are literally spread across the globe.

The motion to consolidate and transfer to the Northern District of California should be denied. Rather, the class actions should be consolidated, transferred to the District of Delaware and assigned to Judge Farnan, who can coordinate them with the pending *AMD* action as appropriate to avoid duplication, but without delaying that case's expeditious resolution.

## I. THE AMD COMPETITOR ACTION SHOULD NOT BE CONSOLIDATED WITH THE INDIRECT PURCHASER CLASS ACTIONS.

In pertinent part, 28 U.S.C. § 1407(a) provides that this Panel may transfer civil cases to any district court for consolidated pretrial proceedings upon a determination (a) that the cases "involve[] one or more common questions of fact," (b) that the transfers would further "the convenience of the parties and witnesses," and (c) that the transfers "will promote the just and efficient conduct of [the] actions." "[T]he Panel must weigh the interest of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of purposes of the law." *In re Library Editions of Children's Books,* 297 F. Supp. 385, 386 (J.P.M.L. 1968). As explained below, the indirect purchaser class actions clearly meet all of these criteria and should be consolidated. But the inefficiency and delay that inclusion of the *AMD* case would work upon that distinct competitor action counsels that it not be made part of such MDL consolidation.

### A. Because of the gravity and urgency of the market exclusion being visited upon AMD, it is critical that the *AMD* action be adjudicated as quickly as reasonably possible.

Expeditious resolution of the *AMD* action is essential lest Intel's exclusionary practices escape adjudication before its lone effective competitor is rendered non-viable. As a result of Intel's practices, AMD's share of world-wide x86 microprocessor revenue is currently less than 10% while Intel's is over 90%.[3] Three rival microprocessor manufacturers (including IBM and Texas Instruments) have exited the business in the last decade.[4] Only Intel and AMD remain.[5] To enter and/or remain viable in the x86 microprocessor market requires billions of dollars in capital investment, combined with possession of cutting-edge intellectual property rights that prove commercially exploitable in a technology field that is land-mined with blocking patents.[6] Should AMD fail, those extreme barriers to entry will assure Intel's monopoly indefinitely.

Given the world-wide economic importance of the product involved, it is vital to the public interest – as well as to AMD – that the various allegations advanced in its complaint be adjudicated as expeditiously as is reasonably achievable. The only issues raised by its complaint are whether the alleged exclusion occurred, whether that exclusion violated § 2 of the Sherman Act, and the volume and profitability of the additional sales that AMD would have enjoyed but for the exclusion.[7] These straight-forward issues can and should be expeditiously resolved.

Such resolution need not and should not be held hostage to the inherently drawn-

---

[3] *See* Complaint at ¶ 25, *AMD v. Intel*, No. 05-441 (D. Del. filed June 27, 2005), attached as Exhibit C.
[4] *Compare* Wilson & Warren Boulton, *Riding the Wave, Exclusionary Practices in Markets for Microprocessors Used in IBM-Compatible Personal Computers*, 2 Int'l J. of Econ. of Business 241, 243 (1995) *with AMD* Compl., Ex. C., at ¶ 26.
[5] Two other small companies – Transmeta and Via – offer certain niche market x86 products. They in combination, however, represent less than 2% of the market, and on January 21of this year Transmeta announced its imminent market withdrawal. *See AMD* Compl., Ex. C, at ¶ 26.
[6] *Id.* at ¶ 27.
[7] AMD's complaint includes two state-law causes of action for common law tortious interference and violation of statutory law in Intel's home state that prohibits the use of secret rebates *See AMD* Compl., Ex. C, at ¶¶ 140 to 157. The elements of both of these claims are subsumed in the exclusionary conduct underlying the Sherman Act § 2 claim.

out process involved in the resolution of a myriad of overcharge, pass-through, and disparate liability issues arising under the individual laws of some 34 states. And all that is in addition to the need to resolve separate issues concerning the certification of some 35 classes and/or subclasses. It would prove ironic indeed if the straight-forward AMD action were embedded into this morass in the name of efficiency.

### B. The indirect purchaser class actions, while virtually identical to one another, are fundamentally distinct from the *AMD* action.

There is no serious dispute that the indirect purchaser class actions should be consolidated. Those complaints are largely identical. They each allege that the putative class consists of overcharged purchasers of various brands of computers manufactured by various computer makers (OEMs) that include Intel chips in their product. As indirect purchasers, none of the plaintiffs advances a damage claim under § 2 of the Sherman Act. While a majority of the complaints pray for a § 2 injunction, others make no § 2 claim at all. The class complaints' common ground is the universal allegations that Intel is an unlawful monopoly under the various competition and/or consumer protection laws of some or all of 34 states, that such laws permit recovery by indirect purchasers, that Intel overcharged its various OEM customers, and that those OEMs passed some or all of those overcharges on to the plaintiffs in the price of their respective computers.

In addition to these distinct substantive issues, the indirect purchaser class actions raise complex and overlapping issues of class certification. While the potential for inconsistent class determinations makes the class actions especially appropriate candidates for consolidation, that same class status will require the transferee court to work through the arduous and time-consuming task of parsing and evaluating each of the 35 proposed classes and/or subclasses against to the requirements of Fed. R. Civ. P. 23.

Furthermore, should the court bifurcate class certification and merits discovery, as is often done, AMD could not even begin discovery until after class certification is determined. But even without such bifurcation, it is plain that AMD's comparatively straight-forward case would inevitably get bogged down in and delayed by the plethora of procedural and substantive issues unique to the class actions.

The Panel has determined that when consolidation, like here, would render resolution of the claims *less* efficient, consolidation is inappropriate. "[T]o effect a transfer at this time of the ... actions would serve to delay the trial of those litigants who have been diligent in prosecuting their claims and would not promote the 'just and efficient conduct' of those actions." *In re Air Crash Disaster at Falls City, Neb. on Aug. 6, 1966*, 298 F. Supp. 1323, 1324 (J.P.M.L. 1969). *See also In re Concrete Pipe*, 302 F. Supp. 244, 254-55 (J.P.M.L. 1969) (Weigel, J., concurring) (noting that in some cases "consolidated and coordination may impair, not further, convenience, justice and efficiency" and that "[t]he basic question ... is ... whether the objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer and remand").

To be sure, the Panel has ordered consolidation of cases that included different claims and theories, *see, e.g., In re Resource Exploration, Inc. Sec. Litig.*, 483 F. Supp. 817, 821-22 (J.P.M.L. 1980), including direct and indirect purchaser antitrust actions, *see In re Pineapple Anitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004); *In re Microsoft Corp. Windows Operating Sys. Antitrust Litg.*, 2000 WL 24448877, at *2 (J.P.M.L. 2000), but such precedents do not dictate the consolidation of the *AMD* action with the indirect purchaser class actions in this matter. It makes eminent sense, of course, to include both direct and indirect purchasers in the same proceeding, as they are jointly

pursuing the identical overcharge while contesting among themselves the existence and degree of any pass-through. Here, by contrast, AMD is not a purchaser but an Intel competitor. Its action is categorically different than *any* purchaser action, whether direct or indirect, for the reasons explained above. Although efficiency advantages often justify consolidation even of cases with different claims or theories, consolidation of the categorically distinct *AMD* action in this instance is both unnecessary to achieve efficient coordination and likely to cause inefficient and harmful delay.

Thus, where one case presents a totality of issues meaningfully different from the totality that binds the other cases, the Panel has held that it should be separated from the pre-trial consolidation accorded the other actions, even though there is some overlap. *In re Western Elec. Co., Inc. Semiconductor Patent Litig.*, 415 F. Supp. 378 (J.P.M.L. 1976.) The Panel there considered pre-trial consolidation of a series of patent infringement actions brought around the country against numerous alleged infringers by the patentee. While all of the actions involved the infringement of a common patent, one of the actions raised additional claims under a number of other patents and implicated several distinct legal issues as well. *Id.* at 380. The common plaintiff (joined by the multiple-patent defendant) argued that consolidation of the distinct action would slow down its prosecution and prosecution of the other actions as well. The Panel agreed: "We are persuaded by these arguments and find that the breadth of [the distinct case] in comparison with all the other actions before us warrants its exclusion from coordinated or consolidated pretrial proceedings in order to best promote the expeditious processing of [that case] and the rest of the litigation as well." *Id. See also In re Harmony Loan Co., Inc. Sec. Litig.*, 372 F. Supp. 1406, 1406-07 (J.P.M.L. 1974) (denying transfer where the

"actions each seek to protect markedly different interests, request different relief, and are at different stages of development"). So here, the breadth of issues presented by the indirect purchaser class actions that are absent from the *AMD* case calls for the latter's exclusion from the otherwise consolidated proceedings in order to best promote its expeditious adjudication.

### C. The overlap between the *AMD* action and the indirect purchaser actions is most efficiently accommodated by a transfer of the consolidated class actions to the District of Delaware.

Despite the clear distinction between the *AMD* action and the indirect purchaser class actions on an overwhelming array of issues, AMD recognizes that there is factual overlap as to some of the Intel conduct at issue.[8] While efficiency would be served by appropriate coordination of certain substantive discovery, it is neither necessary nor appropriate to achieve such limited coordination through the inclusion of the *AMD* action in an MDL proceeding. The more efficient path would be to consolidate the indirect purchaser class actions and assign them to the District of Delaware where the *AMD* case is pending. That would permit Judge Farnan, before whom all the Delaware actions are either pending or are in the process of being assigned, to selectively coordinate and separate particular pre-trial and discovery activities, thereby expediting the trial of the more limited *AMD* case while avoiding redundancy as to those matters that are common to all the actions.

Indeed, the Panel has even allowed cases located in different districts to remain

---

[8] Even such overlap is not complete, however, as some states' laws arguably outlaw only conspiracies to monopolize as opposed to unilateral monopolization. *See, e.g.*, Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.* Accordingly, a number of the class actions allege an Intel conspiracy, thereby raising conduct issues not implicated by the AMD complaint. *See, e.g.*, Complaint at ¶ 140, *Cone v. Intel Corp.*, No. 05-521 (D. Del. July 25, 2005); Complaint at ¶ 137, *Ruccolo v. Intel Corp.*, No. 05-478 (D. Del. July 8, 2005); Complaint at ¶ 137, *Kozniecka v. Intel Corp.*, No. C-05-2700 (N.D. Cal. June 30, 2005).

separate when suitable and more efficient alternatives to fulfillment of the central purposes of § 1407 are available. *See, e.g., In re Soc. of Lloyd's Judgment Enforcement Litig.*, 321 F. Supp. 2d 1381, 1382 (J.P.M.L. 2004) (denying transfer and "point[ing] out that alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery"); *In re Personalized Media Commc'n, L.L.C.*, 261 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (same). Here, transfer of the indirect purchaser class actions to the District of Delaware will facilitate such limited coordination to an even greater degree.

Indeed, where a seminal action is filed and a series of subsidiary actions follows, the Panel has regularly coordinated and transferred the follow-on actions to the district in which the uncoordinated action is pending. *See, e.g., In re Cuisinart Food Processor Antitrust Litig.)*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transferring plaintiff antitrust class actions to the district in which the Government's civil and criminal antitrust actions were pending); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (noting that while "any suggested federal districts could be viewed as an appropriate forum," transfer of derivative suites to the district in which both an SEC civil action and bankruptcy proceedings were pending was appropriate); *In re Library Editions of Children's Books,* 297 F. Supp. 385, 386 (J.P.M.L. 1968) (transfer of private plaintiff actions that were subsidiary to the Government's "seminal antitrust action" to the district in which the Government's action was pending); *see also In re Plastics Additives Antitrust Litig. (No. II)*, 2005 WL 1458692 at *1 (J.P.M.L. June 16, 2005) (transferring cases to district where "the first-filed and most advanced action is pending"); *In re Rubber Chems. Antitrust Litig.*, 350 F. Supp. 2d 1366, 1367 (J.P.M.L.

2004) (same). Optimization of *overall* efficiency – both in conservation of judicial resources and in expeditious and productive resolution of the disparate issues implicated by these various cases – counsels like action here.

## II. THE DISTRICT OF DELAWARE IS THE MOST APPROPRIATE FORUM FOR PRE-TRIAL PROCEEDINGS IN THESE CASES.

Regardless whether or not the *AMD* action is formally consolidated with the class actions, the District of Delaware is the most appropriate forum to administer pre-trial proceedings for these cases. Contrary to the *Brauch* plaintiffs' contention that the Northern District of California is the factual center of gravity of the case, this case is a worldwide dispute with *no* particular center of gravity, and all other pertinent indicators point strongly toward the District of Delaware as the forum best suited for pre-trial administration of this matter.

### A. Northern California is not the geographical center of gravity of witnesses or documents.

The *Brauch* plaintiffs urge transfer to the Northern District of California on the assumption that because Intel and AMD are "headquartered" in that jurisdiction, the Northern District will provide the best access to relevant documents and witnesses. *See* Memorandum of Points and Authorities In Support Of Plaintiffs Michael Brauch and Andrew Meimes' Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings (July 11, 2005) at 11-12. That assumption is incorrect: this is a worldwide case with witnesses and documents dispersed throughout the globe, and very few contacts with Northern California.

The complaints involved in this proceeding allege that Intel mounted a global campaign to maintain its monopoly by engaging in anti-competitive business practices