**THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**

Suite 1100
1101 Wilson Blvd.
Arlington, VA 22209-2211
(703) 807-2100

rcfp@rcfp.org
http://www.rcfp.org

Lucy A. Dalglish
Executive Director

STEERING COMMITTEE

- DAN ABRAMS
  *MSNBC*
- SCOTT APPLEWHITE
  *The Associated Press*
- CHARLES R. BABCOCK
  *The Washington Post*
- CHIP BOK
  *Akron Beacon Journal*
- EARL CALDWELL
  *Pacifica Radio*
- REBECCA CARR
  *Cox Newspapers*
- WALTER CRONKITE
  *CBS News*
- RICHARD S. DUNHAM
  *Business Week*
- ASHLEA EBELING
  *Forbes Magazine*
- STEPHEN GEIMANN
  *Bloomberg News*
- FRED GRAHAM
  *Court TV*
- STEPHEN HENDERSON
  *Knight-Ridder*
- JOHN C. HENRY
  *The Associated Press*
- NAT HENTOFF
  *The Village Voice*
- EDWARD H. KOHN
  *St. Louis Post-Dispatch*
- STEPHEN LABATON
  *The New York Times*
- TONY MAURO
  *American Lawyer Media*
- DOYLE MCMANUS
  *Los Angeles Times*
- WILSON F. MINOR
  *Factual Reporting Service*
- SANDRA PEDDIE
  *Newsday*
- DAN RATHER
  *CBS News*
- CRISTINE RUSSELL
  *Freelance*
- TIM RUSSERT
  *NBC News*
- GERALD F. SEIB
  *The Wall Street Journal*
- CAROLE SIMPSON
  *ABC News*
- SAUNDRA TORRY
  *USA Today*
- VICKIE WALTON-JAMES
  *Tribune Publishing*
- JUDY WOODRUFF
  *PBS*

*Affiliations appear only for purposes of identification.*

June 5, 2006

RECEIVED
JUN - 7 2006

Hon. Joseph J. Farnan, Jr.
U.S. District Court for the District of Delaware
844 N. King St.
Lockbox 18
Wilmington, DE 19801
302-573-6155 (phone)
302-573-6451 (fax)

Hon. Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226
302-425-6410 (phone)
302-428-5132 (fax)

**BY FACSIMILE AND FIRST CLASS MAIL**

Re: *Advanced Micro Devices, Inc. v. Intel Corp.*, Civ. A. No. 05-44-JJF:
Stipulated Confidentiality Agreement and [Proposed] Protective Order

Dear Judge Farnan and Judge Poppiti:

The Reporters Committee for Freedom of the Press is writing to express our concerns about the Revised Stipulated Confidentiality Agreement and [Proposed] Protective Order in the litigation of *Advanced Micro Devices, Inc. v. Intel Corp.*, Civ. A. No. 05-441-JJF. Docket entry ("DKT") #150 Exh. A. We recognize the importance of efficient and effective discovery to resolve disputes, and appreciate the parties' efforts to ensure public access to litigation documents while preserving the confidentiality of truly proprietary information. We believe, however, that the proposed protective order could benefit from the following suggestions concerning the public's right of access to civil proceedings. We are writing to the court at this time because the court is evaluating whether to approve the agreement which, if endorsed, would govern the handling of discovery over the course of the litigation. *See* DKT #109 (stipulation and order regarding protective order approval process); #154 (hearing scheduled on June 12, 2006 for Special Master Hon. Vincent J. Poppiti to consider Proposed Protective Order).

1

1. <u>Definition R(16):</u>  The stipulated confidentiality agreement and proposed protective order defines 16 types of discovery material that producing parties may designate as "Confidential Discovery Material" subject to the protective order's terms. The 16th type of discovery material listed is a catch-all provision that defines protected discovery material as any "other information or documents the disclosure of which the Producing Party can demonstrate **would cause it serious and specific harm**" (emphasis added).

In this respect, the Draft Agreement fails to incorporate the Third Circuit's definition of what material may be protected pursuant to a protective order. *See, e.g., U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). As the Third Circuit explained in *Pansy*, a case involving a newspaper's attempt to vacate a protective order, district courts order confidentiality agreements where "good cause" exists. "Good cause is established on a showing that disclosure will work a *clearly defined and serious injury* to the party seeking closure." *Pansy*, 23 F.3d at 786 (citing *Publicker Indus. Inc., v. Cohen*, 733 F.2d 1059 (3d Cir. 1984)) (emphasis added). *Pansy* and its progeny illustrate the standard the U.S. District Court for the District of Delaware follows to judge whether material warrants protection. Acknowledging this standard in the Draft Agreement will put the producing parties and public on notice of the type of information the courts will allow the producing parties to protect.

2. <u>Definition U:</u>  The Draft Agreement breaks from existing law by defining nonpublic documents as those that, among other things, "**the Producing Party maintains internally as 'confidential,'**" and "that the disclosure of which **could** damage the Producing Party competitively." As Federal Rule of Civil Procedure 26(c)(7) indicates, producing parties may seek protection of a "trade secret, or other *confidential* research, development, or commercial information." The Draft Agreement should recognize that whether a document warrants protection does not hinge on whether a company has marked it "confidential" in-house, but whether it is truly confidential.

The Draft Agreement also should recognize that the Third Circuit has made clear that courts will only order information protected if the party seeking protection shows that "disclosure **will** [not could] work a clearly defined and serious injury." *See, e.g., Dentsply Int'l, Inc.*, 187 F.R.D. at 158 (citing *Pansy*, 23 F.3d at 786) (emphasis added).

3. <u>Provision 16(c):</u>  This provision says that if a party challenges the designation of material as protected in court, the producing party bears the burden to demonstrate that the material "qualifies as confidential discovery material under Paragraph R." In this respect, the Draft Agreement fails to recognize that courts evaluate whether information should be ordered protected in light of the court's standard for sealing, not the language of the producing parties' agreement. Material that meets the parties' definition of "confidential"

may not necessarily meet the standards set by the court for protective treatment. *See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326 (D. Del. 1986).

In *Procter & Gamble*, the plaintiff disputed the defendant's designation of some discovery documents as "proprietary" and asked to have them reclassified as not subject to the parties' protective order. The defendant disagreed, so the parties asked the court to resolve the question. In determining that the disputed documents were not subject to protection, the court did not look at the language of the parties' agreement to see if it authorized protection. Instead, the U.S. District Court for the District of Delaware independently evaluated the documents under its standard for protective orders: whether "the party seeking protection showed 'good cause' in that disclosure of the information would work a 'clearly defined and serious injury.'" *Procter & Gamble*, 111 F.R.D. at 329 (citing *Publicker*, 733 F.2d at 1071).

*Procter & Gamble* indicates that, in court, a party challenging a designation of confidentiality must not show that it "qualifies as confidential discovery material" under the language of the producing parties' agreement, but rather that it qualifies for protection under the "good cause" standard. Incorporating this standard in the Draft Agreement will more accurately reflect how the court will judge a designation dispute.

    4. "Filing Confidential Discovery Material with the Court," Provisions 23-25: This section states that, if confidential material is attached to filed papers, "the Clerk shall keep such papers under seal until further order of the Court." It also states that "information filed under seal shall be placed in sealed envelopes" with the words "filed under seal" on them. Also "[p]arties shall produce and file redacted versions of any papers . . . ."

This section could be read either to require parties to file public versions of all sealed filings with confidential information redacted so that the public may access the non-confidential information in each filing **or** to suggest that parties may submit entire filings under seal with no public access to non-confidential information within them. We believe that the latter filing process would be overbroad and contravene the Third Circuit's holdings. The Third Circuit has repeatedly found that the public has a presumptive right of access to documents filed with the court. *See, e.g., Republic of Phillipines v. Westinghouse Elec. Corp.*, 949 F.2d 653 (summary judgment motions), *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157 (3d Cir. 1993) (all material filed in connection with nondiscovery pretrial motion); *Littlejohn v. BIC Corp.*, 851 F.2d 673 (3d Cir. 1988) (trial exhibits); *Bank of America v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986) (settlement documents filed with court). Accordingly, we recommend clarifying this section to put the public on notice that the parties will only file under seal confidential information, not entire documents that may contain some confidential information.

As we stated in our letter to the court dated November 30, 2005, there is considerable public interest in this antitrust case, where the defendant stands accused of creating and protecting an unlawful monopoly on microprocessors. The right of public access to court records is critical in achieving the goal of informing the public about the workings of the judicial system generally and the factual underpinnings of this particular litigation. With the noted suggestions, the Stipulated Confidentiality Agreement and [Proposed] Protective Order will better account for this important public right and put the producing parties and public on notice of the type of information that will be protected. *See, e.g., Kamakana v. Honolulu*, No. 04-15241, 2006 WL 1329926 at *8 (9th Cir. May 17, 2006) (affirming lower court's decision to unseal filed court documents and criticizing stipulated protective orders: "These orders often contain provisions that purport to put the entire litigation under lock and key without regard to the actual requirements of [the law].")

Sincerely,

Lucy A. Dalglish, Executive Director
Gregg P. Leslie
Susan K. Burgess
The Reporters Committee for Freedom
of the Press

Allied Daily Newspapers of Washington
American Society of Newspaper Editors
The Associated Press
Bloomberg L.P.
California First Amendment Coalition
CNBC
Los Angeles Times
The New York Times Co.
Pacific Northwest Newspaper Association
Radio Television News Directors Association
Washington Coalition for Open Government
Washington Newspaper Publishers Association

cc:

Richard L. Horwitz (rhorwitz@potteranderson.com)
Potter Anderson & Corroon LLP
1313 North Market Street
PO Box 951

Wilmington, DC 198999-0951

Daniel S. Floyd
Gibson Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197

Darren B. Bernhard
Howrey LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2404

Frederick L. Cottrell, III
Richards Layton & Finger
One Rodney Square
920 North King St
P.O. Box 551
Wilmington DE 19899

Chuck B. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles CA 90067-6035

James L. Holzman
Prickett Jones & Elliott, PA
1310 King St.
P.O. Box 1328
Wilmington DE 19899

Michael D. Hausfeld
Cohen, Milstein, Hausfeld & Toll PLLC
1100 New York Ave., NW
Suite 500, West Tower
Washington DC 20005

Michael P. Lehman
The Furth Firm
225 Bush St., 15th FL
San Francisco, CA 94104

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Ave.
Suite 2900
Seattle, WA 98101

Guido Saveri
Saveri & Saveri, Inc.
111 Pine St., Suite 1700
San Francisco, CA 94111

Michael McShane
Alexander Hawes & Audet, LLP
152 North 3rd St.
Suite 600
San Jose, CA 95112