PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

WRITER'S DIRECT DIAL NUMBER

202-223-7339

WRITER'S DIRECT FACSIMILE

202-223-7420

WRITER'S DIRECT E-MAIL ADDRESS

rparker@paulweiss.com

PARTNERS RESIDENT IN WASHINGTON
HENK BRANDS                ALEX YOUNG K. OH
PATRICK S. CAMPBELL        ROBERT P. PARKER
KENNETH A. GALLO           JOSEPH J. SIMONS
         WARREN B. RUDMAN, OF COUNSEL

PARTNERS NOT RESIDENT IN WASHINGTON

MARK H. ALCOTT             DAVID K. LAKHDHIR
ALLAN J. ARFFA*            JOHN E. LANGE*
ROBERT A. ATKINS*          DANIEL J. LEFFELL*
JOHN F. BAUGHMAN*          JEFFREY D. MARELL*
LYNN B. BAYARD*            JULIA TARVER MASON*
DANIEL J. BELLER           MARCO V. MASOTTI*
MITCHELL L. BERG*          EDWIN S. MAYNARD*
MARK S. BERGMAN            DAVID W. MAYO*
BRUCE BIRENBOIM*           TOBY S. MYERSON*
H. CHRISTOPHER BOEHNING*   JOHN E. NATHAN*
ANGELO BONVINO*            CATHERINE NYARADY*
RICHARD S. BORISOFF*       JOHN J. O'NEIL
JOHN F. BREGLIO*           KELLEY D. PARKER*
JAMES BROCHIN              MARC E. PERLMUTTER*
RICHARD J. BRONSTEIN*      MARK F. POMERANTZ*
JEANETTE K. CHAN*          VALERIE E. RADWANER*
YVONNE Y.F. CHAN*          CAREY R. RAMOS
DOUGLAS A. CIFU*           CARL L. REISNER*
LEWIS R. CLAYTON           WALTER RIEMAN*
JAY COHEN                  RICHARD A. ROSEN*
KELLEY A. CORNISH*         ANDREW N. ROSENBERG*
DOUGLAS R. DAVIS*          STEVEN B. ROSENFELD
THOMAS V. DE LA BASTIDE III*  PETER J. ROTHENBERG*
JAMES M. DUBIN*            RAPHAEL M. RUSSO*
LESLIE GORDON FAGEN        JEFFREY D. SAFERSTEIN*
MARC FALCONE*              JEFFREY B. SAMUELS*
PETER L. FELCHER*          DALE M. SARRO
PETER E. FISCH*            TERRY E. SCHIMEK*
ROBERT C. FLEDER*          KENNETH M. SCHNEIDER*
MARTIN FLUMENBAUM          ROBERT B. SCHUMER*
ANDREW J. FOLEY*           JAMES H. SCHWAB*
HARRIS B. FREIDUS*         MICHAEL J. SEGAL*
MICHAEL E. GERTZMAN*       STEPHEN J. SHIMSHAK*
PAUL D. GINSBERG*          DAVID R. SICULAR*
ERIC S. GOLDSTEIN*         MOSES SILVERMAN*
ERIC GOODISON*             STEVEN SIMKIN*
CHARLES H. GOOGE, JR.*     MARILYN SOBEL*
ANDREW G. GORDON*          TARUN M. STEWART*
BRUCE A. GUTENPLAN*        ERIC ALLEN STONE*
GAINES GWATHMEY, III*      AIDAN SYNNOTT*
ALAN S. HALPERIN*          ROBYN F. TARNOFSKY*
CLAUDIA HAMMERMAN*         JUDITH R. THOYER*
GERARD E. HARPER           DANIEL J. TOAL*
BRIAN S. HERMANN*          MARK A. UNDERBERG*
ROBERT M. HIRSH*           MARIA T. VULLO*
JOYCE S. HUANG*            LAWRENCE G. WEE*
JEH CHARLES JOHNSON        THEODORE V. WELLS, JR.
MEREDITH J. KANE*          LISA YANO*
ROBERTA A. KAPLAN*         JORDAN E. YARETT*
BRAD S. KARP*              ALFRED D. YOUNGWOOD
JOHN C. KENNEDY*           KAYE N. YOSHINO*
ALAN W. KORNBERG           TONG YU*
DANIEL J. KRAMER*          T. ROBERT ZOCHOWSKI JR.*

*NOT AN ACTIVE MEMBER OF THE DC BAR.

November 13, 2006

Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street
Suite 800
Wilmington, DE 19801

Re:  *Advanced Micro Devices, Inc. v. Intel Corp.*, C.A. No. 05-441-JJF;
     *In re Intel Corp.*, C.A. No. 05-MDL-1717-JJF

Fujitsu Limited, NEC Corporation, Sony Corporation, and Toshiba Corporation (collectively the "Japanese OEMs"), non-parties in the above-referenced litigation, respectfully make this joint submission solely for the purpose of addressing the impact that the Court's September 26, 2006 decision dismissing AMD's foreign commerce claims for lack of subject matter jurisdiction and standing should have on discovery relating to the foreign conduct of Intel, particularly as it concerns discovery directed to the Japanese OEMs. The Japanese OEMs make this special appearance without waiving any of their objections to the jurisdiction of the Court. In addition, each of the Japanese OEMs individually reserves and does not waive its rights and objections with respect to any subpoena, discovery request, or any other matter.

The Japanese OEMs have purportedly been served with subpoenas from one or more of the parties in this action, including Advanced Micro Devices, Inc. ("AMD"), Intel Kabushiki Kaisha and Intel Corporation (collectively "Intel"), and the class plaintiffs. The subpoenas seek a broad array of documents and other materials

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                         2

regarding each company's dealings with AMD and Intel over a multi-year period.[1]  In all cases, each company's dealings with AMD and/or Intel, and the acquisition of the microprocessors at issue in this case, took place largely, if not exclusively, in Asia. Each company has submitted objections to the subpoenas purportedly served on it, and each company faces the further expenditure of substantial time and resources in this matter.

Although the issue presently before the Court concerns the effect of the Court's September 26 ruling on discovery among the parties, the Japanese OEMs respectfully submit that the decision has an even greater bearing on discovery directed to Japanese non-parties.  As we explain below, the Court's decision rendered the discovery sought from the Japanese OEMs irrelevant to the parties' remaining claims. Even if the discovery that the parties seek from the Japanese OEMs is deemed to have some minimal benefit, the costs and other burdens that further discovery would impose on these non-parties substantially outweigh whatever value the documents and other materials they produce might have.  Finally, because the parties' discovery is directed to foreign corporations, it raises additional concerns based on principles of international comity that further weigh against discovery from the non-party Japanese OEMs.

Thus, regardless of how the Court resolves any questions regarding the impact of the September 26 decision *as between the parties,* the Court should make clear that discovery *of non-party foreign corporations* is unnecessary and that production pursuant to broad subpoenas directed to these parties is neither expected nor permissible.

I.     The Court's Decision and AMD's Motion

On September 26, 2006, following full briefing by the parties, the Court granted Intel's Motion to Dismiss AMD's Foreign Commerce Claims for Lack of Subject Matter Jurisdiction and Standing [D.I. 111 in Civil Action No. 05-441]. The Court held that "AMD has not demonstrated that the alleged foreign conduct of Intel has direct, substantial and foreseeable effects in the United States which gives rise to its claims" and, accordingly, that the Court "lacks subject matter jurisdiction under the FTAIA [Foreign Trade Antitrust Improvements Act] over AMD's claims, to the extent those claims are based on foreign conduct and foreign harm." Mem. Op. [D.I. 215] at 15. Furthermore, the Court concluded that "the alleged injuries suffered by AMD as a result of Intel's foreign conduct are foreign injuries that occurred in foreign markets," and because those injuries are not cognizable under the FTAIA, AMD lacks standing to pursue such claims. *Id.* at 17.

---

[1]  An illustrative example of one of AMD's subpoenas is attached hereto as Exhibit A.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                           3

In light of its rulings, the Court "dismiss[ed] AMD's claims based on alleged lost sales of AMD's microprocessors to foreign customers and [struck] the allegations in the Complaint forming the basis for those claims, namely paragraphs 40-44, 54-57, 74-75, 81, 83, 96 [sic, 86], 89, 93-94, 100-101 and 106." *Id*. at 16. The stricken paragraphs of the complaint include the allegations concerning the Japanese OEMs. As the complaint now stands, there are no pending claims or allegations concerning any of the Japanese OEMs, with respect to Intel's conduct or otherwise.

In response to the Court's September 26 decision, Intel amended its previous responses to AMD's requests for discovery; according to its amended responses, Intel no longer intends to produce documents or information relating to its conduct in foreign commerce. Plaintiffs' Mot. to Compel, Exhibit 1 [D.I. 236-1] at 2. After Intel served its amended discovery responses, AMD filed a motion to compel Intel to respond to these discovery requests, arguing that, despite the Court's September 26 decision, AMD retains the "right to pursue claims for lost sales to *domestic* customers of microprocessors regardless of the product's origin (domestic commerce claims) and for sales of American-made microprocessors to *foreign* customers (export commerce claims)." Plaintiffs' Mot. to Compel [D.I. 236] at 3. AMD contends that, because the foreign discovery it seeks from Intel remains relevant to this case, Intel may not withhold discovery concerning Intel's foreign conduct. *Id*.

The Japanese OEMs believe that AMD's interpretation of the Court's September 26 decision is mistaken, and that the Court has already considered and rejected the notion that Intel's foreign conduct could be the basis for either a domestic or export commerce claim. More importantly for present purposes, however, whether AMD has articulated a basis for seeking discovery *from Intel* does not resolve the question that the Court's decision raises as to discovery from non-parties. That is, AMD's rationale for taking discovery of Intel cannot alter the fact that the Court has specifically and unequivocally stricken each and every allegation regarding the Japanese OEMs. Thus, the Court effectively closed the door on any route by which AMD might try to use foreign evidence — including evidence obtained from the Japanese OEMs — to prove its claims.

Indeed, the Court's decision refers specifically to a transaction involving Intel and a foreign customer, and traces AMD's argument regarding the manner in which such a transaction purportedly affects U.S. commerce. Mem. Op. at 9-10. The Court concluded that AMD's argument regarding the effect of this transaction "is premised on a multitude of speculative and changing factors affecting business and investment decisions," and that the consequences of such a transaction could not form the basis of an antitrust claim. *Id*. at 10. The Court held that "the allegations of foreign conduct here result in nothing more than what courts have termed a 'ripple effect' on

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                     4

the United States domestic market, and the FTAIA prevents the Sherman Act from reaching such 'ripple effects.'" *Id.* at 11.[2]

Based on the Court's ruling, the Japanese OEMs respectfully submit that offshore transactions, matters relating to those transactions, and the effects of those transactions, are beyond the Court's subject matter jurisdiction and are no longer relevant to this case.

II. The Discovery Directed to the Japanese OEMs, Which Relates Exclusively to Matters Involving Foreign Commerce Over Which the Court Has Concluded It Lacks Subject Matter Jurisdiction, Is <u>Irrelevant to the Remaining Claims and Defenses in this Case</u>

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery turns first and foremost on relevance. Parties may obtain discovery regarding any non-privileged matter "that is relevant to the claim or defense of any party," and a court "may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Under the plain language of the rule, as supported by case-law precedent, discovery directed to stricken claims and allegations is irrelevant, and should be precluded. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to issues in the case.") (footnote omitted).

As noted above, the Court expressly struck all of the allegations in AMD's complaint referencing the Japanese OEMs, and dismissed all of AMD's claims "based on alleged lost sales of AMD's microprocessors to foreign customers." Therefore, even if AMD has a story to tell concerning Intel's foreign conduct, it is a story in which the Japanese OEMs are no longer characters and their dealings with Intel are no longer a part of the plot. Indeed, discovery from the Japanese OEMs would fly in the face of the Court's ruling that it lacks subject matter jurisdiction over Intel's offshore activities. Given the Court's unequivocal ruling that it did not have jurisdiction to consider matters relating to Intel's activities in foreign commerce, discovery into that subject should be precluded.[3]

---

[2]  The Court's conclusion regarding this hypothetical transaction is especially significant because it was centered in Germany, where AMD has a manufacturing facility. Any effect of Intel's conduct in Asia would be even more remote than the transaction the Court rejected as a basis for finding subject matter jurisdiction.

[3]  The notion that discovery from the non-party Japanese OEMs might be relevant to AMD's remaining claims is easily put to rest. AMD and Intel apparently have

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                              5

III.  **Even if Discovery from the Japanese OEMs Would Have Some Benefit, Other Factors Weigh Against Permitting that Discovery**

Any benefit that (hypothetically) might be derived from the discovery directed to the Japanese OEMs is far outweighed by the burdens and costs that the discovery would impose. Moreover, the Japanese OEMs' status as both non-parties and as foreign corporations entitles them to heightened protections against burdensome discovery. We address these points below.

   A.  *The Court should protect non-parties from excessively burdensome discovery*

Rule 26(b)(2) admonishes a court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit," considering certain factors. Rule 45(c)(1) goes even farther insofar as discovery from non-parties is concerned, and requires parties issuing subpoenas to "take reasonable steps to avoid imposing undue burden or expense" on the subpoena recipients.

A number of courts, including this Court, have limited the scope and extent of discovery when it is sought from non-parties, including in antitrust cases. *See United States v. Fed'n of Physicians and Dentists, Inc.*, 63 F. Supp. 2d 475, 480 (D. Del. 1999) (Farnan, C.J.) ("Government's requests [in antitrust case] for nonparty surgeons' financial information is oppressive and would impose an undue burden on [them] to compile and/or provide it."); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("It is . . . noteworthy that the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000) ("[t]he district court . . . properly determined that the burden and expense of these discovery requests [on six non-party banks, including the production of a 'massive amount of documents

---

agreed that the relevant geographic market is worldwide and that the relevant product market is x86 microprocessors. Plaintiffs' Mot. to Compel, at 12. Therefore, no discovery from the Japanese OEMs on the issue of market definition ought to be necessary. AMD also recognizes that evidence of market share, which Intel has already agreed to provide, coupled with proof of significant entry barriers (which does not require discovery from the Japanese OEMs), commonly suffice to demonstrate market power. *Id.* at 13.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                 6

requested, first weeding out privileged and confidential records,'] far outweighed their likely benefit"); *In re Int'l Bus. Mach. Corp. Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998) (in securities class action regarding IBM's reduction of its stock dividend, the district court properly limited discovery to events prior to the reduction, given that "plaintiffs' 'weak showing' of potential relevance in its extensive discovery request was insufficient to outweigh the burden and expense" associated with the proposed discovery); *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 1991-1 Trade Cas. (CCH) ¶ 72,527 (E.D. Pa. May 14, 1999) (limiting motion to compel non-party production only to certain "highly relevant" documents as plaintiff did not demonstrate substantial need that cannot otherwise be met without undue hardship on non-party).

In view of these principles, there can be no doubt that the burdens imposed by the discovery directed to the Japanese OEMs far outweigh any benefits to be derived therefrom, for at least three reasons. *First*, as explained above, in light of the Court's order dismissing AMD's claims regarding foreign conduct, the requested materials have no direct relevance on the remaining claims. Thus, at the outset of the analysis, it is clear that there is little (if any) benefit to be had from the discovery.

*Second*, the burden that the subpoenas impose on the Japanese OEMs is tremendous. The anticipated cost of complying with the subpoenas – which none of the parties to the lawsuit has volunteered to bear – is an undue hardship in itself. The massive volume of documents that have been requested must be identified, extracted, translated from Japanese, and reviewed before any production could occur. This could cost each Japanese OEM at least several million dollars. In addition, irrespective of cost, the disruption to the non-parties' normal business operations, and the burden on the Japanese OEMs associated with the parties' scrutiny of confidential and proprietary documents, is unwarranted, especially considering the minimal benefit to be derived from the effort. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A. 04-1371, 2006 WL 2604540, *2 (D. Del. Aug. 24, 2006) (Farnan, J.) ("[D]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience *or disclosure of confidential documents*.") (emphasis added) (quotation marks omitted).

*Third*, whatever information the Japanese OEMs have that might bear some tangential relevance to plaintiffs' claims, it is also available from a preferable source: the parties themselves. Thus, even if the Court decides to permit some foreign-conduct discovery in this case, such discovery should be sought from the parties to this litigation in the first instance, and not from the non-party Japanese OEMs. *See* Fed. R. Civ. P. 26(b)(2) (discovery shall be limited if it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."); *see also Medical Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("The current generally prevailing view

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                     7

is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs.").

> B.   *Under principles of international comity, the Court should be especially wary of broad and burdensome discovery directed to Japanese OEMs*

Subpoenas directed to foreign corporations raise issues of international comity that further tilt the scales in favor of restricting or prohibiting that discovery. These comity concerns should carry particular weight where, as here, the discovery sought is of no direct relevance, the discovery is tremendously burdensome, and any information that may be relevant is available from the parties themselves.

Courts are particularly sensitive to the burdens of discovery when it is sought from a foreign party. *See, e.g., Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."). Because of the added burden involved in producing materials located abroad, "it is ordinarily reasonable to limit foreign discovery to information necessary to the action – typically, evidence not otherwise readily obtainable – and directly relevant and material." Restatement (Third) of Foreign Relations Law of the United States § 442 cmt. a (1987). *See also Aerospatiale*, 488 U.S. at 546 ("Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.") (footnote omitted).

This caution against permitting excessive discovery from foreign non-parties should be heeded particularly closely in the antitrust context, where the FTAIA provides a statutory limitation on the extraterritorial reach of American courts. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 952 (7th Cir. 2003) (*en banc*) ("The extraterritorial scope of our antitrust laws touches our relations with foreign governments, and so, it seems, it is prudent to tread softly in this area. . . . In short, FTAIA limits the power of the United States courts (and private plaintiffs) from nosing about where they do not belong."). Given that the Court has already dismissed AMD's foreign commerce claims under the FTAIA, it would fly in the face of these important comity principles to permit AMD nonetheless to pursue extensive and burdensome discovery from the Japanese OEMs.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                           8

\* \* \*

In conclusion, the Japanese OEMs respectfully submit: (1) that the Court should take the opportunity raised by AMD's motion to compel to address as well the effect of the Court's September 26 ruling on the Japanese OEMs; (2) that the discovery directed to the Japanese OEMs is no longer relevant in light of the Court's ruling that it has no jurisdiction over matters relating to Intel's conduct abroad; and (3) that whatever minimal relevance discovery of Intel's foreign transactions might have, the benefits to be derived from that discovery are outweighed by the excessive burdens the discovery would impose, the fact that the parties themselves have access to the information from their own files, and the affront that the discovery would present to principles of international comity. The Court should therefore rule that its September 26 decision precludes such discovery.

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____
Robert P. Parker
Aaron Futch
1615 L Street, NW
Suite 1300
Washington, DC 20036
Telephone: (202) 223-7300
*Counsel for Non-Party NEC Corporation*

**MORRISON & FOERSTER LLP**

By: __/s/ Jill D. Neiman_____
Peter J. Stern
Jill D. Neiman
Taro Isshiki
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
*Counsel for Non-Party Fujitsu Limited*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti                                                                                              9

                               **MORRIS, JAMES, HITCHENS &**
                               **WILLIAMS LLP**

                             By:   /s/ P. Clarkson Collins, Jr.
                                  P. Clarkson Collins, Jr.
                                  Delaware Bar No. 739
                                  222 Delaware Avenue, 10th Floor
                                  Wilmington, DE  19899-2306
                                  Telephone: (302) 888-6880
                                  Facsimile: (302) 571-1750
                                  E-mail:  pcollins@morrisjames.com
                                  *Local counsel for Non-Party Sony*
                                  *Corporation*

**OF COUNSEL**

Michael S. Sundermeyer
WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC  20005
Telephone: (202) 434-5015
Facsimile: (202) 434-5029
*Counsel for Non-Party Sony*
   *Corporation*

                             **PROCTOR HEYMAN LLP**

                             By:   /s/ Vernon R. Proctor
                                  Vernon R. Proctor
                                  Delaware Bar No. 1019
                                  1116 West Street
                                  Wilmington, DE  19801
                                  Telephone: (302) 472-7300
                                  Facsimile: (302) 472-7320
                                  E-mail: vproctor@proctorheyman.com
                                  *Local counsel for Non-Party Toshiba*
                                  *Corporation*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent J. Poppiti							10

**OF COUNSEL**

George L. Paul
John D. Donaldson
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
*Counsel for Non-Party Toshiba Corporation*

**cc:**

Richard L. Horwitz
Potter Anderson & Corroon LLP

Frederick L. Cottrell, III
Richards, Layton & Finger

James L. Holzman
Prickett, Jones & Elliott, P.A.

# EXHIBIT A

Case 1:05-cv-00441-JJF    Document 242    Filed 11/13/2006    Page 11 of 20

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION, a Delaware corporation and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No.  05-441-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SUBPOENA

TO:   Richard L. Horwitz, Esquire            Robert E. Cooper, Esquire
       Potter Anderson & Corroon LLP          Daniel S. Floyd, Esquire
       1313 North Market Street               Gibson, Dunn & Crutcher, LLP
       P. O. Box 951                          333 South Grand Avenue
       Wilmington, DE  19899                  Los Angeles, CA 90071-3197

       Darren B. Bernhard, Esquire
       Howrey LLP
       1299 Pennsylvania Avenue, N.W.
       Washington, DC 20004-2402

PLEASE TAKE NOTICE that on September 6, 2005, the attached subpoena was served on NEC Corporation, c/o Hirofumi Okuyama, 101 East 52nd Street, 5th Floor, New York, New York 10022.

RLF1-2918408-1

*[signature]*

| | |
|---|---|
| Of Counsel:<br>Charles P. Diamond<br>Linda J. Smith<br>Mark A. Samuels<br>O'Melveny & Myers, LLP<br>1999 Avenue of the Stars<br>7th Floor<br>Los Angeles, CA 90067-6035<br>(310) 553-6700<br><br><br>Dated: September 6, 2005 | Jesse A. Finkelstein (#1090)<br>Frederick L. Cottrell, III (#2555)<br>Chad M. Shandler (#3796)<br>Steven J. Fineman (#4025)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, Delaware 19899<br>(302) 651-7700<br>Finkelstein@rlf.com<br>Cottrell@rlf.com<br>Shandler@rlf.com<br>Fineman@rlf.com<br>Attorneys for Plaintiffs Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. |

RLF1-2918408-1

AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court, District of Delaware

TO:   NEC Corporation
c/o Hirofumi Okuyama
101 East 52nd Street, 5th Floor
New York, New York 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | |
|  | DATE AND TIME |
|  | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Attached Schedule A**

| PLACE | DATE AND TIME |
| --- | --- |
| O'Melveny & Myers LLP<br>Times Square Tower, 7 Times Square<br>New York, NY 10036 | September 20, 2005<br>5 p.m. (Eastern Standard Time) |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| [signature]  Attorney For Plaintiffs | September 6, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to NEC Corporation and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege or trade secret, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege or trade secret is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which

privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

    4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

    5. With respect to any DOCUMENT maintained or stored electronically, COMPANY shall harvest all such responsive DOCUMENTS in a manner that maintains the integrity and readability of all data, including all metadata. COMPANY shall also maintain a detailed audit trail sufficient to trace the chain of custody and in order to authenticate the DOCUMENTS collected.

    6. DOCUMENTS maintained or stored electronically shall be produced for inspection and review in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (*e.g.*, by copying such data onto a USB 2.0 external hard drive).

    7. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

    1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

    2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

    3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of COMPANY'S MICROPROCESSOR requirements.

    4. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

    5. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

    6. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

    7. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

    8. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

    9. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

    10. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

    11. DOCUMENTS sufficient to show:

        a) the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

        b) the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

        c) Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

        d) Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

        e) Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

    f)    The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Comparisons of INTEL and AMD MICROPROCESSORS**

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

14. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

15. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

16. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

17. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY'S selection of AMD or INTEL products, or (b) COMPANY's advertising, marketing, promotion, or sale of computers with AMD MICROPROCESSORS.

18. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

19. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and have sent by Hand Delivery to the following:

Richard L. Horwitz, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899

and have sent by Federal Express to the following non-registered participants:

| | |
|---|---|
| Darren B. Bernhard, Esquire<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2402 | Robert E. Cooper, Esquire<br>Daniel S. Floyd, Esquire<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071-3197 |

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Fineman@rlf.com