# EXHIBIT
# 2

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
_____DISTRICT OF HAWAII_____.

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Case Number:[1]    05-441-JJF
United States District Court, District of Delaware

Intel Corporation and Intel Kabushiki Kaisha

TO:    Fujitsu Ltd.
       c/o Masato Uchida
       6660 Hawaii Kai Drive
       Honolulu, Hawaii  96825

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
     to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
     deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects
     at the place, date, and time specified below (list documents or objects):
                              **See Attached Schedule A**

| PLACE | DATE AND TIME |
|---|---|
| Fujitsu Ltd.<br>6660 Hawaii Kai Drive<br>Honolulu, Hawaii  96825 | November 1, 2005<br>5:00 p.m. (Hawaii Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*                               Attorney For Plaintiffs | October 4, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]  If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Fujitsu Ltd. and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies;

date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

**Purchase Terms**

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-CAP and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS,

or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in computers sold in a particular geographic region.

6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

11.  All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

12.  All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold

any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

**Purchase History**

     13. DOCUMENTS sufficient to show:

         a)    the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

         b)    the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-CAP, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

         c)    Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

         d)    Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

         e)    Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

         f)    The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Comparisons of INTEL and AMD MICROPROCESSORS**

     14. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

     15. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

     16. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

     17. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

18. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

19. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of products containing AMD and/or INTEL MICROPROCESSORS.

20. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

21. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

22. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.

CARLSMITH BALL LLP

ANDREW L. PEPPER            5141
NENAD KREK                 3705
DUANE R. MIYASHIRO         6513
ASB Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Tel. No. 808.523.2500
Fax No. 808.523.0842
*apepper@carlsmith.com*
*nkrek@carlsmith.com*
*dmiyashiro@carlsmith.com*

Attorneys for Non-Party
FUJITSU LIMITED

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> INTEL CORPORATION, a Delaware corporation and INTEL KABUSHIKI KAISHA, a Japanese corporation, <br><br> Defendants. | Civil Action No. 1:05-CV-00441 <br><br> Pending in the United States District Court for the District of Delaware <br><br> RESPONSES AND OBJECTIONS OF NON-PARTY FUJITSU LIMITED TO PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS; CERTIFICATE OF SERVICE |

## RESPONSES AND OBJECTIONS OF NON-PARTY FUJITSU LIMITED
## TO PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS

Pursuant to Federal Rules of Civil Procedure ("Rules") 26 and 45, non-party

Fujitsu Limited ("Fujitsu") asserts the following objections to the Subpoena To

Produce Documents dated October 4, 2005 (the "Subpoena") served by Plaintiffs

in the above-captioned case.

By filing these responses and objections, Fujitsu in no way waives any

objections that it has as to the exercise of jurisdiction over it or as to the service of

the Subpoena or as to the Court's authority under Rule 45, and expressly reserves

its rights to assert such objections and to seek related relief in the future, including

without limitation via motions to quash the Subpoena or for a protective order.

### GENERAL OBJECTIONS

1.      Fujitsu objects to the Subpoena on the grounds that it is a Japanese

company and the United States District Court for the District of Hawaii has no

basis to exercise personal jurisdiction over Fujitsu to compel it to produce

documents, including documents located outside of the District.

2.      Fujitsu objects to the Subpoena to the extent that it exceeds the scope

of the Rules by purporting to seek the production of documents located outside the

District of Hawaii.

3.     Fujitsu objects to the Subpoena to the extent that it seeks the production of documents in contravention of foreign law, including the law of Japan.

4.     Fujitsu objects to the Subpoena based on the deficient manner of purported service of the Subpoena which was not in compliance with the requirements of the Federal Rules of Civil Procedure and/or applicable state law.

5.     Fujitsu objects to the Subpoena to the extent that it purports to impose obligations on Fujitsu beyond or inconsistent with those provided under the Rules, the local rules of the United States District Court for the District of Hawaii, or other applicable law.

6.     Fujitsu objects to the Subpoena on the grounds that it is overly broad.

7.     Fujitsu objects to the Subpoena on the grounds that it is significantly and unduly burdensome.  Pursuant to Rules 45(c)(1) and 45(c)(2)(B), Plaintiffs should be required to advance to Fujitsu its estimated costs and expenses of undertaking the requested document production.  Fujitsu reserves its right to seek such a remedy from the Court as may be appropriate.

8.     Fujitsu objects to the Subpoena to the extent that it seeks the production of documents that were prepared or acquired in anticipation of litigation, or that constitute attorney work product or disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, or

that contain privileged attorney-client communications, or that otherwise may be protected from disclosure by applicable privileges, laws, or rules. Any production of such documents shall not be deemed a waiver of those privileges.

9.    Fujitsu objects to the Subpoena to the extent that it seeks the production of documents that constitute or contain trade secrets or other confidential and/or proprietary information of Fujitsu or of any third party.

10.    Fujitsu objects to the Subpoena to the extent that it seeks the production of documents that are irrelevant to any issue in this proceeding and not reasonably calculated to lead to the discovery of admissible evidence.

11.    Fujitsu objects to the Subpoena to the extent that it calls for Fujitsu to produce or create documents that are not currently in Fujitsu's possession, custody, or control, or seeks to impose any obligation on Fujitsu to produce documents on behalf of any person or entity other than Fujitsu.

12.    Fujitsu objects to the Subpoena as overbroad and unduly burdensome to the extent it seeks the production of documents that are in the possession of Plaintiffs or of another party to this action, or are reasonably available to Plaintiffs through means other than a non-party Subpoena.

13.    Fujitsu objects to the Subpoena to the extent that it calls for the production of documents that no longer exist or that are not clearly identified.

14.     Fujitsu objects to the Subpoena as overbroad and unduly burdensome to the extent that it may be construed to require any search for and production of documents beyond one limited to any files readily determined to relate to the subject matter of the Subpoena and any files of Fujitsu employees known or reasonably believed to be personally involved in, or knowledgeable about, the subjects included within the Subpoena.

15.     Fujitsu objects to the Subpoena on the grounds that it does not identify any individuals from whom documents should be collected and produced, rendering the Subpoena overly broad in scope and unduly burdensome on Fujitsu.

16.     Fujitsu objects to the definitions of "Document," "Microprocessor," and "Financial Inducement" set forth in the Subpoena, on the grounds that those definitions render the Subpoena vague and ambiguous, overly broad, and burdensome; and that in light of such definitions the Subpoena seeks the production of materials that are irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

17.     Fujitsu objects to the definition of "Company" set forth in the Subpoena to the extent it includes any entity other than Fujitsu on the grounds that it renders the Subpoena vague and ambiguous, overly broad, and unduly burdensome.  Fujitsu also objects to the definition of "Company," and the Requests incorporating this term, to the extent they purport to seek information that is not in

"the possession, custody, or control" of Fujitsu. Fujitsu further objects to this definition of "Company" on the grounds that it does not specify what constitutes a "controlled" entity, rendering the definition vague and ambiguous and making it impossible to comply with the Subpoena. Additionally, Fujitsu objects that as a result of this definition the Subpoena seeks the production of materials that are irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. For the purposes of responding to this Subpoena, Fujitsu interprets "Company" to mean Fujitsu.

18.    Fujitsu objects to the definition of "Intel" to the extent it includes any entities other than Intel Corporation and Intel Kabushiki Kaisha on the grounds that it renders the Subpoena vague and ambiguous, overly broad, and unduly burdensome. Additionally, Fujitsu objects that as a result of this definition the Subpoena seeks the production of materials that are irrelevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

19.    Fujitsu objects to the definition of "AMD" to the extent it includes any entities other than Advanced Micro Devices and AMD International Sales and Service Ltd. on the grounds that it renders the Subpoena vague and ambiguous, overly broad, and unduly burdensome. Additionally, Fujitsu objects that as a result of this definition the Subpoena seeks the production of materials that are irrelevant

to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

20.    Fujitsu objects to Paragraph 1 of the Instructions set forth in the Subpoena on the grounds that the time period set forth in this paragraph renders the Subpoena overly broad and unduly burdensome.

21.    Fujitsu objects to Paragraph 3 of the Instructions set forth in the Subpoena to the extent that it purports to impose obligations on Fujitsu beyond or inconsistent with those provided under the Rules, the local rules of the United States District Court for the District of Hawaii, or other applicable law.

22.    Fujitsu objects to Paragraph 5 of the Instructions set forth in the Subpoena on the grounds that it renders the Subpoena overly broad and unduly burdensome and that the terms "in a manner that maintains the integrity and readability of all data" and "including all metadata" render the Instructions vague and ambiguous.  Fujitsu further objects to this paragraph to the extent that it purports to impose obligations on Fujitsu beyond or inconsistent with those provided under the Rules, the local rules of the United States District Court for the District of Hawaii, or other applicable law.

23.    Fujitsu objects to Paragraph 6 of the Instructions set forth in the Subpoena on the grounds that it renders the Subpoena overly broad and unduly burdensome and that the terms "native, electronic format," "with all relevant

metadata intact" and "in appropriate and useable manner" render the Instructions vague and ambiguous. Fujitsu further objects to this paragraph to the extent that it purports to impose obligations on Fujitsu beyond or inconsistent with those provided under the Rules, the local rules of the United States District Court for the District of Hawaii, or other applicable law.

24.    Fujitsu objects to Paragraph 8 of the Instructions set forth in the Subpoena on the grounds that it renders the Subpoena overly broad and unduly burdensome and that the terms "other such systems and files" and "useable form" render the Instructions vague and ambiguous. Fujitsu further objects to this paragraph to the extent that it purports to impose obligations on Fujitsu beyond or inconsistent with those provided under the Rules, the local rules of the United States District Court for the District of Hawaii, or other applicable law.

25.    Fujitsu's production of any document shall not be construed as an admission of the relevance or admissibility of any such document, as a waiver of any applicable privilege, or as an admission of the propriety or validity of the Subpoena or of any of the Requests contained therein.

26.    Fujitsu's objections are not intended, and should not be construed, as an admission or acknowledgment as to the existence of any fact or the existence of any documents or as to the truth of any allegation.

27.    Fujitsu reserves and does not waive any objection it may have to the

Subpoena, including any objection it may have to the service of the Subpoena, or

jurisdiction that is not stated herein.

28.    Fujitsu reserves the right to modify, supplement or amend its

objections as may be appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

Each of the following specific responses and objections incorporates the

general objections set forth above as if fully set forth therein.

### Request No. 1:

All DOCUMENTS constituting or reflecting communications with INTEL
concerning actual or proposed terms and conditions of the sale of
MICROPROCESSORS, including without limitation pricing, quantities, discounts,
rebates, Intel Inside funds, E-Cap funds and MDF.

### Objection to Request No. 1:

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome.  Fujitsu

further objects to this request to the extent it seeks the production of documents

that can be obtained from the Defendants in this action, because a less burdensome

method of obtaining these documents is available.  Additionally, Fujitsu objects to

the request to the extent it seeks materials that are irrelevant to the subject matter

of this litigation and that are not reasonably calculated to lead to the discovery of

admissible evidence.  Fujitsu also objects to this request insofar as it incorporates

the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

**Request No. 2:**

All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

**Objection to Request No. 2:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to the request to the extent it seeks materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects that this request is vague and ambiguous to the extent it seeks the production of documents "constituting or reflecting internal discussions or other communications within

COMPANY." Fujitsu also objects to this request insofar as it incorporates the

overbroad time period specified in the Instructions of the requests and incorporates

terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

## Request No. 3:

All DOCUMENTS constituting, reflecting, or discussing any offer of a
FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of
INTEL MICROPROCESSORS, or the purchase of a minimum volume of INTEL
MICROPROCESSORS, or the purchase of a minimum percentage of INTEL
MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR
requirements or requirements for certain processor types or end uses.

## Objection to Request No. 3:

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad, unduly burdensome, vague and

ambiguous. For example, this request is overbroad and unduly burdensome to the

extent it seeks the production of documents that can be obtained from the

Defendants in this action, because a less burdensome method of obtaining these

documents is available. Fujitsu also objects to this request insofar as it

incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

**Request No. 4:**

All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

**Objection to Request No. 4:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. For example, this request is overbroad and unduly burdensome to the extent it seeks the production of documents that can be obtained from the Defendants in this action, because a less burdensome method of obtaining these documents is available. Fujitsu further objects that this request is vague and ambiguous to the

extent it refers to "a particular computer platform, computer model or computer

type." Fujitsu also objects to this request insofar as it incorporates the overbroad

time period specified in the Instructions of the requests and incorporates terms that

have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

## Request No. 5:

All DOCUMENTS reflecting or discussing any offer of a FINANCIAL
INDUCEMENT by INTEL related to COMPANY's representation or agreement
that it will use only INTEL MICROPROCESSORS, or a defined number or
percentage of INTEL MICROPROCESSORS, in computers sold in a particular
geographic region.

## Objection to Request No. 5:

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. For

example, this request is overbroad and unduly burdensome to the extent it seeks

the production of documents that can be obtained from the Defendants in this

action, because a less burdensome method of obtaining these documents is

available. Fujitsu further objects that this request is vague and ambiguous to the extent it refers to "computers sold in a particular geographic region." Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

### Request No. 6:

All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

### Objection to Request No. 6:

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome, and is vague and ambiguous to the extent it seeks the production of documents "constituting or reflecting analyses, summaries, reports, studies or other writings." Fujitsu further objects to the request to the extent it seeks materials that are irrelevant to the

subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this request to the extent that it seeks documents or information that may reveal trade secrets or other confidential and/or proprietary research, development, or commercial information of Fujitsu or Intel or may be subject to an agreement to maintain confidentiality.

**Request No. 7:**

All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

**Objection to Request No. 7:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. For example, this request is overbroad and unduly burdensome to the extent it seeks the production of documents that can be obtained from the Defendants in this action, because a less burdensome method of obtaining these documents is available. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

**Request No. 8:**

All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

**Objection to Request No. 8:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. For example, this request is overbroad and unduly burdensome to the extent it seeks the production of documents that can be obtained from the Defendants in this action, because a less burdensome method of obtaining these documents is available. Fujitsu further objects that this request is vague and ambiguous to the extent it refers to a "suggestion" and to the extent it refers to "its plan to develop, release or promote a product containing an AMD MICROPROCESSOR." Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

## Request No. 9:

All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

## Objection to Request No. 9:

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. For example, this request is overbroad and unduly burdensome to the extent it seeks the production of documents that can be obtained from the Defendants in this action, because a less burdensome method of obtaining these documents is available. Fujitsu further objects that this request is vague and ambiguous to the extent it refers to "discounted or free" products, "as part of a package or bundle with," or "other components." Fujitsu also objects to the request to the extent it seeks the production of documents irrelevant to the subject matter of this litigation and of materials that are not reasonably calculated to lead to the discovery of admissible evidence. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

**Request No. 10:**

All DOCUMENTS constituting, reflecting, or discussing any offer by
INTEL to discount or subsidize or provide marketing support in connection with
the sale of servers containing INTEL MICROPROCESSORS for the purpose of
competing against servers containing AMD MICROPROCESSORS.

**Objection to Request No. 10:**

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. For

example, this request is overbroad and unduly burdensome to the extent it seeks

the production of documents that can be obtained from the Defendants in this

action, because a less burdensome method of obtaining these documents is

available. Fujitsu further objects to this request on the grounds that it is vague and

ambiguous to the extent it uses the terms "subsidize," "in connection with," and

"servers." Fujitsu also objects to this request insofar as it incorporates the

overbroad time period specified in the Instructions of the requests and incorporates

terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

### Request No. 11:

All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

### Objection to Request No. 11:

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to the request to the extent it seeks the production of documents irrelevant to the subject matter of this litigation and of materials that are not reasonably calculated to lead to the discovery of admissible evidence. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

**Request No. 12:**

All DOCUMENTS constituting, reflecting, or discussing any non-financial
inducement, including without limitation any allocation preference, access to
technical or roadmap information, personnel support
(engineering/technical/training) or any other non-cash benefit, perquisite or other
consideration offered by INTEL related to the purchase of INTEL
MICROPROCESSORS, or any suggestion by INTEL that it will or might
withdraw or withhold any non-financial inducement as a result of COMPANY's
purchase, sale or plans to develop, release or promote AMD
MICROPROCESSORS or products containing AMD MICROPROCESSORS.

**Objection to Request No. 12:**

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome.  For

example, this request is overbroad and unduly burdensome to the extent it seeks

the production of documents that can be obtained from the Defendants in this

action, because a less burdensome method of obtaining these documents is

available.  Additionally, Fujitsu objects to the request to the extent it seeks

materials that are irrelevant to the subject matter of this litigation or that are not

reasonably calculated to lead to the discovery of admissible evidence.  Fujitsu

further objects to this request on the grounds that it is vague and ambiguous to the

extent it refers to "non-financial inducement, including without limitation any

allocation preference, access to technical or roadmap information, personnel

support (engineering/technical/training) or any other non-cash benefit, perquisite or

other consideration." Fujitsu also objects to this request insofar as it incorporates

the overbroad time period specified in the Instructions of the requests and

incorporates terms that have been defined in a manner to which Fujitsu objects

above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

**Request No. 13:**

DOCUMENTS sufficient to show:

a)    the prices paid by COMPANY to INTEL for all
       MICROPROCESSORS since January 1, 2000.

b)    the aggregate amount by quarter of any payment, subsidy, rebate,
       discount, Intel Inside funds, E-Cap, MDF, "meeting competition"
       payments, or any advertising or pricing support provided to
       COMPANY in connection with its purchase of
       MICROPROCESSORS (by quarter) since January 2000.

     c)     Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

     d)     Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

     e)     Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

     f)     The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

## Objection to Request No. 13:

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to this request to the extent it seeks materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects that this request is vague and ambiguous to the extent it refers to "meeting competition payments," "pricing support" and "product road maps" and subpart a) is vague and ambiguous. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to subsections b), d), and e) of this request on the grounds that they seek the production of documents unrelated to or unlimited to

Fujitsu's interactions with AMD or Intel, thereby seeking materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence and rendering the request overbroad and unduly burdensome. Additionally, Fujitsu objects to subsection c) as overbroad and unduly burdensome. Fujitsu also objects to subsection f) of the request as overbroad and unduly burdensome and seeking materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence.

Fujitsu also objects to the Subpoena to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this request to the extent that it seeks documents or information that may reveal trade secrets or other confidential and/or proprietary research, development, or commercial information of Fujitsu or Intel or may be subject to an agreement to maintain confidentiality.

**Request No. 14:**

All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

## Objection to Request No. 14:

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to the request to the extent it seeks materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects to the request as vague and ambiguous to the extent it refers to "reflecting analyses, summaries, reports or studies prepared in connection with" purchases or sales. Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this

request to the extent that it seeks documents or information that may reveal trade secrets or other confidential and/or proprietary research, development, or commercial information of Fujitsu, Intel, or any other company, or that may be subject to an agreement to maintain confidentiality.

**Request No. 15:**

All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Objection to Request No. 15:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to the request to the extent it seeks materials irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects to the request as vague and ambiguous to the extent it refers to "reflecting analyses, summaries, reports, studies or other writings." Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this

request to the extent that it seeks documents or information that may reveal trade

secrets or other confidential and/or proprietary research, development, or

commercial information of Fujitsu, Intel, or any other company, and/or that may be

subject to an agreement to maintain confidentiality.

**Request No. 16:**

All DOCUMENTS constituting, reflecting, or discussing communications
with INTEL concerning COMPANY's participation in or support of any AMD
product launch or promotion.

**Objection to Request No. 16:**

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. For

example, this request is overbroad and unduly burdensome to the extent it seeks

the production of documents that can be obtained from the Defendants in this

action, because a less burdensome method of obtaining these documents is

available. Fujitsu further objects to the request to the extent it seeks the production

of documents that are irrelevant to the subject matter of this litigation and that are

not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Fujitsu objects that the request is vague and ambiguous to the extent

it refers to "support of any AMD product launch or promotion." Fujitsu also

objects to this request insofar as it incorporates the overbroad time period specified

in the Instructions of the requests and incorporates terms that have been defined in

a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

**Request No. 17:**

All DOCUMENTS constituting, reflecting, or discussing communications
with INTEL concerning the allocation of microprocessors or other INTEL
components.

**Objection to Request No. 17:**

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. For

example, this request is overbroad and unduly burdensome to the extent it seeks

the production of documents that can be obtained from the Defendants in this

action, because a less burdensome method of obtaining these documents is

available.  Fujitsu further objects to the request to the extent it seeks the production

of documents irrelevant to the subject matter of this litigation and of materials that

are not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Fujitsu objects that the request is vague and ambiguous to the extent

it refers to an "allocation of microprocessors or other INTEL components." Fujitsu

also objects to this request insofar as it incorporates the overbroad time period

specified in the Instructions of the requests and incorporates terms that have been

defined in a manner to which Fujitsu objects above.

     Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules.

### Request No. 18:

     All DOCUMENTS constituting or reflecting discussions within COMPANY
about unfair or discriminatory allocations of INTEL products or the fear of such
unfair or discriminatory allocations.

### Objection to Request No. 18:

     Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome.  Fujitsu

further objects to the request to the extent it seeks materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects that this request is vague and ambiguous to the extent it seeks the production of documents "constituting or reflecting discussions within Company" and refers to "unfair or discriminatory allocations of INTEL products" and "fear." Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

**Request No. 19:**

All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY'S selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY'S advertising, marketing, promotion, or sale of products with AMD and/or INTEL MICROPROCESSORS.

**Objection to Request No. 19:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further objects to the request to the extent it seeks materials that are irrelevant to the subject matter of this litigation and that are not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Fujitsu objects to the request as vague and ambiguous to the extent it refers to "consumer or customer feedback." Fujitsu also objects to this request insofar as it incorporates the overbroad time period specified in the Instructions of the requests and incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this

request to the extent that it seeks documents or information that may reveal trade

secrets or other confidential and/or proprietary research, development, or

commercial information of Fujitsu, Intel, or any other company, and/or that may be

subject to an agreement to maintain confidentiality.

**Request No. 20:**

All DOCUMENTS furnished by COMPANY to the Japan Fair Trade
Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

**Objection to Request No. 20:**

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. Fujitsu

further objects to this request to the extent it seeks documents that are irrelevant to

the subject matter of this litigation and that are not reasonably calculated to lead to

the discovery of admissible evidence. Fujitsu also objects to this request to the

extent it incorporates terms that have been defined in a manner to which Fujitsu

objects above.

Fujitsu further objects to this request to the extent that it seeks the

production of documents that were prepared or acquired in anticipation of or in

connection with litigation, or constitute attorney work-product, disclose the mental

impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu,

contain privileged attorney-client communications, or otherwise may be protected

from disclosure by applicable privileges, laws, or rules. Fujitsu also objects to this

request to the extent that it seeks documents or information that may reveal trade

secrets or other confidential information and/or proprietary research, development,

or commercial information of Fujitsu, Intel, or any other company, and/or that may

be subject to an agreement to maintain confidentiality.

Subject to and without waiving the foregoing specific and general

objections, Fujitsu responds that it will produce any non-privileged responsive

documents, subject to compliance with the terms of any relevant Non-Disclosure

Agreements, upon conclusion of an agreement with AMD concerning production

of these documents. Any production of these documents will be pursuant to the

terms of such an agreement.

## Request No. 21:

All DOCUMENTS constituting, reflecting, or discussing the destruction or
disposal of documents related to INTEL, AMD, or MICROPROCESSOR
procurement.

## Objection to Request No. 21:

Subject to and without waiving its general objections, Fujitsu objects to this

request on the grounds that it is overly broad and unduly burdensome. Fujitsu

further object to the request as vague and ambiguous to the extent it refers to

"Documents constituting . . . the destruction or disposal of documents." Fujitsu

also objects to this request insofar as it incorporates the overbroad time period

specified in the Instructions of the requests and incorporates terms that have been

defined in a manner to which Fujitsu objects above. Fujitsu also objects to this request to the extent that it assumes the "destruction or disposal of documents."

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

**Request No. 22:**

All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY's document retention policy or policies from January 1, 2000, to the present.

**Objection to Request No. 22:**

Subject to and without waiving its general objections, Fujitsu objects to this request on the grounds that it is overly broad and unduly burdensome. Fujitsu further object to the request as vague and ambiguous to the extent it refers to preserving documents "with respect to this litigation or related litigation or proceedings" and to the extent that it is unclear whether it purports to request all documents relating to Fujitsu's document retention policy or policies even if they were not prepared with an eye to "this litigation or related litigation or

proceedings." Fujitsu also objects to this request as overbroad with respect to the time period specified in the request. Additionally, Fujitsu objects to the request on the grounds that it incorporates terms that have been defined in a manner to which Fujitsu objects above.

Fujitsu further objects to this request to the extent that it seeks the production of documents that were prepared or acquired in anticipation of or in connection with litigation, or constitute attorney work-product, disclose the mental impressions, conclusions, opinions, or legal theories of any attorneys for Fujitsu, contain privileged attorney-client communications, or otherwise may be protected from disclosure by applicable privileges, laws, or rules.

DATED: Honolulu, Hawaii, January 17, 2006.

ANDREW L. PEPPER
NENAD KREK
DUANE R. MIYASHIRO

Attorneys for Non-Party
FUJITSU LIMITED

Of Counsel:

PETER J. STERN
TARO ISSHIKI
Morrison & Foerster LLP
AIG Building, 11th Floor
1-3, Marunouchi 1-Chome
Tokyo, Chiyoda-ku 100-0005, Japan
Telephone: +81 3 3214 6522
Facsimile: +81 3 3214 6512


JILL D. NEIMAN
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
*jneiman@mofo.com*

r

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation,<br><br>        Plaintiffs,<br><br>vs.<br><br>INTEL CORPORATION, a Delaware corporation and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>        Defendants. | Pending in the United States District Court for the District of Delaware Civil Action No. 1:05-CV-00441<br><br>CERTIFICATE OF SERVICE |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the

foregoing document has been duly served upon the following at their addresses of

record by United States Mail, postage prepaid on January 17, 2006:

        CHARLES P. DIAMOND, ESQ.
        LINDA J. SMITH, ESQ.
        O'Melveny & Myers LLP
        1999 Avenue of the Stars, 7th Floor
        Los Angeles, CA 90067

            (and)

MARK A. SAMUELS, ESQ.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

Attorneys for Plaintiffs ADVANCED
MICRO DEVICES, INC. and
AMD INTERNATIONAL SALES &
SERVICE, LTD.


DARREN B. BERNHARD, ESQ.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

      (and)

ROBERT E. COOPER, ESQ.
DANIEL S. FLOYD, ESQ.
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Attorneys for Defendants
INTEL CORPORATION and
INTEL KABUSHIKI KAISHA

DATED: Honolulu, Hawaii, January 17, 2006.


ANDREW L. PEPPER
NENAD KREK
DUANE R. MIYASHIRO

Attorneys for Non-Party
FUJITSU LIMITED

2.

Of Counsel:

PETER J. STERN
TARO ISSHIKI
Morrison & Foerster LLP
AIG Building, 11th Floor
1-3, Marunouchi 1-Chome
Tokyo, Chiyoda-ku 100-0005, Japan
Telephone: +81 3 3214 6522
Facsimile: +81 3 3214 6512


JILL D. NEIMAN
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
*jneiman@mofo.com*

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Case Number:[1]    05-441-JJF
United States District Court, District of Delaware

Intel Corporation and Intel Kabushiki Kaisha

TO:    Fujitsu Computer Systems, Inc.
c/o Lawyers Incorporating Service
2730 Gateway Oaks Dr., Ste. 100
Sacramento, CA 95833

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE<br>O'Melveny & Myers LLP<br>275 Battery St.<br>San Francisco, CA 94111 | DATE AND TIME<br><br>November 1, 2005<br>5:00 P.M. (Pacific Standard Time) |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney For Plaintiffs | DATE<br><br>October 4, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]    If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                          DATE                                    SIGNATURE OF SERVER

                                                        _____
                                                        ADDRESS OF SERVER

                                                        _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Fujitsu Computer Systems, Inc. and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies;

date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-CAP and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS,

or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

4. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

5. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in computers sold in a particular geographic region.

6. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

8. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

11. All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

12. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold

any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

**Purchase History**

13. DOCUMENTS sufficient to show:

    a)    the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

    b)    the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-CAP, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

    c)    Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

    d)    Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

    e)    Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

    f)    The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Comparisons of INTEL and AMD MICROPROCESSORS**

14. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

15. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

16. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

17. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

18. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

19. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of products containing AMD and/or INTEL MICROPROCESSORS.

20. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

21. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

22. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.

AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]     05-441-JJF
United States District Court, District of Delaware

TO:   Fujitsu America, Inc.
      c/o CT Corporation System
      818 W. Seventh Street
      Los Angeles, California  90027

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| O'Melveny & Myers LLP | |
| 1999 Avenue of the Stars, Suite 700 | November 1, 2005 |
| Los Angeles, CA  90067 | 5:00 P.M. (Pacific Standard Time) |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*                             Attorney For Plaintiffs | October 4, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B)  If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Fujitsu America, Inc. and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies;

date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-CAP and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS,

or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of  INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of  INTEL MICROPROCESSORS, in computers sold in a particular geographic region.

6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

11.  All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

12.  All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold

any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

**Purchase History**

    13. DOCUMENTS sufficient to show:

        a)    the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

        b)    the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-CAP, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

        c)    Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

        d)    Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

        e)    Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

        f)    The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Comparisons of INTEL and AMD MICROPROCESSORS**

    14. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

    15. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

    16. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

    17. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

18. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

19. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of products containing AMD and/or INTEL MICROPROCESSORS.

20. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

21. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

22. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.