EXHIBIT 15

*2006 U.S. Dist. LEXIS 7602, \*; 2006-1 Trade Cas. (CCH) P75,311*

INVACARE CORPORATION, Plaintiff, v. RESPIRONICS, INC., Defendant.

CASE NO. 1:04 CV 1580

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

2006 U.S. Dist. LEXIS 7602; 2006-1 Trade Cas. (CCH) P75,311

February 28, 2006, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Motion denied by Invacare Corp. v. Respironics, Inc., 2006 U.S. Dist. LEXIS 77312 (N.D. Ohio, Oct. 23, 2006)

**PRIOR HISTORY:** Invacare Corp. v. Respironics, Inc., 2005 U.S. Dist. LEXIS 17439 (N.D. Ohio, Apr. 25, 2005)

**CORE TERMS:** discovery, mask, sleep, lab, interrogatory, therapeutic, anti-competitive, diagnostic, production of documents, time period, prescribe, objected, selling, patients, discovery of admissible evidence, applicable limitations period, reasonably calculated to lead, failure to cooperate, motion to compel, willfulness, relevance, extending, antitrust, genuine, fault, four-part, assess, background information, business relationship, requested discovery

**COUNSEL:** [*1] For Invacare Corporation, Plaintiff: John J. Eklund, Maura L. Hughes, Sharon A. Luarde, Gregory J. Phillips, Calfee, Halter & Griswold, Cleveland, OH; David A. Ruiz, Calfee Halter & Griswold LLP, Cleveland, OH.

For Respironics, Inc., Defendant: Michael E. Lowenstein, Natalie C. Moritz, Reed Smith, Pittsburgh, PA; George W. Rooney, Jr., Rachael L. Russo, Donald S. Scherzer, Roetzel & Andress, Cleveland, OH.

**JUDGES:** William H. Baughman, Jr., United States Magistrate Judge. JUDGE SOLOMON OLIVER, JR.

**OPINION BY:** William H. Baughman, Jr.

**OPINION: MEMORANDUM OPINION AND ORDER**

### I. Introduction

Before the Court is Invacare Corporation's ("Invacare") motion pursuant to Federal Rule of Civil Procedure 37(a)(2)(B) to compel Respironics, Inc. ("Respironics") to respond to certain interrogatories and requests for production of documents. Invacare further seeks attorney's fees from Respironics under the authority of Federal Rule of Civil Procedure 37(a)(4). Respironics opposes these motions. This matter has been referred to the Magistrate Judge for a determination.

### II. Facts

Invacare brought an antitrust [*2] action against Respironics alleging that Respironics

engaged in predatory pricing and tying arrangements in the sale of positive airway pressure devices ("PAPs") and the masks used with PAPs, as well as attempting to monopolize these markets, making illegal agreements in restraint of trade and otherwise engaging in unfair competition. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 ECF # 1.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

These two products, which are therapeutic devices used in the treatment of obstructive sleep apnea ("OSA"), are defined in Invacare's complaint as "the relevant markets affected by the anti-competitive behavior of Respironics." n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 *Id.* at P12.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The complaint specifically asserts that in transactions with dealers selling to consumers, Respironics improperly "bundled" PAPs with masks. n3 It further alleges that Respironics sold these items below cost or provided them free to sleep labs, which [*3] often prescribe equipment to individual patients for treating OSA. n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 *Id.* at P22.

n4 *Id.* at PP27-29.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Invacare argues that the complaint should not be read as limiting the underlying action to PAPs and masks. n5 Invacare notes that the complaint also asserts that "Respironics sells PAPs, Masks and *other equipment* to Sleep Labs ... [and that] the prices charged Sleep Labs for *such equipment* are well below its average variable costs (or any other reasonable measure of its costs) for *such equipment*." n6

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 ECF # 37 at 4.

n6 *Id.*, citing ECF # 1 at PP27, 28, 29 and 30 (PP28 and 29 quoted here, emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In its first set of interrogatories, Invacare, at numbers 23 through 26, sought the following:

> 23. Identify each Sleep Lab with whom you have had any commercial or other business relationship since [*4] 1998.
>
> 24. Identify all documents that refer or relate to (a) any commercial or other business relationship with any Sleep Lab or (b) any proposal for or analysis of such relationship.
>
> 25. State whether you, or anyone acting on your behalf or with actual or apparent authority, has ever given a PAP, Mask or other product to any Sleep Lab.
>
> 26. If your answer to Interrogatory Number 25 is yes, state the following for each such transaction: a) what product was given; b) to whom the product was given; c) identify all documents referring or relating to this transaction; d) identify each person with knowledge of Respironics' role in the transaction; and, e) what benefit, if any, You received as a result of the transaction. n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 ECF # 37, Ex. 2 at PP23-26.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Invacare has also sought production of documents "from which the following can be ascertained: (a) Defendant's total sales and gross profit on an annualized basis beginning in 1998; and (b) Defendant's total sales of Masks and PAPs and Defendant's gross profit [*5] on such sales on an annualized basis beginning on January 1, 1998." n8 Consistent with this request for documents extending back to 1998, Invacare framed its interrogatories as seeking information dating to 1998. n9

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 *Id.*, Ex. 1 at P10.

n9 *Id.*, Ex. 2 at PP3, 4, 5, 8, 9, 10, 11, 12, 13, 20, 22 and 23. Interrogatory 13 involves a request Respironics' federal income tax returns for the period 1993 through 1998.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Responding by letter on April 1, 2005 to Invacare's counsel concerning the request for production of documents and the interrogatories, Respironics claimed initially that "it will only

produce documents from August 6, 2000 to the present," n10 such time representing both the statute of limitations for antitrust claims and the earliest date that Invacare marketed a competing product. n11

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 *Id.*, Ex. 3 at P12.

n11 *Id.*, Ex. 8 at 1.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

Respironics further argued that it would not provide information concerning products not alleged in the complaint to comprise the affected market. While conceding that there is "other ancillary equipment used in [the PAP and mask combination] such as the air hose that connects the device with the mask, clamps and the like," n12 Respironics objected to providing information concerning diagnostic, not therapeutic products that "Invacare does not even sell and are not at issue in this case." n13

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 *Id.* at 3.

n13 *Id.* at 4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Moreover, Respironics maintained that its position of limiting discovery to the product market alleged in the complaint was consistent with Invacare's own objections to parts of Respironics' request for production of documents and interrogatories. As quoted by Respironics, Invacare objected to requests for information "about Invacare's products other than those that are within the relevant product market as defined in Plaintiff's Complaint." n14

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 *Id.* at 3, quoting Invacare's Answers and Objections to Respironics, Inc.'s First Set of Interrogatories.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*7]**

Respironics summarized its point here as follows:

> By these objections, Invacare has made it clear that the proper scope of this case is PAPs and Masks -- the product markets "defined in Plaintiff's Complaint." Allowing Invacare's efforts to expand the scope of discovery clearly would require

Respironics to provide discovery beyond which Invacare is willing to provide Respironics. n15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n15 *Id.* at 4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In response, Invacare filed the present motion, essentially presenting three arguments:

> (1) Respironics' answer to the interrogatories only provides information as to masks, not PAPs and other products, and so is unresponsive; n16
>
> (2) The scope of discovery should not be limited to "a very narrow reading of the Complaint" but should include allegations that Respironics acted illegally with respect to "other equipment" as included in the complaint; n17 and
>
> (3) Extending the time period to include 1998 to the present should be allowed since "it will provide useful background information [*8] as well as information concerning Respironics' course of dealing within the relevant markets. It may also yield evidence of invidious design, pattern or intent." n18

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n16 ECF # 37 at 4.

n17 *Id.* at 4-5.

n18 *Id.* at 6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Finally, Invacare seeks attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(4) because Respironics has "been derelict in providing discovery." n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n19 *Id.* at 7.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Case 1:05-cv-00441-JJF    Document 251-16    Filed 11/21/2006    Page 7 of 16
Page 6 of 15
Get a Document - by Citation - 2006-1 Trade Cas. (CCH) P75,311

Respironics has responded in opposition to Invacare's motion. n20 Invacare has replied to Respironics' response. n21 Respironics has, in turn, filed, with leave of the Court, a surreply brief. n22

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 ECF # 40.

n21 ECF # 42.

n22 ECF # 45.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*9]

### III. Analysis

The Court will first set forth the applicable law governing discovery and then individually address the four issues presented here. n23

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n23 (1) Respironics' allegedly incomplete answer; (2) discovery of dealings beyond PAPs and masks; (3) expanding the relevant time period beyond 2000 to 1998; and (4) attorney's fees.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

#### A. Applicable law

Federal Rule of Civil Procedure 26(b)(1) permits a litigant to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." As the Sixth Circuit has stated:

> "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." However, "discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1). Thus, it is proper to deny discovery [*10] of matter that is relevant only to claims or defenses that may have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." n24

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n24 *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998) (citations omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In this regard, "it is well-established that the scope of discovery is within the sound discretion of the trial court." n25 District courts have such broad discretion when determining relevancy for purposes of setting the scope of discovery. n26

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n25 *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 571 (6th Cir. 2001) (citation omitted).

n26 *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Where information being sought is likely to produce arguably relevant **[*11]** evidence that would, if introduced at trial, be "purely speculative," it is an abuse of discretion to deny discovery. n27 The test for denying requested discovery must be whether "the discovery requested would be irrelevant to the underlying issue to be decided." n28

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n27 *Coleman v. American Red Cross*, 23 F.3d 1091, 1097 (6th Cir. 1994).

n28 *United States v. Dairy Farmers of America*, 426 F.3d 850, 862 (6th Cir. 2005) quoting *Green*, 196 F.3d at 632.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**B. Matters at issue**

***1. Scope of Respironics' current answer***

Here, as noted, Invacare's Interrogatories 23 through 26 seek information concerning Respironics' dealings with sleep labs.

The record shows, and the parties accept, that Respironics has provided answers to these interrogatories as to selling or providing masks to sleep labs. But, with respect to PAPs, it contends that since sleep labs are diagnostic facilities, not treatment or sales locations, "PAPs are not ordinarily provided **[*12]** to sleep labs." n29 While acknowledging that "Respironics

may have provided a PAP to sleep labs from time to time for one reason or another," n30 it should not be required to go "on a wild goose chase on such a de minimis [sic] issue...." n31

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n29 ECF # 40 at 8.

n30 *Id.*

n31 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As noted, the test for permissible discovery is whether the information sought is "reasonably calculated to lead to the discovery of admissible evidence." n32 Determining if Respironics engaged in supplying sleep labs with PAPs, and the extent of such action, is relevant to, or designed to produce evidence relevant to, Invacare's allegations in its complaint that PAPs and masks are used together and that:

> The purpose and effect of Respironics selling equipment to Sleep Labs for prices below its costs is to induce the Sleep Labs to prescribe Respironics brand equipment, thereby destroying any competition in the relevant markets by foreclosing competitors from successfully marketing their products, and eliminating [*13] dealers' (and ultimately consumer/patients') options for equipment to treat OSA. n33

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n32 *Lewis,* 135 F.3d at 402.

n33 ECF # 1 at P30.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Indeed, Respironics' defense for failing to answer these interrogatories as to provisions of PAPs to sleep labs that any such provision of PAPs has been *"de minimus,"* n34 as well as its acknowledgment that "some sleep labs do have a separate DME (durable medical equipment) outlet from which patients can purchase devices and masks," n35 merely argue against the weight of any evidence that may be produced by such discovery, not its relevance.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n34 ECF # 40 at 8.

n35 *Id.* at 7, n.7.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Accordingly, Invacare's motion to compel Respironics to respond to Interrogatories 23 through 26 is granted insofar as it seeks information concerning PAPs.

### 2. Discovery of dealings [*14] beyond PAPs and masks

Invacare also seeks responses to Interrogatories 23 through 26 from Respironics as to its "commercial dealings [with sleep labs] in more products than just masks [and] PAPS [but also] other products including diagnostics." n36 It construes the complaint, as noted earlier, to be significantly broader than masks and PAPs by virtue of its use of the phrase "other equipment" at various points. n37

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n36 ECF # 37 at 5.

n37 *Id.* at 4-5.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Invacare argues that while the complaint specifically names masks and PAPs, it "also specifically assert[s] the same illegal, predatory conduct with regard to 'other equipment.'" n38

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n38 ECF # 42 at 3.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Respironics responds that a plain reading of the complaint as a whole shows that Invacare has alleged anti-competitive conduct affecting the market for therapeutic devices [*15] for OSA. n39 Respironics notes that Invacare has objected to discovery requests propounded by Respironics that seek "information and documents about Invacare's products other than those that are within the relevant markets as defined in Plaintiff's Complaint." n40

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n39 ECF # 45 at 2-5.

n40 *Id.* at 2, quoting Invacare's Answers and Objections to Respironics, Inc.'s First Set of

Interrogatories and Responses and Objections to Respironics, Inc.'s First Request for Production of Documents.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Initially, it is clear that the complaint here specifically identifies the market affected by any anti-competitive conduct by Respironics as PAPs and masks:

> There are two relevant markets affected by the anti-competitive behavior of Respironics. The first is the market for PAPs... Masks for use with PAPs is also a relevant market in which Respironics anti-competitive conduct has occurred and has caused anti-competitive effects. n41

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n41 ECF # 1 at PP12, 13.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*16]**

Further, the complaint itself alleges that "Respironics sells PAPs, Masks and *other equipment* to Sleep Labs *for the diagnosis* and treatment of sleep disorders, including OSA." n42 Immediately after this statement, the complaint then alleges that "the prices Respironics has charged Sleep Labs for *such equipment* are well below its average variable costs...." n43

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n42 *Id.* at P27 (emphasis added).

n43 *Id.* at P28 (emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The complaint continues by asserting that "Sleep Labs are important to the distribution of PAPs and Masks" n44 and, therefore, "the purpose and effect of Respironics' selling *equipment* to Sleep Labs for prices below its costs is to induce the Sleep Labs to prescribe Respironics brand equipment, thereby destroying any competition in the relevant markets...." n45

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n44 *Id.* at P29.

n45 *Id.* at P30 (emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*17]**

Contrary to Respironics' contention, the complaint does clearly allege that Respironics sold diagnostic, as well as therapeutic, equipment to sleep labs at prices below cost. It further alleges that the intent of this conduct was to confer an economic benefit on the sleep lab, namely, a below market price, so that the sleep lab would, in turn, prescribe Respironics' therapeutic products to patients.

Respironics has not argued here that establishing that a sleep lab received a below market price on a piece of diagnostic equipment would be irrelevant to whether it might then reciprocate that benefit by prescribing its benefactor's therapeutic equipment for a client.

The fact that a competitor could be shown to have employed its ability to deliver below market pricing in one market, namely, diagnostic equipment, to produce an anti-competitive effect in another market, namely, therapeutic equipment, does not impermissibly widen the scope of the affected market but, rather, goes directly to the case alleged by Invacare.

The relevance of such a finding seems self-evident. Invacare's request for discovery here is supported both by the language of the complaint and the fact that the request **[*18]** for information as to Respironics' diagnostic sales is limited to sleep labs, which are alleged to have a crucial role in prescribing therapeutic equipment to treat OSA.

Accordingly, Invacare's motion to compel responses as to its inquiries concerning Respironics' dealings with sleep labs beyond PAPs and masks is granted.

### 3. Expansion of time period covered to 1998

The parties here agree that no authority requires an automatic bar to discovery prior to the applicable statute of limitations. However, as the Sixth Circuit has noted, "it is appropriate to deny discovery ... to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." n46

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n46 *Lewis*, 135 F.3d at 402 (citation omitted, emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

As Respironics suggests, this approach contemplates that the party seeking pre-limitations discovery should provide some basis by which a court could determine if such discovery might be "relevant to issues **[*19]** in the case." n47

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n47 ECF # 40 at 9, quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The cases cited by Invacare do not contradict this point. Antitrust cases, while subject to an expansive interpretation as to the relevant time period for discovery, n48 also do not constitute a wholly separate category of actions where discovery antedating the applicable statute of limitations can be granted without a showing of relevancy.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n48 See, American Health Sys. v. Liberty Health Sys., 1991 U.S. Dist. LEXIS 2612, No. 90-3112, 1991 WL 30726 at *2 (E.D. Pa. March 5, 1991).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Here, Invacare bases its contention that extending the discovery for two years beyond the limitations period is relevant because "it will provide useful background information as well as information concerning Respironics' course of dealing within relevant [*20] markets. It may also yield evidence of invidious design, pattern and intent." n49

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n49 ECF # 37 at 6.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In this case, Invacare has not shown how information from an expanded time period would produce relevant evidence different in kind from that which it may obtain from the applicable limitations period. While mindful that relevance is the central focus in resolving discovery issues, n50 courts must still weigh the burden of proposed discovery against the likely benefit with an eye to finding the appropriate boundaries. n51

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n50 Dairy Farmers, 426 F. 3d at 862.

n51 Fed. R. Civ. P. 26(b)(2).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Invacare's proposed additional discovery seems likely to produce merely cumulative evidence, which Federal Rule of Civil Procedure 26(b)(2)(i) specifically [*21] states is a reason for limiting otherwise permissible discovery, while imposing a significant burden on the respondent not commensurate with any benefit. n52

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n52 Fed. R. Civ. P. 26(b)(2)(iii).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Accordingly, absent any showing from Invacare that evidence of Respironics' dealings during the period 1998 to 2000 will likely be other than cumulative of the evidence of its dealings from 2000 forward, Invacare's motion to compel Respironics to comply with requested discovery seeking information relating to events prior to August 6, 2000 is denied.

### 4. Attorney's fees

Invacare has sought attorney's fees under Federal Rule of Civil Procedure 37 for Respironics' failure to comply with its discovery, claiming that Respironics' actions are "obstinate obstructionism ... which fully justify an award of sanctions under Civil Rule 37(a)." n53

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n53 ECF # 42 at 7.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*22]

Federal Rule of Civil Procedure 37(a)(4)(A) provides that no sanctions should be imposed if the court determines that "the opposing party's non-disclosure, response, or objection was substantially justified or that other circumstances make an award of expenses unjust." The Sixth Circuit has said that "substantial justification" under this Rule exists where "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." n54

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N54 *Doe v. Lexington-Fayette Urban County Gov't*, 407 F. 3d 755, 765 (6th Cir. 2005) (citation omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Sixth Circuit has employed a four-part test to evaluate whether an imposition of sanctions under Federal Rule of Civil Procedure 37 is justified:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith or fault; the second factor is whether the adversary was prejudiced by the party's [*23] failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered. n55

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n55 *Id.* at 766.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Here, there can be little doubt that a "genuine dispute" existed, given that each party has been successful in maintaining a portion of its position before the Court. Further, the record demonstrates that Respironics has responded to other discovery requests and has engaged in written exchanges with Invacare over the disputed discovery in an attempt to either satisfactorily explain its position or elicit additional information for Invacare that might permit a resolution of the disputes. n56 As such, Invacare has not met the first part of the four-part test set forth in *Doe* since Respironics' actions are not due to "willfulness, bad faith or fault."

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n56 See ECF # 37 at Ex. 7 (February 22, 2005 letter from Respironics' counsel to counsel for Invacare regarding discovery matters), Ex. 8 (April 1, 2005 letter from Respironics' counsel to counsel for Invacare regarding discovery matters).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*24]

Further, it should be noted that Invacare has itself objected to discovery requests from Respironics in this case that it asserts are improperly over-broad. n57

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n57 See Invacare objections discussed and quoted in ECF # 40 at 4-5.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Accordingly, since the Court finds that Respironics' objections here were the result of a "genuine dispute" and not the product of "willfulness, bad faith or fault," Invacare's motion to assess attorney's fees against Respironics pursuant to Federal Rule of Civil Procedure 37(a)(4) is denied.

## IV. Conclusion

Accordingly, Invacare's motion to compel discovery from Respironics and assess attorney's fees against it for non-compliance with discovery is hereby granted in part and denied in part as is detailed herein.

IT IS SO ORDERED.

Dated: February 28, 2006

s/ William H. Baughman, Jr.

United States Magistrate Judge


Case 1:05-cv-00441-JJF   Document 251-16   Filed 11/21/2006   Page 16 of 16
Get a Document - by Citation - 2006-1 Trade Cas. (CCH) P75,311                    Page 15 of 15


 About LexisNexis   Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.


https://www.lexis.com/research/retrieve?_m=abe153146b5b701f0f949e9ecaa668b1&_br...   11/21/2006
