EXHIBIT 17

77 S.Ct. 309                                                               Page 1
352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290
(Cite as: 352 U.S. 249, 77 S.Ct. 309)

Supreme Court of the United States
Honorable Walter J. LA BUY, Petitioner,
v.
HOWES LEATHER COMPANY, Inc. and
Montgomery Ward & Co., Inc.
No. 27

Argued Oct. 17 and 18, 1956.
Decided Jan. 14, 1957.

Rehearing Denied Feb. 25, 1957. See 352 U.S. 1019, 17 S.Ct. 553.

Proceeding on petitions for writs of mandamus to compel a United States District Judge to vacate orders referring antitrust cases for trial before a master. The United States Court of Appeals for the Seventh Circuit, 226 F.2d 703, entered judgment issuing writs, and certiorari was granted. The Supreme Court, Mr. Justice Clark, held that where district judge who was informed as to nature of antitrust cases, the parties and pleadings, who had heard arguments on motions to dismiss, to compel testimony on depositions and for summary judgment, referred, over objections of all parties, actions to master on general issue before either existence of alleged conspiracies or questions of liability had been determined, and he included issues of damages and propriety of injunctions in references, Court of Appeals was justified in finding orders of reference were in abuse of judge's power under rule relating to references and in issuing writs of mandamus to vacate such orders.

Affirmed.

Mr. Justice Brennan, Mr. Justice Frankfurter, Mr. Justice Burton and Mr. Justice Harlan dissented.

West Headnotes

[1] Federal Courts ⚖ 456
170Bk456 Most Cited Cases
    (Formerly 106k383(1))
Because of the importance in administration of Federal Rules of Civil Procedure of the question of the power of Courts of Appeals to issue writs of mandamus to compel a district judge to vacate orders referring antitrust cases for trial before a master and because of uncertainty on question among Courts of Appeals, the Supreme Court granted certiorari to review cases wherein a Court of Appeals had compelled by mandamus a district judge to vacate such reference orders. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.; 28 U.S.C.A. § 1651(a).

[2] Federal Courts ⚖ 526.1
170Bk526.1 Most Cited Cases
    (Formerly 170Bk526, 106k403, 106k404)
The 1948 recodification of the All Writs Act did not affect power of the Courts of Appeals to issue writs of mandamus in aid of jurisdiction. 28 U.S.C.A. § 1651(a).

[3] Federal Courts ⚖ 527
170Bk527 Most Cited Cases
    (Formerly 106k403, 106k404)
In view of fact that Court of Appeals could at some stage of antitrust proceedings entertain appeal therein, it had power, in proper circumstances, to issue writs of mandamus to compel district judge to vacate interlocutory orders referring such cases to master for trial. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.; 28 U.S.C.A. § 1651(a).

[4] Federal Civil Procedure ⚖ 1877.1
170Ak1877.1 Most Cited Cases
    (Formerly 170Ak1877)

[4] Mandamus ⚖ 53
250k53 Most Cited Cases
Where district judge who was informed as to nature of antitrust cases, the parties and pleadings, who had heard arguments on motions to dismiss, to compel testimony on depositions and for summary judgment, referred, over objections of all parties, actions to master on general issue before either existence of alleged conspiracies or questions of liability had been determined, and he included issues of damages and propriety of injunctions in references, Court of Appeals was justified in finding orders of reference were in abuse of judge's power under rule relating to references and in issuing writs of mandamus to vacate such orders. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.; 28 U.S.C.A. § 1651(a).

[5] Federal Civil Procedure ⚖ 1872
170Ak1872 Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



77 S.Ct. 309  
(Cite as: 352 U.S. 249, 77 S.Ct. 309)

Page 2

The use of masters is to aid the judge in performance of specific judicial duties as they may arise in case and not to displace the court. Fed.Rules Civ.Proc. rule 53(b) 28 U.S.C.A.

[6] Mandamus ⇐ 32  
250k32 Most Cited Cases  
Where subject concerns enforcement of rules which by law it is duty of Supreme Court to formulate and put in force, mandamus should issue to prevent such action thereunder as is so palpably improper as to place it beyond the scope of the rule invoked. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.; 28 U.S.C.A. § 1651(a).

[7] Mandamus ⇐ 24  
250k24 Most Cited Cases  
Mandamus to a district judge should be resorted to only in extreme cases, since it places judges in anomalous position of being litigants without counsel other than uncompensated volunteers. 28 U.S.C.A. § 1651(a).

[8] Federal Civil Procedure ⇐ 1875.1  
170Ak1875.1 Most Cited Cases  
    (Formerly 170Ak1875)  
Under rule providing that in actions tried without a jury, save in matters of account, a reference shall be made only upon showing of some exceptional conditions, litigants are entitled to trial by court, in every suit, save where such exceptional conditions are shown. Fed.Rules Civ Proc. rule 53(b), 28 U.S.C.A.

[9] Federal Civil Procedure ⇐ 1877.1  
170Ak1877.1 Most Cited Cases  
    (Formerly 170Ak1877)  
For purposes of rule providing that in actions tried without jury, save in matters of account, reference shall be had only upon showing of exceptional condition, that calendar was congested, that antitrust cases referred were of unusual complexity both as to issues of fact and law and that great length of time would be required for trials did not constitute "exceptional conditions" justifying reference of such cases on the general issue. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.

[10] Federal Civil Procedure ⇐ 1878  
170Ak1878 Most Cited Cases  
Issues of detailed accounting in antitrust cases might properly be referred to master after court had determined overall liability of defendants, if circumstances indicated that use of court's time would not be warranted in receiving proof and making tabulation. Fed.Rules Civ.Proc. rule 53(b), 28 U.S.C.A.

**310 *250 Mr. James A. Sprowl, Chicago, Ill., for petitioner.

Mr. Jack I. Levy, Chicago, Ill., for respondents.

Mr. Justice CLARK delivered the opinion of the Court.

[1] These two consolidated cases present a question of the power of the Courts of Appeals to issue writs of manadamus to compel a District Judge to vacate his orders entered under Rule 53(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., referring antitrust cases for trial before a master. The petitioner, a United States District Judge sitting in the Northern District of Illinois, contends that the Courts of Appeals have **311 no such power and that, even if they did, these cases were not appropriate ones for its exercise. The *251 Court of Appeals for the Seventh Circuit has decided unanimously that it has such power and, by a divided court, that the circumstances surrounding the references by the petitioner required it to issue the mandamus about which he complains. 226 F.2d 703. The importance of the question in the administration of the Federal Rules of Civil Procedure, together with the uncertainty existing on the issue among the Courts of Appeals, led to our grant of a writ of certiorari. 350 U.S. 964, 76 S.Ct. 439. We conclude that the Court of Appeals properly issued the writs of mandamus.

History of the Litigation.--These petitions for mandamus, filed in the Court of Appeals, arose from two antitrust actions instituted in the District Court in 1950. [FN1] Rohlfing [FN2] involves 87 plaintiffs, all operators of independent retail shoe repair shops. The claim of these plaintiffs against the six named defendants--manufacturers, wholesalers, and retail mail order houses and chain operators--is identical. The claim asserted in the complaint is a conspiracy between the defendants 'to monopolize and to attempt to monopolize' and fix the price of shoe repair supplies sold in interstate commerce in the Chicago area, in violation of the Sherman Act, 15 U.S.C.A. ss 1--7, 15 note. The allegations also include a price discrimination charge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



77 S.Ct. 309
(Cite as: 352 U.S. 249, *251, 77 S.Ct. 309, **311)

Page 3

under the Robinson-Patman Act, 15 U.S.C.A. ss 13, 13a, 13b, 21a. Shaffer [FN3] involves six plaintiffs, all wholesalers of shoe repair supplies, and six defendants, including manufacturers and wholesalers of such supplies *252 and a retail shoe shop chain operator. The allegations here also include charges of monopoly and price fixing under the Sherman Act and price discrimination in violation of the Robinson-Patman Act. Both complaints pray for injunctive relief, treble damages, and an accounting with respect to the discriminatory price differentials charged.

FN1. Rohlfing v. Cat's Paw Rubber Co., D.C.N.D.Ill., 17 F.R.D. 426, and Shaffer v. U.S. Rubber Co., D.C.N.D.Ill., 99 F.Supp. 886.

FN2. The figures indicated refer to the number of parties at the time of the petition for mandamus. When the action was originally filed there were 87 plaintiffs and 25 defendants.

FN3. The figures indicated refer to the number of parties at the time of the petition for mandamus. When the action was originally filed there were 10 plaintiffs and 20 defendants.

The record indicates that the cases had been burdensome to the petitioner. In Rohlfing alone, 27 pages of the record are devoted to docket entries reflecting that petitioner had conducted many hearings on preliminary pleas and motions. The original complaint had been twice amended as a result of orders of the court in regard to misjoinders and severance; 14 defendants had been dismissed with prejudice; summary judgment hearings had resulted in a refusal to enter a judgment for some of the defendants on the pleadings; over 50 depositions had been taken; and hearings to compel testimony and require the production and inspection of records were held. It appears that several of the hearings were extended and included not only oral argument but submission of briefs, and resulted in the filing of opinions and memoranda by the petitioner. It is reasonable to conclude that much time would have been saved at the trial had petitioner heard the case because of his familiarity with the litigation.

The References to the Master.--The references to the master were made under the authority of Rule 53(b) of the Federal Rules of Civil Procedure. [FN4] The cases were called on February 23, 1955, on a motion to reset them *253 for trial. **312 Rohlfing was 'No. 1 below the black line' on the trial list, which gave it a preferred setting. All parties were anxious for an early trial, but plaintiffs wished an adjournment until May. The petitioner announced that 'it has taken a long time to get this case at issue. I remember hearing more motions, I think, in this case than any case I have ever sat on in this court.' The plaintiffs estimated that the trial would take six weeks, whereupon petitioner stated he did not know when he could try the case 'if it is going to take this long.' He asked if the parties could agree 'to have a Master hear' it. The parties ignored this query and at a conference in chambers the next day petitioner entered the orders of reference sua sponte [FN5]. The orders declared that the court was "confronted with an extremely congested calendar' and that 'exception (sic) conditions exist for this reason' requiring the references. The cases were referred to the master 'to take evidence and to report the same to this Court, together with his findings of fact and conclusions of law.' It was further ordered in each case that 'the Master shall commence the trial of this cause' on a certain date and continue with diligence, and that the parties supply security for costs. *254 While the parties had deposited some $8,000 costs, the record discloses that all parties objected to the references and filed motions to vacate them. Upon petitioner's refusal to vacate the references, these mandamus actions were filed in the Court of Appeals seeking the issuance of writs ordering petitioner to do so. These applications were grounded on 28 U.S.C. s 1651(a), 28 U.S.C.A. s 1651(a), the All Writs Act. [FN6] In his answer to the show cause orders issued by the Court of Appeals, petitioner amplified the reasons for the references, stating 'that the cases were very complicated and complex, that they would take considerable time to try,' and that his 'calendar was congested.' Declaring that the references amounted to (226 F.2d 705) 'a refusal on his (petitioner's) part, as a judge, to try the causes in due course,' the Court of Appeals concluded that 'in view of the extraordinary nature of these causes' the references must be vacated 'if we find that the orders were beyond the court's power under the pertinent rule' 226 F.2d 705, 706. And, it being so found, the writs issued under the authority of the All Writs Act. It is not disputed that the same principles and considerations as to the propriety of the issuance of the writs apply equally to the two cases.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FN4. Rule 53(b) provides:

'(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it.'

FN5. The fact that the master is an active practitioner would make the comment of Chief Justice Vanderbilt with regard to the effect of references appropriate here. In his work, Cases and Materials on Modern Procedure and Judicial Administration (1952) at pages 1240--1241, he states:

'There is one special cause of delay in getting cases on for trial that must be singled out for particular condemnation, the all-too-prevalent habit of sending matters to a reference. There is no more effective way of putting a case to sleep for an indefinite period than to permit it to go to a reference with a busy lawyer as referee. Only a drastic administrative rule, rigidly enforced, strictly limiting the matters in which a reference may be had and requiring weekly reports as to the progress of each reference will put to rout this inveterate enemy of dispatch in the trial of cases.'

FN6. '(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'

[2][3] The Power of the Courts of Appeals.-- Petitioner contends that the power of the Courts of Appeals does not extend to the issuance of writs of mandamus to review interlocutory orders except in those cases where the review of **313 the case on appeal after final judgment would be frustrated. Asserting that the orders of reference were in exercise of his jurisdiction under Rule 53(b), petitioner urges that such action can be reviewed only on appeal and not by writ of mandamus, since by congressional *255 enactment appellate review of a District Court's orders may be had only after a final judgment. The question of naked power has long been settled by this Court. As late as Roche v. Evaporated Milk Association, 1943, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185, Mr. Chief Justice Stone reviewed the decisions and, in considering the power of Courts of Appeals to issue writs of mandamus, the Court held that 'the common-law writs, like equitable remedies, may be granted or withheld in the sound discretion of the court.' The recodification of the All Writs Act in 1948, which consolidated old ss 342 and 377 into the present s 1651(a), did not affect the power of the Courts of Appeals to issue writs of mandamus in aid of jurisdiction. See Bankers Life & Casualty Co. v. Holland, 1953, 346 U.S. 379, 382--383, 74 S.Ct. 145, 147--148, 98 L.Ed. 106. Since the Court of Appeals could at some stage of the antitrust proceedings entertain appeals in these cases, it has power in proper circumstances, as here, to issue writs of mandamus reaching them. Roche, supra, 319 U.S. at page 25, 63 S.Ct. at page 941, and cases there cited. This is not to say that the conclusion we reach on the facts of this case is intended, or can be used, to authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders. We pass on, then, to the only real question involved, i.e., whether the exercise of the power by the Court of Appeals was proper in the cases now before us.

[4] The Discretionary Use of the Writs.--It appears from the docket entries to which we heretofore referred that the petitioner was well informed as to the nature of the antitrust litigation, the pleadings of the parties, and the gist of the plaintiffs' claims. He was well aware of the theory of the defense and much of the proof which necessarily was outlined in the various requests for discovery, admissions, interrogatories, and depositions. He heard arguments on motions to dismiss, to compel testimony on depositions, and for summary judgment. In fact, petitioner's *256 knowledge of the cases at the time of the references, together with his long experience in the antitrust field, points to the conclusion that he could dispose of the litigation with greater dispatch and less effort than anyone else. Nevertheless, he referred both suits to a master on the general issue. Furthermore, neither the existence of the alleged conspiracy nor the question of liability vel non had been determined in either case. These issues, as well as the damages, if any, and the question concerning the issuance of an injunction, were likewise included in the references. Under all of the circumstances, we believe the Court of Appeals was justified in finding the orders of reference were an abuse of the petitioner's power under Rule 53(b). They amounted to little less than

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



77 S.Ct. 309                           Page 5
(Cite as: 352 U.S. 249, *256, 77 S.Ct. 309, **313)

an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.

[5][6] The use of masters is 'to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause,' Ex parte Peterson, 1920, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919, and not to displace the court. The exceptional circumstances here warrant the use of the extraordinary remedy of mandamus. See State of Maryland v. Soper, 1926, 270 U.S. 9, 30, 46 S.Ct. 185, 189, 70 L.Ed. 449. As this Court pointed out in Los Angeles Brush Mfg. Corp. v. James, 1927, 272 U.S. 701, 706, 47 S.Ct. 286, 288, 71 L.Ed. 481: '* * * (W)here the subject concerns the enforcement of the * * * (r)ules which by law it is the duty of this court to formulate and put in force,' mandamus should issue to prevent such **314 action thereunder so palpably improper as to place it beyond the scope of the rule invoked. As was said there at page 707 of 272 U.S., at page 289 of 47 S.Ct., were the Court '* * * to find that the rules have been practically nullified by a District Judge * * * it would not hesitate to restrain (him) * * *.' The Los Angeles Brush Mfg. Corp. case was cited as authority in 1940 for a per curiam opinion in McCullough v. Cosgrave, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992, in which the Court summarily *257 ordered vacated the reference of two patent cases to a master. The cases arose from the same District Court in which the Los Angeles Brush Mfg. Corp. case originated largely followed that for the references largely followed that case. It is to be noted that the grounds there are much more inclusive than those set out here, alleging all of those claimed by the petitioner and, in addition, the prolonged illness of the regular judge and the fact that no other judge was available to try the cases. It appears to us a fortiori that these cases were improperly referred to a master.

It is claimed that recent opinions of this Court are to the contrary. Petitioner cites Bankers Life & Casualty Co. v. Holland, 1953, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106, and Parr v. United States, 1956, 351 U.S. 513, 76 S.Ct. 912. The former case did not concern rules promulgated by this Court but, rather, an Act of Congress, the venue statute. Furthermore, there we pointed out that the '* * * All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power' * * *.' 346 U.S. at page 383, 74 S.Ct. at page 148. Certainly, as the Court of Appeals found here, there was a clear abuse of discretion. In the Parr case, the District Court had not exceeded or refused to exercise its functions. It dismissed an indictment because the Government had elected to prosecute Parr in another district under a new indictment. The effect of the holding was merely that the dismissal of the first indictment was not an abuse of the discretion vested in the trial judge.

[7][8][9][10] It is also contended that the Seventh Circuit has erroneously construed the All Writs Act as 'conferring on it a 'roving commission' to supervise interlocutory orders of the District Courts in advance of final decision.' Our examination of its opinions in this regard leads us to the conclusion that the Court of Appeals has exercised commendable self-restraint. It is true that mandamus should *258 be resorted to only in extreme cases, since it places trial judges in the anomalous position of being litigants without counsel other than uncompensated volunteers. However, there is an end of patience and it clearly appears that the Court of Appeals has for years admonished the trial judges of the Seventh Circuit that the practice of making references 'does not commend itself' and '* * * should seldom be made, and if at all only when unusual circumstances exist.' In re Irving-Austin Building Corp., 7 Cir., 1938, 100 F.2d 574, 577. Again, in 1942, it pointed out that the words 'exception' and 'exceptional' as used in the reference rule are not elastic terms with the trial court the sole judge of their elasticity. 'Litigants are entitled to a trial by the court, in every suit, save where exceptional circumstances are shown.' Adventures in Good Eating, Inc., v. Best Places to Eat, Inc., 7 Cir., 131 F.2d 809, 815. Still the Court of Appeals did not disturb the reference practice by reversal or mandamus until this case was decided in October 1955. Again, Chief Judge Duffy in Krinsley v. United Artists Corp., 7 Cir., 1956, 235 F.2d 253, 257, in which there was an affirmance of a case involving a reference, called attention to the fact that the practice of referring cases to masters was '* * * all too common in the Northern District of Illinois * * *.' The record does not show to what extent references are made by the **315 full bench of the District Court in the Northern District; however, it does reveal that petitioner has referred 11 cases to masters in the past

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works



77 S.Ct. 309
(Cite as: 352 U.S. 249, *258, 77 S.Ct. 309, **315)

6 years. But even 'a little cloud may bring a flood's downpour' if we approve the practice here indulged, particularly in the face of presently congested dockets, increased filings, and more extended trials. This is not to say that we are neither aware of nor fully appreciative of the unfortunate congestion of the court calendar in many of our District Courts. The use of procedural devices in the heavily congested districts has proven to be most helpful in reducing docket congestion. Illustrative *259 of such techniques are provision for an assignment commissioner to handle the assignment of all cases; the assignment of judges to handle only motions, pleas, and pretrial proceedings; and separate calendars for civil and criminal trials in cases that have reached issue. We enumerate these merely as an example of the progress made in judicial administration through the use of enlightened procedural techniques. It goes without saying that they can be used effectively only where adaptable to the specific problems of a district. But, be that as it may, congestion in itself is not such an exceptional circumstance as to warrant a reference to a master. If such were the test, present congestion would make references the rule rather than the exception. Petitioner realizes this, for in addition to calendar congestion he alleges that the cases referred had unusual complexity of issues of both fact and law. But most litigation in the antitrust field is complex. It does not follow that antitrust litigants are not entitled to a trial before a court. On the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis and ordinarily not experienced in judicial work. Nor does petitioner's claim of the great length of time these trials will require offer exceptional grounds. The final ground asserted by petitioner was with reference to the voluminous accounting which would be necessary in the event the plaintiffs prevailed. We agree that the detailed accounting required in order to determine the damages suffered by each plaintiff might be referred to a master after the court has determined the over-all liability of defendants, provided the circumstances indicate that the use of the court's time is not warranted in receiving the proof and making the tabulation.

We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper *260 judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here. Its judgment is therefore affirmed.

Affirmed.

Mr. Justice BRENNAN, with whom Mr. Justice FRANKFURTER, Mr. Justice BURTON and Mr. Justice HARLAN join, dissenting.

The issue here is not whether Judge La Buy's order was reviewable by the Court of Appeals. The sole question is whether review should have awaited final decision in the cause or whether the order was reviewable before final decision by way of a petition under the All Writs Act for the issuance of a writ of mandamus addressed to it. I do not agree that the writ directing Judge La Buy to vacate the order of reference was within the bounds of the discretionary power of the Court of Appeals to issue an extraordinary writ under the All Writs Act. [FN1] **316 Only last Term, in Parr v. United States, 351 U.S. 513, 76 S.Ct. 912, this Court restated those bounds:

> FN1. '(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' 28 U.S.C. s 1651(a), 28 U.S.C.A. s 1651(a).

'The power to issue them is discretionary and it is sparingly exercised. * * * This is not a case where a court has exceeded or refused to exercise its jurisdiction, see Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, nor one where appellate review will be defeated if a writ does not issue, cf. State of Maryland v. Soper, 270 U.S. 9, 29--30, 46 S.Ct. 185, 189, 70 L.Ed. 449. Here the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction. The extraordinary *261 writs do not reach to such cases; they may not be used to thwart the congressional policy against piecemeal appeals Roche v. Evaporated Milk Ass'n, supra, 319 U.S at page 30, 63 S.Ct. at page 943.' 351 U.S. at page 520, 76 S.Ct. at page 917. [FN2]

> FN2. Cf. Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106; Ex parte



77 S.Ct. 309                                                                                                                          Page 7
(Cite as: 352 U.S. 249, *261, 77 S.Ct. 309, **316)

Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041

The action of the Court of Appeals for the Seventh Circuit here under review is outside these limitations. The case before the Court of Appeals was 'not a case where a court has exceeded or refused to exercise its jurisdiction * * *.' Rule 53(b) of the Federal Rules of Civil Procedure vested Judge La Buy with discretionary power to make a reference if he found, and he did, that 'some exceptional condition' required the reference. [FN3] Here also 'the most that could be claimed is that the district (court) * * * erred in ruling on matters within (its) jurisdiction.' If Judge La Buy erred in finding that there was an 'exceptional condition' requiring the reference or did not give proper weight to the caveat of the Rule that a 'reference to a master shall be the exception and not the rule,' that was mere error 'in ruling on matters within (the District Court's) jurisdiction.' Such mere error does not bring into play the power of the Court of Appeals to issue an extraordinary writ. Nor did Judge *262 La Buy's order of reference present the Court of Appeals with a case 'where appellate review will be defeated if a writ does not issue.' The litigants may suffer added expense and possible delay in obtaining a decision as a consequence of the reference, but Roche settles that 'that inconvenience is one which we must take if Congress contemplated in providing that only final judgments should be reviewable.' [FN4]

FN3. It should be noted that the objection to references stated by Chief Justice Vanderbilt, as quoted in footnote 5 of the majority opinion, is reflected in New Jersey Revised Rules 4:54--1, which provides as follows: 'No reference for the hearing of a matter shall be made to a master, except under extraordinary circumstances, upon approval of the Chief Justice, or for the taking of a deposition, or as to matters heard by a standing master appointed by the Supreme Court.' (Emphasis added.) If the federal rule required a like consent by a chief judge, a reference without such consent would be outside the jurisdiction of the District Court, and, therefore, subject to correction by writ of mandamus. The vital distinction is that the federal rule as presently framed vests discretion in the District Courts.

FN4. 319 U.S. at page 30, 63 S.Ct. at page 943.

Cf. United States Alkali Export Ass'n v. United States, 325 U.S. 196, 202--203, 65 S.Ct. 1120, 1124--1125, 89 L.Ed. 1554.

But, regrettable as is this Court's approval of what I consider to be a clear departure by the Court of Appeals from the settled principles governing the issuance of the extraordinary writs, what this Court says in reaching its result is reason for particularly grave concern. I think this Court has today seriously undermined the long-standing statutory policy against piecemeal appeals. My brethren say: 'Since the Court of Appeals **317 could at some stage of the antitrust proceedings entertain appeals in these cases, it has power in proper circumstances, as here, to issue writs of mandamus reaching them. * * * This is not to say that the conclusion we reach on the facts of this case is intended, or can be used, to authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders.' I understand this to mean that proper circumstances are present for the issuance of a writ in this case because, if the litigants are not now heard, the Court of Appeals will not have an opportunity to relieve them of the burden of the added expense and delay of decision alleged to be the consequence of the reference. But that bridge was crossed by this Court in Roche and Alkali, where this very argument was rejected: 'Here the inconvenience to the litigants results alone from the circumstance that Congress has provided for review of the district court's order only on review of *263 the final judgment, and not from an abuse of judicial power, or refusal to exercise it, which it is the function of mandamus to correct.' 319 U.S. at page 31, 63 S.Ct. at page 944.

What this Court is saying, therefore, is that the All Writs Act confers an independent appellate power in the Courts of Appeals to review interlocutory orders. I have always understood the law to be precisely to the contrary. The power granted to the Courts of Appeals by the All Writs Act is not an appellate power but merely an auxiliary power in aid of and to protect the appellate jurisdiction conferred by other provisions of law, e.g., the power to review final decisions granted by 28 U.S.C. s 1291, 28 U.S.C.A. s 1291, [FN5] and to review specified exceptional classes of interlocutory orders granted by 28 U.S.C. s 1292, 28 U.S.C.A. s 1292. [FN6] This holding that an independent appellate power is given by the All Writs Act not only discards the constraints upon the scope of the power to issue

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works



extraordinary writs restated in Parr, but, by the very fact of doing so, opens wide the crack in the door which, since the Judiciary Act of 1789, has shut out from intermediate appellate review all interlocutory actions of the District Courts not within the few exceptional classes now specified by the Congress in s 1292.

> FN5. 'The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, * * * except where a direct review may be had in the Supreme Court.' 28 U.S.C. s 1291, 28 U.S.C.A. s 1291.

> FN6. Section 1292, in substance, confers upon the Courts of Appeals jurisdiction of appeals from interlocutory orders of the District Courts relating to injunctions, receivership, and certain admiralty and patent infringement cases.

The power of the Courts of Appeals to issue extraordinary writs stems from s 14 of the Judiciary Act of 1789. [FN7] Chief Judge Magruder, in In re Josephson, 1 Cir., 218 F.2d 174, provides us with an invaluable history of this power and *264 of the judicial development of its scope. He demonstrates most persuasively tht '(t)he all writs section does not confer an independent appellate power; the power is strictly of an auxiliary nature, in aid of a jurisdiction granted in some other provision of law, as was sharply pointed out in Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 29--31, 63 S.Ct. 938 (943--944). * * *' 218 F.2d at page 180.

> FN7. 1 Stat. 81, substantially re-enacted in s 262 of the Judicial Code of 1911, 36 Stat. 1162.

The focal question posed for a Court of Appeals by a petition for the issuance of a writ is whether the action of the District Court tends to frustrate or impede the ultimate exercise by the Court of Appeals of its appellate jurisdiction granted in some other provision of the law. The answer is clearly in the affirmative where, for example, the order of the District Court transfers a cause to a District Court of another circuit **318 for decision. That was Josephson, where the Court of Appeals for the First Circuit held that an order of a District Court in the circuit transferring a case to the District Court of another circuit was within the reach of the Court of Appeals' power under the All Writs Act because 'the effect of the order is that the district judge has declined to proceed with the determination of a case which could eventually come to this court by appeal from a 'final decision'.' [FN8] 218 F.2d at page 181. In contrast, a District Court order denying a transfer would not come under the umbrella of power under the All Writs Act, since retention of the cause by the District Court can hardly thwart or tend to defeat the power of the Court of Appeals to review that order after final decision of the case. The distinction between the grant and denial of transfer was recognized in Carr v. Donohoe, 201 F.2d 426, where the Court of Appeals for the Eighth Circuit denied a petition for writ of mandamus directed to an order of a District Court transferring the *265 cause to another District Court within the same circuit. The Court of Appeals properly noted that the order was merely a nonappealable interlocutory order in nowise impairing its actual or potential jurisdiction to review that and any other action after final decision, observing: 'It seems obvious that the transfer of the * * * action * * * to (another district in the same circuit) cannot in any way impair or defeat the jurisdiction of this Court to review any appealable order or judgment which eventually may be entered in the case.' [FN9] 201 F.2d at pages 428--429.

> FN8. Accord, Wiren v. Laws, 90 U.S.App.D.C. 105, 194 F.2d 873; Gulf Research & Development Co. v. Harrison, 9 Cir., 185 F.2d 457.

> FN9. In the Josephson case, Chief Judge Magruder said much the same thing:
> 'If the district judge had held on to the case, i.e., had denied the motion for transfer, such action would have preserved, not frustrated, any potential appellate jurisdiction which we might have had; and we are at a loss to understand how we could properly review on mandamus an order denying a transfer, on the pretense that such a review would be in 'aid' of our appellate jurisdiction.' 218 F.2d at page 181.

This Court's reliance upon Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481, and McCullough v. Cosgrave, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992, is, in my opinion, misplaced. Those cases involved the power, not of the Courts of Appeals, but of this Court, to issue extraordinary writs. In Josephson, Chief Judge Magruder took pains to emphasize the 'caution that decisions of the Supreme Court of the United States,



at least prior to 1948, supporting the issuance, by that Court, of a writ of mandamus directed to a lower federal court, may not safely be relied upon by an intermediate court of appeals as authority for the issuance by the latter court of a writ of mandamus directed to a district court within the circuit. The reason is that the Supreme Court might have been exercising a different sort of power from the strictly auxiliary power given to us under the all writs section.' 218 F.2d at page 179. This 'different sort of power' derived from s 13 of the Judiciary *266 Act of 1789, granting the Supreme Court power to issue writs of mandamus 'in cases warranted by the principles and usages of law. [FN10] This provision, unlike the All Writs Act, was not restricted in its use to aiding the jurisdiction of the appellate court, and therefore might be deemed to have granted a broader power to this Court than that conferred on the Courts of Appeals by the latter statute.

   FN10. 1 Stat. 80, 81, substantially re-enacted in s 234 of the Judicial Code of 1911, 36 Stat. 1156.

Furthermore, Los Angeles Brush Mfg. Corp. was a case where a reference was made, not because a district judge decided that the particular circumstances of the particular case required a reference, **319 but pursuant to an agreement among all the judges of that District Court always to appoint masters to hear patent cases regardless of the circumstances of particular cases. The McCullough situation was much the same. As that case was delimited in Roche, this Court was there confronted by a case of 'the persistent disregard of the Rules of Civil Procedure * * * prescribed by this court.' 319 U.S. at page 31, 63 S.Ct. at page 944.

The key to both Los Angeles Brush Mfg. Corp. and McCullough is found in the language in the former in 272 U.S. 706, 47 S.Ct. 288:
'* * * we think it clear that, where the subject concerns the enforcement of the equity rules which by law it is the duty of this court to formulate and put in force, and in a case in which this court has the ultimate discretion to review the case on its merits, it may use its power of mandamus and deal directly with the District Court in requiring it to conform to them.' (Emphasis added.)

In other words, neither of those cases can be accepted as supporting what the Court of Appeals undertook to do here, both because of the absence in old s 234 of the 'in aid of' jurisdiction limitation now contained in s 1651, *267 and of anything approaching a wholesale disregard of the rules prescribed by this Court, such as was involved there. I subscribe fully to Chief Judge Magruder's conclusion in Josephson:
'Contrary to the view which seems to have been occasionally taken, or at least sub silentio assumed, in other courts of appeals, we do not think that 28 U.S.C. s 1651 (28 U.S.C.A. s 1651) (the All Writs Act) grants us a general roving commission to supervise the administration of justice in the federal district courts within our circuit, and in particular to review by a writ of mandamus any unappealable order which we believe should be immediately reviewable in the interest of justice.' 218 F.2d at page 177.

The view now taken by this Court that the All Writs Act confers an independent appellate power, although not so broad as 'to authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders,' in effect engrafts upon federal appellate procedure a standard of interlocutory review never embraced by the Congress throughout our history, although it is written into the English Judicature Act [FN11] and is followed in varying degrees in some of the States. [FN12] That standard allows interlocutory appeals by leave of the appellate court. It is a compromise between conflicting viewpoints as to the extent that interlocutory appeals should be allowed. [FN13] The federal policy of limited interlocutory *268 review stresses the inconvenience and expense of piecemeal reviews and the strong public interest in favor of a single and complete trial with a single and complete review. The other view, of which the New York practice of allowing interlocutory review as of right from most orders is the extreme example, perceives danger of possible injustice in individual cases from the denial of any appellate review until after judgment at the trial. [FN14]

   FN11. Judicature Act, 1925, 15 & 16 Geo. 5, c. 49, s 31(1)(i).

   FN12. E.g. Miss.Code Ann., 1942, s 1148; N.J Rev Rules 2:2--3.

   FN13. See e.g., the discussion by Mr. Justice Jacobs in Appeal of Pennsylvania R. Co., 20 N.J. 398, 120

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



77 S.Ct. 309
(Cite as: 352 U.S. 249, *268, 77 S.Ct. 309, **319)

Page 10

A.2d 94; Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. 539; Note, 50 Col.L.Rev 1102; Note, 58 Yale L.J. 1186; Report, Special Meeting of Judicial Conference of the United States, p. 7 (March 20--21, 1952); Report, Regular Annual Meeting of Judicial Conference of the United States, p. 27 (1953).

FN14. N.Y Civ.Prac.Act, s 609.

**320 The polestar of federal appellate procedure has always been 'finality,' meaning that appellate review of most interlocutory actions must await final determination of the cause at the trial level. 'Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all.' Cobbledick v. United States, 309 U.S. 323, 324-- 325, 60 S.Ct. 540, 541, 84 L.Ed. 783. The Court's action today shatters that statutory policy. I protest, not only because we invade a domain reserved by the Constitution exclusively to the Congress, [FN15] but as well because the encouragement to interlocutory appeals offered by this decision must necessarily aggravate further the already bad condition of calendar congestion in some of our District Courts and also add to the burden of work of some of our busiest Courts of Appeals. More petitions for interlocutory review, requiring the attention of the Courts of Appeals, add, of course, to the burden of work of those courts. Meanwhile final decision of the cases concerned is delayed while the District Courts mark time awaiting action upon the petitioners. Rarely does determination upon interlocutory review terminate the litigation. Moreover, the District Court calendars become longer with the addition of new cases before older ones *269 are decided. This, then, interposes one more obstacle to the strong effort being made to better justice through improved judicial administration. [FN16]

FN15. U.S.Const., Art. III, s 1

FN16. The seriousness of the problem of calendar congestion in both federal and state courts prompted the Attorney General of the United States, in May 1956, to call a conference on court congestion and delay. This conference resulted in the appointment of a distinguished committee to formulate a frontal attack upon the problem. Rogers, Towards Eliminating Delayed Justice, and address prepared for delivery before the Mid-Atlantic Regional Meeting of the American Bar Association, October 11, 1956.

The power of the Court of Appeals to correct any error in Judge La Buy's reference is found exclusively in the power to review final decisions under s 1291. The Court of Appeals erred by assuming a nonexistent power under the All Writs Act to review this interlocutory order in advance of final decision. Insofar as the Court approves this error, I must respectfully dissent.

352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw