# EXHIBIT 26

977 F.2d 690 Page 1
977 F.2d 690, 24 Fed.R.Serv.3d 28
**(Cite as: 977 F.2d 690)**

▷

United States Court of Appeals,
First Circuit.
Alfred STAUBLE, Individually and f/u/b Warrob,
Inc., Plaintiff, Appellee,
v.
WARROB, INC., et al., Defendants, Appellants.
Alfred STAUBLE, Individually and f/u/b
Montechusetts Leasing Corp., Plaintiff,
Appellee,
v.
MONTECHUSETTS LEASING CORP., et al.,
Defendants, Appellants.
Nos. 92-1102, 92-1103.

Heard July 28, 1992.
Decided Oct. 13, 1992.

Appeal was taken from order of the United States District Court for the District of Massachusetts, A. David Mazzone, J., confirming special master's findings and recommendations and entering judgment in favor of shareholder in action against other shareholders and directors. The Court of Appeals, Selya, Circuit Judge, held that: (1) referring fundamental issues of liability to special master for adjudication, over objection, is impermissible, and (2) improper reference of liability issues to special master required remand to district court for new trial.

Reversed and remanded.

West Headnotes

[1] Federal Civil Procedure ⊙⇒ 1875.1
170Ak1875.1 Most Cited Cases
   (Formerly 170Ak1875)
Referring fundamental issues of liability to special master for adjudication, over objection, is impermissible. U.S.C.A. Const. Art. 3, § 1 et seq.; Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

[2] Mandamus ⊙⇒ 178
250k178 Most Cited Cases
Court of Appeals' denial of petition for writ of mandamus challenging district court's referral of case to master did not have preclusive effect on subsequent appeal in which reference issue was raised, where panel that considered petition did not decide whether order of reference was erroneous, but simply declined to issue writ on record before it. Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

[3] Mandamus ⊙⇒ 4(1)
250k4(1) Most Cited Cases
Mandamus is not substitute for direct appeal.

[4] Mandamus ⊙⇒ 1
250k1 Most Cited Cases
Unlike appeal, which almost always lies as matter of right, mandamus is extraordinary remedy.

[5] Mandamus ⊙⇒ 4(4)
250k4(4) Most Cited Cases
Mandamus is generally inappropriate when petitioner has adequate remedy by direct appeal following entry of final judgment.

[6] Mandamus ⊙⇒ 178
250k178 Most Cited Cases
Generally, denial of petition for mandamus is not ordinarily entitled to any preclusive effect when unsuccessful petitioner later prosecutes his or her direct appeal.

[7] Federal Civil Procedure ⊙⇒ 1875.1
170Ak1875.1 Most Cited Cases
   (Formerly 170Ak1875)
When issues referred to master go beyond hard-to-measure damages or accounting, only "exceptional condition" can justify reference. Fed.Rules Civ.Proc.Rule 53(b), 28 U.S.C.A.

[8] Federal Civil Procedure ⊙⇒ 1875.1
170Ak1875.1 Most Cited Cases
   (Formerly 170Ak1875)
In respect to preparatory issues, or consummatory, remedy-related issues, when reference otherwise comports with reference rule, master may be appointed to make findings of fact and recommend conclusions of law. U.S.C.A. Const. Art. 3, § 1 et seq.; Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

[9] Federal Courts ⊙⇒ 893
170Bk893 Most Cited Cases
District court's summary confirmation of master's final report did not render harmless improper reference of liability issues to master; district court adopted master's report without a hearing, without any stated analysis of the evidence, and without any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690  
(Cite as: 977 F.2d 690)

Page 2

discussions of master's legal conclusions. U.S.C.A. Const. Art. 3, § 1 et seq.; Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

[10] Federal Civil Procedure ⇐ 1900  
170Ak1900 Most Cited Cases  
Master's legal conclusions, unlike his or her findings of fact, must be reviewed de novo. Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

[11] Federal Courts ⇐ 893  
170Bk893 Most Cited Cases  
Improper reference of liability issues to special master required remand to district court for new trial, rather than review of issues on appeal, where record was voluminous, factual issues were tangled, and legal issues were  
largely fact bound. U.S.C.A. Const. Art. 3, § 1 et seq.; Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.

*691 Robert S. Potters, with whom Potters & Brown was on brief, for defendants, appellants.

Peter S. Terris, with whom Harvey Nosowitz and Palmer & Dodge were on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and ZOBEL, [FN*] District Judge.

   FN* Of the District of Massachusetts, sitting by designation.

SELYA, Circuit Judge.

[1] This appeal requires us to delineate for the first time the outer boundaries of a district judge's power to refer liability determinations to a special master. After assessing the constraints that Article III of the Constitution imposes on Fed.R.Civ.P. 53, we conclude that referring fundamental issues of liability to a master for adjudication, over objection, is impermissible. Accordingly, we vacate the judgment below.

I. THE SETTING

Plaintiff-appellee Alfred Stauble is a shareholder and director of two closely held corporations, Warrob, Inc. and Montechusetts Leasing Corp. The saga of Stauble's shareholder suits is scarcely a short story. [FN1] Our burden of exegesis is reduced, *692 however, because our focus is less on the vicious infighting and Byzantine business practices that plagued the parties' dealings *inter sese* than on the procedural path traversed below.

   FN1. Although Stauble brought two suits, the cases were consolidated below. Hence, we treat them as if they comprised a single civil action.

In 1978, after Stauble's relationship with a fellow shareholder and several other directors first soured, then curdled, he brought suit in his own right and on behalf of the two corporations, alleging a host of misdeeds (including, but by no means limited to, breach of fiduciary duty, diversion of corporate assets, and misappropriation of corporate opportunities). The defendants included the shareholder with whom Stauble had feuded (Warren Katz); five corporate directors (Richard King, Robert Gottsegen, Larry Gottsegen, Stuart Gottsegen, and Lawrence Wald); and four corporations (Amarin Plastics, Inc., R.L.S.L. Corp., Montechusetts Chem. Corp., and Montechusetts Chem. DISC, Inc.). Neither side requested a jury trial.

A magistrate policed discovery at the outset of the litigation. After witnessing two years of acrimonious bickering, the district court, on its own initiative, referred the case to a special master to manage pretrial discovery. [FN2] None of the parties objected to this reference. The discovery period extended over several years. When discovery was finally closed, the district court adopted the master's report in toto.

   FN2. The district court selected as special master the Honorable Walter H. McLaughlin, Sr., a retired chief judge of the Massachusetts Superior Court. Judge McLaughlin's credentials are conceded by all concerned.

In mid-1986, the case was trial-ready. Acting *sua sponte*, the district court referred the case to the same special master for trial on the merits. The defendants immediately objected to the reference. Their objection was overruled and their motion to vacate the order of reference was denied. They then sought relief by way of mandamus. Concerned that the record was incomplete, we issued an order directing the court below to provide additional information as to why it thought the reference was desirable. The district court obliged.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690
(Cite as: 977 F.2d 690, *692)

It noted, among other things, that the record was voluminous, the defendants numerous, and the issues complex; that the master's wealth of experience, gained while overseeing discovery, augured an economy and efficiency that the court could not aspire to match; that the history of the litigation foretold a lengthy and disputatious trial, occurring at a time when the court's docket was burgeoning; that damages were difficult to compute and would involve a full-scale accounting; and that the imbrication between the facts and the law, and between liability and damages, made it impractical to bifurcate the trial and militated in favor of a single trier. After considering the district court's detailed response, we declined to issue an extraordinary writ.

Trial began before the master on January 12, 1988. Because Stauble's claims turned in good measure on the defendants' knowledge and intent, witness credibility comprised an important aspect of the trial. After approximately thirty-five trial days and the submission of over four hundred exhibits, the master resolved the credibility questions, found against the defendants, and recommended that a judgment be entered in the amount of $756,206.41. The master's final report was submitted on January 8, 1990, a year and a half after completion of the trial.

Almost nine months later, the district court confirmed the report, accepting the master's findings and recommendations in their entirety. Thereafter, the court entered final judgment and awarded fees in excess of $900,000 to Stauble's attorneys, plus costs of roughly $60,000. King and Amarin Plastics have made their peace with Stauble. The other defendants appeal. [FN3]

> FN3. The two appeals parallel the two underlying lawsuits. See supra note 1. Although the appeals focus primarily on the propriety of the district court's reference of the liability determination to a master, the defendants assign error in other respects as well. Inasmuch as we remand for a new trial before the district court, see infra, we do not pass upon the additional assignments of error.

*693 II. STANDARD OF REVIEW

We believe that the fundamental issue before us--delineating the purview of the district court's power to refer cases to masters--presents a pure question of law. It is, therefore, appropriate that we review the exercise of that power de novo. See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 457-58 (1st Cir.1992) (confirming that, where the question on appeal is whether the district committed an error of law, appellate review is plenary); Brewer v. Madigan, 945 F.2d 449, 452 (1st Cir.1991) (same); New England Legal Found. v. Massachusetts Port Auth., 883 F.2d 157, 167 (1st Cir.1989) (same).

[2][3][4][5] The standard of review is not altered by reason of our earlier denial of appellants' petition for writ of mandamus. It is, after all, black letter law that mandamus is not a substitute for direct appeal. See In re Recticel Foam Corp., 859 F.2d 1000, 1005 (1st Cir.1988); United States v. Kane, 646 F.2d 4, 9 (1st Cir.1981). Unlike an appeal, which almost always lies as a matter of right, mandamus is an extraordinary remedy. See Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980) (per curiam). The writ's "currency is not profligately to be spent." Boreri v. Fiat S.P.A., 763 F.2d 17, 26 (1st Cir.1985). To ensure that the remedy is used judiciously, courts have usually required that a mandamus petitioner who seeks to vacate an interlocutory order "demonstrate that something about the order, or its circumstances, would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk." Recticel, 859 F.2d at 1005-06. Put another way, mandamus is generally inappropriate when the petitioner has an adequate remedy by a direct appeal following the entry of final judgment. See In re Bushkin Assocs., Inc., 864 F.2d 241, 243 (1st Cir.1989); United States v. Sorren, 605 F.2d 1211, 1215 (1st Cir.1979).

[6] Because of the special standards affecting review by way of mandamus, the general rule is that the denial of a petition for mandamus is not ordinarily entitled to any preclusive effect when the unsuccessful petitioner later prosecutes his direct appeal. See, e.g., United States v. Shirley, 884 F.2d 1130, 1135 (9th Cir.1989); Key v. Wise, 629 F.2d 1049, 1054-55 (5th Cir.1980), cert. denied, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981). While a different rule might obtain in a case where the denial of mandamus specifically addressed, and rested on, the merits of the decision below, see, e.g., Skil Corp. v. Millers Falls Co.,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690
(Cite as: 977 F.2d 690, *693)

Page 4

541 F.2d 554, 558 (6th Cir.), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976), this is not such a case. The panel that considered the petition did not venture to decide whether the order of reference was erroneous. Rather, the panel simply declined to issue the writ on the record before it. Moreover, there was ample reason, unrelated to the merits, for going that route, since the order of reference, even if improvident, presented no danger of irreparable harm. [FN4] Compare, e.g., Bushkin, 864 F.2d at 243-44 (holding that an order disqualifying a party's preferred trial counsel can effectively be reviewed following the entry of final judgment and, therefore, does not justify review by way of mandamus). It follows that our earlier ruling is not entitled to any deferential weight today.

> FN4. To be sure, appellants were forced to undergo a trial before they could test the validity of the order of reference on direct appeal. But, we have consistently "rejected the general burdensomeness of litigation as a basis for assuming mandamus jurisdiction." In re Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 20 (1st Cir.1982); see also Bushkin, 864 F.2d at 244 & n. 1.

III. DISCUSSION

A.

While it is axiomatic that the "judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III," Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982) (plurality op.), federal judges handling civil calendars have long relied on assistants, such as magistrates *694 and special masters, who do not possess the distinct attributes of Article III status. [FN5] This reliance has grown in direct proportion to the length of the federal court docket. Although these assistants do not satisfy the criteria set by Article III for the exercise of judicial power, they may appropriately perform a wide variety of preparatory functions, e.g., overseeing discovery and spearheading pretrial factual inquiries in complicated controversies. They may also appropriately perform a variety of consummatory functions, e.g., superintending the execution of consent decrees and the implementation of structural injunctions.

> FN5. While Article III courts also review determinations of adjudicators who do not possess Article III stature, the Supreme Court has long recognized distinctions between judicial assistants (such as masters) and, for example, administrative courts. See generally Northern Pipeline, 458 U.S. at 50, 102 S.Ct. at 2858; Crowell v. Benson, 285 U.S. 22, 54-64, 52 S.Ct. 285, 293-98, 76 L.Ed. 598 (1932). Our analysis today deals exclusively with the former category, that is, those who assist judges in "the performance of specific judicial duties, as they may arise in the progress of a cause." Ex Parte Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920).

The realm of Fed.R.Civ.P. 53 includes, but extends somewhat beyond, these tasks. The rule empowers the district court to appoint special masters for more than these limited purposes, Fed.R.Civ.P. 53(a), but cautions that:
A reference to a master shall be the exception and not the rule.... [I]n actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.
Fed.R.Civ.P. 53(b). Although the parties to a civil case may consent to the appointment of a master under any circumstances, see Peretz v. United States, 501 U.S. 923, ----, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991) ("litigants may waive their personal right to have an Article III judge preside over a civil trial"); Goldstein v. Kelleher, 728 F.2d 32, 35 (1st Cir.) (same), cert. denied, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984), Rule 53 anticipates, and practice bears out, that in respect to the conduct of trials proper, masters are most helpful where complex quantitative issues bearing on damages must be resolved. Indeed, the district court may appoint a master to determine "matters of account, and of difficult computation of damages," Fed.R.Civ.P. 53(b), even over the objection of one or more of the parties, without providing a further rationale for the appointment.

[7] When the issues referred to a master go beyond hard-to-measure damages or an accounting, however, the waters grow more turbid. In that event, only an "exceptional condition" can justify a reference. Id. The Supreme Court shed some light on the meaning of the term in La Buy v. Howes



977 F.2d 690                                                                                         Page   5
(Cite as: 977 F.2d 690, *694)

Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). There, the trial court referred a complex antitrust case to a master, over objection, because the court's docket was "extremely congested" and the trial promised to be protracted. Id. at 253, 77 S.Ct. at 312. The Supreme Court vacated the reference, holding that neither a crowded calendar nor the presence of complicated issues warranted appointment of a master. Id. at 259, 77 S.Ct. at 315. The Court noted that litigants in complex cases are no less entitled to trial before a court than their counterparts in more mundane disputes. Id. What is more, if congestion or complexity were sufficient to meet the "exceptional condition" criterion established by Rule 53, the exception would jeopardize the rule. Id. The wisdom of La Buy is evident: crowded dockets and complex business disputes such as the one we confront today are dismayingly commonplace; thus, predicating access to auxiliary adjudicators on the incidence of such circumstances would likely trivialize Article III.

B.

In this case, Stauble urges that more than mere complexity (if an oxymoron can be forgiven) is involved. He asserts that the interweaving of liability and damages constitutes the requisite "exceptional condition." As a practical matter, Stauble's position has some superficial appeal. On closer scrutiny, however, the perceived imbrication *695 seems to be the same old whine in a different bottle. Saying that liability and damages are inextricably intertwined is just an alliterative way of saying that a given case suffers from a particular strain of complexity.

We need not probe this point too deeply for, in the last analysis, we cannot constitutionally forge an "exceptional condition" test for cases of blended liability and damages. The overriding consideration, applicable in this case, is that the Constitution prohibits us from allowing the nonconsensual reference of a fundamental issue of liability to an adjudicator who does not possess the attributes that Article III demands. Because Rule 53 cannot retreat from what Article III requires, a master cannot supplant the district judge. Accord In re Bituminous Coal Operators' Ass'n, Inc., 949 F.2d 1165, 1168 (D.C.Cir 1991). Determining bottom-line legal questions is the responsibility of the court itself. See Reilly v. United States, 863

F.2d 149, 158 (1st Cir.1988); Reed v. Cleveland Bd. of Educ., 607 F.2d 737, 747-48 (6th Cir.1979); see also Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814, 818 (2d Cir.1986) (that judge did not "understand anything about ... patent or trademark" law and was "not about to educate [him]self" was not sufficient reason to justify appointment of a master to hear and determine the entire case). Thus, Article III bars a district court, "of its own motion, or upon the request of one party," from "abdicat[ing] its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers." Kimberly v. Arms, 129 U.S. 512, 524, 9 S.Ct. 355, 359, 32 L.Ed. 764 (1889).

[8] To be sure, Article III does not require that a district judge find *every* fact and determine *every* issue of law involved in a case. In respect to preparatory issues (such as, say, the appropriateness of class certification) or consummatory, remedy-related issues (such as, say, the performance of an accounting), when the reference otherwise comports with Rule 53 a master may be appointed to make findings of fact and recommend conclusions of law. By the same token, a master who is appointed to oversee pretrial discovery will often investigate the parties' compliance with the relevant Federal Rules as part of his or her factfinding. As long as the district court discerns sufficient supporting evidence and is satisfied that the master applied the correct legal standards, it may rely on the master's report as part of its own determination of liability. See, e.g., Crowell v. Benson, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932); In re Armco, Inc., 770 F.2d 103, 105 (8th Cir.1985) (holding that the district court could properly delegate broad pretrial authority, including responsibility for conducting evidentiary hearings, to a master); [FN6] see also In re Bituminous, 949 F.2d at 1169 (stating that a trial court's use of a special master is acceptable at the remedy-implementation stage of ongoing litigation).

FN6. Inexplicably, the *Armco* court indicated that it would have approved the determination of *dispositive* pretrial motions by the master. In re Armco, 770 F.2d at 105 (dictum). The Sixth Circuit was "unable to follow the [*Armco*] court's reasoning" on this point. In re United States, 816 F.2d 1083, 1091 (6th Cir 1987). We, too, are baffled.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690
(Cite as: 977 F.2d 690, *695)

Page 6

Yet, there is an important distinction between such collateral issues, on the one hand, and fundamental determinations of liability, on the other hand. The former comprise table setting and table clearing, while the latter comprise the meal itself. As the Court has observed, where a district judge does not hear and determine the main course, i.e., the meat-and-potatoes issues of liability, there is an "abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." *La Buy,* 352 U.S. at 256, 77 S.Ct. at 313. Because determining a fundamental question of liability goes beyond mere assistance and reaches the essential judicial function identified by Article III, Rule 53 does not allow the responsibility for making such judgments to be delegated to masters (or other persons not of Article III stature) in the face of a contemporaneous objection. [FN7]

> FN7. We think it is instructive that in drafting the Federal Magistrates Act of 1979, codified as amended at 28 U.S.C. §§ 631-639 (1988), Congress was careful to avoid granting magistrates the power to rule on dispositive motions or determine liability without the parties' consent. Magistrates may proffer recommendations on such matters, but, if any party objects, the district court must make a *de novo* determination, which may include recalling witnesses where credibility is critical to the inquiry. *See* 28 U.S.C. § 636(b)(1)(B). We have previously warned that if a magistrate's authority was not so limited, "we would find this ... troubling indeed." *Goldstein,* 728 F.2d at 35.

*696 C.

In plotting the intersection where Article III and Rule 53 cross, we do not write on a pristine page. The four circuit courts that have confronted this issue in the post-*Northern Pipeline* era have refused to allow references of liability to masters over timely objection. [FN8] *See In re Bituminous,* 949 F.2d at 1169 (holding that, under Article III and Rule 53, the district judge must decide "dispositive issues of fact and law"); *Burlington N. R.R. v. Department of Revenue,* 934 F.2d 1064, 1073 (9th Cir.1991) (ruling that the district court's reference of the issue of liability to a master violated Rule 53, and its subsequent failure independently to determine liability violated Article III); *In re United States,* 816 F.2d 1083, 1092 (6th Cir.1987) (holding that the reference of dispositive motions to a master violated the litigants' "right to have the basic issues heard by the district judge"); *In re Armco,* 770 F.2d at 105 (concluding that, under Rule 53, the "district court erred in granting the master authority to preside at trial on the merits of this case"). *But see Loral Corp. v. McDonnell Douglas Corp.,* 558 F.2d 1130 (2d Cir.1977) (upholding over objection, in pre-*Northern Pipeline* era, district court's reference of liability issues to a master on the ground that the importance of classified materials to the litigation constituted an exceptional condition).

> FN8. Some circuits have not decided the issue directly, but have authored dicta supportive of one position or the other. *Compare, e.g., Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 712-13 (7th Cir.) (if objection had been preserved, the court "might well [have] reverse[d]" reference of summary judgment proceedings to a master), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984) *with, e.g., Sims Consol., Ltd. v. Irrigation Power Equip., Inc.,* 518 F.2d 413, 417 (10th Cir.) (suggesting that it would have been proper to refer the case to a master for trial because of the great distance the witnesses had travelled), *cert. denied,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975). We note that *Sims,* unlike *Jack Walters,* was decided before the Supreme Court handed down *Northern Pipeline.*

Here, the district court, understandably frustrated with the snail's pace of the litigation, referred the entire case to a special master for findings of fact and conclusions of law, with no boundaries on the master's authority and no provision for anything remotely resembling *de novo* review. The court lacked the authority to handle the case in this fashion. Nonconsensual reference of fundamental issues of liability to a master for adjudication is not consonant with either Rule 53 or Article III.

D.

[9] Nor does the district court's summary confirmation of the master's final report rend harmless the overly ambitious reference. The court's entire rescript consumed less than two pages and stated that the judge's review "was made in the light of the strong presumption of validity" that he accorded to the master's findings and conclusions. We have regularly held that the mere "laying on of hands" by a district judge who adopts a magistrate's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690
(Cite as: 977 F.2d 690, *696)

Page 7

or master's recommendation of liability *pro forma* cannot inoculate a proceeding against the pathology that invariably follows from noncompliance with Article III. *See Reed v. Board of Election Comm'rs,* 459 F.2d 121, 123 (1st Cir.1972); *Rainha v. Cassidy,* 454 F.2d 207, 208 (1st Cir.1972); *see also Burlington N. R.R.,* 934 F.2d at 1074 (ruling that the district court violated Article III where its review "provided no substantive explanation for affirming" the master's findings). In the circumstances of this case, the judicial determination of liability was not sufficiently independent to save the day.

[10] Like the bark of a dog to Sherlock Holmes, *see* Arthur Conan Doyle, Silver Blaze, in *The Complete Original Illustrated *697 Sherlock Holmes* 117 (1976), the indicia of independent review are telling in this case by their absence. The district court adopted the master's report without a hearing, without any stated analysis of the evidence, and without any discussion of the master's legal conclusions. A master's legal conclusions, unlike his or her findings of fact, must be reviewed *de novo*. *See Polin v. Dun & Bradstreet, Inc.,* 634 F.2d 1319, 1321 (10th Cir.1980) (describing district court scrutiny of master's legal conclusions as "essential"); *D.M.W. Contracting Co. v. Stolz,* 158 F.2d 405, 407 (D.C.Cir.1946) (similar), *cert. denied,* 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947). Moreover, the controversy between Stauble and the defendants turned almost entirely on credibility--and the district court heard no witnesses. If a transcript of the hearings before the master exists--a point which is not clear from the record--there is no sign that the district court read it. [FN9] Finally, although the defendants objected in considerable detail to the master's report, the district court did not comment in any particularized way on their objections. Mindful of how the matter was handled below, we reluctantly conclude that the district judge's contribution to the adjudication of Stauble's claims was not sufficiently participatory to cure the constitutional infirmity.

FN9. The record on appeal contains no transcript of the trial before the master. The district court docket does not show that a transcript was filed (or even prepared). The district judge's rescript does not mention a transcript. In what seems a contrary vein, the rescript recites that the court reviewed "the Special Master's Final Report and defendants' objections thereto," along with "the plaintiff's application for adoption of the Final Report, supporting memorandum and appendices, and, finally, the defendants' opposition."

IV. THE REMEDY

[11] This litigation recently mourned its fourteenth anniversary. It has already consumed inordinate time and resources. [FN10] At this point, the principal beneficiaries are the litigators, not the litigants: the award of attorneys' fees already dwarfs the award of damages.

FN10. The history of these lawsuits bears out the Court's warning that indiscriminate references of cases to masters may actually increase, rather than shorten, the amount of time necessary to bring litigation to fruition. *See La Buy,* 352 U.S. at 253 n. 5, 77 S.Ct. at 312 n.5. Although this case was trial-ready in mid-1986, final judgment was not entered below until December 19, 1991. Of the intervening five and one-half years, roughly eighteen months was spent fighting over whether the case should be referred to a master; a period of approximately eight months was needed to produce thirty-five trial days; a year and one-half elapsed from the trial's end to the rendition of the master's report; another eight months went by before the district court acted on the defendants' objections to the report; and over a year passed before the court disposed of the prevailing party's claims for attorneys' fees and costs and entered final judgment.

Against this lugubrious backdrop, the appellee argues that, even if the lower court lapsed into error, we ought not to perpetuate the litigation, but should decide it here and now. In support of this proposition, he cites *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.,* 131 F.2d 809 (7th Cir.1942). [FN11] There, the Seventh Circuit was "unable to find any exceptional conditions such as the rule ... contemplates" and held that the district court erred in referring the entire case to a master. *Id.* at 814. The court of appeals nevertheless reviewed the record and upheld the master's conclusion, finding it to be "one which was well nigh inescapable." *Id.*

FN11. Stauble also relies on *Johnson Fare Box Co. v. National Rejectors, Inc.,* 269 F.2d 348 (8th Cir.1959) for the same proposition. Such reliance is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



977 F.2d 690                                                                     Page 8
(Cite as: 977 F.2d 690, *697)

mislaid. In *Johnson*, the court held that the reference to a master for trial was not justified and punished the defendants (who had sought the reference in the first place) by taxing an extra share of the costs against them. *Id.* at 351. *Johnson's* approach is not helpful where, as here, neither party requested the reference. Moreover, although the *Johnson* court stated as an aside that an "improvidently or improperly granted" order of reference would not necessarily "entitle the [losing party] to a reversal," *id.* (dictum), a later opinion of the Eighth Circuit aligns that court with the views we announce today and, in the bargain, divests the *Johnson* dictum of the significance that Stauble attaches to it. *See In re Armco*, 770 F.2d at 103.

Despite our fervent wish that it were otherwise, this is not such a case. Unlike *Adventures in Good Eating,* the record in *698 this case is voluminous, the factual issues are tangled, and the legal issues are largely factbound. On several key points, the testimony is capable of supporting conflicting conclusions. Credibility is vital to a reasoned determination of the litigation. In such straitened circumstances, even the most searching review of the record by an appellate court would not be a satisfactory substitute for a trial conducted in accordance with Article III. *See Dedham Water,* 972 F.2d at 463 (appellate factfinding is generally "permissible only when no other resolution of a factbound question would, on the compiled record, be sustainable") (collecting cases). While we deeply regret the colossal waste of time and resources that has plagued this litigation, the case must be tried by the district court. [FN12] The Constitution offers no other principled choice.

> FN12. At oral argument before us, Stauble conceded that, if we found the proceedings below to have been constitutionally deficient and declined to decide the merits ourselves, the appropriate remedy on the facts of this case would be a full new trial before the district court. Because the parties agree on this point, we leave for another day the possibility that a master's findings and conclusions on a fundamental issue of liability might perhaps be salvaged, even after appeal, by having the district court conduct a deeper, more participatory sort of review.

V. CONCLUSION

Article III requires that the judicial power of the United States be exercised by federal judges appointed for life tenure and protected from diminished compensation. Although parties to litigation may agree, at the behest of a judge or at their own contrivance, to make alternative arrangements for dispute resolution at the hands of judicial assistants or even private citizens, parties who object to such a departure may not be forced to have the fundamental issues of their disagreement, which would otherwise come within the jurisdiction of an Article III court, decided by non-Article III surrogates. [FN13] It follows that, in this instance, the district court delegated too much judicial power by asking a special master, over the defendants' timely objection, to determine the entire case, liability included.

> FN13. A judge may, of course, refer the fundamental issue of liability to a master without running afoul of the Constitution, so long as the judge is prepared to afford *de novo* review or otherwise to honor Article III's commands.

We need go no further. The order of reference is reversed, the judgment below is vacated, and the cause is remanded to the district court for a new trial. All parties shall bear their own costs.

*So Ordered.*

977 F.2d 690, 24 Fed.R.Serv.3d 28

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

