# EXHIBIT 8

Page 1

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2743591 (E.D.Pa.), 2004-2 Trade Cases P 74,620
(Cite as: 2004 WL 2743591 (E.D.Pa.))

Motions, Pleadings and Filings

United States District Court.
E.D. Pennsylvania.
In re PLASTICS ADDITIVES ANTITRUST
LITIGATION
No. Civ.A. 03-2038.

Nov. 29, 2004.

MEMORANDUM ORDER

DAVIS, J.

*1 Presently before the Court are Defendants' Joint Motion for Bifurcation of Discovery and Entry of a Scheduling Order (Doc. No. 88) filed on September 14, 2004; Plaintiffs' Opposition to Motion for Bifurcation (Doc. No. 92) filed on October 1, 2004; Defendants' Joint Memorandum in Further Support of Defendants' Motion for Bifurcation of Discovery and Entry of a Scheduling Order (Doc. No. 98) filed on October 21, 2004; Plaintiffs' Motion for Entry of Proposed Discovery Scheduling Order (Doc. No. 93) filed on October 1, 2004; Defendants' Opposition to Plaintiffs' Motion for Entry of Proposed Scheduling Order (Doc. No. 96) filed on October 15, 2004; and Plaintiffs' Reply Memorandum in Support of Motion for Entry of Proposed Discovery Scheduling Order (Doc. No. 103) filed on November 10, 2004.

For the following reasons, Defendants' motion to bifurcate will be DENIED and Plaintiffs' Motion for Entry of Proposed Discovery Scheduling Order will be GRANTED in part and DENIED in part.

I. Factual and Procedural History

This case is a class action antitrust case concerning the plastics additives industry. Defendants are alleged manufacturers and/or sellers of plastic additives. (Am.Compl. at ¶¶ 19-29). Plaintiffs are allegedly purchasers of "plastics additives," what the plaintiffs define as "heat stabilizers, impact modifiers, and processing aids used to process plastics." (Am.Compl. at ¶ 7). Plaintiffs seek to represent a nationwide class of purchasers of plastics additives for the time period of January 1, 1990 through December 31, 2003 (Id. at ¶ 1).

In February 2003, the United States Department of Justice Antitrust Division ("DOJ") commenced an investigation into the plastics additives industry. (Def. Mot. to Bifurcate, at 4). Two grand juries were convened in the Northern District of California. (Id.). Both grand juries are currently proceeding in secret. One grand jury is focusing on heat stabilizers and the other grand jury involves heat impact modifiers and processing aids. (Id.). All defendants have been subpoenaed as part of one or both of the investigations (Id.).

On March 28, 2003, plaintiff Gitto/Global Corporation filed a complaint on behalf of themselves and the putative class, alleging that defendants engaged in a price-fixing scheme for the sale of plastic additives in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. (Doc. No. 1). Subsequently, six separate complaints were filed against defendants based upon alleged antitrust violations. On August 14, 2003, this Court entered a pretrial order consolidating the seven related actions under a master file, directing plaintiffs to file a consolidated complaint, and holding discovery in abeyance pending the resolution of motions filed in response to the complaint. (Doc. No. 23). [FN1]

   FN1. By order dated September 15, 2004, the other six cases against defendants were placed in deferred status pending the outcome of class certification in this litigation.

Plaintiffs filed an amended complaint on September 3, 2003. (Doc. No. 28). Plaintiffs contend that defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by engaging in a conspiracy in restraint of trade to artificially raise, fix, and/or stabilize prices for plastic additives in the United states (Id. at ¶¶ 49-50). Plaintiffs contend that defendants agreed to charge prices at higher levels and to allocate prices in order to artificially manipulate the price of plastic additives. (Id. at ¶ 50). Plaintiffs further allege that they had no knowledge of the conspiracy because defendants fraudulently concealed it (Id. at ¶ 52). As a result, plaintiffs allege that they and other members of the class were required to pay more for plastic additives than they would have in a competitive marketplace (Id. at ¶ 11).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *2 (E.D.Pa.))

Page 2

*2 On December 1, 2003, defendants moved for dismissal and partial dismissal. (Doc. No. 54, 56). This Court denied defendants' motions on May 26, 2004, prompting the parties to meet to discuss an ongoing plan for discovery. (Doc. No. 72). The parties failed to reach an agreement on a discovery schedule, and, on September 14, 2004, defendants moved for bifurcation of discovery and for a stay of merits-based discovery. (Doc. No. 88). On October 1, plaintiffs filed a motion for entry of plaintiffs' proposed scheduling order. (Doc. No. 92) After an array of briefs and response briefs, the final brief in support of the parties' respective positions was filed on November 10, 2004. (Doc. No. 103).

II. Motion to Bifurcate

Defendants have moved this Court to bifurcate discovery into class certification issues and merit-based issues. Defendants present three major reasons for bifurcation. First, defendants claim that bifurcation will promote the early and efficient resolution of class issues contemplated by Federal Rule of Civil Procedure 23Copr.)(1). (Def. Mot. To Bifurcate, at 7-13). Second, defendants claim that bifurcation is necessary due to pending grand jury proceedings in California. (*Id.*, at 13-17). Third, defendants claim that bifurcation will save the parties time and expense because resolution of the class certification issue will influence further proceedings. (*Id.*, at 11). This Court rejects defendants' arguments in favor of bifurcation.

Class certification must be made "as soon as practicable after commencement of an action." Fed.R.Civ.P. 23(c)(1) & (3). This mandate recognizes that "class certification or its denial will have a substantial impact on further proceedings, including the scope of discovery, the definition of issues, the length and complexity of trial, and the opportunities for settlement." Federal Judicial Center, Manual For Complex Litigation § 11.213, at 40 (4th ed 2004). To ensure that the mandate of Federal Rule of Civil Procedure 23(c)(1) is followed, courts have the discretion to "allow classwide discovery on the certification issue and postpone discovery on the merits." *Washington v Brown & Williamson Tobacco*, 959 F.2d 1566, 1570-1571 (11th Cir 1992)

The Third Circuit has not set a bright line test as to when a court should bifurcate discovery in class action litigation. Generally, however, courts allow classwide discovery on the certification issue and postpone classwide discovery on the merits of the claims when bifurcation serves the interests of "fairness and efficiency." See Manual for Complex Litigation § 11.213, at 40 ("discovery may proceed concurrently if bifurcating class discovery from merits discovery would result in significant duplication of effort and expense to the parties"); *see also Williamson Tobacco Corp.*, 959 F.2d at 1570-71 ("[t]o make early class determination practicable and to best serve the interests of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits").

*3 Both parties rely upon the Manual for Complex Litigation (the "Manual") as an authoritative source to determine when bifurcation is fair and efficient. (Def. Mot. to Bifurcate, at 5; Pl. Opp'n to Mot. to Bifurcate, at 9). According to the Manual, "courts often bifurcate discovery between certification issues and those related to the merits of the allegation." *Id.* § 21.14, at 256. Nonetheless, the Manual voices several concerns with bifurcation. The Manual notes that the distinction between merits-based discovery and class-related discovery if often blurry, if not spurious. *See id.* § 21.14, at 255 ("generally, application of the Rule 23 criteria requires the judge to examine the elements of the parties' substantive claims and defenses in order to analyze commonality, typicality, and adequacy of representation under Rule 23(a)"). The Manual further notes that "some merits discovery during the precertification period is generally more appropriate for cases that are large and likely to continue even if not certified." *Id.*; *see also Gray v. First Winthrop*, 133 F.R.D. 39, 41 (N.D.Cal.1990) (denying order to stay merits-based discovery until resolution of class certification motion would be "unworkable," "impracticable," and "inefficient" and would deny plaintiffs ability to develop facts in support of motion). Accordingly, the Manual suggests that the prime considerations in whether bifurcation is efficient and fair include whether merits-based discovery is sufficiently intermingled with class-based discovery and whether the litigation is likely to continue absent class certification.

Bifurcation would be inefficient, unfair, and duplicative in this case for several reasons. First, bifurcation would further delay the resolution of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d            Page 3
(Cite as: 2004 WL 2743591, *3 (E.D.Pa.))

litigation in derogation of Rule 1 of the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 1 (procedural rules must be administered to secure "the just, speedy, and inexpensive determination of every action"). This case has already been on the docket for over 18 months without a decision on class certification. Failure to permit simultaneous discovery of merits-related and class-related issues will further delay the length of the overall discovery period, thereby inhibiting plaintiffs from receiving an expeditious resolution of their claims. [FN2] See, e.g., In re Sulfuric Acid Antitrust Litigation, MDL No. 1561, No. 03 C 4576 (N.D.Ill.2003) (refusing to bifurcate discovery in antitrust litigation in part because of delays created by bifurcation). Bifurcation would also belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is "merit" discovery as compared to "class" discovery. See, e.g., In re Hamilton Bancorp, Inc. Securities Litigation, 2002 WL 463314, at *1 (S.D.Fla. Jan.14, 2002) (noting that "bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery").

> FN2. This delay is evident from the defendants' proposed order bifurcating discovery, which would not resolve the issue of class certification until (at a minimum) March 2006 and which, throughout this period, would not permit plaintiffs to engage in merits-based discovery. (Def. Mot. to Bifurcate, at 20). Defendants' proposed scheduling order delays both the class certification issue and the ultimate resolution of this litigation, whether through a trial on the merits, settlement, or dispositive motions (Id.) Defendants' proposed scheduling order therefore violates the rationale of efficiency upon which the theory of discovery bifurcation is based.

*4 Second, class certification discovery in this litigation is not "easily" differentiated from "merits" discovery. See, e.g., Gray, 133 F.R.D. at 41 (noting that "discovery relating to class certification is closely enmeshed with merits discovery" and "cannot be meaningfully developed without inquiry into basic issues of the litigation"). There will be a substantial overlap between what is needed to prove plaintiff's price-fixing claims, as well as the information needed to establish class-wide defenses, and what is needed to determine whether the elements of class certification are met. For example, according to the defendants' proposed scheduling order, determination of whether the elements of class certification are met [FN3] would require discovery into whether the agreements between the parties for the sale of plastic additives, competitor contracts, defendants' business plans and strategies for marketing and selling plastic additives, the impact of the defendants' conduct on plaintiffs, and services provided by defendants to plaintiffs in connection with the sale of plastic additives. (Def. Proposed Scheduling Order, attached as Exhibit A). Discovery on these issues will also be necessary to prove the merit of plaintiffs' claim, namely whether defendants' engaged in a nation-wide price-fixing scheme for the sale of plastic additives and whether, as a result, the plaintiffs suffered damages. See, e.g., In re Linerboard Antitrust Litigation, 305 F.3d 145, 151 (3d Cir.2002) (damages in antitrust litigation can be proved by establishing that free market prices would be lower than prices paid and that plaintiffs made purchases at higher prices). Due to the intermingling of the facts necessary to evaluate class certification and the merits of plaintiffs' claims, separating the two would duplicate discovery efforts, which, in turn, would force both parties to incur unnecessary expenses and would further protract the litigation.

> FN3. Class action certification is appropriate only if the following four elements are met: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representatives will fairly and adequately protect the interests of the class ("adequacy of representation"). See Fed.R.Civ.P. 23(a).

Third, contrary to defendants' assertions, there is no reason to believe that denial of class certification will terminate this litigation. See Manual for Complex Litigation § 21.14, at 256 (bifurcation not appropriate if litigation likely to proceed without certification). Seven individual lawsuits were filed against the defendants and then consolidated under this master file. The six additional lawsuits have not been terminated, but, instead, have been stayed pending class certification in this litigation. If class certification is denied, it is reasonable to assume that

Not Reported in F.Supp.2d                                                                 Page 4
(Cite as: 2004 WL 2743591, *4 (E.D.Pa.))

the individual plaintiffs will pursue their claims through the cases that are currently stayed. (Pl. Opp'n to Def. Mot. to Bifurcate, at 10). This is particularly true because one of the defendants, Crompton Corporation ("Crompton"), has been accepted into the Department of Justice's corporation leniency program, and has agreed to assist plaintiffs' counsel in the prosecution of claims against non-settling defendants. (Id., at 10-11). The likelihood of the continuation of individual claims, regardless of class certification, belies whatever time and expense may be saved in the future through the narrowing of discovery pursuant to the resolution of class certification motions.

*5 Because bifurcation of discovery would be inefficient, unfair, and duplicative, this Court denies defendants' motion to bifurcate discovery into a class-based stage and a merits-based stage. [FN4]

> FN4 This Court also disagrees with defendants' assertions that bifurcation is appropriate because other state courts, which are adjudicating state antitrust claims concerning plastics additives against the same defendants, have chosen to bifurcate discovery. Defendants cite two orders from parallel state litigation in Ohio and California for this proposition. However, these cases are not relevant to this Court's analysis. First, in *Competition Collision Center LLC v. Crompton Corp., et al.*, Case No. CGC-04-431278 (Cal.Super.Ct. May 18, 2004), the California Superior Court only stated that the discovery period "*may* be bifurcated into class certification and other issues" [emphasis added]. Second, in *Heritage Plastics, Inc. v. Rohm and Haas Company, et al.*, Case No. 03-CV-0113 (Ohio CCP July 26, 2004), the Court of Common Pleas for Belmont County, Ohio bifurcated discovery, but implied that bifurcation was appropriate primarily because of the congestion in the Court's docket and because federal antitrust litigation against the same defendants was proceeding in this Court.

III. Motion to Stay Merits-Based Discovery

In addition to the request for straightforward bifurcation, defendants expressly ask this Court to issue a stay of all merits-based discovery pending a determination of class certification. (Def. Mot. to Bifurcate, at 12-13). Defendants support their argument by reference to the standard for determining whether to stay civil proceedings pending the resolution of related criminal proceedings. (Id., at 12-13) In so doing, defendants implicitly ask this court to stay merits-based discovery until the outcome of ongoing grand jury proceedings in California. (Id., at 15) ("If, however, the grand jury has not concluded by the time the class certification motion has been decided, the Court can re-evaluate at that time whether to permit merits discovery to go forward and with what limitations").

It is well-settled that defendants in a criminal prosecution do not have a due process right to stay proceedings in a parallel civil case. *United States v. Kordel*, 397 U.S. 1, 9-10, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) However, it is equally well-settled that the Court has the inherent authority to control the disposition of cases on it dockets. *See, e.g., Landis v. North Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). This includes the power to stay civil discovery until termination of related criminal proceedings. *See Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir.1967).

The "stay" of a civil case is an "extraordinary remedy." *Weil v. Markowitz*, 829 F.2d 166, 174 n. 17 (D.C.Cir.1987). In determining whether the "extraordinary" remedy of a stay is appropriate, this Court looks at five competing interests:
(1) interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
(2) burden which any particular aspect of the proceedings may impose on defendants;
(3) convenience of the court in the management of its cases, and the efficient use of judicial resources;
(4) interests of persons not parties to the civil litigation; and
(5) interest of the public in the pending civil and criminal litigation.
*See, e.g., Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53, 56 (E.D.Pa.1980) (promulgating factors). Ultimately, the decision whether to grant a stay must be made on a case-by-case basis *See Shirsat v. Mutual Pharmaceutical Co.*, 1995 WL 695109, at *1 (E.D.Pa. Nov.21, 1995).

This Court refuses to bifurcate discovery on the

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *5 (E.D.Pa.))

Page 5

basis of concurrent grand jury proceedings that may extend indefinitely. To the extent that defendants are asking for an official stay on merits-based discovery pending the resolution of grand jury proceedings, and perhaps even criminal prosecutions, this Court also denies the defendants' request based upon a balancing of all relevant factors. *See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 579 (S.D.N.Y.2001) (treating request for stay of depositions for six months as request for stay of case pending resolution of ongoing grand jury proceedings and criminal investigations because "the argument for a further stay [six months later] will be at least as potent as it is now").

A. Plaintiffs' Interest and Potential Prejudice

*6 Staying merits-based discovery would prejudice plaintiffs by preventing the expeditious resolution of the lawsuit. *See, e.g., Sterling Nat'l Bank*, 175 F.Supp.2d at 575 (concluding that "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities"). It is "only through the discovery procedure that a plaintiff can determine the merit (or lack of merit) in his [or her] case and develop the strategy which will guide him [or her] throughout the litigation." *Golden Quality Ice Cream Co.*, 87 F.R.D. at 56. While the initiation and resolution of the California grand jury proceedings against defendants may narrow the scope of this litigation, this possibility is too remote to be considered at this stage. Furthermore, staying discovery on this rationale would result in an indefinite stay, as there is no way to predict when grand jury proceedings will end, whether an indictment will be delivered, and whether criminal proceedings will ensue. *See In re Residential Doors Antitrust Litigation*, 900 F.Supp. 749, 756 (E.D.Pa.1995) (rejecting argument that discovery can be stayed without prejudice to plaintiffs until completion of government's criminal investigation of unspecified others at unknown future date).

B. Burden on Defendants

Defendants have not established that they would suffer actual prejudice if merits-based discovery proceeds. As corporations, defendants will not be able to invoke the privilege against self-incrimination. *United States v. Kordel*, 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) (right against self-incrimination not available to corporations). However, if defendants' employees invoke their Fifth Amendment right against self-incrimination during the discovery process, such as by refusing by refusing to answer deposition questions or interrogatories, the defendants' chances of success at trial may diminish. Indeed, a court may impose "reasonable" discovery sanctions in such a situation, such as preventing the witness from testifying on behalf of the defendant concerning the factual matters that were concealed by the invocation of the Fifth Amendment. *See, e.g., Securities & Exch. Comm'n v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir.1994) (reliance on Fifth Amendment right against self-incrimination in civil cases may give rise to adverse inference against party claiming benefits).

This Court recognizes the seriousness of defendants' concerns. However, the weight to be attached to these fears is minimized by the layers of speculation upon which they are built. *See Sterling Nat'l Bank*, 175 F.Supp.2d at 578 (denying motion to stay pending resolution of grand jury proceedings because "there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they choose to make"). Defendants presume that employees, who have yet to be indicted, will need to, and will actually invoke, their Fifth Amendment privilege during discovery. *Id.* Defendants then presume that this Court will impose discovery sanctions for the exercise of this right. *Id.* These presumptions render the actual prejudice to defendants "inherently unclear" at this pre-indictment phase. *Id.* at 577-578.

*7 This Court also finds defendants' fears concerning discovery sanctions incommensurate with defendants' request for a stay of merits-based discovery. Because merits-based discovery and class-based discovery overlap, the progression of class-based discovery, to which defendants have agreed, may require the defendants' employees to exercise their Fifth Amendment rights during discovery events. Paradoxically, this would lead to the very result that defendants' request for a stay seeks to prevent. Accordingly, defendants' failure to request a blanket stay of all discovery pending the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *7 (E.D.Pa.))

Page 6

resolution of criminal grand jury proceedings in California undermines their argument that a stay of merits-based discovery will avoid actual prejudice.

Finally, this Court notes that defendants have not argued that merits-based discovery will divert resources that may be necessary for defense of a possible criminal action. Nor have defendants argued that the expense of defending the civil litigation and the grand jury proceedings in California would be unreasonable. Accordingly, although the defendants may experience some future prejudice if this Court refuses to grant a stay of merits-based discovery, particularly with respect to negative inferences to be drawn from the exercise of Fifth Amendment rights by individual witnesses, this prejudice is both remote and uncertain. *See State Farm Mutual Automobile Ins. Co. v. Beckham-Easley*, 2002 WL 31111766, at *2 (E.D.Pa Sept.18, 2002) (pre-indictment requests for stay are typically denied because risks are more remote than for indicted defendant). [FN5]

> FN5 Defendants claim that no general rule exists disfavoring pre-indictment requests for a stay of parallel civil proceedings. (Def. Mem. In Further Support of Mot to Bifurcate, at 8 n 7). Defendants also claim. that. if such a rule exists. it is inapplicable in this situation because defendants have not asked for a blanket stay of all civil proceeding. only merits-based discovery. (*Id.*) Although this Court agrees that there is no *per se* rule against pre-indictment stays of parallel civil proceedings. there is certainly a strong judicial preference against such stays. *See, e.g., Sterling Nat'l Bank*, 175 F Supp 2d at 576-77 (courts generally grant the extraordinary remedy of stay only after defendant seeking stay has been indicted). Furthermore, the logic behind rejecting a blanket stay of parallel civil proceedings prior to a defendant's indictment applies with equal force to a determination of whether merits-based discovery should be stayed pending ongoing grand jury proceedings In fact. the argument in favor of a stay of merits-based discovery at the pre-indictment phase may be weaker than the argument in favor of a blanket stay because. in the former situation, defendants and their employees may be forced into the Fifth Amendment dilemma through the progression of class-based discovery even if the stay is granted.

C. Burden on the Court

Staying merits-based discovery in the litigation hinders the Court's responsibility to keep its docket moving to provide litigants with a timely and effective resolution of their claims. *See, e.g., Dawson v. Dodd*, 1999 WL 410366, at *3 (E.D.Pa. June 17, 1999) ("The Court has a responsibility to control the disposition of the cases on its docket with economy of time and effort for all actors including itself."). To delay merits-based discovery pending the resolution of grand jury proceedings at some unforeseeable date in the future would hinder the Court from performing its responsibility. This duty is particularly important when, as in the instant matter, the complaint that is the subject of the motion to stay has been lingering on the docket for more than 18 months.

The Court realizes that, in some instances, staying discovery until the resolution of parallel criminal proceedings may minimize the Court's burden. A stay may avoid duplicative judicial efforts, eliminating the need for parties to claim the Fifth Amendment right against self-incrimination or removing the burden upon plaintiffs to prove antitrust liability. *See, e.g., White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D.Ark.1987). In this case, however, these possibilities are too remote to be given significant consideration. *See, e.g., Anthony v. City of Philadelphia*, 2001 WL 118964, at *2 (E.D.Pa. Feb.9, 2001) (rejecting argument as too speculative that plaintiff and court will benefit from stay because resolution of criminal case may reduce or simplify issues). There has been no indictment handed down in either of the grand jury proceedings. *See Sterling Nat'l Bank*, 175 F.Supp.2d at 580 (refusing to grant stay of parallel civil proceedings when no indication that grand jury's investigation reached critical stage or that indictment is imminent because stay would "substantially halt the civil litigation indefinitely, without any predictability as to when the case would return to the Court's active docket"). As such, no criminal charges have been filed, nor has a date been set for trial. It is therefore uncertain how long the requested stay will last, and whether future criminal proceedings will alleviate the evidentiary and analytical burdens on the parties and on the court. *See Beckham-Easley*, 2002 WL 3111176, at *3 (denying motion to stay discovery despite defendants' contentions that indictment would be issued within 120 days from filing motion to stay).

© 2006 Thomson/West No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *7 (E.D.Pa.))

Page 7

Accordingly, the interests of immediate judicial economy trump the defendants' speculations that waiting until the completion of grand jury proceedings would lessen the Court's burden.

D. Burden on Non-parties

*8 Corporations speak and function only through their officers and employees. See Upjohn, 449 U.S. at 389-392. As the defendants note, the DOJ frequently requires current and former employees from companies under investigation to testify before the grand jury. (Def. Mot. To Bifurcate, at 14-15). These employees are not parties to this litigation. However, if faced with a discovery request, whether in the form of depositions, written interrogatories, or document production, these witnesses may have to invoke their Fifth Amendment right against self-incrimination to avoid disclosing information that may lead to a future criminal conviction. The pressure of whether to invoke this right during civil discovery can be severe. See Golden Quality Ice Cream, 87 F.R.D. at 58; see also White, 116 F.R.D. at 503 (noting that corporations' officers and managers may have Fifth Amendment privileges by virtue of grand jury probe and that interest of non-parties against self-incrimination favors staying discovery).

While the dilemma of whether a non-party should invoke her Fifth Amendment right against self-incrimination may be severe, the personal consequences that attach to this decision are not as grave. This Court may not impose discovery sanctions on non-parties who invoke their Fifth Amendment rights during civil discovery. Nor can the exercise of this right be used against such witnesses in future criminal prosecutions. Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (no adverse inference may be drawn nor penalty imposed on criminal defendant who chooses not to testify by exercising Fifth Amendment right against self-incrimination). Furthermore, to lessen the burden on non-party witnesses in deciding to invoke the privilege, defendants may seek the entry of a protective order, which forbids the dissemination of information gathered through civil discovery to outside parties. Finally, to this Court's knowledge, no indictments have been handed down against defendants or their employees, thereby further weakening the degree of risk to non-parties if merits-based discovery progresses. See Sterling Nat'l Bank, 175 F.Supp.2d at 578 (noting that burden is greater to indicted party because risk of liberty, importance of safeguarding constitutional rights, and strain on resources and attention make defending parallel civil litigation particularly difficult). Consequently, the burden on non-parties in this instance is marginal.

E. Public Interest

Public interest considerations weigh against granting a stay of merit-based discovery. The public's interest in vigorously enforcing national anti-trust laws through the expeditious resolution of a private antitrust litigation is particularly great. See Golden Quality Ice Cream, 87 F.R.D. at 58; In re Residential Doors, 900 F.Supp. at 756 (public interest prejudiced by delay in discovery proceedings in class action antitrust litigation). This interest is even greater when the nature of the litigation is a class action lawsuit, filed on behalf of nationwide consumers of a particular product over the course of more than a decade. Furthermore, the public also has a significant interest in ensuring the flow of this Court's judicial docket so that justice may be administered to the instant litigants, as well as all other litigants before this Court, in a timely fashion. These interests are not rendered less acute by the federal government's decision to spend resources on behalf of the public investigating potential antitrust violations by defendants and convening grand jury proceedings, particularly when no indictments have been delivered and when the federal government has not intervened to request a stay of discovery on the basis of ensuring the secrecy, integrity, and timeliness of such proceedings. See, e.g., Kaiser v. Steward, 1997 WL 66186, at *5 (E.D.Pa.1997) (refusing blanket stay of civil proceedings pending outcome of criminal trial, even when government prosecuting parallel criminal case requests stay to prevent defendants from using civil discovery as vehicle to gain information on possible future criminal prosecutions); Golden Quality Ice Cream, 87 F.R.D. at 58 (public interest in quick and diligent resolution of antitrust violations through private litigation only weakened when federal government receives indictment and chooses to prosecute criminal antitrust case).

*9 The defendants ask the Court to weigh these significant interests against the public interest in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *9 (E.D.Pa.))

Page 8

maintaining the secrecy of grand jury proceedings, as embodied in Rule 6(e) of the Federal Rules of Criminal Procedure. Defendants note that witnesses may be asked to provide testimony and documents that reveal information provided to the grand jury, thereby helping the litigants in this matter to identify other witnesses who have been called to testify before one or both grand juries. (Def. Mot. To Bifurcate, at 17) As stated more fully in Section III.A.1 of this opinion, Rule 6(e) neither applies to witnesses nor to documents created independent of grand jury proceedings. See Fed. R. Crim. Pro. 6(e). Accordingly, defendants' argument that permitting civil merits discovery will violate the grand jury secrecy provisions of Rule 6(e) is unfounded.

F. Conclusion

A careful weighing of the factors indicates that discovery should not be bifurcated. Nor should merits-based discovery be stayed pending the resolution of class certification, ongoing grand jury proceedings, or subsequent criminal prosecutions. This Court recognizes the legitimacy of defendants' concerns about possible prejudice from employees asserting their right against self-incrimination during the discovery process. Nonetheless, rather than delaying this litigation to allay defendants' speculative concerns, such as by staying merits-based discovery or preventing the taking of depositions of defendants' employees prior to class certification, this Court will progress with discovery and will attempt to accommodate defendants' concerns if and when the situations triggering these concerns actually arise.

IV. Plaintiffs' Motion for Entry of a Scheduling Order

Plaintiffs argue that the Court should enter the proposed scheduling order, which does not bifurcate discovery. Plaintiffs' scheduling order allocates sixty days for the completion of discovery concerning class certification issues. (Pl. Proposed Order, at ¶ 2(d)) It imposes the following obligations on the parties. First, it requires defendants to produce within forty-five days of the order all documents relating to plastics additives "that were produced to the Department of Justice, any grand jury, and any investigatory authority, foreign or domestic (including but not limited to the European Union, Canada, or Japan), on a rolling basis..." (Id. at ¶ 2(a)). Second, it requires defendants to produce within sixty days of the order "in electronic format, all transactional data relating to their sales of Plastics Additives, as defined in the Complaint, in the United States during the period January 1, 1990 through to December 31, 2003" and to make available defendants' documentation and computer personnel to help understand and use the data. (Id. at ¶ 2(b)). Third, it requires plaintiffs to produce within 45 days "all documents relating to their purchases of plastics additives ... from the defendants." (Id. at ¶ 2(c)).

*10 Defendants object to this proposed scheduling order on several grounds. First, defendants contend that the production of all documents produced to the DOJ, any grand jury, or any domestic investigatory authority violates Rule 6(e) of the Federal Rules of Criminal Procedure (Def. Opp'n to Pl. Mot., at 8-12). Second, defendants contend that the production of all documents produced to any foreign investigatory authority is excessively burdensome and not geared towards the acquisition of relevant evidence. (Id. at 11-13). Third, defendants contend that sixty days is insufficient to conduct class-related discovery and allows for inadequate time for factual development on class issues. (Id. at 15). Fourth, defendants contend that the discovery plan imposes no reciprocal burden upon plaintiffs to produce data in electronic format and to provide technical assistance to defendants in understanding the use of that data. (Id.). Finally, defendants contend that they should be expressly allowed to take discovery from plaintiffs related to plaintiffs' sales of plastics products to their customers. (Id.).

A. Documents related to plastic additives that were submitted to the Department of Justice, any grand jury, and any domestic investigatory body

Defendants claim that defendants should not have to produce documents related to plastic additives that were submitted as part of a domestic government investigation because Rule 6(e)(2) of the Federal Rules of Criminal Procedure bars disclosure and because case law does not dictate such a result. (Def. Mem. In Opp'n to Pl. Mot., at 8)

1. Rule 6(e)(2) is inapplicable.

Defendants claim that Federal Rule of Criminal Procedure 6(e)(2) prevents plaintiffs from receiving

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *10 (E.D.Pa.))

documents that defendants produced to the DOJ in connection with California grand jury investigations. (Def. Mem. in Opp'n to Pl. Mot., at 8). Defendants' arguments lack legal support.

Federal Rule of Criminal Procedure 6(e)(2)(A) states that "no obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Fed.R.Crim.P. 6(e)(2)(A). Rule 6(e)(2)(B) prohibits certain people from disclosing "a matter occurring before the grand jury." Fed.R.Crim.P. 6(e)(2)(B). This list of persons includes the following: a grand juror; an interpreter; a court reporter; an operator of a recording device; a person who transcribes recorded testimony; an attorney for the government; or any person to whom disclosure is made. Id. Conspicuously absent from this list are witnesses, whether witnesses that testify at grand jury proceedings or witnesses that provide documents to grand juries during the course of their proceedings. See Susan W. Brenner, Gregory G. Lockhart, Federal Grand Jury: A Guide to Law and Practice § 8.3.1 (2004); see also Andrea M. Nervi, FRCP 6(E) And the Disclosure of Documents Reviewed by a Grand Jury, 57 U. Chi. L.Rev. 221, 224-225 (1990). This omission was not unintentional, as the Advisory Committee Note to Rule 6(e) specifies that the rule "does not impose any obligation of secrecy on witnesses." Id.

*11 Despite its express language, courts disagree as to whether Rule 6(e)(2) applies to witnesses and other private parties not listed in the rule. Compare Illinois v. Sarbaugh, 552 F.2d 768, 777-78 (7th Cir.1977) (private corporations indicted through grand jury proceedings subject to secrecy obligations of Rule 6(e), although state demonstrated particularized need within meaning of Rule 6(e) to force corporate employer of grand jury witness to turn over transcripts of grand jury testimony concerning highway construction fraud) and Cumberland Farms, Inc. v. Browning-Ferris Ind., Inc., 1989 WL 90884, at *1 (E.D.Pa. April 18, 1989) (applying Rule 6(e) without discussion to private party defendants and requiring showing of particularized need for documents created by or for grand jury) with In re Grand Jury Subpoena Duces Tecum, 575 F.Supp. 1219, 1221 (E.D.Pa.1983) (Rule 6(e) does not impose obligation of secrecy on witnesses, nor does the court retain a general supervisory authority to impose restraints on witnesses who seek to disclose testimony given before grand jury). Although the Third Circuit has not squarely addressed this issue, this Court agrees with those courts holding that Rule 6(e)(2) does not impose secrecy obligations on a witness who supplies documents to a grand jury proceeding. See, e.g., In re Wirebound Boxes Antitrust Litigation, 126 F.R.D. 554, 555-556 (D.Minn.1989) (defendants in antitrust litigation are not among the parties enumerated in Rule 6(e)(2) and are required to release documents which were produced independent of the grand jury); Golden Quality Ice Cream Co., Inc., 87 F.R.D. at 59 (disclosure of documents produced by defendants in class action to grand jury not prohibited by Federal Rule of Criminal Procedure 6(e)). This analysis comports with the text of the rule and with the advisory comment explaining the purpose and genealogy of the rule. See Fed.R.Crim.P. 6(e) (no obligation of secrecy on any person except those listed in Rule 6(e)(2)(B)).

Furthermore, even if Rule 6(e)(2) was applicable to private parties not listed in the rule, documents generated for purposes independent of the grand jury investigation, such as during the ordinary course of a defendant's business, are not "matters occurring before the grand jury." See, e.g., In re Grand Jury Matter (Catania), 682 F.2d 61, 64 (3d Cir.1982) (information developed by the FBI during course of investigation and presented to federal grand jury was not subject to Rule 6(e) because information exists apart from and was developed independently of grand jury, even though developed with an eye towards ultimate use in grand jury proceeding); In re Grand Jury Matter, 640 F.Supp. 63, 65 (E.D.Pa.1986) (Rule 6(e) does not apply to materials created for purposes independent of the grand jury investigation and, thus, business records subpoenaed by grand jury could be disclosed to Inspector General as part of a separate investigation). The Third Circuit has expressly declared that "information does not become a matter occurring before the grand jury simply by being presented to the grand jury, particularly where it was developed independently of the grand jury." U.S. v. Chang, 2002 WL 31108904, at *2 (3d Cir. Sept.20, 2002) (unpublished opinion); In re Grand Jury Matter (Catania), 682 F.2d at 64. Nonetheless, materials created at a grand jury's request, such as subpoenas, transcripts, and document lists, constitute matters "occurring before the grand jury" within the meaning of Rule 6(e), thereby requiring

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

parties to demonstrated particularized need to acquire these materials. *See, e.g., United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (requiring party seeking grand jury transcript to demonstrate "particularized" need for disclosure).

*12 Because defendants are not one of the enumerated parties in Rule 6(e), and because the defendants have not asserted that the documents were created at the request of grand jury proceedings in California rather than during the ordinary course of defendants' business operations, the obligation of secrecy does not apply. [FN6] *See* Manual for Complex Litigation § 11.49 ("The production to a grand jury of otherwise discoverable material does not, however, entitle it to Federal Rule of [Criminal] Procedure 6 protection. Copies of material produced to a grand jury are subject to discovery."). Indeed, this Court does not believe that the production of documents submitted during the California grand jury proceedings is likely to disclose the "essence" of those proceedings. *See, e.g., In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir.1980) (holding that Rule 6(e)'s policy of secrecy "designed to protect from disclosure only the essence of what takes place in the grand jury room" and recognizing that mere fact that particular document was reviewed by grand jury does not subject document to Rule 6(e) protections). Consequently, defendants' objection to plaintiffs' proposed order on the ground of Rule 6(e)(2) lacks merit.

> FN6. Defendants have not asked this Court to exercise its supervisory powers over grand jury proceedings as a basis to prevent disclosure of the documents at issue. Accordingly, this Court need not address whether a federal court has the authority to supplement the text of Rule 6(e)(2) by imposing the obligation of secrecy on witnesses or other private parties not mentioned in the rule. *See* Brenner, Federal Grand Jury § 8.3.1 (noting that "it is unclear whether courts have the authority to supplement" Rule 6(e)'s provisions to impose secrecy obligation on parties not enumerated).

2. Plaintiffs' request for all documents submitted to the DOJ, any grand jury, and any domestic investigatory body is supported by case law.

Rejecting the defendants' defense to plaintiffs' discovery request is not the same as endorsing the content of plaintiffs' proposed order. It appears, however, that defendants in antitrust litigation regularly agree through joint discovery schedules to produce documents submitted to the DOJ, grand juries, and other investigatory authorities concerning the basis for the antitrust civil suit. *See, e.g., In re Acrylonitrile Butadiene Rubber (NBR) Antitrust Litigation*, 03-cv-1898 (W.D. Pa. June 14, 2004) (parties agreeing in proposed discovery schedule to produce documents submitted to grand jury or DOJ); *In re Rubber Chemicals Antitrust Litigation*, 03-CV-1496 (N.D.Cal. Jan. 26, 2004) (documents produced to grand jury or DOJ subpoenas in related criminal investigation included within Rule 26 initial disclosures); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 03-MD-1542 (PCD) (D.Conn. Oct. 31, 2003) (parties agreeing in proposed discovery schedule to produce all documents submitted to DOJ or grand jury). This willingness to produce such documents at the outset of litigation signals the appropriateness and relevance of such a discovery request.

Plaintiffs also cite several cases in which defendants have been compelled to produce documents relating to government investigations. *See, e.g., In re Wirebound Boxes Antitrust Litigation*, 126 F.R.D. at 556 (requiring defendants to product "documents which they submitted to the government in response to an investigation of the wirebound box industry and which they created independently from any such investigation); *Golden Quality Ice Cream*, 87 F.R.D. at 59. These cases recognize the relevance of these documents to antitrust litigation. *See In re Wirebound Boxes Antitrust Litigation*, 126 F.R.D at 556. They also recognize that the production of these documents will impose only a minimum burden on the defendants. "since the documents in question have already been identified and sorted." *See, e.g., Golden Quality Ice Cream*, 87 F.R.D at 59. In fact, ordering production of these documents "seems to accord with prevailing practice." *Id.* [FN7]

> FN7. In *In re Wirebound Boxes AntiTrust Litigation*, defendants were not required to produce all documents related to government investigations into the wirebound box industry. 136 F.R.D. at 556. Instead, the court struck a compromise between the need of civil litigants to discover relevant materials and the need to preserve the secrecy of the grand

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *12 (E.D.Pa.))

Page 11

jury process, regardless of the literal text of Rule 6(e). *Id.* The court achieved this balance by requiring defendants to produce all documents created independently from any government investigation, while requiring plaintiffs to show particularized need prior to disclosing documents created by a grand jury or at a grand jury's request, such as subpoenas, transcripts, and lists of documents. *Id.* Although this Court agrees with the general principles of *In re Wirebound Boxes AntiTrust Litigation,* it will not adopt a judicially created discovery limitation in contravention of the literal text of Rule 6(e), which imposes no secrecy obligation on witnesses or private parties who supply documents to grand jury proceedings.

\*13 This Court agrees with the logic of *In re Wirebound Boxes AntiTrust Litigation* and *Golden Quality Ice Cream* [FN8] Applying this logic, defendants shall be required to produce all documents that were produced to the DOJ, any grand jury, and any domestic investigatory authority in connection with an investigation of the plastics additives industry. *See* Grand Jury Law and Practice § 5:6 (2d ed.2004) (evidence obtained independently of the grand jury proceeding does not ordinarily constitute a "matter occurring before the grand jury," even if same witness or similar evidence has been or will be presented to grand jury).

> FN8. The case cited in support of defendant's position, *In re Sulfuric Acid Antitrust Litigation,* 2004 WL 769376, at *3-5 (N.D.Ill. April 9, 2004), which prevented discovery in antitrust litigation of all documents related to sulfuric acid that were provided to a grand jury in connection with a related criminal investigation, is inapplicable. The court in *In re Sulfuric Acid Antitrust Litigation* was compelled to follow the Seventh Circuit's interpretation of Rule 6(e) as covering documents supplied to a grand jury, although created for purposes other than or independent of grand jury investigations. *Id.* at *3. It was also forced to follow the Seventh Circuit's interpretation of Rule 6(e)(2)(B) as covering civil defendants who have supplied documents to a grand jury in a related criminal investigation. *Id.* at *2.

B. Documents related to plastics additives that were submitted to foreign investigatory bodies

Defendants present two major objections to the proposal that defendants produce all documents turned over to foreign investigatory bodies in conjunction with the investigation of the plastics additives industry. First, defendants claim that documents produced to foreign investigative authorities are irrelevant to this lawsuit. (Def. Opp'n To Pl. Mot., at 12). Specifically, defendants claim that plaintiffs have alleged only that defendants engaged in a price-fixing conspiracy "in the United States," rather than a foreign price-fixing conspiracy; that foreign investigators focus on domestic markets over which they have control and jurisdiction; and that foreign investigators generally conduct wholesale seizures of files, thereby collecting documents irrelevant to the antitrust issues in this litigation. (*Id.*)

Second, defendants claim that this request, at such an early stage in the litigation, would impose an unnecessary burden on the parties. (*Id.* at 13). Defendants stress that foreign investigators may object to the production of documents, as the United States often does, and that production may disclose information about ongoing investigations. (*Id.*). Defendants further claim that foreign criminal investigations into alleged antitrust violations involve a different process than domestic criminal investigations into alleged antitrust violations. (*Id.*). Accordingly, because of this methodological difference, defendants claim that they would need to conduct a thorough review of the documents to determine the applicability of evidentiary privileges, that this review would be complicated by the fact that many of the documents are not likely to be in English, and that companies in defendants' position are not likely to have copies of documents that were seized pursuant to a foreign investigation into the plastic additives industry. (*Id.*).

Plaintiffs respond to defendants' objections by arguing that documents produced to foreign investigative bodies are as relevant as those produced to grand juries in the United States. (Pl. Reply Mem., at 8). Plaintiffs cite a recent order from *In re: Automotive Refinishing Paint Antitrust Litigation,* MDL Docket No. 1426 (E.D.Pa. October 29, 2004) (J. Surrick), in which the court affirmed its previous order requiring antitrust defendants, in response to document requests and interrogatories, to produce documents submitted to foreign investigative bodies relating to the production, pricing, marketing, sale, or distribution of automotive refinishing paint. *Id.* at *5-6. The

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *13 (E.D.Pa.))

Page 12

court reasoned that such information was relevant because foreign-price fixing activities would impact the domestic market for automotive refinishing paint, because evidence of foreign price-fixing among defendants would establish the existence of an illegal conspiracy in restraint of trade within the meaning of section 1 of the Sherman Act, and because evidence of foreign price-fixing would be material "to prove that they had the opportunity and ability to engage in domestic price-fixing for automotive refinishing paint." *Id.* at *8. The court further reasoned that the burden of producing these documents would not be significant because defendants had already agreed to produce all documents and information related to the United States; thus, requiring blanket production was easier than compelling defendants to sift through documents submitted to foreign investigative bodies for materials relevant to the United States. *Id.* at *10-11.

*14 It is well-settled that courts presiding over antitrust cases generally take a liberal view of relevance in determining the scope of discovery. *See, e.g., New Park Entm't, LLC v. Elec. Factory Concerts, Inc.*, 2000 WL 62315, at *3 (E.D.Pa. Jan 13, 2000) (internal quotations omitted). Applying this expansive view of relevance, this Court agrees that documents produced to foreign investigative bodies are relevant to determine whether defendants have engaged in price-fixing that affects American commerce. Regardless of whether plaintiffs have alleged a global conspiracy, materials produced to international government authorities may cover transactions involving the sale or marketing of plastic additives in the United States. They may also cover transactions and decision-making outside the United States that influence the sale or marketing of plastic additives in the United States. Accordingly, these documents may lead to evidence that illuminates defendants' motive and opportunity for the alleged conspiracy within the United States, the breadth of the conspiracy, and the manner by which defendants fraudulently concealed the conspiracy from plaintiffs. *See, e.g., In re Vitamins Antitrust Litigation*, 2001 WL 1049433, at *11-12 (D.D.C. June 20, 2001) (refusing to place geographic limitation on merits-based discovery in global price-fixing case because, although acts or communications outside the United States may be admissible to establish existence of conspiracy). In addition, such materials may help plaintiffs to discover the identity and location of potential witnesses and to impeach defendants' trial witnesses. *Id.*

This Court also rejects defendants' position that production of all documents submitted to international investigative authorities concerning plastic additives at this juncture in the litigation would pose a substantial burden on defendants. The scope of document production in antitrust litigation is often quite expansive. *See, e.g., In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 818 (3d Cir.1982) (no abuse of discretion where trial court permitted taking of 270 depositions and production of nearly two million documents in complex, nationwide antitrust claim); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 614 (7th Cir.1997) (pretrial discovery involved more than 1,000 depositions and over fifty million pages of documents); *In re Linerboard Antitrust Litigation*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003) (pretrial discovery required production of millions of pages of documents). Furthermore, although foreign antitrust investigations generally may be conducted in a distinct manner from domestic antitrust investigations, defendants have not provided this Court with specific, individualized reasons why the production of documents that defendants supplied to foreign investigative bodies would be burdensome in this particular litigation. Defendants fail to present evidence, such as affidavits from employees or written documentation, indicating that wholesale files were seized from defendants' international offices, that the documents produced to foreign investigative authorities are in languages other than English, or that defendants would need to review each and every document to determine whether it invokes applicable privileges. Nonetheless, this Court gives serious consideration to the defendants' generic contention that companies subject to foreign seizures of corporate records are not likely to have either lists of the documents seized or records indicating what was taken. Accordingly, defendants shall be required to provide documents related to plastic additives that were produced to foreign investigatory authorities, to the extent that defendants have knowledge of the identity of these documents and/or can reasonably obtain knowledge of the identity of these documents.

C. Time Period

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *14 (E.D.Pa.))

Page 13

*15 Defendants contend that the proposed discovery schedule of 60 days for class-related discovery is unrealistic. (Def. Opp'n to Pl. Mot., at 15). Defendants claim that this period allows inadequate time for factual development on class issues. (*Id.*).

This Court has refused to bifurcate discovery. This decision may require the parties to spend substantial time in responding simultaneously to merits-based discovery and class-based discovery. Because merits-based discovery may deflect attention and resources from establishing a record for class certification, this Court agrees that sixty days for class-based discovery is inadequate, particularly when both party may employ expert witnesses in support of their respective positions on class certification. *See, e.g., Larson v. Burlington Northern and Santa Fe Railway Co.*, 210 F.R.D. 663, 667 (D.Minn.2002) (granting bifurcation but supplying only ninety days to create record for class certification). Instead, this Court will give the parties 120 days to conduct fact-based discovery on the class certification issue.

D. Production of Data in Electronic Format and Technical Assistance

Defendants also object to the obligation that defendants provide data in electronic format to plaintiffs and that defendants provide technical assistance to plaintiffs in understanding this data. (Def. Opp'n to Pl. Mot., at 15). Defendants do not question the relevance of these obligations, only the fact that no similar burden is imposed upon plaintiffs. (*Id.*).

This Court agrees with defendants' objections. Both parties must provide all transactional data in electronic format, to the extent reasonably feasible. *See, e.g., In re: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 03-MD-1542 (D.Conn. October 31, 2003) (parties agree to produce transactional data in electronic format, but only to extent "reasonably feasible"). However, defendants shall not be required to make available "documentation and computer personnel" to help plaintiffs understand that data. Requiring this condition as a matter of right in contested litigation undermines the adversarial nature of antitrust litigation. Unless otherwise agreed upon, interpretations of data produced through discovery should be obtained through traditional discovery outlets and through the hiring of expert witnesses. Although the parties may privately agree to provide technical assistance to one another, this Court will not impose such an obligation on either party as a matter of course.

E. Discovery of Downstream Data

Defendants further object to the plaintiffs' proposed discovery order on the basis that the discovery order does not require plaintiffs to produce information about "demand conditions on the end markets for defendants' products and the varying types of pricing terms to the proposed class members that have resulted from those conditions." (Def. Mem. In Opp'n to Pl. Mot., at 3). Defendants claim that this information must be provided at the outset of the discovery period because it is relevant to whether plaintiffs meet the elements necessary for class certification. (*Id.* at 15).

*16 Plaintiffs note that their proposal does not prohibit defendants from requesting this information, as both parties are free to serve discovery requests seeking any information they require. (Pl. Reply Mem., at 9). However, in an effort to preempt future discovery disputes, plaintiffs note that case law prevents discovery of events occurring in the chain of distribution after the initial sales of the price-fixed product, information otherwise known as "downstream data." (*Id.* at 15; Pl. Mem. In Opp'n to Def. Mot., at 19-25).

This Court agrees that plaintiffs' proposed schedule does not prohibit defendants from seeking downstream data, to the extent relevant, through discovery. This Court also agrees that defendants have not established the relevance of plaintiffs' downstream data to the merits of plaintiffs' claims or to class certification issues. Defendants provide no case law in support of their argument. In fact, the case law brought to the Court's attention holds that downstream data is irrelevant to determine whether defendants are liable for price-fixing under the Sherman Act. *See, e.g., Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-725, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (holding that the overcharged direct purchaser, and not other indirect purchasers who receive the passed-on price of the illegal overcharge, may sue to recover the illegal overcharge and that antitrust defendants may not introduce evidence that indirect purchasers were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

injured by illegal overcharge) (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)). As such, courts have refused to require production of downstream data in antitrust price-fixing cases. *See, e.g., In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 301 (D.D.C.2000) (noting that "no court has even allowed production of individualized downstream data" in antitrust case and refusing to grand defendants' motion to compel documents that relate to plaintiffs' use, manufacture, sale, marketing, distribution, or supply of vitamin products); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578 (D.Minn.1990) (denying motion to compel document requests for materials concerning plaintiffs' financial information in price-fixing antitrust litigation because plaintiffs do not seek to recover lost profits); *In re Carbon Dioxide Antitrust Litigation*, MDL 940, slip op. at 4 (M.D.Fl. Nov. 19, 1993) (refusing to permit discovery in antitrust litigation of plaintiffs' sales, profits, and costs of products for which liquid carbon dioxide and nitrogen are used because plaintiffs seek to recover overcharges from defendants' antitrust violations). Consequently, although this Court will not *per se* preclude defendants at this time from requesting downstream data through discovery, this Court will certainly not require plaintiffs to produce downstream data at the outset of the discovery period through the entry of a scheduling order.

V. Conclusion

For the following reasons, defendants' motion to bifurcate discovery is denied and plaintiffs' motion for entry of a discovery schedule is granted in part and denied in part. An order and scheduling order consistent with this opinion follow.

ORDER

*17 AND NOW, this _____ day of November 2004, upon consideration of Defendants' Join Motion for Bifurcation of Discovery and Entry of a Scheduling Order (Doc. No. 88) filed on September 14, 2004, Plaintiffs' Opposition to Motion for Bifurcation (Doc. No. 92) filed on October 1, 2004, Defendants' Joint Memorandum in Further Support of Defendants' Motion for Bifurcation of Discovery and Entry of a Scheduling Order (Doc. No. 98) filed on October 21, 2004, Plaintiffs' Motion for Entry of Proposed Discovery Scheduling Order (Doc. No. 93) filed on October 1, 2004, Defendants' Opposition to Plaintiffs' Motion for Entry of Proposed Scheduling Order (Doc. No. 96) filed on October 15, 2004, and Plaintiffs' Reply Memorandum in Support of Motion for Entry of Proposed Discovery Scheduling Order (Doc. No. 103) filed on November 10, 2004, it is hereby ORDERED as follows:

1. Defendants' Motion for Bifurcation is DENIED

2. Plaintiffs' Motion for Entry of a Proposed Scheduling Order is GRANTED in part and DENIED in part.

3. Discovery shall be completed according to the Scheduling Order that accompanies this Order. [FN*]

FN* Editor's Note: Scheduling Order is not included in this publication.

Not Reported in F.Supp.2d, 2004 WL 2743591 (E.D.Pa.), 2004-2 Trade Cases P 74,620

Motions, Pleadings and Filings (Back to top)

. 2005 WL 1241137 (Trial Pleading) Plaintiffs' Opposition to Arkema, Inc.'s Motion for Partial Reconsideration (Apr. 15, 2005)Original Image of this Document (PDF)

. 2004 WL 2717510 (Trial Motion, Memorandum and Affidavit) Joint Memorandum of Defendants in Opposition to Plaintiffs' Motion for Entry of Proposed Discovery Scheduling Order (Oct. 15, 2004)Original Image of this Document (PDF)

. 2004 WL 2717499 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion to Delay the Resolution of These Proceedings by Bifurcating the Case Into "Merits" and "Class" Phases and Staying "Merits Discovery" (Oct. 1, 2004)Original Image of this Document (PDF)

. 2004 WL 2717504 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Entry of Proposed Discovery Scheduling Order (Oct. 1, 2004)Original Image of this Document (PDF)

. 2004 WL 2717491 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Motion for Bifurcation of Discovery and Entry of a Scheduling

Not Reported in F.Supp.2d
(Cite as: 2004 WL 2743591, *17 (E.D.Pa.))

Page 15

Order (Sep. 14, 2004)Original Image of this Document (PDF)

. 2004 WL 2717481 (Trial Pleading) Answer of Rohm and Haas Company to Consolidated Amended Complaint (Sep. 8, 2004)Original Image of this Document (PDF)

. 2004 WL 2717477 (Trial Pleading) Answer and Affirmative Defenses of Defendant Baerlocher USA, LLC (Aug. 6, 2004)Original Image of this Document (PDF)

. 2004 WL 2717467 (Trial Pleading) Answer and Additional Defenses of Defendant Atofina Chemicals, Inc. (Aug. 5, 2004)Original Image of this Document (PDF)

. 2004 WL 2717474 (Trial Pleading) Answer of Defendant Mitsubishi Rayon America, Inc. (Aug. 5, 2004)Original Image of this Document (PDF)

. 2004 WL 2717455 (Trial Pleading) Kreha Corporation of America's Answer to Consolidated Amended Complaint (Aug. 4, 2004)Original Image of this Document (PDF)

. 2004 WL 2717460 (Trial Pleading) Ferro Corporation's Answer to Plaintiffs' Consolidated Amended Complaint (Aug. 4, 2004)Original Image of this Document (PDF)

. 2004 WL 2717450 (Trial Pleading) Answer of Defendants Akzo Nobel Inc. and Akcros Chemicals America Inc. to Consolidated Amended Complaint (Aug. 2, 2004)Original Image of this Document (PDF)

. 2004 WL 2717439 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Their Motion for Partial Dismissal of the Consolidated Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) (Feb. 23, 2004)Original Image of this Document (PDF)

. 2004 WL 2717444 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Reply in Support of Motion to Dismiss for Failure to State a Claim (Feb. 23, 2004)Original Image of this Document (PDF)

. 2004 WL 2717435 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to (A) Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Amended Complaint and (B) Defendants' Motion for Partial Dismissal of the Consolidated Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 9( b) (Jan. 23, 2004)Original Image of this Document (PDF)

. 2003 WL 23904324 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Their Motion for Partial Dismissal of the Consolidated Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) (Dec. 1, 2003)Original Image of this Document (PDF)

. 2003 WL 23904337 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss (Dec. 1, 2003)Original Image of this Document (PDF)

. 2003 WL 23904301 (Trial Pleading) Consolidated Amended Complaint (Sep. 3, 2003)Original Image of this Document (PDF)

END OF DOCUMENT