# EXHIBIT 21

# UNITED STATES CODE

## Congressional and Administrative News

## 97th Congress—Second Session
## 1982

Convened January 25, 1982

The House Adjourned December 21, 1982
and the Senate Adjourned
December 23, 1982

## Volume 3

LEGISLATIVE HISTORY
[PUBLIC LAWS 97-249 to 97-364]

ST. PAUL, MINN.
WEST PUBLISHING CO.

EXPORT TRADING COMPANIES
P.L. 97-290

I would be happier with this bill if it were less restrictive. I would be most pleased if we had decided to remove all restrictions on bank holding companies, banks, and business enterprises that wish to offer banking services. Banks and other financial intermediaries need not be limited to only a few lines of business and no others. I hope at some future time we will be bold enough to move banking into a fully competitive environment without the suffocating restrictions and protections now in law. The Bank Export Services Act may be a small part of a larger deregulation and it is on that hope that I support it.

RON PAUL.

HOUSE REPORT NO. 97-686

*Much of Title IV of this Public Law was derived from H.R. 5235 (House Report No. 97-686, Aug. 2, 1982). House Report No. 97-686 is set out:*

[page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 5235) to amend the Sherman Act, the Clayton Act, and the Federal Trade Commission Act to exclude from the application of such Acts certain conduct involving exports, having considered the same, reports favorably thereon with amendments and recommends that the bill as amended do pass.

\*    \*    \*    \*    \*

[page 2]

I. PURPOSE

H.R. 5235 is one of several bills introduced in the 97th Congress that seek to promote American exports. A number of considerations provide the basis for this legislation. First is the apparent perception among businessmen that American antitrust laws are a barrier to joint export activities that promote efficiencies in the export of American goods and services. Second, courts differ in their expression of the proper test for determining whether United States antitrust jurisdiction over international transactions exists. H.R. 5235 addresses these problems of perception and definition by clarifying the Sherman Act and the antitrust proscriptions of the Federal Trade Commission Act to make explicit their application only to conduct having a "direct, substantial, and reasonably foreseeable effect" on domestic commerce or domestic exports. The bill will also clarify Section 7 of the Clayton Act to make explicit its inapplicability to the promotion and operation of export and foreign joint ventures.

Passage of H.R. 5235 will not be a panacea for the many problems that may be afflicting American export trade. Assertions that the antitrust laws have had any significant negative impact on exports are at best speculative. Nonetheless, H.R. 5235 will achieve several objectives. First, H.R. 5235 will encourage the business community to engage in efficiency producing joint conduct in the export of American goods and services. Second, enactment of a single, objective test—the "direct, substantial, and reasonably foreseeable effect" test—will serve

2487

LEGISLATIVE HISTORY
P.L. 97-290

as a simple and straightforward clarification of existing American law and the Department of Justice enforcement standards. A clear

[page 3]

benchmark will exist for businessmen, attorneys and judges as well as our trading partners.

## II. SUMMARY OF THE REPORTED BILL

H.R. 5235, as reported, contains four sections. Section 1 sets forth the short title: the "Foreign Trade Antitrust Improvements Act of 1982." Section 2 amends the Sherman Act, 15 U.S.C. §§ 1, et seq., by adding a new Section 7 that makes the Sherman Act inapplicable to conduct involving trade or commerce with foreign nations, other than import transactions, unless there is a "direct, substantial, and reasonably foreseeable effect" on domestic or import commerce, or the export opportunities of a domestic person. Section 3 amends Section 7 of the Clayton Act, 15 U.S.C. § 18, to make it inapplicable to the formation or operation of joint ventures limited to commerce with foreign nations, other than import commerce. Section 4 amends the antitrust (i.e., unfair methods of competition) aspect of Section 5(a) of the Federal Trade Act, 15 U.S.C. § 45(a), to conform to Section 5 of the FTC Act to the Sherman Act amendment contained in Section 2 of H.R. 5235.

## III. BACKGROUND

### A. PROCEDURAL HISTORY OF H.R. 5235

On March 4, 1981, Chairman Rodino and Congressman McClory introduced H.R. 2326, the Foreign Trade Antitrust Improvements Act of 1981, the forerunner of H.R. 5235. The bill was referred to the Committee on the Judiciary, and, in turn, to the Subcommittee on Monopolies and Commercial Law.

The Subcommittee held three days of hearings on the international application of the United States' antitrust laws, H.R. 2326, and related bills. Testifying on March 26, 1981, were Malcolm Baldridge, Secretary of Commerce; Professor Eleanor M. Fox of the New York University School of Law; Mr. A. Paul Victor of the law firm of Weil, Gotshal & Manges; Mr. David N. Goldsweig, an attorney experienced in international antitrust issues, practicing with the General Motors Corp.; and Professor James A. Rahl, Owen L. Coon, Professor of Law at Northwestern University. Testifying on April 8, 1981, were Mr. John H. Shenefield of the law firm of Milbank, Tweed, Hadley & McCloy and a former Assistant Attorney General in charge of the Antitrust Division of the United States Department of Justice; Mr. James R. Atwood of the law firm of Covington & Burling and former Deputy Assistant Secretary and Deputy Legal Adviser in the United States Department of State; and Mr. Martin F. Connor, Washington Corporate Counsel of the General Electric Co., who testified on behalf of the Business Roundtable. Finally, testifying on June 24, 1981, were Gordon O. F. Johnson, Chairman, LogEtronics, Inc.; Mr. Thomas M. Rees, a former Member of Congress and an attorney familiar with export issues; and Mr. Fred Emery, a former Director of the Federal Register.

On December 10, 1981, the Subcommittee unanimously approved an amendment to H.R. 2326 in the nature of a substitute, which was introduced as H.R. 5235, cosponsored by all twelve Members of the Sub-

**EXPORT TRADING COMPANIES**
P.L. 97-290
[page 4]

committee. On May 18, 1982, by unanimous voice vote, the full Committee reported H.R. 5235 with an amendment in the nature of a substitute.

B. NEED FOR LEGISLATION

*1. Business perception that antitrust laws prohibit legitimate joint activity*

Some testimony in the hearing record suggests that the United States is doing well as an exporter and that whatever problems that might exist are not caused by our antitrust laws. *See, e.g.,* Prepared statement of Professor James A. Rahl, dated March 26, 1981 ("Rahl Statement"), at 3-4.

This view is borne out by a July 1980 report to the Congress prepared by the Office of the United States Trade Representative and the Department of Commerce. The report found that the three government policies that most discourage United States exports are taxation of Americans employed abroad, uncertainties about enforcement of the Foreign Corrupt Practices Act, and export control regulations. The Report specifically stated that while antitrust laws were of concern of businessmen, "No specific instances were shown of these laws unduly restricting exports." Professor Rahl testified that, far from hindering our export efforts, American antitrust laws have been a major factor in ridding the world of many international cartels and enhancing domestic competition, both factors in improving our overall export performance. Rahl Statement at 7-9.

There is, however, evidence that a perception exists among businessmen, especially small businessmen, that antitrust law prohibits efficiency-enhancing joint export activities. For example, Secretary Baldridge testified that antitrust assurances were necessary to encourage small- and middle-sized exporters to increase their exports. Prepared Statement of Honorable Malcolm Baldrige, dated March 26, 1981, ("Baldrige Statement"), at 5-7; Hearing Transcript of March 26, 1981, at 44-45. Professor Fox, Mr. Victor, Mr. Goldsweig and Mr. Shenefield also acknowledged a perception of the antitrust laws as a hindrance in joint export activities. Hearing Transcript of March 26, 1981, at 51, 57; Prepared Statement of Professor Eleanor M. Fox, dated March 26, 1981 ("Fox Statement"), at 2-3; Prepared Statement of Mr. A. Paul Victor, dated March 26, 1981 ("Victor Statement"), at 3-4; Prepared Statement of Mr. David N. Goldsweig, dated March 26, 1981 ("Goldsweig Statement"), at 2; Prepared Statement of Mr. John H. Shenefield, dated April 8, 1981 ("Shenefield Statement"), at 1-2. As Mr. Shenefield stated, "[i]t is an article of orthodoxy in the business community that the antitrust laws stand as an impediment to the international competitive performance of the United States. Specifically, it is believed that the antitrust laws hinder our export performance. . . ." Shenefield Statement at 1-2. And the Section of Antitrust Law of the American Bar Association mentions the *"perception* of some American businessmen that the United States antitrust laws prohibit certain exporting activities. . . ." American Bar Association, Section of Antitrust Law, *Report to Accompany Resolutions Concerning Legislative Proposals to Promote Export Trading,* dated October 26, 1981 ("Antitrust Section Report") at 22 (emphasis in original).

2489