EXHIBIT 23

# ANTITRUST LAW DEVELOPMENTS (FIFTH)

## Volume I

Editorial Board

Debra J. Pearlstein
*Chair*

Robert E. Bloch
Ronan P. Harty
Paul B. Hewitt
Harvey I. Saferstein
James I. Serota
Willard K. Tom





Defending Liberty
Pursuing Justice

American Bar Association

# CHAPTER II

# MONOPOLIZATION AND RELATED OFFENSES

## A. Introduction

While Section 1 of the Sherman Act prohibits only contracts, combinations, and conspiracies in restraint of trade, Section 2 of the act prohibits monopolization and attempted monopolization, offenses that do not require any proof of concerted action, as well as monopolization by combination or conspiracy: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ."[1] While the elements of monopolization and attempted monopolization are different, they share a number of common underlying principles.

## B. Monopolization: Willful Acquisition or Maintenance of Monopoly Power

A monopolization claim under Section 2 of the Sherman Act requires proof of both monopoly power (the power to control prices or exclude competition) and the willful acquisition or maintenance of that power (that is, anticompetitive conduct that contributes to the acquisition or preservation of such power).[2] The Supreme Court identified the elements of the offense in *United States v. Grinnell Corp.*:[3]

> The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.[4]

---

1. 15 U.S.C. § 2 (2000).
2. As with § 1 of the Sherman Act, § 2 applies only to conduct that is in or affects interstate commerce. In addition, a private plaintiff seeking damages under § 4 of the Clayton Act, 15 U.S.C. § 15 (2000), for a violation of § 2 of the Sherman Act must demonstrate "antitrust injury." Antitrust injury is discussed in part C.2 of Chapter X.
3. 384 U.S. 563 (1966)
4. *Id* at 570-71; *accord* Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992); Aspen Skiing Co v Aspen Highlands Skiing Corp., 472 U.S. 585, 596 n.19 (1985); United States v Griffith, 334 U.S. 100, 107 (1948); High Tech Careers v. San Jose Mercury News, 996 F.2d 987, 989-90 (9th Cir. 1993); Bright v. Moss Ambulance Serv., 824 F.2d 819, 823 (10th Cir

229

may be more theoretical than real because the ability to control price ultimately depends on an absence of meaningful competition.[7]

The first element of a monopolization claim requires only that monopoly power exist,[8] not that it be exercised. In *American Tobacco Co. v. United States*,[9] the Supreme Court held "that the material consideration in determining whether a monopoly exists is not that prices are raised and that competition actually is excluded but that power exists to raise prices or to exclude competition when it is desired to do so."[10] Monopoly power that exists for only a short period, however, may not support a monopolization claim.[11]

---

The D.C. Circuit has used or endorsed both definitions. *Compare* Neumann v. Reinforced Earth Co., 786 F.2d 424, 430 (D.C. Cir. 1986) (upholding jury verdict rendered after instruction stating the requirement conjunctively), *cert. denied*, 479 U.S. 851 (1986), *with* Southern Pac. Communs Co. v. AT&T, 740 F.2d 980 (D.C. Cir. 1984) (disjunctive), *cert. denied*, 470 U.S. 1005 (1985).

7. *See* United States v. E.I. duPont de Nemours & Co., 351 U.S. 377, 392 (1956) ("Price and competition are so intimately entwined that any discussion of theory must treat them as one. It is inconceivable that price could be controlled without power over competition or vice versa."); Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., 783 F.2d 159, 164 (10th Cir. 1986); Deauville Corp. v. Federated Dep't Stores, 756 F.2d 1183, 1188 (5th Cir. 1985) (quoting *duPont*).

8. Courts have often used the term "market power" as a synonym for "monopoly power." *See e.g.*, Cost Mgmt. Servs. v. Washington Natural Gas Co., 99 F.3d 937, 950 n.15 (9th Cir. 1996) ("The terms 'market power' and 'monopoly power' are used interchangeably herein."); U.S. Anchor Mfg. Co. v. Rule Indus., 7 F.3d 986, 994 n.12 (11th Cir. 1993) ("The terms 'monopoly power' and 'market power' are synonymous ...."), *cert. denied*, 512 U.S. 1221 (1994); Advo, Inc. v. Philadelphia Newspapers, 854 F. Supp. 367, 374 n.22 (E.D. Pa. 1994) ("'Market power' is a synonym for 'monopoly power'") (citing International Distribution Ctrs. v. Walsh Trucking Co., 812 F.2d 786, 791 n.3 (2d Cir.), *cert. denied*, 482 U.S. 915 (1987)), *aff'd*, 51 F.3d 1191 (3d Cir. 1995); Town of Concord v. Boston Edison Co., 721 F. Supp. 1456, 1459 (D. Mass. 1989) (the terms "are generally used interchangeably"), *rev'd on other grounds*, 915 F.2d 17 (1st Cir. 1990), *cert. denied*, 499 U.S. 931 (1991); General Foods Corp., 103 F.T.C. 204, 357 (1984).

In *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992), however, the Supreme Court stated that "[m]onopoly power under § 2 requires, of course, something greater than market power under § 1." *Id.* at 481. Other courts have apparently defined monopoly power as a large amount of market power. *See, e.g.*, Colorado Interstate Gas Co. v. Natural Gas Pipeline Co., 885 F.2d 683, 694 n.18, 696 n.22 (10th Cir. 1989) ("Monopoly power can be distinguished from a lesser amount of market power only in degree.") (quoting LAWRENCE A. SULLIVAN, ANTITRUST § 22, at 75 (1977), and American Standard, Inc. v. Bendix Corp., 487 F. Supp. 265, 269 (W.D. Mo. 1980)), *cert. denied*, 498 U.S. 972 (1990). The latter approach is consistent with the Supreme Court's pronouncement. Neither *Eastman Kodak* nor the lower court decisions, however, explain where market power ends and monopoly power begins.

9. 328 U.S. 781 (1946).

10. *Id.* at 811; *accord* Illinois ex rel Hartigan v. Panhandle E. Pipe Line Co., 730 F. Supp. 826, 902 (C.D. Ill. 1990) (quoting *American Tobacco*), *aff'd sub nom*. Illinois ex rel Burris v. Panhandle E. Pipe Line Co., 935 F.2d 1469 (7th Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992).

11. *See, e.g.*, Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 968 (10th Cir.) (dictum) ("market power, to be meaningful for antitrust purposes, must be durable"), *cert. denied*, 497 U.S. 1005 (1990); Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of Am., 885 F.2d 683, 695-96 & n.21 (10th Cir. 1989) (a temporary ability to charge monopoly prices will not support a § 2 claim), *cert. denied*, 498 U.S. 972 (1990); Deauville Corp. v. Federated Dep't Stores, 756 F.2d 1183, 1190-91 (5th Cir. 1985) (short-run control over price of first mall in area did not constitute monopoly power); Apex Oil Co. v. DiMauro, 713 F. Supp. 587, 600-01 (S.D.N.Y. 1989) (power over price for a few days insufficient); Metro Mobile CTS, Inc. v. NewVector Communs., 661 F. Supp. 1504 (D. Ariz. 1987) (17-month head start in market too short to permit finding of monopoly power), *aff'd*, 892 F.2d 62 (9th Cir. 1989).

232                    ANTITRUST LAW DEVELOPMENTS (FIFTH)

Although the vast majority of cases deal with monopoly power of sellers, a buyer may also possess power over price and entry.[12] This power on the buyer's part is referred to as "monopsony power" to distinguish it from a seller's monopoly power.[13]

## 1. *Definition of the Relevant Market*[14]

To determine whether monopoly power exists, it is necessary to define the relevant market in which the power over price or competition is to be appraised.[15] "Without a definition of that market there is no way to measure [a defendant's] ability to lessen or destroy competition."[16] Thus, the definition of the relevant market

---

12. *See, e.g.*, United States v. Griffith, 334 U.S. 100, 108 (1948).
13. *See, e.g.*, In re Beef Indus. Antitrust Litig., 907 F.2d 510, 514-16 (5th Cir. 1990) (rejecting claim that defendants had monopsony power in the fed cattle procurement market); United States v. Syufy Enters., 903 F.2d 659, 663-71 (9th Cir. 1990) (rejecting claim that owner of majority of first-run movie screens in Las Vegas had monopsony power); DeLoach v. Philip Morris Cos., 2001-2 Trade Cas. (CCH) ¶ 73,409 (M.D.N.C. 2001) (denying motion to dismiss monopsony claims where Philip Morris allegedly had 65% share of tobacco purchasing market); Sunshine Cellular v. Vanguard Cellular Sys., 810 F. Supp. 486, 493-94 (S.D.N.Y. 1992) (denying motion to dismiss monopsony claim with respect to cellular phone roaming services); Christianson v. Colt Indus. Operating Corp., 766 F. Supp. 670, 687 (C.D. Ill. 1991) (granting summary judgment for defendant on monopsony claim as to market for components of Colt rifles); Westchester Radiological Assocs. P.C. v. Empire Blue Cross & Blue Shield, 707 F. Supp. 708, 714-15 (S.D.N.Y.) (assuming defendant had significant market power as a purchaser of hospital services), *aff'd*, 884 F.2d 707 (2d Cir. 1989), *cert. denied*, 493 U.S. 1095 (1990).
14. Market definition is discussed in detail in Chapter VI.
15. A firm can be a monopolist only of a market in which it competes. *See, e.g.*, Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1061-62 (2d Cir.) ("axiomatic that a firm cannot monopolize a market in which it does not compete"), *reversed and remanded on other grounds*, 525 U.S. 128 (1996); White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 104-05 (4th Cir. 1987) (affirming summary judgment for hospital on ground that hospital and plaintiff neurologist did not compete); Mercy-Peninsula Ambulance, Inc. v. County of San Mateo, 791 F.2d 755, 759 (9th Cir. 1986) (rejecting ambulance company's challenge to county's award of exclusive contract to plaintiff's competitor because county was not a competitor in the market for health care provision and thus could not be charged with using market power to exclude competition).
16. Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177 (1965). Numerous cases have held specifically that proof of a relevant market is an essential element of any claim for monopolization or attempted monopolization under § 2. *See, e.g.*, Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459 (1993); United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); United States v. Microsoft Corp., 253 F.3d 34, 50, 81 (D.C. Cir.), *cert. denied*, 122 S. Ct. 350 (2001); Hack v. President & Fellows of Yale Coll., 237 F.3d 81, 85 (2d Cir. 2000), *cert. denied*, 122 S. Ct. 201 (2001); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 750 (3d Cir. 1996); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987); Jayco Sys., Inc. v. Savin Bus. Mach. Corp., 777 F.2d 306, 319 (5th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986); Nifty Foods Corp. v. A&P, 614 F.2d 832, 840 (2d Cir. 1980); Mullis v. Arco Petroleum Corp., 502 F.2d 290, 295 & n.14 (7th Cir. 1974) (Stevens, J.); Pepsico, Inc. v. Coca-Cola Co., 114 F. Supp. 2d 243, 247-48 (S.D.N.Y. 2000); Virginia Vermiculite, Ltd. v. W.R. Grace & Co., 108 F. Supp. 2d 549, 590 (W.D. Va. 2000); America Online, Inc. v. Greatdeals Net, 49 F. Supp. 2d 851, 857-59 (E.D. Va. 1999); Aldridge Co. v. Microsoft Corp., 995 F. Supp. 728, 752 (S.D. Tex. 1998). *But see* Re/Max Int'l, Inc. v. Realty One, Inc., 173 F.3d 995, 1016 (6th Cir. 1999) (where product market—real estate brokerage—had been established and where geographic markets were determined to be local in nature but no specific local market had been proven "with precision," plaintiff could establish monopoly power through "direct evidence of a monopoly, that is, actual control over prices or actual exclusion of competitors").

can often be the key to a Section 2 case.[17]

A relevant market has both product[18] and geographic dimensions.[19] The boundaries of a relevant product market are determined principally by the reasonable interchangeability of use of the products;[20] products that are reasonably interchangeable in use generally compete with each other and are thus included in the same market. Products also may be included in the same market if producers of one product can quickly and cheaply shift to produce the other product in response to a higher price for that product.[21] The relevant geographic market is the area to which customers can reasonably turn for sources of supply.[22]

Definition of the relevant market for purposes of Sherman Act Section 2 presents the same issues as definition of the relevant market for other antitrust purposes, including Sherman Act Section 1 and Clayton Act Section 7.[23] These issues are addressed in greater detail in Chapter VI.

## 2. *Evidence of Monopoly Power*

Monopoly power can be proven by direct evidence of the actual exercise of control over prices in the relevant market and/or the actual exclusion of competition from the relevant market.[24] Because direct evidence of control or exclusion is seldom

---

17  For example, in *United States v Aluminum Co of America*, 148 F 2d 416 (2d Cir 1945), the district court had computed Alcoa's market share to be about 33%; after redefining the relevant market, Judge Hand computed Alcoa's share to be over 90%. *Id* at 424-25. This recomputed market share led the court to conclude that Alcoa had monopoly power. In *Microsoft Corp.*, 253 F 3d at 53-54, the D C Circuit rejected Microsoft's argument that middleware should be included in the relevant market even though plaintiff's broader claim was that Microsoft sought to suppress middleware's threat to its operating system monopoly: "the test of reasonable interchangeability ... required the District Court to consider only substitutes that constrain pricing in the reasonably foreseeable future, and only products that can enter the market in a relatively short time can perform this function."

18  Relevant markets include service and technology markets. *See, e g*, Townshend v Rockwell Int'l Corp., 2000-1 Trade Cas (CCH) ¶ 72,890, at 87,635 (N.D Cal 2000) (market was proprietary technology necessary to practice a 56K modem).

19  *See, e g*, Brown Shoe Co v United States, 370 U.S. 294, 324 (1962); Bathke v. Casey's Gen Stores, 64 F 3d 340, 344-45 (8th Cir. 1995); Los Angeles Mem'l Coliseum Comm'n v NFL, 726 F 2d 1381, 1392 (9th Cir.), *cert denied*, 469 U.S 990 (1984).

20  *See. e g.*, United States v E I duPont de Nemours & Co., 351 U.S 377, 394 (1956); *see also* part B.1 of Chapter VI.

21  *See* part B.2 of Chapter VI.

22  *See* part C of Chapter VI; *see also* Tampa Elec Co v. Nashville Coal Co., 365 U.S. 320, 327 (1961); Standard Oil Co. v United States, 337 U S 293, 299 n 5 (1949).

23  *See* part A of Chapter VI.

24  *See. e.g.*, American Tobacco Co. v. United States, 328 U.S. 781, 789 (1946) (exclusion of some competitors supported jury's monopolization finding); United States v. Microsoft Corp., 253 F.3d 34, 41 (D.C. Cir.) (direct evidence is where it can be proven that a firm can raise prices substantially above the competitive level), *cert denied*, 122 S. Ct 350 (2001); Forsyth v Humana, Inc., 114 F 3d 1467, 1475 (9th Cir. 1997) (dictum), *aff'd on other grounds*, 525 U.S 299 (1999); FTC v. Mylan Labs., 62 F Supp 2d 25 (D.D.C.) (allegations that Mylan instituted massive and successful price increases and constricted the supply of two drugs by denying its competitors the essential active ingredient to manufacture those generic drugs were sufficient to allege monopoly power), *modified on other grounds*, 99 F. Supp 2d 1 (D.D.C 1999); Rural Tel. Serv Co v Feist Publ'ns, 737 F Supp. 610 (D. Kan. 1990) (ability to raise prices without losing market share), *rev'd on other grounds*, 957 F 2d 765 (10th Cir.), *cert. denied*, 506 U S 984 (1992); Telerate Sys v Caro, 689 F Supp 221 (S.D.N.Y. 1988) (if direct proof of monopoly power were practicable, it