IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ) | |
| INTEL CORP. MICROPROCESSOR ) | |
| ANTITRUST LITIGATION ) | MDL Docket No. 05-1717-JJF |
| ) | |
| ADVANCED MICRO DEVICES, INC., a ) | DM No. _____ |
| Delaware corporation, and AMD ) | |
| INTERNATIONAL SALES & SERVICE LTD, ) | |
| a Delaware corporation,, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 05-441-JJF |
| v. ) | |
| ) | |
| INTEL CORPORATION, a Delaware ) | |
| corporation, and INTEL KABUSHIKI KAISHA, ) | |
| a Japanese corporation, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF JAMES PEARL
## IN SUPPORT OF AMD'S MOTION TO STRIKE

I, James Pearl, declare as follows:

1. I am an attorney licensed to practice law in the State of California. I am counsel at O'Melveny and Myers LLP, representing Advanced Micro Devices, Inc. and AMD International Sales & Service Ltd. (jointly, "AMD") in the above-captioned case. I am over 21 years of age and I make this declaration of my own personal knowledge and am competent to testify about the matters set forth herein.

### NEC SUBPOENA

2. On September 6, 2005, AMD served its document production subpoena on an officer of NEC Corporation at NEC's New York offices. (NEC Subpoena Attached as Exhibit 1.) After several months of negotiation, AMD agreed that NEC would produce all of its paper documents that were raided or otherwise provided to the Japanese Fair Trade Commission

1

("JFTC"). (Fully Executed Agreement Between NEC and AMD Attached as Exhibit 2.) AMD also agreed to pay all copying and shipping costs incurred by NEC. In the agreement, NEC required that AMD and NEC notify each other that negotiations were at impasse at least fifteen days before AMD would file a motion to compel. AMD and NEC agreed to postpone negotiations regarding NEC's production of electronic JFTC documents.

3.   After reviewing the NEC paper JFTC documents, on August 15, 2006, AMD provided Robert Parker (NEC's outside counsel at Paul Weiss) a list of narrowed requests that could be used to search the remaining JFTC electronic documents. (NEC Revised Requests Attached as Exhibit 3.) AMD limited its subpoena to documents created after April 2004, the date of the JFTC raids. In the NEC proposal (as with Fujitsu), AMD offered to pay all costs incurred in processing NEC's electronic JFTC documents -- allowing NEC to review and search its production using AMD's vendor at AMD's expense. AMD also offered to negotiate about cost-sharing for the costs NEC would incur searching for additional documents created after the JFTC raid and AMD had repeatedly stated its offer to pay its reasonable share of costs incurred by NEC in producing the documents responsive to the subpoena. AMD met and conferred on September 5, 2006 with Mr. Parker to discuss the next steps in NEC's production. NEC was receptive to AMD's proposal and said it would have further discussions with NEC executives in Japan. NEC never contacted AMD again regarding its proposal, it never declared impasse and it did not meet and confer prior to filing the motion to quash.

## FUJITSU SUBPOENA

4.   On October 4, 2005, AMD served its document production subpoena on Fujitsu Ltd.'s agent for service of process in Honolulu, Hawaii. (Fujitsu Subpoena Attached as Exhibit

4.) After several months of negotiation, on February 14, 2006, Fujitsu and AMD agreed that Fujitsu would produce all documents that were raided or otherwise provided to the JFTC. (Fully Executed Agreement Between AMD and Fujitsu Attached as Exhibit 5.) In that agreement, AMD promised to pay all copying costs and shipping costs incurred by Fujitsu in producing their JFTC documents. AMD then paid all of Fujitsu's costs as promised. After reviewing Fujitsu's JFTC production, on September 11, 2006, I sent to Jill Neiman (Fujitsu's outside counsel at Morrison & Foerster) a set of revised document requests. (Revised Requests Attached as Exhibit 6.) The revised document requests were narrowly drafted based on the materials in the JFTC production. The requests asked Fujitsu to search only the files of four custodians. Ms. Neiman never responded to my request to have a meeting nor did she provide any comments on the narrowed document requests. Further, Ms. Neiman never attempted to meet and confer regarding AMD's proposal and never indicated in any fashion that AMD and Fujitsu were at impasse prior to filing the Japanese OEM Motion to Quash.

I declare under the penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 22nd day of November, 2006 at Los Angeles, California.

_____
James Pearl

3