# EXHIBIT 1

# KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

**NEW YORK OFFICE**
1633 BROADWAY
NEW YORK, NEW YORK 10019-6799
212-506-1700
FACSIMILE: 212-506-1800

HOUSTON OFFICE
700 Louisiana Street
Suite 2200
Houston, TX 77002
(713) 220-8800
FAX: (713) 222-0843

ATLANTA OFFICE
1360 Peachtree Street, NE
Suite 1150
Atlanta, GA 30309
(404) 260-6080
FAX: (404) 260-6081

NEWARK OFFICE
One Gateway Center
Suite 2600
Newark, NJ 07102
(973) 645-9462
FAX: (973) 643-2030

SAN FRANCISCO OFFICE
Spear Tower
One Market Street – 36th Floor
San Francisco, California 94105
(415) 293-7961
Fax: (415) 293-8001

## Facsimile Transmission Cover Sheet

Confidentiality Notice: This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named below. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

| | |
|---|---|
| Attorney No.: 6200 | Client No./Matter No: 00000111 - AMD |

| | | |
|---|---|---|
| To: Linda J. Smith, Esq. | From: | Salem Katsh, Esq. |
| Company: O'Melveny & Myers | Phone: | 212-506-1793 |
| Phone: (310) 246-6801 | | |
| Fax: (310) 246-6779 | | |

| | | |
|---|---|---|
| # of Pages (including cover): 9 | Date: October 3, 2005 | Time: |

Additional comments/remarks/instructions: Micheal S. Sundermeyer, Esq.
Williams & Connolly LLP
Fax 202-434-5029.

Our facsimile # is (212) 506-1800. If you do not receive the correct number of pages or if there is another problem, please call (212) 506-1841.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

SALEM M. KATSH
212 506-1793

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

October 3, 2005

**VIA FACSIMILE
and FEDERAL EXPRESS**

Michael S. Sundermeyer, Esq.
Williams & Connolly, LLP
725 12th Street, Northwest
Washington, DC 20005-5901

Re:   Advanced Micro Devices, Inc. v. Intel Corp.

Dear Michael:

As per our recent discussion, I am enclosing a copy of AMD's subpoena to Sony Corporation in connection with the above-referenced matter.

You have agreed to accept service of the subpoena on behalf of Sony Corporation.

We appreciate your cooperation in this regard.

Sincerely,

Salem M. Katsh

Encl.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

# Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ADVANCED MICRO DEVICES, INC., a Delaware corporation, et al.,

V.

INTEL CORPORATION, a Delaware corporation, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: [1] 05-441
Pending in the
United States District Court
for the District of Delaware

TO: Sony Corporation
550 Madison Avenue
New York, New York 10022

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE | DATE AND TIME |
| --- | --- |
| Kasowitz, Benson, Torres & Friedman LLP 1633 Broadway, New York, New York 10019 | November 3, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiffs | DATE October 4, 2005 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Salem M. Katsh
Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019   (212) 506-1793

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

DATE                                   PLACE

SERVED

SERVED ON (PRINT NAME)                 MANNER OF SERVICE

SERVED BY (PRINT NAME)                 TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____              _____
                  DATE                   SIGNATURE OF SERVER

                                         _____
                                         ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

**Definitions**

 1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

 2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

 3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

 4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

 5. For purposes of this document request, "COMPANY" refers to Sony Corporation and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

 6. For purposes of this document request, "MDF" refers to market development funds.

**Instructions**

 1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

 2. In responding to each request set forth below, please set forth each request in full before each response.

 3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies;

date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-CAP and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS,

or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

    4. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

    5. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in computers sold in a particular geographic region.

    6. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

    7. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

    8. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

    9. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

    10. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

    11. All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

    12. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold

any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

**Purchase History**

    13. DOCUMENTS sufficient to show:

        a) the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

        b) the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-CAP, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

        c) Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

        d) Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

        e) Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

        f) The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Comparisons of INTEL and AMD MICROPROCESSORS**

    14. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

    15. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

    16. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

    17. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

18. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

19. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of products containing AMD and/or INTEL MICROPROCESSORS.

20. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

21. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

22. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.

CCI:718421.2

**EXHIBIT 2 FILED UNDER SEAL**