Exhibit B

# EXHIBIT B

## CATEGORIES OF
## DOCUMENTS AND TANGIBLE THINGS
## REQUESTED FOR PRODUCTION

### DEFINITIONS

1.      "Intel" shall mean and refer to defendant Intel Corporation, including its past and present officers, directors, agents, attorneys, employees, consultants, or other persons acting on its behalf.

2.      This "Litigation" means and refers to the litigation in which this Notice of Taking Deposition and request for Production of Documents and Tangible Things has been served.

3.      "Intel Custodians" means and refers to the approximately 1,027 individuals identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and Order Regarding Document Production entered by the Court in this Litigation.

4.      The "Special Master's Order" means and refers to the March 16, 2007 Order Regarding Intel's Evidence Preservation Issues entered by Special Master Vincent J. Poppiti.

5.      "Litigation Hold Notices" means and refers to the means by which Intel communicated its preservation obligations to Intel employees, including all oral or written notices, reminders, or other communications by Intel to Intel Custodians or other Intel employees.

6.      "Weekly Backup Tapes" means and refers to the backup tapes described by Intel in its March 5, 2007 Letter Brief filed with the Court.

\331505v1

7.    "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store e-mails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

8.    "Intel's Remediation Plan" refers to the plan that Intel is required to submit on April 17, 2007, pursuant to the Special Master's Order.

9.    "Documents" shall mean and include all "writings," "recordings" or "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence. Without limiting the generality of the foregoing, the term "documents" includes both hard copy documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases.  With respect to electronically stored data, "documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

## INSTRUCTIONS

1.    These requests call for the production of all responsive documents that are within the possession, custody or control of Intel, including its officers, directors, agents, attorneys, employees, and other persons acting on Intel's behalf.

2.    If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld

document: date; author; recipients; general subject matter; and legal basis upon which the document has been withheld.

    3.    These requests shall be deemed continuing so as to require further and supplemental production in accordance with F.R.C.P. 26(e).

## REQUESTS

1. Documents sufficient to describe fully any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, and/or governmental or internal investigations.

2. Documents sufficient to describe fully the operation, purpose and application of Intel's automatic deletion policies and practices applied to email or other electronic data.

3. Documents sufficient to describe fully how Intel's automatic deletion policies and practices have operated with respect to the email or other electronic data of each Intel Custodian, including the specific interval or period of time (whether 35 days, 45 days, 60 days or another period) each Intel Custodian's email or other electronic data was subjected to such automatic deletion.

4. Documents sufficient to describe fully the "tiered process to identify and preserve potentially relevant paper and electronic records" developed by Intel and referred to on page 1 of Intel's March 5, 2007 letter to the Court.

5. Documents sufficient to evidence fully all efforts undertaken by Intel to ensure that information relevant to this Litigation was not subject to, or being deleted by, the "auto-delete" functions of any computer system or storage device operating with respect to or containing any Intel Custodian data.

6. All documents constituting or evidencing communications by Intel to any Intel Custodian informing them that if they did not act affirmatively to preserve their email and/or other electronic data, it would be automatically deleted pursuant to an "auto-delete" function.

7. Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of all Litigation Hold Notices issued by Intel in connection with this Litigation, including the "hundreds of employees" to whom Litigation Hold Notices were sent as described on page 2 of Intel's March 5, 2007 letter to the Court.

8. Documents sufficient to show the "basic form of notice that had been used in

previous Intel litigation," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

9. Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of the "retention notices" sent out "on a rolling basis, throughout 2005, 2006 and 2007," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

10. Documents sufficient to evidence fully any and all efforts by Intel to monitor, assure and/or enforce compliance with Litigation Hold Notices, including without limitation the efforts referred to in Intel's March 5, 2007 letter to the Court and in the February 8, 2007 email of Intel attorney Robert E. Cooper.

11. All documents evidencing or concerning Intel's discovery of any known or suspected defects, deficiencies, errors or ambiguities in Litigation Hold Notices issued by Intel in connection with this Litigation.

12. Documents sufficient to evidence fully the "additional follow-up program" Intel instituted in or after October 2006 to "make sure Intel custodians were complying with the retention instructions," as referred to in the February 8, 2006 email of Intel attorney Robert E. Cooper.

13. Documents sufficient to evidence fully Intel's protocols, instructions, systems and practices for harvesting Intel Custodians' data.

14. Documents sufficient to show the operation, functionality, capabilities and implementation of Intel's Exchange journaling system, as described in letters dated March 20 and 28, 2007, from Intel attorney Robert E. Cooper.

15. Documents sufficient to show the operation, functionality, capabilities, and implementation of the EMC-based product, "EmailXtender", "DiskXtender" and "Centera," as referenced at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

16. Documents sufficient to describe fully and show the results of the "beta testing" undertaken with respect to the "archiving system," as described on page 6 of Intel's March 5, 2007 letter to the Court, including documents sufficient to show the basis for the statement that "[v]endor testing at the time of installation validated that the Archive was properly capturing email from the Exchange journaling system according to the parameters and design of the EMC software/hardware," as stated at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

17. All documents related to Intel's procurement from EMC of the "archive system" as described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper including, without limitation, any request for proposal by Intel and request for proposal response by EMC, and any contracts between Intel and EMC relating thereto.

18. Documents sufficient to show fully the design, architecture, implementation and functionality of the "archive system" system described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

19. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the migration of, or failure to migrate, Intel employees to dedicated servers for purposes of this Litigation.

20. All documents evidencing or pertaining to the facts and circumstances under which some Intel Custodians "were inadvertently not migrated to the server in 2005 and some, who were late identified, were not migrated upon such identification," as referenced on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

21. All documents evidencing or pertaining to the facts and circumstances under which "custodians added after the first 900 were not migrated to the [dedicated e-mail] servers," as referenced in the February 8, 2007 email from Intel attorney Robert E. Cooper.

22. Documents sufficient to show when and how Intel learned that some Intel Custodians "were not migrated to the server" as stated on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

23. Documents sufficient to describe fully Intel's policies and practices with respect to the creation, preservation and cataloguing of Weekly Backup Tapes.

24. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the creation, preservation and cataloguing of Weekly Backup Tapes, including specifically the "instructions to [sic] the IT Department to back up these [dedicated] servers on a weekly basis going forward and retain the back up tapes for purposes of this case" as described in the February 8, 2007 email of Intel attorney Robert E. Cooper.

25. Documents sufficient to describe fully the "routine back-up recycling procedures" as set forth on page 2, footnote 1 of Intel'sMarch 5, 2007 letter to the Court and in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

26. All documents evidencing or pertaining to the recycling of Weekly Backup Tapes by Europe Intel's IT department, and Intel's discovery thereof, as referenced in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

27. Documents sufficient to describe Intel's disaster recovery backup systems protocols or procedures in place since January 1, 2000, including backup tape system structure and design, backup tape rotation schedules and protocols, backup tape retention policies and practices, and backup tape restoration protocols.

28. Documents sufficient to show fully the timing, protocol, extent and methodology of Intel's creation, preservation and cataloguing of  the Complaint Freeze Tapes,

including specifically the instructions to "preserve a one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store emails" as described in Intel's March 5, 2007 letter to the Court.

29. A full inventory of all Intel Complaint Freeze Tapes, including the identity of the Intel Custodian's data contained on each such tape.

30. All documents relating to any actual or suspected loss or recycling of Complaint Freeze Tapes containing any Intel Custodian data (including without limitation those relevant to Intel's Munich, Germany operations), and Intel's discovery thereof.

31. All documents relating to the failure to instruct certain Intel Custodians to preserve relevant data, and Intel's discovery thereof, as described on pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

32. All documents relating to Intel's failure to timely provide Litigation Hold Notices or retention notices, and Intel's discovery thereof, as described in pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

33. All documents evidencing or relating to the steps taken by Intel following discovery of its failure to timely provide Litigation Hold Notices or retention notices to any Intel Custodian, and the timing of such steps.

34. All documents evidencing, referring or relating to the failure or suspected failure of any Intel Custodian to comply with a Litigation Hold Notice or retention instruction, including the timing and means by which it was discovered.

35. Documents sufficient to fully show Intel's actions, plans, processes, procedures, and protocols for preventing the loss or destruction of Intel Custodian data belonging to terminated Intel employees, including "Intel's policies requiring collection of electronic information from departing employees subject to litigation holds" as described at page 5 of Intel's March 5, 2007 letter to the Court.

36. All documents evidencing or discussing Intel's failure or suspected failure to preserve the data of Intel Custodians identified for lay-off, redeployment, separation or termination prior to the effective date of such lay-off, redeployment, separation or termination.

37. Documents sufficient to show when and how Intel learned that "terminated employees' documents may not have been saved," as set forth at page 3 of Intel's March 5, 2007 letter to the Court, including documents evidencing what Intel Custodian data was lost or destroyed.

38. Documents sufficient to show when and how Intel learned of each of the "inadvertent mistakes in implementation" of its "tiered preservation process," as stated on page 3 of Intel's March 5, 2007 letter to the Court.

39. Documents sufficient to show when and how Intel "discovered further inadequacies in preserving emails," as stated in the February 8, 2007 email from Intel attorney Robert E. Cooper.

40. Documents sufficient to fully show the nature, timing and details of Intel's "preliminary review" as described on page 7 of Intel's March 5, 2007 letter to the Court.

41. All documents evidencing or relating to the nature, purpose and timing of the investigation reflected in the draft spreadsheet provided by Intel counsel to AMD counsel on February 22, 2007.

42. All documents evidencing or reflecting any Intel Custodians' mistaken belief that Intel's IT group was retaining and preserving their email, and the timing and means by which such mistaken belief was discovered by Intel.

43. All documents that support or form the bases for the disclosures made and submitted by Intel pursuant to the Special Master's Order.

44. All documents that support, form the basis for, or are cited or referred to in Intel's Remediation Plan submitted pursuant to the Special Master's Order, including all documents that show the basis, rationale, and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.

45. Documents sufficient to identify and describe Intel's IT infrastructure relevant to the support, storage (including email storage conventions), maintenance and backup of electronic data relevant to this Litigation, including data residing on hard drives or other off-network media.

46. All documents that evidence or relate to Intel's remediation and backup data restoration efforts, including all documents that show the volumes and nature of data restored and the vendors and processes used.