# EXHIBIT B

AO88 (Rev. 12/06) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.
  V.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:   Gibson, Dunn & Crutcher LLP
      333 South Grand Avenue
      Los Angeles, California 90071-3197

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Attached Schedule A**

| PLACE | DATE AND TIME |
| --- | --- |
| O'Melveny & Myers LLP<br>1999 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067 | June 22, 2007<br>5:00 p.m. (Pacific Daylight Time) |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| [signature] Attorney For Plaintiffs | May 22, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James Pearl
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d) and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
              DATE                          SIGNATURE OF SERVER

                                            _____
                                            ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d) and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing or sampling commanded.
   (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
   (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
   (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
   (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
   (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

### DEFINITIONS

1.  "Intel" shall mean and refer collectively to defendants Intel Corporation and Intel Kabushiki Kaisha, including their respective past and present officers, directors, agents, attorneys, employees, consultants, or other persons acting on either of their behalf.

2.  This "Litigation" means and refers to the litigation in which this Subpoena has been served.

3.  "Intel Custodians" means and refers to the approximately 1,027 individuals identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and Order Regarding Document Production entered by the Court in this Litigation.

4.  The "Special Master's Order" means and refers to the March 16, 2007 Order Regarding Intel's Evidence Preservation Issues entered by Special Master Vincent J. Poppiti.

5.  "Litigation Hold Notices" means and refers to the means by which Intel communicated its preservation obligations to Intel employees, including all oral or written notices, reminders, or other communications by Intel to Intel Custodians or other Intel employees.

6.  "Weekly Backup Tapes" means and refers to the backup tapes described by Intel in its March 5, 2007 Letter Brief filed with the Court.

7.  "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store e-mails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

8.  "Intel's Remediation Plan" refers to the plan that Intel filed on April 23, 2007.

9.  "Documents" shall mean and include all "writings," "recordings" or "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence. Without limiting the generality of the foregoing, the term "documents" includes both hard copy documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases. With respect to electronically stored data, "documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

# INSTRUCTIONS

1. These requests call for the production of all responsive documents that are within the possession, custody or control of GIBSON DUNN & CRUTCHER LLP (hereafter "GIBSON"), including without limitation documents in the possession of vendors, contractors or consultants working under the direction or control of GIBSON in connection with the Litigation.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log, pursuant to Fed. R. Civ. P. 45(d)(2)(A), providing the following information with respect to each such withheld document: date; author; recipients; general subject matter; and legal basis upon which the document has been withheld.

4. If GIBSON objects to a request in part, please state specifically which part of the request GIBSON objects to and produce all DOCUMENTS responsive to all other parts of the request, pursuant to Fed. R. Civ. P. 45(d).

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that GIBSON stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, GIBSON shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At GIBSON's election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

1. Documents sufficient to describe fully any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, and/or governmental or internal investigations.

2. Documents sufficient to describe fully the operation, purpose and application of Intel's automatic deletion policies and practices applied to email or other electronic data.

3. Documents sufficient to describe fully how Intel's automatic deletion policies and practices have operated with respect to the email or other electronic data of each Intel Custodian, including the specific interval or period of time (whether 35 days, 45 days, 60 days or another period) each Intel Custodian's email or other electronic data was subjected to such automatic deletion.

4. Documents sufficient to describe fully the "tiered process to identify and preserve potentially relevant paper and electronic records" developed by Intel and referred to on page 1 of Intel's March 5, 2007 letter to the Court.

5. Documents sufficient to evidence fully all efforts undertaken by Intel to ensure that information relevant to this Litigation was not subject to, or being deleted by, the "auto-delete" functions of any computer system or storage device operating with respect to or containing any Intel Custodian data.

6. All documents constituting or evidencing communications by Intel to any Intel Custodian informing them that if they did not act affirmatively to preserve their email and/or other electronic data, it would be automatically deleted pursuant to an "auto-delete" function.

7. Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of all Litigation Hold Notices issued by Intel in connection with this Litigation, including the "hundreds of employees" to whom Litigation Hold Notices were sent as described on page 2 of Intel's March 5, 2007 letter to the Court.

8. Documents sufficient to show the "basic form of notice that had been used in previous Intel litigation," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

9. Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of the "retention notices" sent out "on a rolling basis, throughout 2005, 2006 and 2007," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

10. Documents sufficient to evidence fully any and all efforts by Intel to monitor, assure

and/or enforce compliance with Litigation Hold Notices, including without limitation the efforts referred to in Intel's March 5, 2007 letter to the Court and in the February 8, 2007 email of Intel attorney Robert E. Cooper.

11. All documents evidencing or concerning Intel's discovery of any known or suspected defects, deficiencies, errors or ambiguities in Litigation Hold Notices issued by Intel in connection with this Litigation.

12. Documents sufficient to evidence fully the "additional follow-up program" Intel instituted in or after October 2006 to "make sure Intel custodians were complying with the retention instructions," as referred to in the February 8, 2006 email of Intel attorney Robert E. Cooper.

13. Documents sufficient to evidence fully Intel's protocols, instructions, systems and practices for harvesting Intel Custodians' data.

14. Documents sufficient to show the operation, functionality, capabilities and implementation of Intel's Exchange journaling system, as described in letters dated March 20 and 28, 2007, from Intel attorney Robert E. Cooper.

15. Documents sufficient to show the operation, functionality, capabilities, and implementation of the EMC-based product, "EmailXtender", "DiskXtender" and "Centera," as referenced at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

16. Documents sufficient to describe fully and show the results of the "beta testing" undertaken with respect to the "archiving system," as described on page 6 of Intel's March 5, 2007 letter to the Court, including documents sufficient to show the basis for the statement that "[v]endor testing at the time of installation validated that the Archive was properly capturing email from the Exchange journaling system according to the parameters and design of the EMC software/hardware," as stated at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

17. All documents related to Intel's procurement from EMC of the "archive system" as described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper including, without limitation, any request for proposal by Intel and request for proposal response by EMC, and any contracts between Intel and EMC relating thereto.

18. Documents sufficient to show fully the design, architecture, implementation and functionality of the "archive system" system described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

19. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the migration of, or failure to migrate, Intel employees to dedicated servers for purposes of this Litigation.

20. All documents evidencing or pertaining to the facts and circumstances under which some Intel Custodians "were inadvertently not migrated to the server in 2005 and some, who were late identified, were not migrated upon such identification," as referenced on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

21. All documents evidencing or pertaining to the facts and circumstances under which "custodians added after the first 900 were not migrated to the [dedicated e-mail] servers," as referenced in the February 8, 2007 email from Intel attorney Robert E. Cooper.

22. Documents sufficient to show when and how Intel learned that some Intel Custodians "were not migrated to the server" as stated on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

23. Documents sufficient to describe fully Intel's policies and practices with respect to the creation, preservation and cataloguing of Weekly Backup Tapes.

24. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the creation, preservation and cataloguing of Weekly Backup Tapes, including specifically the "instructions to [sic] the IT Department to back up these [dedicated] servers on a weekly basis going forward and retain the back up tapes for purposes of this case" as described in the February 8, 2007 email of Intel attorney Robert E. Cooper.

25. Documents sufficient to describe fully the "routine back-up recycling procedures" as set forth on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court and in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

26. All documents evidencing or pertaining to the recycling of Weekly Backup Tapes by Europe Intel's IT department, and Intel's discovery thereof, as referenced in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

27. Documents sufficient to describe Intel's disaster recovery backup systems protocols or procedures in place since January 1, 2000, including backup tape system structure and design, backup tape rotation schedules and protocols, backup tape retention policies and practices, and backup tape restoration protocols.

28. Documents sufficient to show fully the timing, protocol, extent and methodology of Intel's creation, preservation and cataloguing of the Complaint Freeze Tapes, including specifically the instructions to "preserve a one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store emails" as described in Intel's March 5, 2007 letter to the Court.

29. A full inventory of all Intel Complaint Freeze Tapes, including the identity of the Intel Custodian's data contained on each such tape.

30. All documents relating to any actual or suspected loss or recycling of Complaint Freeze Tapes containing any Intel Custodian data (including without limitation those relevant to Intel's Munich, Germany operations), and Intel's discovery thereof.

31. All documents relating to the failure to instruct certain Intel Custodians to preserve relevant data, and Intel's discovery thereof, as described on pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

32. All documents relating to Intel's failure to timely provide Litigation Hold Notices or retention notices, and Intel's discovery thereof, as described in pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

33. All documents evidencing or relating to the steps taken by Intel following discovery of its failure to timely provide Litigation Hold Notices or retention notices to any Intel Custodian, and the timing of such steps.

34. All documents evidencing, referring or relating to the failure or suspected failure of any Intel Custodian to comply with a Litigation Hold Notice or retention instruction, including the timing and means by which it was discovered.

35. Documents sufficient to fully show Intel's actions, plans, processes, procedures, and protocols for preventing the loss or destruction of Intel Custodian data belonging to terminated Intel employees, including "Intel's policies requiring collection of electronic information from departing employees subject to litigation holds" as described at page 5 of Intel's March 5, 2007 letter to the Court.

36. All documents evidencing or discussing Intel's failure or suspected failure to preserve the data of Intel Custodians identified for lay-off, redeployment, separation or termination prior to the effective date of such lay-off, redeployment, separation or termination.

37. Documents sufficient to show when and how Intel learned that "terminated employees' documents may not have been saved," as set forth at page 3 of Intel's March 5, 2007 letter to the Court, including documents evidencing what Intel Custodian data was lost or destroyed.

38. Documents sufficient to show when and how Intel learned of each of the "inadvertent mistakes in implementation" of its "tiered preservation process," as stated on page 3 of Intel's March 5, 2007 letter to the Court.

39. Documents sufficient to show when and how Intel "discovered further inadequacies in preserving emails," as stated in the February 8, 2007 email from Intel attorney Robert E. Cooper.

40. Documents sufficient to fully show the nature, timing and details of Intel's "preliminary review" as described on page 7 of Intel's March 5, 2007 letter to the Court.

41. All documents evidencing or relating to the nature, purpose and timing of the investigation reflected in the draft spreadsheet provided by Intel counsel to AMD counsel on February 22, 2007.

42. All documents evidencing or reflecting any Intel Custodians' mistaken belief that Intel's IT group was retaining and preserving their email, and the timing and means by which such mistaken belief was discovered by Intel.

43. All documents that support or form the bases for the disclosures made and submitted by Intel pursuant to the Special Master's Order.

44. All documents that support, form the basis for, or are cited or referred to in Intel's Remediation Plan submitted pursuant to the Special Master's Order, including all documents that show the basis, rationale, and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.

45. Documents sufficient to identify and describe Intel's IT infrastructure relevant to the support, storage (including email storage conventions), maintenance and backup of electronic data relevant to this Litigation, including data residing on hard drives or other off-network media.

46. All documents that evidence or relate to Intel's remediation and backup data restoration efforts, including all documents that show the volumes and nature of data restored and the vendors and processes used.

47. All documents that support, form the bases of, or are cited or referred to in Intel's Remediation Plan, including specifically and without limitation, all documents that concern the bases, rationale and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan. This request shall not include documents relating solely to when and how Intel learned of preservation issues.

48. Intel's Litigation Hold Notices.

49. All documents that evidence, discuss, identify or concern the preservation lapses or document losses that the Remediation Plan is intended to remediate.

50. All documents concerning the design and development of Intel's Remediation Plan, including specifically and without limitation, all documents concerning or relating to the details, projected costs, and perceived benefits of all remediation options, alternatives, suggestions or proposals received and/or considered and the specific considerations or reasons that led to their adoption or rejection.

51. Documents sufficient to fully show and evidence the identity of those persons involved in designing, developing, preparing, proposing or considering remediation options, alternatives, suggestions or proposals.

52. All documents concerning the implementation, execution and monitoring of Intel's Remediation Plan. This request includes specifically and without limitation all documents concerning or reflecting all audit steps or precautions being taken in connection with these activities and any procedures implemented or proposed for identifying problems, gaps, deficits, or lapses in Intel's Remediation Plan.

53. All documents concerning or relating to any evidence preservation efforts being undertaken by Intel related to or associated with its Remediation Plan, including specifically and without limitation, (i) the suspension of the email "auto-delete" function; (ii) migration of mailboxes to Exchange servers; (iii) EMC's email archive system; and (iv) details of the proposed backup and "complaint freeze" tape collection and restoration processes.

54. Documents sufficient to fully show or evidence the costs of each specific component of Intel's Remediation Plan, including specifically and without limitation, the costs of suspending the email "auto-delete" function, costs of migrating Intel employees' mailboxes to "a set of consolidated Exchange servers ("Storage Group 3" or "SG3" servers)," costs of acquiring and implementing the EMC e-mail archiving system or "the Archive," costs of restoring the "Complaint Freeze Tapes" and the "Weekly Backup Tapes," and any other remediation-related cost Intel believes or contends is material.

55. All documents concerning the specific features of Intel's Remediation Plan, including specifically and without limitation Intel's re-issuance of Litigation Hold Notices, its follow-up with Intel Custodians regarding evidence preservation, Intel's processes for handling and preserving the hard drives of departing Intel employees, and individual Intel Custodians' document retention practices and/or data loss that Intel has discovered to date.

56. All documents concerning, recording or reflecting information provided by individual Intel Custodians to Intel, or otherwise discovered by Intel, concerning evidence retention problems, preservation practices, preservation lapses and/or preservation deficiencies.

57. All documents that reflect or catalog the nature and known or estimated volume of lost or missing data for an Intel Custodian, including specifically and without limitation documents reflecting any estimates of volumes of lost or missing data on an individual custodian basis and/or any estimates of total lost or missing data to be recovered under the Intel Remediation Plan for an Intel Custodian.

58. All documents evidencing, referring, cataloging or relating to any known or suspected data loss, deletion, corruption or gaps in Intel Custodian data. This request includes, without limitation, all documents evidencing referring, cataloging or relating to any corrupted, unreadable or unusable data, and to any: (i) missing .pst files; (ii) missing emails; (iii) missing backup tapes; (iv) missing hard drives; (v) missing complaint freeze tapes, and (vi) missing disaster recovery tapes.

59. Documents sufficient to fully show and evidence Intel's data harvest instructions, protocols and electronic harvesting tools employed; the type of data extracted or harvested; the identity of those individuals principally responsible for developing and executing such instructions, protocols and data harvesting; and Intel's efforts, if any, to preserve hard drives post-harvest.