RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

Chad M. Shandler
Director

Direct Dial Number
302-651-7836
shandler@rlf.com

November 9, 2007

**BY ELECTRONIC MAIL AND HAND DELIVERY**
The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226

   Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.* C.A. No. 05-441-JJF*; In re Intel Corporation,* C.A. No. 05-MD-1717-JJF
     Discovery Matter #8

Dear Judge Poppiti:

  ERS Group ("ERS") and Advanced Micro Devices, Inc. and AMD International Sales and Service, Ltd. (collectively, "AMD") oppose the motion filed by Intel Corporation and Intel Kabushiki Kaisha (collectively, "Intel") to compel the production of a report quantifying Intel's monopoly profits prepared by ERS economist, Dr. Michael A. Williams, and the documents Dr. Williams referred to in connection with the preparation of that report (the "Motion").

  Intel makes no secret that it seeks this material to counter in the court of public opinion what it considers to be a low-blow in the "intense public relations campaign" that has accompanied this litigation.[1] It argues that if made to wait until expert discovery, it will be deprived of an ability "to rebut" Dr. Williams' conclusion as part of the current public debate and that "fairness" requires that the Court relieve it of this handicap so that it can fight back in the press. But civil discovery under the Federal Rules is available only to advance litigation goals, not to support a public relations counter-offensive. Intel is no more entitled to Dr. Williams' materials for use in its press releases than AMD would be entitled to depose Intel's general counsel, Bruce Sewell, just to publicly debunk his false denial in *Fortune Magazine* that "[Intel doesn't] buy exclusivity."[2]

---

 [1] Contrary to the impression Intel attempts to create, the public relations outreach has been a two-way street. As detailed in the accompanying Declaration of Charles P. Diamond, Intel has actively publicized its views of developments both though press releases and through interviews its spokespeople regularly give with the press.

 [2] *Fortune*, August 21, 2006, at p. 66.

The Honorable Vincent J. Poppiti
November 9, 2007
Page 2

FRCP 26(b)(4), which governs the discoverability of expert opinions, provides that unless and until AMD designates Dr. Williams as a testifying expert in this matter, Intel is entitled to neither his report nor the documents he consulted in reaching his opinions, absent a showing of "exceptional circumstances" not present here. Because AMD has not designated Dr. Williams as a testifying expert, Intel's discovery is premature. That conclusion is not altered by the public disclosure of certain of Dr. Williams' conclusions. The issue here is not waiver but discoverability, and under the plain language of Rule 26(b)(4), Dr. Williams' materials are not presently discoverable – whether or not AMD has publicly discussed them.

**I. Statement of Facts.** Dr. Williams and ERS are economic consultants who were hired by AMD's outside counsel, O'Melveny & Myers LLP, to assist counsel in understanding certain economic matters at issue in this litigation. Decl. of Charles P. Diamond in Support of AMD's Opposition, at ¶ 2. On August 2, 2007, AMD issued a press release summarizing certain of Dr. Williams' findings to date. Motion, Ex. 9. AMD has not yet decided whether it will designate Dr. Williams as a testifying expert at trial and need not at this time as the deadline for the identification of experts and the exchange of expert reports is likely at least a year away. Floyd Cert., Ex. B, at 3 & Motion at 4. Rather than wait for the reciprocal exchange of expert discovery under the Federal Rules, Intel filed its Motion to obtain Dr. Williams' report now so that it can try to "rebut [the report's] findings and conclusions" and undo the "public damage" that Intel believes has been done by AMD's August 2 press release. Motion at 4.

**II. Discussion.** Pursuant to FRCP Rule 26(b)(4), different discovery rules apply to testifying and non-testifying experts. Rule 26(b)(4)(A) allows an opponent to discover the substance of testimony of duly designated experts who will testify at trial. Rule 26(b)(4)(B) governs non-testifying experts, who are subject to a vastly more restrictive discovery standard.

Rule 26(b)(4)(B) "creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." *Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007). While Rule 26(b)(4)(B) specifically addresses interrogatories and depositions, courts in the Third Circuit and elsewhere have held that the Rule, including its safe harbor, applies to requests for documents as well. *Id*. at 143-144 (citing cases and noting that exempting requests for documents from Rule 26(b)(4)(B)'s safe harbor provisions would allow parties to circumvent the Rule "simply by serving a document subpoena").

Until a party designates an expert as a testifying witness, the expert is entitled to the protection offered by the safe harbor provisions of Rule 26(b)(4)(B). *See, e.g., In re Agent Orange*, 105 F.R.D. 577, 580 (E.D.N.Y. 1985). Dr. Williams was hired to advise AMD's counsel on economic issues at issue in this suit and has not yet been designated as a testifying expert by AMD. Diamond Decl. at ¶ 2. Dr. Williams must therefore be treated as a non-testifying expert unless and until AMD expressly changes his status, should it ever do so.

The policy underlying the safe harbor for non-testifying experts is based on a very simple and logical rationale: unless and until a particular expert is designated as a testifying expert by a party, that expert's opinions are not at issue in the litigation. While discovery is critical with respect to testifying experts so that opposing counsel may prepare for cross examination and

The Honorable Vincent J. Poppiti
November 9, 2007
Page 3

eliminate surprise at trial, "'there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course litigation should take.'" *Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007) (quoting *Mantolete v. Bolger*, 96 F.R.D. 179, 181 (D. Ariz. 1982)). As the Advisory Committee Notes to Rule 26(b)(4)(A) make clear, "[expert] [d]iscovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be." If AMD does not designate Dr. Williams, his opinions will not be at issue in this litigation and Intel will have no need for his report to prepare for cross examination.

Intel cannot plausibly argue that the "exceptional circumstances" that would create an exception to Rule 26(b)(4)(B)'s safe harbor are present here. A party seeking discovery from a non-testifying expert "bears a heavy burden" of showing the existence of exceptional circumstances that make it "impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001); Fed. R. Civ. Proc. 26(b)(4)(B). That is, the party seeking discovery must be "unable to obtain equivalent information from other sources." *Id.* at 1151-52. Typically courts require the requesting party to establish either that (1) "the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it," or (2) "there are no other available experts in the same field or subject area." *Id.* at 1152. The issues studied by Dr. Williams did not involve the examination of physical evidence, and clearly Dr. Williams is not the only economic expert who is available to calculate the extent of Intel's monopoly profits. Intel has more than enough "other means" to obtain facts and opinions on the monopoly profits it exacted, including its own economic experts, if it wants to develop them for this litigation.

Moreover, discovery of any sort is only available to further a *litigation* purpose, not a public relations one. For example, in *Int'l Union v. Garner*, 102 F.R.D. 108 (M.D. Tenn. 1984), the court justified a stay of all discovery because the "discovery processes were being used primarily . . . to conduct a public relations battle rather than to develop information for the case before this Court." *Id.* at 109-110 (noting that the discovery was also sought to advance a separate NLRB unfair labor practice proceeding). For purposes of Rule 26(b)(4)(B), Intel's public relations "fairness" argument hardly constitutes an "exceptional circumstance."

The disclosure of a non-testifying expert's findings to a third party does not alter the analysis of whether and when an expert's reports and opinions are discoverable under Rule 26(b)(4). Many courts, including the United States District Court for the District of Delaware, have observed that a party has a right to re-designate a testifying expert as a non-testifying expert and claim the protection of Rule 26(b)(4)(B), even *after* the expert's opinions were disclosed more fully than in a high-level summary. *See, e.g., Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 2002 U.S. Dist. LEXIS 15429, at *12 (D. Del. Aug. 14, 2002) (finding that "the conversion of an expert designated for trial purposes under Rule 26(b)(4)(A), to a consulting expert, under Rule 26(b)(4)(B) is allowed and results in insulating that expert from discovery, absent the showing of exceptional circumstances," whether or not expert opinions had been disclosed). The cases reviewed and approved by the *Callaway* court included situations in

The Honorable Vincent J. Poppiti
November 9, 2007
Page 4

which testifying experts were protected from discovery upon re-designation as a non-testifying expert, even after expert reports had been exchanged. *Id*. at *10-11. As the court noted, "***[d]ivulging the expert opinions did not alter the analysis***" of whether the newly re-designated non-testifying expert's opinions were protected from discovery. *Id*. at *12 (emphasis added).

In light of Rule 26(b)(4)(B)'s safe harbor, it is not surprising that virtually none of the cases Intel cites deals with expert opinions. Rather, with one exception, each involved the discoverability of documents or information allegedly protected by a privilege that could be waived through public disclosure. The primary case on which Intel relies, *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 & 1429 (3d Cir. 1991), simply holds that the disclosure of documents and attorney work product to governmental agencies serves as a waiver of the attorney-client privilege and work product protection as to those documents against other adversaries. *Westinghouse*, like *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979) and *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977), the other waiver cases Intel cites, says nothing about whether or when discovery of non-testifying expert opinions is appropriate under Rule 26(b)(4)(B).[3]

Only *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999), involved the discoverability of an expert's conclusions, namely, a loss analysis that a bankruptcy Trustee for three hedge funds included in a published Final Report on the causes of the funds' losses. Significantly, the Report directly formed the basis of the allegations in the complaint which was filed pursuant to the funds' Plan of Liquidation. *Id*. at 51-52. The court found that because of this direct relation, "the inclusion of [the expert's] findings in the published report placed the accuracy of his data and the validity of his analyses at issue" in the litigation. Therefore, defendants had demonstrated a "substantial need" for the expert's underlying documents sufficient to overcome attorney work product objections under FRCP 26(b)(3) (not the non-testifying expert safe-harbor of Rule 26(b)(4)(B), which the Court was never asked to address). *Id*. at 55. Thus, besides dealing with a different discovery bar than at issue here, *Granite Partners* turned on the express incorporation of expert opinion as the basis for the claim. Here, of course, Dr. Williams' opinions appear neither in the Complaint nor any other court documents, and they are not yet "at issue" in this litigation and may never become so.

Intel's right to inquire into Dr. Williams' opinions will ripen only if and when Intel is called upon to refute his opinions in this litigation and prepare a cross examination. That will happen, if at all, only after the parties exchange their respective expert reports. In the meantime, Intel is free to consult with its own economic experts who may calculate the extent of Intel's monopoly profits as best they see fit.

---

[3] *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007), turned on whether work product protection otherwise applicable to an investigative report was lost after the consulting company that prepared the report released it to a public relations firm with plaintiff's apparent approval. *Id*. at 140-142. *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y. 1983), and *In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616 (S.D. Ohio 1983), also involved the discoverability of internal fact investigation reports claimed to be protected work product, not non-testifying expert materials.

The Honorable Vincent J. Poppiti
November 9, 2007
Page 5

                                                             Respectfully,

                                                             */s/ Chad M. Shandler*

                                                             Chad M. Shandler (#3796)

CMS/afg
cc:    Clerk of the Court (By Electronic Filing)
        Richard L. Horwitz, Esquire (Via Electronic Mail)
        James L. Holzman, Esquire (Via Electronic Mail)