RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

November 28, 2007

**VIA ELECTRONIC MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226

Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*, C.A. No. 05-441-JJF; *In re Intel Corporation*, C.A. No. 05-MD-1717-JJF; and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-485-JJF (DM4)

Dear Judge Poppiti:

Advanced Micro Devices, Inc., AMD International Sales & Service, Ltd., and Class Plaintiffs (collectively "Plaintiffs") hereby move for an Order compelling Intel Corporation and Intel Kabushiki Kaisha (collectively "Intel") to produce the notes of investigation interviews conducted by Intel's counsel concerning Intel employees' compliance with their evidence preservation obligations.

**I.  Statement of Facts:**  Intel discovered "lapses" in its document preservation system related to this litigation in the Fall of 2006. It subsequently hired attorneys at Weil, Gotshal & Manges LLP, who interviewed each of Intel's 1,023 custodians to determine their email preservation habits and their level of compliance with Intel's litigation hold instructions.[1] In April of 2007, Intel informed the Court that it had undertaken a "comprehensive investigation into its own lapses" and "subjected its conduct to the most searching inquiry." Intel's Report and Proposed Remediation Plan, at 30 (Apr. 23, 2007) (D.I. 321 in Docket 05-441-JJF) ("Intel's Report"). It reported its conclusions with absolute certainty:

> [T]hese human errors were *misunderstandings or errors* by individual employees, with ongoing day to day business responsibilities, working diligently to carry out the complex and unprecedented scope of preservation obligations in this case. Intel's investigation has revealed *no instance of deliberate deletion* to deny AMD

---

[1] *See* Email from Robert E. Cooper to Chuck Diamond (Feb. 8, 2007 2:56 PM), attached hereto as Ex. A; Letter from James M. Pearl to Robert E. Cooper (Nov. 9, 2007), attached hereto as Ex. B; Letter from Richard P. Levy to James Pearl (Nov. 16, 2007), attached hereto as Ex. C.

> access to any information responsive to the allegations in the complaint. . . . Intel has the ability to remediate potential losses in an individual's e-mails from a multitude of alternative sources, and has a sound basis to believe that ultimately nothing of any genuine significance will prove to have been lost.

Intel's Report, at 3-4 (emphasis added). Pursuant to Paragraph 8 of the Court's March 16, 2007 Order Regarding Intel's Evidence Preservation Issues (D.I. 301), Intel thereafter provided the Court with some 17 reports. Those reports, in the aggregate, purported to disclose each of the 1,023 custodians' preservation issues (the "Paragraph 8 disclosures").[2]

In order to test Intel's assertion that only *innocent errors or misunderstandings* led to its evidence destruction, Plaintiffs have repeatedly requested the notes made by the Weil Gotshal lawyers when they questioned custodians about their document retention practices. *See* Plaintiffs' Request for Production No. 34 (Apr. 10, 2007) (D.I. 312) ("All documents evidencing, referring or relating to the failure or suspected failure of any Intel custodian to comply with a Litigation Hold Notice or retention instruction, including the timing and means by which it was discovered."). In response to Intel's concerns about the potentially privileged nature of some of the requested documents, Intel and Plaintiffs agreed that (1) Intel would not withhold any "non-core" work product responsive to Plaintiffs' Requests, and (2) Intel's production of such materials would not be deemed a broader waiver of any applicable protection for core work product under Fed. R. Civ. P. 26(b)(3) (the "non-waiver agreement").[3] Yet despite this non-waiver agreement, Intel has refused to provide the interview notes. At first, Intel stated that it did not want to risk making its outside trial counsel witnesses in this litigation.[4] But confronted with the fact that Weil Gotshal is not its trial counsel,[5] Intel then invoked both the attorney-client privilege and its right to withhold "core" work product.[6] As discussed in the balance of this brief, neither doctrine insulates the Weil Gotshal interview notes from discovery.

**II. Discussion.**

**a. Attorney-Client Privilege.** While the Weil Gotshal notes may have once constituted privileged attorney-client communications, Intel waived that privilege when it provided the Court and Plaintiffs with self-serving summaries of those communications and asked the Court

---

[2] *See* Intel's letters to the Special Master and attachments thereto dated Apr. 27, May 11, May 18, May 25, June 1, June 8, June 15, June 22, June 29, July 6, July 13, July 20, July 27, Aug. 3, Aug. 10, Aug. 17, and Sept. 7, 2007. (D.I. 327, 339, 346, 352, 356, 375-77, 379-80, 384-85, 388-89, 391-93, 395-98, 401-02, 404-05, 409-10, 416-17, and 422-24.)

[3] *See* Order Re AMD's and Class Plaintiff's Initial Remediation Discovery, at ¶ 7 (July 10, 2007) (D.I. 394); Email from Daniel S. Floyd to James Pearl (Aug. 24, 2007 3:44 PM), attached hereto as Ex. D. The parties orally entered into an identical non-waiver agreement for causation/culpability discovery during their September 25, 2007 meet and confer.

[4] *See* Letter from Robert E. Cooper to Mark A. Samuels (Nov. 7, 2007), attached hereto as Ex. E.

[5] *See* Ex. B.

[6] *See* Ex. C.

to rely on them to conclude that its preservation failures were the result of simple "human error." When a party discloses only a portion of otherwise privileged communication relating to a particular subject while withholding the rest, the Third Circuit applies the "fairness doctrine" to determine whether privilege has been waived as to all communications relating to that subject. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1426 & n.12 (3d Cir. 1991). "If partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject." *Id.* at 1426 n.12.

Intel's production of summaries of the interviews constitutes a waiver with respect to the interviews themselves. On all fours is the decision in *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996), where the court ordered the production of attorney notes and memoranda reflecting employee interviews defendant's trial counsel conducted during an internal fraud investigation. The attorney's public report of his findings included a factual summary based on the interview documents and explicit paraphrases of statements made by witnesses during the interviews. *See id.* at 468. The court noted that "[d]isclosure of the substance of a privileged communication is as effective a waiver as a direct quotation since it reveals the 'substance' of the statement," and ordered the defendant to produce those portions of the interview documents that were specifically alluded to in the report. *Id.* at 470. It held: "Having in effect made representations to the various courts and an arbitration panel as to the substance of those [witness] statements, Kidder cannot now invoke a privilege to bar disclosure of those documents or portions of documents that would reveal the substance of the statements." *Id.* at 472. *See also Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 184 F.R.D. 49 (S.D.N.Y. 1999) (finding privilege waiver where bankruptcy trustee used partial quotes of privileged communications in publicly-distributed report). Intel similarly has provided partial statements to Plaintiffs and the Court that do not tell the full story. It is now obligated to produce the rest.

**b. Work Product.** By agreement, Intel waived the right to withhold non-core work product respecting its spoliation investigation, retaining only protection for "core" work product. Unlike materials prepared by counsel that reveal litigation strategy or an attorney's mental impressions, documents that simply record a witness' factual account are not considered "core" work product. *See, e.g., Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997) (stating that a lawyer's interview notes are not always opinion work product, and that "purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions"); *Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 869590, at *2 (E.D.N.Y. Mar. 20, 2007) (noting that documents that are simply verbatim statements of witnesses' recollection of events are accorded a lower degree of protection than documents that contain attorney mental impressions, conclusions, or though processes). Granted, the situation may be different where attorney mental impressions are intertwined with factual responses. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981). In *Upjohn*, for example, the Supreme Court found that notes of interviews with a corporation's employees constituted core work product because the notes contained the attorneys' comments regarding questions they perceived to be important for the merits of the suit, their beliefs as to the importance of the given responses, and their impressions about how the responses related to the inquiry and to other questions. *See id.* at 400 n.8.

3

The interview notes at issue here are qualitatively different. As Intel's Paragraph 8 summaries of them make clear, the custodian interviews followed a rote script that asked the questions one would expect in an investigation into potential document destruction. Specifically, the disclosures suggest that Intel's counsel asked its client's 1,023 custodians the very questions it promised the Court it would ask: 1) to confirm whether they had received Intel's litigation hold notice, 2) the extent of their compliance with that notice, and 3) the reasons for any noncompliance. There is nothing secret about what was asked or why it was asked. Yet having chosen lawyers to ask these questions, Intel now attempts to use this election to relegate Plaintiffs only to sanitized summaries of the answers and not the answers themselves. Having waived work-product protection for such non-core information, it is not entitled to selectively control access to the facts.[7]

In any event, should Intel wish to protect any portions of the interview notes that contain the mental impressions or strategy of Intel's counsel, the appropriate procedure is to submit them to the Court *in camera* for potential redaction, not to withhold them entirely. *See In re Sealed Case*, 124 F.3d 230, 236-37 (D.C. Cir. 1997), *overruled on other grounds by Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (finding that the attorney's interview notes could be redacted to reveal only the portions containing unprotected factual material); *In re Vitamins Antitrust Litig.*, 211 F.R.D 1, 4-5, 7 (D.D.C. 2002) (if opinion work product can be redacted from the factual content contained in the interview notes, the redacted materials should be produced).

Nor can Intel credibly argue that in the Paragraph 8 summaries, Plaintiffs have all the information they need. The Paragraph 8 disclosures are simply high-level, attorney-crafted summaries of what custodians ostensibly reported, not records of what they actually said. If Plaintiffs are entitled to test Intel's version of what went wrong — as they clearly are — they cannot be made to rely only on opposing counsel's unsworn, cursory description of what the custodians reported. By asking for the notes, Plaintiffs merely seek an efficient mechanism to get the whole story out without embarking on a world tour of costly and unnecessary preservation depositions.

---

[7] Even in the absence of such an agreement, a court can compel production of non-core work product when the requesting party is unable to obtain substantially equivalent information without undue hardship. *See* Fed. R. Civ. P. 26(b)(3); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (non-core work product is discoverable upon a showing of need and hardship). That is of course the case here because without the interview notes, Plaintiffs would be forced to replicate Intel's year-long effort and depose hundreds of Intel employees around the world about their preservation practices and failures. *See Jarvis, Inc. v. American Tel. & Tel. Co.*, 84 F.R.D. 286 (D. Colo. 1979) (finding undue hardship warranting production of work product where the movant would otherwise be forced to depose 1500 people).

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com

FLC,III/afg
Attachments

cc: Clerk of the Court (By Electronic Filing)
Richard L. Horwitz, Esq. (Via Electronic Mail)
James L. Holzman, Esq. (Via Electronic Mail)