
Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

December 5, 2007

**VIA ELECTRONIC MAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226

Re:   *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*, C.A. No. 05-441-JJF; *In re Intel Corporation*, C.A. No. 05-MD-1717-JJF; and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-485-JJF (DM4a)

Dear Judge Poppiti:

Plaintiffs' November 28, 2007 Motion to Compel should be denied. The interview notes sought are privileged and core work product. Plaintiffs' theory of waiver based on Intel's production of factual summaries derived from attorney interview notes ignores that (1) Intel has disclosed no part of its actual attorney-client communications, and (2) Intel supplied these reports at Plaintiff's request pursuant to a stipulated Court order, rather than to promote its own ends in this litigation. Allowing Plaintiffs to turn Intel's attempt to cooperate into a "gotcha" waiver would be manifestly unfair.

**Statement of Facts.** In November 2006, Intel retained the law firm of Weil, Gotshal & Manges LLP ("Weil") to provide legal advice concerning document preservation for this litigation. (*See* Exh. 1, Declaration of David J. Lender ("Lender Decl."), ¶ 2.) To that end, Weil conducted an investigation of Intel custodians' document retention practices, beginning with focused interviews with a small group of employees and ultimately expanding to include all 1,000+ Intel employee custodians. (*Id.*, ¶ 9). During these interviews, Weil attorneys did not simply transcribe what each custodian said; rather, they took notes of the facts that they deemed particularly significant, together with their thoughts and impressions concerning the custodian's level of compliance. (*See id.,* ¶ 5.) Significantly, the summaries provided to AMD do not reflect the Weil attorneys' impressions concerning custodian compliance.

On February 15, 2007, Plaintiffs requested Intel to provide detailed information about the retention practices of Intel's 1000+ custodians. (*See* Exh. 2, Feb. 15, 2007 Letter from Charles P. Diamond to Robert E. Cooper, at 2.) The following week, Plaintiffs repeated their demand, explaining that such information was "essential to understand the [retention] problems, to discuss meaningfully potential mitigating approaches, to permit AMD to make its future adverse-party

The Honorable Vincent J. Poppiti
December 5, 2007
Page 2

selections of Intel custodians and to allow us to consider our options." (*See* Exh. 3, Feb. 23, 2007 Letter from Charles P. Diamond to Robert E. Cooper, at 2.) Intel agreed to provide the requested facts in summary form, but was not asked to, and did not offer to, waive any privilege or work product protection involved in obtaining the facts.

The parties' agreement was reflected in a stipulated order dated March 16, 2007, which required Intel to produce, among other things, a "detailed written description of the preservation issues affecting [each] Intel Custodian, including the nature, scope and duration of any preservation issue(s)." (Exh. 4, Order Regarding Intel's Evidence Preservation Issues, March 16, 2007, ¶¶ 6,8). As required by this order, over the next several months, Intel spent many hours preparing roughly 400 pages of custodian-specific retention reports which drew upon thousands of pages of attorney notes, as well as other information. Plaintiffs have not disputed that these summaries fully complied with Intel's obligations under the March 16 Order. Nor did Plaintiffs give any indication that they would later seek to use Intel's cooperation in providing such summaries as a waiver of privilege.

In a separate stipulated order dated July 10, 2007, Intel agreed to produce retention documentation maintained by Intel's non-attorney custodians. (Exh. 5, Order Re: AMD's and Class Plaintiff's Initial Remediation Discovery, July 10, 2007, ¶ 2.). For the limited purpose of the July 10 Order, which expressly excluded information in the custody of Intel's inside or outside counsel, Intel agreed not to withhold non-core attorney work product. (*See id.*, ¶ 7.) Intel agreed to the same limited waiver in connection with a later production, this time including inside counsel. (*See* Mot., Exh. D (Aug. 24, 2007 email from Daniel S. Floyd to James Pearl).) Importantly, Intel never waived its right to withhold any work-product from the files of outside counsel.

Plaintiffs later served discovery requests which they claim seek production of the Weil interview notes. (Exh. 6, (Nov. 9, 2007 Letter from James M. Pearl to Robert E. Cooper at 1-2).) Intel properly objected that the Weil interview notes are protected from disclosure by the attorney-client privilege and the work-product doctrine.[1] Plaintiffs then filed this motion.

**Argument**

**Attorney-Client Privilege**. As Plaintiffs concede (Mot. at 2), Weil's interview notes fall squarely within the attorney-client privilege -- they reflect information Intel supplied to its outside counsel for the purpose of obtaining legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Plaintiffs, however, fail to establish waiver. The cases upon which

---

[1] Under paragraph (1) of the Stipulation and Order Regarding the Preparation of Privilege logs, entered August 10, 2006, privilege logs are not required for privileged communications and/or work product involving a party's outside counsel created in connection with this litigation.

The Honorable Vincent J. Poppiti
December 5, 2007
Page 3

Plaintiffs rely, *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) and *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459 (S.D.N.Y. 1996) ("*Kidder*"), involved voluntary disclosure to government agencies, the public, and the court of privileged reports prepared by outside counsel that set forth the conclusions of outside counsel's internal investigations of company employees. By contrast, Intel here provided only summary factual information derived in part from attorney notes, pursuant to Court order, but did not disclose or even paraphrase the attorney-client communications themselves. They are akin to interrogatory responses, prepared by counsel based on underlying privileged communications. Plaintiffs point to no authority supporting waiver, in whole or in part, in these circumstances.

Even if Plaintiffs could prove a partial waiver, which they cannot, under Third Circuit law "[w]hen a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived *only as to those communications actually disclosed*, unless a partial waiver would be unfair to the party's adversary." *Westinghouse Elec. Corp.*, 951 F.2d 1414, 1426, n.13 (3d Cir. 1991) (emphasis added). Plaintiffs can demonstrate no such unfairness here.

Plaintiffs argue unfairness based upon *Kidder Peabody* and *Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 184 F.R.D. 49 (S.D.N.Y. 1999) (Mot. at 3.). *Granite Partners*, however, addressed only the work product doctrine, and the Court found a waiver because the report at issue was prepared by a Bankruptcy Trustee for purposes other than litigation, contained conclusions that the Trustee published outside the litigation, and attached thousands of pages of selective quotations which the Trustee used affirmatively to cross examine witnesses. Similarly, in *Kidder*, outside counsel prepared a report of findings and conclusions not for litigation purposes, published the report to the public and the SEC, and attempted to use the report's conclusions affirmatively in the litigation. Here, by contrast, Intel hired Weil solely for purposes of the litigation. Neither Weil nor Intel published any report of Weil's conclusions, or attempted to affirmatively use any conclusions Weil may have drawn about the intentions of Intel employees. Rather, the summaries, which are only partly derived from Weil's interview notes, were produced as part of Court ordered discovery at Plaintiffs' specific request, upon Plaintiffs' representation that the information was essential to assist Plaintiffs in several ways in addressing Intel's document retention disclosures. (*See* Exh. 3, *supra*). Further, the form in which that information would be produced – attorney-prepared summaries – and the detail required, were specifically agreed upon in advance and then ordered by the Court. Plaintiffs received the full benefits of that agreement. And the parties contemplated that Intel would have its attorneys conduct an investigation to obtain the information, which touched on numerous legal issues, but there was no order or agreement that the investigative materials themselves be produced. To now rewrite the order under these circumstances would be manifestly unfair.

**Work Product.** In addition, the Weil notes are core work product because they necessarily reflect upon the attorneys' thoughts and mental impressions. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes"). The Third Circuit has specifically recognized that attorney interview notes

The Honorable Vincent J. Poppiti
December 5, 2007
Page 4

such as the Weil notes are entitled to heightened protection. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979) (recognizing that because the attorneys' interview notes indirectly reveal the attorney's mental processes, they constitute core work product that is discoverable only in "rare situation[s]."). Plaintiffs argue that the Weil interviews are not entitled to protection under *Upjohn* and its progeny based on the erroneous assumption that the interviewers followed a "rote script." (Mot. at 4). While the interviews focused on subjects relating to custodians' retention practices, both the specific questions asked and the responses recorded reflected the thought process of the interviewing attorneys. *See* Lender Decl., ¶¶ 5-6. *See also Baker v. GMC (In re GMC)*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("[W]hen taking notes, an attorney often focuses on those facts that she deems legally significant."). The factual content of the Weil interview notes is inseparably connected with the interviewers' mental processes; therefore, the entirety of the Weil interview notes should be deemed core work product entitled to "near absolute protection from discovery." *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (reversing order to compel, concluding trial consultant's notes of discussions with senior manager of client and counsel were "core" work product).

Plaintiffs also contend that an *in camera* review of the attorney notes should be conducted to segregate facts from mental impressions subject to core work product protection. But as the court recognized in *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4-5, 7 (D.D.C. 2002), "[a] distinction may be made between attorney notes of the type obtained in a wide-ranging inquiry such as that done in an initial interview, and those obtained in a litigation-related investigation where facts elicited necessarily reflect a focus chosen by the lawyer." 211 F.R.D. at 5. The Weil interview notes reflect a litigation-related investigation narrowly focused on questions Intel's attorneys needed to provide legal advice to Intel (*see* Lender Decl., ¶¶ 2-8). There is no reasonable prospect that the Weil notes can be sufficiently redacted to both provide additional information and avoid revealing core work product reflecting Intel's attorneys' mental processes.[2]

For these reasons, Plaintiffs' motion to compel should be denied in its entirety.

Very truly yours,

*/s/ Richard L. Horwitz*

Richard L. Horwitz
(Bar I.D. #2246)

---

[2] Even if non-core work product could be distilled from the Weil notes (which Intel disputes), Plaintiffs can demonstrate no "undue hardship" in being denied access, as confidential factual investigations are common. Nor has Intel waived protection for non-core work product maintained by outside counsel. (*See* Ex. 5 and Ex D. to Mot.)