# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) ) | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. and AMD INTERNATIONAL SALES & SERVICE, LTD., | ) ) ) ) | C. A. No. 05-441-JJF (DM4a) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| INTEL CORPORATION and KABUSHIKI KAISHI, | ) ) ) | |
| Defendants. | ) ) | |
| PHIL PAUL, on behalf of himself and all others similarly situated, | ) ) ) | C. A. No. 05-485-JJF |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| INTEL CORPORATION, | ) ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID J. LENDER

I, David J. Lender, declare under penalty of perjury as follows:

1.     I am a partner of the law firm Weil, Gotshal & Manges LLP, counsel to defendant Intel Corporation ("Intel") in the aforementioned actions. I am a member of the bar of the State of New York. I am also a frequent lecturer and writer on electronic discovery issues. I co-authored the leading treatise on the subject, entitled "Electronic Discovery: Law and Practice," and head the firm's E-Discovery Task Force. I submit

this declaration in support of Intel's Opposition to Advanced Micro Devices, Inc., AMD International Sales & Service, Ltd. and Class Plaintiffs' Request to Intel to Produce Documents Responsive to Plaintiffs' Request for Production of Documents.

2.     On or about November 14, 2006, my firm was retained by Intel to provide legal advice concerning document preservation in connection with the AMD litigation, including evaluating the steps Intel had taken to preserve relevant materials for the AMD litigation, advising on any additional steps Intel should take in connection with the AMD litigation, participating on the trial team and representing Intel in connection with any future disputes regarding Intel's document preservation efforts. We were not retained to provide a report or recommendations outside of the context of the litigation.

3.     In order to provide legal advice in connection with the AMD litigation, I began conducting an internal investigation of a small group of Intel employees. During this time, I was in regular contact with Intel's in-house attorneys providing legal advice on retention and preservation based on the results of these interviews.

4.     After these initial interviews, I assembled and supervised a team of Weil Gotshal attorneys to interview the approximately 230 Intel employees who were identified as being in the first tranche of custodians for document production in this case. During each of these interviews, the Weil Gotshal interviewer generally discussed the subject matter of the scope of the preservation notice and the preservation efforts undertaken by the custodian to preserve potentially relevant materials for the AMD litigation. The reason for the interviews was to obtain information for the purpose of providing legal advice to Intel counsel, as well as to provide legal advice directly to the interviewees.

2

5.    Per my instructions, Weil Gotshal attorneys took notes contemporaneously with the interviews they conducted.  I reviewed all of these notes in order to provide information concerning each custodian's document retention issues to other members of the Intel trial team so that Intel could comply with the Court order dated March 16, 2007.  These notes are not simple dictations of the words conveyed by the particular custodian.  Instead, they reflect the information ascertained from the custodian that the attorney deemed particularly relevant, as well as the attorney's evaluation and impressions concerning the extent to which the custodian was in compliance with his or her document preservation obligations.

6.    The information provided in response to the Court order was not simply a summary of interview notes.  In many instances, the notes do not convey the full scope of the interview.  Based on my review of these notes, I often had follow-up communications with the Weil Gotshal attorney who conducted the actual interview, raising questions about the scope of the interview.  Many times, these questions required follow-up communications with the particular Intel employee, seeking clarification on certain preservation issues.

7.    In addition, oftentimes interviewees asked questions seeking legal advice related to the AMD litigation.  The Weil Gotshal attorney conducting the interview would advise the custodians accordingly.  References to this advice are sometimes contained in the notes.

8.    Based on the results of these interviews, I also was involved in advising Intel on remediation steps in an effort to uncover any missing e-mails from other sources for purposes of this litigation.

3

9.     We followed a similar procedure to the one discussed above when we expanded the scope of the interviews to include all 1,000+ employees on the litigation hold list.  Throughout the process, and based on the results of these interviews, my team and I advised Intel on its preservation efforts in connection with the AMD litigation.

10.     I declare under penalty of perjury that the foregoing is true and correct.


Dated:   December 5, 2007
            New York, NY


                                                                 David J. Lender
                                                                 WEIL, GOTSHAL & MANGES LLP

                                                                 *Attorney for Defendants*
                                                                 Intel Corporation

4

# EXHIBIT 2



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

February 15, 2007

OUR FILE NUMBER
0008346-163

WRITER'S DIRECT DIAL
(310) 246-6789

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

**VIA E-MAIL AND U.S. MAIL**

Robert E. Cooper, Esq.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, California 90071-3197

<p style="text-align:center">Re:  <em><u>AMD v. Intel -- Document Retention Issues</u></em></p>

Dear Bob:

     I have your Thursday email concerning the apparent lapse in Intel's document retention program and your efforts to identify and mitigate the loss of data. I worry that you understate the gravity of the situation. The retention problems and irretrievable loss of important data you describe appear to be broad in scope affecting as many as 20% to 30% of Intel's custodians.

     Frankly, we saw this coming. In Fall of 2005, John Rosenthal generally described Intel's reliance on custodians to identify and retain relevant materials, but stated that Intel did not automatically delete email. He later corrected himself and informed us that Intel had not disabled an automatic delete system that purged custodian email after 35 days. But he mollified us with assurances that Intel intended to back-up all custodial email weekly. We shouldn't have been reassured. The Intel custodian-based "honor system" was defeated by a combination of custodian error and Intel's faulty retention instructions. And the back-ups that were supposed to backstop the "honor system" failed to capture and preserve email for what appears to be well in excess of 200 of your 1027 custodians.

     At a time when the profession is so focused on doing e-discovery and document retention right, we find these breakdowns, and the consequent irrevocable loss of critical evidence, very troubling. Nor are we comforted that the loss may be mainly of "Sent" email. While some outgoing email might be captured in the in-boxes of other custodians (assuming the recipient took the steps necessary to save it), critical communications with Intel customers and others outside the Intel organization would not be.[1] But the loss is not confined to sent email: in the

---

[1] The parties also acknowledged the practical problem of matching a "received" item in one custodian's production with a missing "sent item" in another's production when we agreed to de-duplicate data on a custodian-by-custodian basis. Thus, even if the email is not irretrievably lost, finding and using it will be made much harder, at least.

O'MELVENY & MYERS LLP
Robert E. Cooper, Esq., February 15, 2007 - Page 2

absence of backups for 20-30% of Intel custodians, we have no faith that the Intel "honor system" will work to provide us a complete, unabridged collection of even their out-going emails. Anecdotally, our review of Intel custodian data so far reveals worrisomely low volumes of email.

We consider Intel's decision to rely on these risky preservation techniques in a case of this magnitude and scope to be improvident. And we also feel that we were not being told the whole story when Intel pressed us for agreement on what we consider premature collection dates for key custodians and unreasonably limited "re-harvest" protocols, which would have masked the document retention issues you surfaced last week.

Notwithstanding this, as we discussed yesterday, we are prepared to meet with you and your colleagues early next week to assess the problem and to discuss appropriate next steps. In advance of the meeting, could you please undertake to determine and communicate to us the following:

1.  Since you will obviously need to restore pre-litigation email back-ups (e.g., the "Complaint Freeze Tapes") in order to recapture all relevant email, could you please confirm that such usable tapes exist for all 1,027 individuals listed on Intel's preservation list? Please be prepared to advise us of any deficiencies.

2.  AMD needs to understand the exact nature and scope of the retention problems you have identified on both the macro and custodian-specific levels. We would appreciate your supplying the following information, preferably in a spreadsheet or similar format: (a) the custodian's name; (2) whether that custodian has been designated by Intel on its "20% list" or, alternately, adversely designated by AMD; (3) the "harvest" date, i.e., date that the custodian's data was collected (if applicable); (4) the date upon which the custodian's email was migrated to the dedicated server, if it was; (5) a useful description of the exact nature of any retention deficiency or data loss; (6) the date that Intel discovered the retention deficiency or data loss; and (7) the time period during which these problems persisted.

    We expect that AMD will be able to discern from this information the identity of the custodians who failed to comply with Intel's litigation "hold notice" and, for each, the precise nature of the failure and its duration. This will also reveal the 151 "original" custodians and the "subsequently added" custodians whose emails the Intel IT Department did not migrate to dedicated servers and thus did not back up weekly. Of course, this will permit identification of custodians for whom there are no presently-identified retention issues.

3.  Please also identify (either in the spreadsheet or similar format referenced above or separately) the European custodians whose backed-up email was lost when Intel's IT Department began recycling tapes and, for each, provide us with the dates of back-ups that do exist.

O'MELVENY & MYERS LLP
Robert E. Cooper, Esq., February 15, 2007 - Page 3

4. We believe that these failures calls into question Intel's overall preservation effort. We therefore renew our request, first made in September 2005, for detailed information about the preservation instructions Intel gave to custodians. We will do the same and stipulate that any disclosure will not otherwise waive any applicable privilege.

5. Finally, please confirm that for those custodians produced thus far, Intel has worked from a restored email collection, not simply the custodian's "honor system" archive.

Since harvesting of some custodians is on-going and since the parties contemplate updating the harvesting for at least selected witnesses, we urge that you immediately suspend the automatic deletion of any custodian email, and inform us when that has happened. In view of the failure of the current system to capture and retain all relevant material and your need to restore backups, Intel also should cease relying on custodians' selections (if it has) and instead go back and review the entirety of its custodians' email collections, as AMD has done from the very beginning.

Finally, we grow increasingly uncomfortable in keeping these problems from class counsel. We understand your desire to surface the issue with class counsel only when you have the complete facts. But we think it would be better to notify them of the problems discovered thus far and invite them to the table next week.

Let us know what days and times are convenient.

Sincerely,

Charles P. Diamond
of O'MELVENY & MYERS LLP

CC1:757969.2

# EXHIBIT 3



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

NEW YORK

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

TOKYO

WASHINGTON, D.C.

February 23, 2007

OUR FILE NUMBER
0008346-163

**VIA E-MAIL AND U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-6789

Robert E. Cooper, Esq.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, California  90071-3197

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Re:  *AMD v. Intel -- Document Retention Issues*

Dear Bob:

Thank you and your team for meeting with us yesterday regarding Intel's preservation issues. I appreciate your commitment to addressing them promptly and with full disclosure to AMD, the Class and the Court.

Our meeting made clear that Intel's preservation issues -- and probable loss of email and other electronic documents -- are broader than you originally disclosed, and that Intel has not yet collected information sufficient to permit assessment of the damage or consideration of potential mitigating steps. We were stunned by yesterday's revelation that Intel did not deliver litigation hold notices to, or take steps to neutralize the automatic deletion of the email of, 384 custodians on Intel's Custodian List until February 21, 2007. This suggests the strong likelihood that as many as one-third of Intel's custodians took no preservation steps, including those necessary to forestall the automatic deletion of email that Intel's 35-day purge produces. Intel's overwriting of its Munich office's "complaint freeze" tapes is also of considerable concern because it jeopardizes both pre- and post-filing data of these additional custodians, particularly if any are among those who have other preservation issues.

In our view, and we suspect you would agree, Intel needs to get a better grasp of issues confronting it and to share the information it develops with AMD and the Class. The draft spreadsheet you provided us yesterday about the 239 custodians currently designated for production seems very preliminary — as I am certain you intended it. We believe the next step is for Intel to supply the Class and us with the comprehensive data requested in my letter to you of February 15, 2007. To be clear, with respect to Item 2, we request that the enumerated information be supplied for all 1,027 custodians on Intel's Custodian List and, in particular, that Intel provide (after electronic auditing or other sufficient investigation means) detailed descriptions about the exact nature, extent and duration of each custodian's data deficiency or

O'MELVENY & MYERS LLP
Robert E. Cooper, Esq., February 23, 2007 - Page 2

loss. That should include data on the 384 custodians who did not receive litigation hold notices as well as the Munich custodians affected by the overwrite.

We would also like an inventory of the backup tapes that exist with respect to each of the custodians. This would include an inventory of backups for each of the custodians who were migrated to dedicated email servers and whether those backups have successfully been restored. For the custodians who were never migrated, please identify any disaster recovery or similar backups (not limited to email) that may exist and whether those have been successfully restored.

We view this information as essential to understand the problems, to discuss meaningfully potential mitigating approaches, to permit AMD to make its future adverse-party selections of Intel custodians and to allow us to consider our options. So that we can discuss the issues with the Court at our March 7 conference, we would ask that the information be delivered by March 5. If complete data cannot be assembled, we ask that you supply any subset that Intel is able to produce by that time.

Let me also confirm several other points we discussed yesterday. First, you advised us (although not in these precise words) that Intel has not disabled the 35-day automatic e-mail purge system with respect to any Intel custodian or other Intel employee on litigation hold. Rather, Intel has migrated all 1,027 custodians on its Custodian List to a "vault" or similar tool that prevents the deletion or destruction of any e-mail sent, received or stored by any custodian. The 384 custodians referenced above were migrated to that "vault" system on February 21, 2007, and the remainder of the custodians on Intel's Custodian List were migrated to that system by or in the few days before that date. (We will appreciate your including in the disclosures referenced above the exact date on which Intel migrated each custodian's e-mail to the vault system and confirmation that the vault, which you described as "in Beta," is now operational.) You also stated that Intel has not yet put in protective custody any "disaster recovery" or similar tapes with respect to the 384 custodians.

Second, we understand that Intel is prepared to retrieve all relevant data from its "complaint freeze" and any applicable back-up tapes or other storage for all 1,027 custodians, and to search, identify, segregate and produce all relevant data from that collection that is related to email communications to or from any custodian designated by Intel or AMD, beginning of course with the 291 Intel custodians identified by the parties so far. We recognize that details of this endeavor require further discussion.

Finally, you stated that Intel will engage in every effort to minimize the adverse impact on and delay of this lawsuit. While welcomed, it appears to us that will prove to be a tall order.

O'MELVENY & MYERS LLP
Robert E. Cooper, Esq., February 23, 2007 - Page 3


Please let me know if you would like to discuss any of this.

Sincerely,


Charles P. Diamond
of O'MELVENY & MYERS LLP


CC1:758487.2

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | MDL No. 1717-JJF |
| ADVANCED MICRO DEVICES, INC., a<br>Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICES, LTD.,<br>a Delaware corporation, | |
| Plaintiffs, | |
| v. | C.A. No. 05-441-JJF |
| INTEL CORPORATION, a Delaware corporation,<br>and INTEL KABUSHIKI KAISHA, a Japanese<br>corporation, | |
| Defendants. | |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | C.A. No. 05-485-JJF |
| Plaintiffs, | CONSOLIDATED ACTION |
| v. | |
| INTEL CORPORATION, | |
| Defendants. | |

## [PROPOSED] ORDER REGARDING INTEL'S
## EVIDENCE PRESERVATION ISSUES

WHEREAS, on March 7, 2007, the Court conducted a status conference attended

by counsel for plaintiffs Advanced Micro Devices, Inc., *et al.* ("AMD"), defendants Intel

Corporation, *et al.* ("Intel") and the Class Plaintiffs, during which the parties raised with

the Court issues concerning Intel's preservation of electronic evidence relevant to this lawsuit;

WHEREAS, the Court referred aspects of this matter to the Special Master, Vincent J. Poppiti, for further proceedings;

WHEREAS, also on March 7, 2007, the parties appeared before Special Master Poppiti to discuss a plan and schedule for the disclosure and investigation of Intel's preservation issues, and for the consideration of remediation proposals; and

WHEREAS, the parties have met and conferred and jointly submit the following proposed order regarding such issues.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    Intel shall disclose by March 16, 2007, in writing the identity of Intel Custodians[1] to whom Intel did not deliver litigation hold instructions until 2007 as set out in Intel's March 5, 2007 letter to the Court and, for each such individual, the date on which Intel delivered the litigation hold instructions.

2.    Intel shall disclose by March 16, 2007, in writing the identity of those Intel Custodians who had been identified in the Summer and Fall 2005 to be put on document retention, but whose e-mail data Intel did not migrate by November 2005 to the dedicated servers that were backed up weekly (as described in part in the fourth bullet point on page 2 of Intel's March 5, 2007 letter to Judge Farnan) and, for each such individual, where possible, the date (or if the date cannot be ascertained with certainty, Intel's best approximation of the date) on which Intel subsequently migrated the

---

[1] As used herein, the term "Intel Custodians" means and refers to the approximately 1,027 individuals identified by Intel on its Custodian List served on AMD on June 1, 2006, pursuant to the Stipulation and Order Regarding Document Production (hereafter, the "Document Production Order"). Intel believes that based on inadvertent duplication of names, and one person erroneously identified as an Intel employee, the number is 1023, but in any event will address all 1,027 names on the list.

Custodian's data to such dedicated servers. Intel states that this list may be subject to modification after a full accounting of the tapes is complete.

3.    By March 20, 2007, Intel shall represent in writing: (1) whether it has successfully implemented an e-mail archiving solution that captures all emails sent or received by any Intel Custodian still employed at Intel, including all then-existing Intel Custodian e-mail; (2) whether the emails stored within the archive will be preserved throughout the course of the litigation and will not be subject to any auto-delete process; (3) whether the operation of the archive prevents individual custodians from deleting or altering emails located within the archive; and (4) by April 17, the date on which the e-mail archiving solution was successfully implemented as to each Intel Custodian.

4.    By April 3, 2007, the parties shall jointly propose to the Special Master, and provide the resume(s) of, a neutral electronic discovery expert, or a group of such experts from which the Special Master may select to assist the Special Master on these issues, as he requires. If the parties are unable to agree upon such an expert, each party shall propose a candidate and shall supply the Special Master with his or her resume. The cost of the expert will be considered an expense of the proceeding and payment is addressed in Paragraph 14.

5.    On April 17, 2007, Intel shall disclose in writing the following information with respect to each Intel Custodian:

    a.    The Intel Custodian's name;

    b.    Whether that Intel Custodian has been designated by Intel on its "Party-Designated Custodian Production List" or by AMD and

Class Plaintiffs on their "Adverse Party Designated Custodian

Production List" pursuant to the Document Production Order;

c.    The "harvest" date, i.e., the date the Intel Custodian's data were

collected, if applicable;

d.    The date (or if the date cannot be ascertained with certainty, Intel's

best approximation of the date) on which the Intel Custodian's data

were migrated to the dedicated servers described in Paragraph 2,

and the date of the first back-up tape containing data from that

custodian; and

e.    Whether Intel has preserved emails for the Intel Custodian from

the Complaint Freeze Tapes, as described in page 2 of Intel's

March 5, 2007 letter to the Court.

6.    On April 17, 2007, Intel shall submit in writing an updated and final report

regarding the 239 Intel Custodians for which Intel provided preliminary information to

AMD on February 22, 2007, which will reflect Intel's best information gathered after

reasonable investigation, and which shall contain the following information for each such

Intel Custodian[2]:

a.    The Intel Custodian's name;

b.    A detailed written description of the preservation issues affecting

that Intel Custodian, including the nature, scope and duration of

any preservation issue(s).

---

[2]    Intel will use reasonable efforts to promptly obtain the information in subsection (b) from former
employees; however, because it no longer has any means to require cooperation, it may or may not be able
to obtain the information in 6b. for such individuals and it may need additional time beyond April 17, 2007
to complete the process for those former employees.

Should Intel determine in good faith that it will be unable to make these disclosures for all of these 239 Intel Custodians by April 17, 2007, the parties shall meet and confer to agree upon a schedule for the submission of the information on a rolling basis.

7.     On April 27, 2007, Intel shall provide the same information identified in paragraph 6 for those custodians identified in paragraph 2.

8.     With respect to the remainder of Intel's Custodians not on the list of 239 Intel Custodians referred to in Paragraphs 6 and 7, commencing after April 27, 2007, Intel shall provide the same information called for by Paragraph 6 in a reasonable time frame, on a rolling basis and prioritizing those Intel custodians in senior positions.

9.     AMD and the Class Plaintiffs have requested Intel to voluntarily disclose the date(s) on which Intel or its counsel learned of the preservation lapses, failures or deficiencies identified in response to Paragraphs 6, 7 and 8 with respect to each Intel Custodian. The parties shall meet and confer hereafter to establish a timetable for that Intel disclosure, and whether Intel will so disclose voluntarily or through discovery.

10.     On April 17, 2007, Intel shall, with respect to each Intel Custodian whose data was migrated at any time to the dedicated servers described in Paragraph 2, provide in writing a full and complete accounting of no less than the weekly backup tapes for the first eight weeks that exist with respect to that Intel Custodian's data. The parties will meet and confer to set a schedule for the completion of this accounting with respect to any additional existing backup tapes for these and all other Intel Custodians.

11.     On April 17, 2007, Intel shall submit to the parties and the Special Master a proposed plan of remediation to address the document preservation issues.

12.     On May 8, 2007, and after appropriate FRCP 30(b)(6) and/or written discovery, AMD and the Class Plaintiffs shall submit to Intel and the Special Master their respective responses to Intel's disclosures pursuant to this Order and to Intel's proposed plan of remediation. In the event that AMD or the Class Plaintiffs reasonably request additional time within which to make this submission, Intel will not oppose such request.

13.     On May 18, 2007, Intel shall submit to the parties and the Special Master its reply to AMD's and the Class Plaintiffs' May 1, 2007 submissions.

14.     Intel shall pay all costs and expenses of the Special Master incurred in connection with the addressing of Intel's evidence preservation issues. Intel may not seek reallocation of these costs and expenses, but the Special Master may reallocate them on his own initiative for good cause.

15.     The Special Master shall, at his discretion, set a hearing to be held at an appropriate time to address the issues raised by the parties' submissions.

16.     This order is without prejudice to the rights of AMD or the Class Plaintiffs to request the disclosure of additional information from Intel with respect to its evidence preservation issues, including formal discovery, or to seek any other relief, remedy or order with respect thereto.

<div style="margin-left:40%">

RICHARDS, LAYTON & FINGER, P.A.
*/s/ Frederick L. Cottrell, III #2555*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

</div>

Attorneys For Advanced Micro Devices,
Inc. And AMD International Sales &
Service, Ltd.

Dated: March 15, 2007

**POTTER ANDERSON & CORROON
LLP**
*/s/ Richard L. Horwitz #2246*
Richard L. Horwitz (#2246)
rhorwitz@potteranderson.com
W. Harding Drane, Jr. (#1023)
wdrane@potteranderson.com
1313 North Market Street
P.O. Box 951
Wilmington, DE  198999-0951
(302) 984-6027
Attorneys for INTEL CORPORATION and
INTEL KABUSHIKI KAISHA

Dated: March 15, 2007

**PRICKETT JONES & ELLIOTT, P.A.**
*/s/ James L. Holzman #663*
James L. Holzman (#663)
jlholzman@prickett.com
J. Clayton Athey (#4378)
jcathey@prickett.com
1310 King Street, P.O. Box 1328
Wilmington, DE 19899
(302) 888-6509
Interim Liaison Counsel and Attorneys for
Phil Paul, on behalf of himself and all others
similarly situated

Dated: March 15, 2007

SO ORDERED this /6th day of March 2007.

Vincent J. Poppiti (#100614)
Special Master

RLF1-3127315-1                    7

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | ) ) ) ) )     MDL No. 1717-JJF |
| ADVANCED MICRO DEVICES, INC., a<br>Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICES, LTD.,<br>a Delaware corporation, | ) ) ) ) ) |
|         Plaintiffs, | ) ) |
|    v. | )     C.A. No. 05-441-JJF ) |
| INTEL CORPORATION, a Delaware corporation,<br>and INTEL KABUSHIKI KAISHA, a Japanese<br>corporation, | ) ) ) ) |
|         Defendants. | ) ) |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | ) )     C.A. No. 05-485-JJF ) |
|         Plaintiffs, | )     CONSOLIDATED ACTION ) |
|    v. | ) ) |
| INTEL CORPORATION, | ) ) |
|         Defendants. | ) |

## ORDER RE AMD'S AND CLASS PLAINTIFF'S INITIAL REMEDIATION DISCOVERY

WHEREAS, on March 16, 2007, Special Master Poppiti entered an Order Regarding

Intel's Evidence Preservation Issues (the "Special Master's Order");

WHEREAS, on June 20, 2007, Special Master Poppiti entered an Order Bifurcating Discovery into Intel's Evidence Preservation Issues (the "Bifurcation Order"), pursuant to which discovery concerning Intel's evidence preservation issues has been bifurcated such that discovery is first to be conducted to enable Plaintiffs to respond to Intel's remediation plan ("Remediation Discovery"), while discovery as to other matters related to Intel's evidence preservation issues ("Causation/Culpability Discovery") will proceed after the Remediation Discovery has concluded;

WHEREAS, on May 15, 2007 and May 16, 2007, respectively, AMD and Class Plaintiffs served their initial Remediation Discovery, consisting of parallel Notices of Taking Deposition Under FRCP 30(b)(6) and Request for Production of Documents re Remediation ("Initial Remediation Discovery"); and

WHEREAS, Intel has served its responses and objections to the Initial Remediation Discovery, and the parties have met and conferred in an effort to resolve as many issues as possible;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES HERETO SUBJECT TO THE APPROVAL OF THE COURT, AS FOLLOWS:

1.    The parties have agreed upon a "custodian" based approach toward production of documents in response to the Initial Remediation Discovery. Intel hereby represents, based on reasonable investigation, that it believes in good faith that the individuals listed below have been retaining the materials responsive to the Initial Remediation Discovery either in response to specific litigation hold notices and/or as a matter of general practice. Intel shall promptly produce documents from the following custodians.

2

1.    Malcolm Harkins
2.    Todd Buelt
3.    Dave Pistone
4.    Russell Price
5.    Adam Pollitt
6.    Dorr Clark

These are the individuals whose electronic and paper files will initially be produced in response to the Initial Remediation Discovery ("Initial Remediation Discovery Custodians"). Notwithstanding its objections to the Initial Remediation Discovery (other than on privilege or work product grounds), Intel will promptly produce, subject to the clarification set forth in a May 24, 2007 email from Mark Samuels to Daniel Floyd, all non-privileged documents responsive thereto from the files of the Initial Remediation Discovery Custodians. If this or other Remediation Discovery leads AMD and Class Plaintiffs to believe that other custodians possess significant non-duplicative documents that are likely to be relevant to the issues as set forth in Paragraph 1 of the Bifurcation Order, Intel agrees to promptly accommodate reasonable requests for production from additional custodians, and any disputes that may arise in this regard shall be submitted to Special Master Poppiti for resolution. AMD and Class Plaintiffs reserve their right, set forth in Paragraph 3 below, to move to compel production of responsive materials from the files of Intel attorneys or legal staff, and Intel reserves its right to oppose any such motion.

2.    In order to reduce its burden of document review in connection with the Initial Remediation Discovery, AMD and Class Plaintiffs have agreed that Intel may limit its search for responsive documents to specially created .pst archives that contain the documents responsive to the Initial Remediation Discovery if Intel can represent that all of the custodian's documents responsive to the Initial Remediation Discovery have been preserved and segregated in the specially created archive. If the custodian does not keep such segregated files, Intel shall use its best efforts to locate all documents responsive to the Initial Remediation Discovery.

3.      Intel has excluded from its list of Initial Remediation Discovery Custodians in Paragraph 1 its attorneys and legal staff, inside and outside, on the basis that the non-duplicative documents held by those individuals are almost entirely protected from discovery by the attorney client privilege or work product doctrine.  This has been done over AMD's and Class Plaintiffs' objection, and AMD and Class Plaintiffs reserve their rights to seek an order compelling the production of responsive materials from attorneys and legal staff, as well as an order requiring the submission of privilege logs identifying all responsive documents being withheld on privilege and/or attorney work product grounds.  Intel reserves its rights to oppose entry of such orders.

4.      Intel shall provide complete written summaries containing the information called for by Request Nos. 5, 8, and 13 of the Initial Remediation Discovery.

5.      Intel represents that the written Litigation Hold Notices called for by Request No. 2 of the Initial Remediation Discovery are maintained in a central corporate file outside the custody of any particular custodian, and Intel will therefore produce the written notices from its central corporate files as its complete response to Request No. 2.

6.      Without limiting Intel's obligations under Paragraph 1 hereof, Intel shall produce promptly, and on a rolling basis, the categories of materials listed on pages 6-7 of its response and objections to the Initial Remediation Discovery.

7.      The parties agree that to avoid potentially lengthy disputes over whether documents constitute work product, or whether Plaintiffs can meet the standards in Rule 26(b)(3) of the Federal Rules of Civil Procedure for the production of certain work product, it is agreed that in producing documents pursuant to this Order, Intel shall not withhold any attorney work

4

product unless it contains the mental impressions, conclusions, opinions, or legal theories of an attorney or party representative within the meaning of F.R.C.P. 26(b)(3), and Intel's production of such materials will not be deemed a waiver of any protection applicable to such "opinion work product" under F.R.C.P. 26(b)(3). However, AMD and Class Plaintiffs fully reserve any and all other rights or grounds to challenge any assertions of privilege or work product protection. The parties agree that paragraph 35 of the Second Amended Stipulation Regarding Electronic Discovery and Format of Document Production will apply to this production.

8.    To the extent not superseded by this Order, the Special Master's Order and Bifurcation Order remain in full force and effect.

RICHARDS, LAYTON & FINGER, P.A.

By:    */s/ Steven J. Fineman*
　　　Frederick L. Cottrell, III (#2555)
　　　Chad M. Shandler (#3796)
　　　Steven J. Fineman (#4025)
　　　One Rodney Square
　　　920 North King Street
　　　Wilmington, DE  19899
　　　(302) 651-7836
　　　cottrell@rlf.com
　　　shandler@rlf.com
　　　fineman@rlf.com

　　　*Attorneys for Advance Micro Devices, Inc. and*
　　　*AMD International Sales & Service, Ltd.*

**PRICKETT JONES & ELLIOTT, P.A.**

By:  /s/ J. Clayton Athey
      James L. Holzman (#663)
      J. Clayton Athey (#4378)
      1310 King Street
      P. O. Box 1328
      Wilmington, DE  19899
      (302) 888-6509
      jlholzman@prickett.com
      jcathey@prickett.com

      *Interim Liaison Counsel and Attorneys for Phil Paul,*
      *on behalf of himself and all others similarly situated*

**POTTER ANDERSON & CORROON LLP**

By:  /s/ W. Harding Drane, Jr.
      Richard L. Horwitz (#2246)
      W. Harding Drane, Jr. (#1023)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19890-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      wdrane@potteranderson.com

      *Attorneys for Intel Corporation and Intel*
      *Kabushiki Kaisha*

ENTERED this
_10_ day of July, 2007

Vincent J. Poppiti (#100614)
Special Master

# EXHIBIT 6



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

November 9, 2007

OUR FILE NUMBER
008,346-0163

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-8434

Robert E. Cooper, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Re:    *AMD v. Intel*

Dear Bob:

This responds to your November 7, 2007 letter to Mark Samuels regarding Intel's privilege non-waiver proposal for Causation/Culpability discovery.

In Mark's letter of November 5, 2007, we specifically identified the notes of interviews conducted to ascertain each custodian's compliance with Intel's document preservation instructions as materials we had expected to see in Intel's production. The interview notes are plainly called for by, *inter alia*, AMD's Request for Production Nos. 34 ("All documents evidencing, referring or relating to the failure or suspected failure of any Intel Custodian to comply with a Litigation Hold Notice or retention instruction, including the timing and means by which it was discovered.") and 41 ("All documents evidencing or relating to the nature, purpose and timing of the investigation reflected in the draft spreadsheet provided by Intel counsel to AMD counsel on February 22, 2007."). *See also* AMD's Request for Production Nos. 10, 12, 31-33, 39, 40, 42, and 43.

Intel has not produced the notes, apparently on the basis that doing so would potentially make "Intel's outside counsel witnesses in the very case they are responsible for defending." Even were that relevant to Intel's document production obligations, the fact is that we have now determined that the interviews were conducted not by Intel's trial counsel in this case, but instead by attorneys at Weil, Gotshal & Manges LLP. There is, therefore, no basis we can see for Intel's failure to produce these interview summaries. As you know, we have in place an agreement that requires Intel to produce non-core work product relevant to its document preservation lapses, as this seems clearly to be.

While Intel has in the past indicated that the information developed during the Custodian interviews conducted by counsel has been provided to AMD through its Paragraph 8 disclosures,

O'MELVENY & MYERS LLP
Robert E. Cooper, Esq., November 9, 2007 - Page 2

those disclosures are not the substantial equivalent of the interview notes themselves. AMD is entitled to get behind the Paragraph 8 assertions to precisely determine what the custodians stated with regard to their preservation practices. The only alternative to production of the summaries is for AMD to depose hundreds of Intel employees around the world specifically on their preservation habits and failures. Even were there no stipulation in place requiring production of non-core work product, this circumstance alone would justify production of the interview summaries.

Please let us know whether Intel will reconsider its position. Failing that, we intend to take the matter up with the Special Master.

                                            Very truly yours,

                                            James M. Pearl
                                            for O'MELVENY & MYERS LLP

CC1:774068.3