O'MELVENY & MYERS LLP
Richard Levy, Esq., November 8, 2007 - Page 9

- **Document Requests to which Intel will respond with a written summary**: Intel originally agreed to provide written summaries in response to Document Request Nos. 2, 13, 23, 25, 27, 28, 33 and 45. (*See* Intel's Response; Email from Richard Levy to David Herron and James Pearl (Sept. 26, 2007 5:48 PM).) In its Supplemental Response, we understand Intel to have now withdrawn its commitment to provide written summaries for most of these requests and, instead, to now be willing to provide written summaries only in response to Document Request Nos. 3, 13, 16 and 33. Please confirm that our understanding is correct. Because Intel has backtracked on its prior promises to provide narratives, we ask that you identify the specific documents Intel has produced in response to Document Request Nos. 2, 23, 25, 27, 28, and 45. Furthermore, please let us know when we can expect to receive written summaries in response to Document Request Nos. 3 and 16.

2.   **Intel's Responses to Deposition Topics**

- **Deposition Topic Nos. 1, 2, 10 and 11**: We have negotiated on these Deposition Topics for several months, and consider the parties at an impasse. We intend to bring them to the attention of the Special Master at the earliest available opportunity. Intel has responded by refusing to produce witnesses to testify on portions of Deposition Topic No. 1 (concerning Intel's standard corporate evidence preservation policies and practices) and Deposition Topic No. 2 (concerning Intel's corporate "auto-deletion" policies and practices); or on the entirety of Deposition Topic No. 10 (concerning differences, deviations or discrepancies between Intel's Litigation Hold Notice activities and monitoring efforts in this litigation and its standard or customary practices) and Deposition Topic No. 11 (concerning Intel's "$10 million discovery management program). We believe AMD is entitled to this discovery for the reasons outlined above with respect to these topics' corresponding Document Requests. If Intel has reconsidered its position, please advise.

- **All Other Deposition Topics**: We understand Intel to have agreed to produce witnesses to testify on the remaining topics as drafted. We have been asking for proposed deposition dates and renew that request now.

It appears, however, that the parties are at impasse on Document Requests 1, 2, 3, 40 and 41 and Deposition Topics 1, 2, 10, and 11. We are hopeful that most of the remaining issues in this letter can be resolved between the parties and we look forward to hearing back to you on those.

Very truly yours,

James M. Pearl
for O'MELVENY & MYERS LLP

# EXHIBIT C

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

RPLevy@gibsondunn.com

November 21, 2007

Direct Dial                                                                                                        Client No.
(213) 229-7556                                                                                                T 42376-00830
Fax No.
(213) 229-6556

VIA E-MAIL

James M. Pearl, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

Dear Bo:

   Thank you for your November 8, 2007, letter concerning Intel's Supplemental Responses and Objections to Plaintiffs' Notice of Taking Deposition and Request for Production of Documents (the "Supplemental Response"), which Intel served on October 4, 2007. We address each of the general and specific issues you raise herein.

   In the meantime, and as you know, Intel (which, for purposes of this letter, means the company and/or its outside counsel) produced on October 31, 2007 a re-reviewed, electronic set of the Investigation Documents, which were previously produced to AMD in paper form on August 30, 2007. Intel took the opportunity to re-review these documents to ensure that redactions of these documents were as narrow as could be made consistent with the protections of the attorney-client privilege and core work-product doctrine. Additionally, as requested in your letter of November 1, Intel is conducting a similar re-review of the nearly 9,000 additional documents constituting the balance of the material produced to AMD pursuant to the "Causation/Culpability" document requests. Intel is devoting substantial resources toward this effort and expects that the re-review will be completed, and the relevant documents produced to AMD, by the beginning of December.

## BACKGROUND.

   In preparing its April 23, 2007 Report to the Special Master, Intel identified 17 people in its legal and IT departments from whom to collect documents. Although some of these individuals had more significant roles than others, this group – called the Retention Custodians

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 2

on Exhibit A to the Supplemental Response – includes the Intel personnel who had the most significant roles in the creation and implementation of Intel's retention plan (a phrase we elaborate on below).

To identify which documents from the Retention Custodians' files were likely to be responsive to AMD's requests, Intel focused on the time frames that the individuals were actively involved in the retention process. As set forth in Exhibit A to the Supplemental Response, that time period varied from custodian to custodian. For example, for the legal custodians that had the most prominent roles in the day-to-day management of the litigation and retention process – Ms. Almirantearena and Mr. Batista – Intel reviewed all of the documents in their files relevant to the retention issues through January 2007 (and later additionally reviewed their documents through March 2007).

For the IT Retention Custodians, Intel focused its document review on the time periods during which its IT department was actively involved in assisting Intel Legal with the document retention process. Those activities were centered around three main tasks: (i) the Complaint Freeze Tape process in June and July 2005; (ii) the Weekly Backup Tape process, which began in the Fall of 2005; and (iii) various efforts to assist Intel Legal with retention issues starting around October / November 2006. As such, Intel collected and reviewed the email and loose e-files from the IT Retention Custodians that fell within two broad timeframes: 6/27/05 to 1/31/06, and 10/1/06 to late January 2007. Additionally, to ensure that any Weekly Backup Tape-related documents circulated by or among the IT Retention Custodians during the interim period – namely 2/1/06 through 9/30/06 – were captured and reviewed, Intel performed a keyword search for the abbreviation "SG3," which stood for "Storage Group 3," one of the primary ways the IT Retention Custodians referred to the Weekly Backup Tape process.[1]

The total volume of Retention Custodian documents Intel initially reviewed exceeded 200,000. Because that volume was so large, and in order to focus on the more important documents for purposes of preparing its Report to the Special Master, Intel separated the documents on first review that appeared relatively important to the retention issues in this case from those that appeared duplicative or unimportant. In making this cut, Intel did not differentiate between those documents reflecting positively on Intel's retention efforts and those that may not. Those documents that were important – whether "good" or "bad" for Intel – became known as the Investigation Documents. It is those documents that were the basis of Intel's Report to the Special Master, and which Intel first produced to AMD in paper form on

---

[1] For the relevant time periods, Intel read each document in the files of the Retention Custodians. It did not (as questioned in note 1 of your letter) limit its review to search term "hits." Intel searched for the term "SG3" only as a supplement to its document review.

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 3

August 30th, and which Intel re-produced (with substantially fewer redactions) in electronic form on October 31st.

After its initial production of the Investigation Documents, Intel determined to make a more exhaustive production from the subset of Retention Custodians who were primarily involved in Intel's document retention efforts – Almirantearena, Batista, Olson, Smith, Clark, and Stokes. (After receiving your September 13th letter, Intel expanded the group to include a seventh Retention Custodian mentioned in that letter, Kelly Wright, although Intel does not believe Ms. Wright was central to the retention process). Intel re-reviewed the harvested files of these custodians (for the relevant date ranges) and produced from those files all of the documents that it believed to be relevant to the retention issues, even if unimportant or duplicative. That set consisted of approximately 9,000 documents.

Hopefully, this background explains some of the terminology used on pages 5-6 of Intel's Supplemental Response. From the files of the seven key custodians identified in the paragraph above, Intel believes that it has "made reasonable efforts to produce (subject to the date ranges on Exhibit A and to claims of attorney-client privilege and work product protection, and without collecting documents in the custody of Intel's outside counsel) all documents responsive to AMD's "Causation/Culpability" document requests." [See Supplemental Response at 5 (emphasis added)]

For the other ten Retention Custodians, Intel has not conducted a similar re-review of their files. It has not done so because those custodians are of substantially lesser importance to the retention issues. The relatively important documents from those custodians were, however, produced as part of the Investigation Documents. More technically, as set forth in the Supplemental Response at 5, Intel has produced from the files of those ten custodians (subject to the privilege and date range restrictions) "those documents that are most likely to contain material non-duplicative information regarding the 'Causation/Culpability' requests."

**GENERAL ISSUES**

We now turn to the "General Issues" and purported "Defects" raised in your letter.

**Representation of Complete Response**

Your letter questions whether the "modifiers" used in Intel's Supplemental Response – and in particular its reference to "key players" and the "retention plan" – somehow suggest that Intel has attempted to "limit its production obligations." They do not. Rather, Intel believes that its productions "constitute a comprehensive response reflecting the information Intel reasonably believes to be most material to [AMD's 'Causation/Culpability'] requests, subject to the privileges involved." [Supplemental Response at 6]

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 4

Nor do the date range-restrictions used by Intel undermine the comprehensiveness of its response. As discussed, those ranges were chosen because they reflect the periods during which the relevant custodians were actively involved in the retention process.

As to the representation you request on page 3 of your November 8 letter, Intel is prepared to represent as follows:

> Intel believes after reasonable and diligent investigation that the "Retention Custodians" identified on Exhibit A: (1) include the Intel personnel with the most substantial contemporaneous knowledge of, and who possess the most material, non-privileged[2] documents that were contemporaneously sent or received that are responsive to, the information sought by AMD's "Causation/Culpability" Document Requests; (2) include the Intel personnel in possession of the most material, non-privileged documents which, taken together, constitute a comprehensive response to AMD's "Causation/Culpability" Document Requests; and (3) sent, received or created the most material, non-privileged documents responsive to AMD's "Causation/Culpability" Document Requests within the time frames specified by Intel in Exhibit A.

**Limited Document Production from Certain Retention Custodians**

Your letter questions the scope of Intel's production from the ten Retention Custodians for whom Intel did not conduct the same re-review as it did for the other seven. The Background section above should answer that question. But to be clear, Intel did not (as questioned in note 2 of your letter) rely on search terms to identify responsive materials from those custodians. [*See* note 1, above] Intel read each document from the relevant date ranges and produced those that were material and non-duplicative. Given the less important role of those custodians, and the amount of time and expense involved in the review effort, Intel concluded that the documents from these ten custodians included in the Investigation Documents were sufficient – when combined with the productions from the other seven Retention Custodians – to give a comprehensive response to AMD's "Causation/Culpability" requests.

---

[2] "Non-privileged," as used herein, means not protected by the attorney-client privilege or core-work-product doctrine.

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 5

### The "Contemporaneously-Created" Production Limitation

Your letter asks about the use of the phrase "contemporaneously created" in describing the retention documents Intel has produced. By that phrase, Intel means to make clear that it is not producing privileged or core-work product documents created as part of counsel's "after-the-fact" analysis of the retention lapses. On the other hand, Intel is not using this phrase as a basis for withholding any relevant, non-privileged documents that were created as part of its retention efforts (including its potential retention lapses). Thus, for example, Intel is not producing any privileged documents from the files of inside counsel Jo Levy – who was assigned to this matter after Intel discovered the retention issues and who had not had any previous involvement in this litigation – that concern her work with outside counsel in reviewing the underlying issues. On the other hand, Intel is not withholding relevant, non-privileged documents simply because they were later forwarded to Ms. Levy as part of her assignment.

### Intel's Use of the Term "Collection"

You have also expressed confusion about use of the term "Collection." As used in Intel's original response to AMD's "Causation/Culpability" document requests, its original Exhibit A, and its new Exhibit A attached to the Supplemental Response, the term "Collection" is synonymous with the Investigation Documents. However, Intel's "Causation/Culpability" document production is ***not*** limited to the original Investigation Documents, but now includes (a) the re-reviewed and (on October 31, 2007) re-produced Investigation Documents, and (b) the nearly 9,000 additional "Causation/Culpability" documents that Intel has already produced (and that, by the beginning of December, Intel will re-produce after a further privilege review). Accordingly, Intel's "Causation/Culpability" document production is not limited solely to the "Collection" or the Investigation Documents, but rather includes all of these additional documents.

Your letter raises questions about some specific documents:

- <u>Request No. 8 & Topic No. 10</u>: As noted in the Supplemental Response, Intel has already produced the basic form of notice used in previous Intel litigation that served as the model for the original document hold notice in this case. [*See* Document No. 69412DOC0002551] Intel stands by its refusal to produce privileged communications and work product from other cases.

- <u>Request No. 7</u>: Intel has already produced the hold notices for the Custodians that were distributed through approximately the end of July 2007. Because each hold notice, on its face, shows the recipients of the notice, it should be unnecessary to prepare separately a list of each Custodian who received each

Case 1:05-cv-00441-JJF   Document 479-4   Filed 01/03/2008   Page 8 of 12

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 6

> notice (even though a partial list containing such data was included with Intel's Report to the Special Master).
>
> - <u>Request No. 4</u>:  Intel's "tiered" retention process is described in the Investigation Documents and in the other approximately 9,000 "Causation/Culpability" documents that have been produced.

**Identification of Custodians and Interjection of New Custodians**

We respond to the two issues raised in this section of your November 8 letter in reverse order.

In connection with a limited number of "Causation/Culpability" document requests, Intel does not believe that the 17 Retention Custodians possessed sufficient responsive documents to provide a comprehensive response. In those cases, Intel's Supplemental Response indicates the additional custodians to whom Intel looked for responsive documents. Those custodians include:

- <u>Steve Owen</u>. Mr. Owen is a Server Analyst based in Swindon, England. As noted in Intel's Supplemental Response to Request No. 26, Mr. Owen provided one relevant document in connection with the recycling of Weekly Backup Tapes by Europe Intel's IT department.

- <u>Georg Fisch and Bernd Sprank</u>. Mr. Fisch is Managing Attorney for the EMEA (Europe, Middle East, and Africa) Business and Technology Legal Team at Intel. Mr. Sprank is a Senior Network Specialist in Intel's Greater European LAN Operations Group.  As noted in Intel's Supplemental Response to Request No. 30, Messrs. Fisch and Sprank provided additional relevant documents concerning the recycling of Complaint Freeze Tapes at Intel's Munich, Germany facility.

- <u>Mark Friedman, Benoit Philippe, Francis Dulce, Jim Jeffs, and May Wong</u>. Messrs. Friedman (Associate General Counsel and Director, Worldwide Sales Legal), Philippe (Managing Attorney, Sales & Marketing Group (Europe, Middle East & Africa), and Jeffs (Managing Attorney, Sales & Marketing Group (Asia-Pacific) are in-house attorneys at Intel; Ms. Dulce is a Litigation Paralegal at Intel; and Ms. Wong is an Administrative Assistant in Intel's Asia-Pacific legal department. As noted in Intel's Supplemental Response to Request Nos. 35, 36, and 37, these custodians provided additional relevant documents concerning Intel's efforts to retain the data and documents belonging to departing Intel employees.

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 7

- <u>Other IT Sources</u>.  Intel included the phrase "other IT sources" in its Supplemental Response to Request Nos. 25, 27, and 45 to indicate that the specifically named custodians in those responses – including Perry Olson, Dorr Clark, Curtis Smith, and William Stokes – may need to gather responsive documents from corporate sources beyond their personal files.

- <u>Tom Cunin, Marc Foster, and Alan Stainer</u>.  These IT personnel are among the 17 Retention Custodians, and documents found within their collections are included in, and generally support, the Investigation Documents.  If you have questions regarding one of their specific documents, please let us know, and we will be happy to meet and confer regarding same.

As to the other issue you raise, Intel did not identify any individuals in possession of documents responsive to Request No. 4 because the Investigation Documents, as supplemented by the additional nearly 9,000 "Causation/Culpability" documents, represent Intel's response to that request.  As to Request No. 33, Intel has already responded with a summary of information in the form of an interrogatory response.  And, as to Request No. 38, Intel stands on its response.

**Production Deadline for Re-Review of the Nearly 9,000 Documents**

Intel is working diligently on the re-review of the nearly 9,000 "Causation/Culpability" documents (as requested in your November 1st letter), but given the volume of documents, we do not expect the re-review and production to be complete earlier than as discussed above.

**Privilege Logs**

We are in agreement.  Intel has now provided AMD with a log of those documents fully withheld from the Investigation Documents.  The log for the fully withheld documents from the re-reviewed set of nearly 9,000 documents will be produced by December 14, 2007.

**SPECIFIC ISSUES**

**Responses to Specific Document Requests**

We comment on the following, specific document requests in the order presented.

- <u>Request Nos. 1, 2, 3, 40, and 41</u>.  Intel stands on its Supplemental Responses to these topics.  We do note, however, that Intel has produced documents responsive to Request Nos. 2 and 3.  Moreover, as to Request No. 3, Intel has produced a document in the form of an Excel spreadsheet that provides, in summary form, the known mailbox retention policies as of May 2005 for each Intel Custodian.  Such information is not readily available in summary form,

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 8

and that is the best such summary Intel has been able to locate to date. Request Nos. 40 and 41 seek privileged attorney-client communications and core work product, which (as noted in the Supplemental Response) Intel is not willing to waive. However, as evidenced by (i) the spreadsheet provided to AMD on February 22, 2007 (which is the subject of Request No. 41), (ii) the exhibits to Intel's Report to the Special Master, and (iii) the other documents produced by Intel in response to AMD's "Causation/Culpability" document requests, Intel is not withholding from AMD the underlying facts discovered by the investigations and reviews referred to in Request Nos. 40 and 41, only the privileged attorney-client communications and core work product regarding same.

- Request Nos. 7, 16, 27, and 45. As noted above, Intel has produced the hold notices for the Custodians that were distributed through approximately the end of July 2007. The face of each notice shows the recipients of the notice, making a list of the Custodians who received each notice in response to Request No. 7 unnecessary. Regarding Request No. 16, Intel stated that it will either "provide a summary of information in the form of an interrogatory response . . . or provide documents sufficient to evidence the results of the beta test of the EMC system," and Intel has elected to produce documents in lieu of a summary. Finally, Intel has produced documents that it believes address Requests 27 and 45. If you have specific questions regarding the responsiveness of any given document, please let us know.

- Requests Responded to by Written Summary. Intel has already provided AMD with written summaries in response to Request Nos. 13 and 33, and a document in the form of an Excel spreadsheet in response to Request No. 3 (which provides, in summary form, the known mailbox retention policies as of May 2005 for each Intel Custodian). As noted above in connection with Request No. 16, Intel stated that it will either "provide a summary of information in the form of an interrogatory response . . . or provide documents sufficient to evidence the results of the beta test of the EMC system," and Intel has elected to produce documents in lieu of a summary. As to the balance of the requests noted in this section of your letter, Intel already has

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 9

produced documents that are responsive.[3]  Again, if you have specific questions regarding specific documents, please let us know.

**Responses to Specific Deposition Topics**

Likewise, we comment on the following, specific deposition topics in the order presented.

- <u>Topic Nos. 1, 2, 10, and 11</u>.  Intel stands on its Supplemental Responses to these topics.  We do note, however, that as to Topic No. 1, Intel has agreed to provide a Rule 30(b)(6) witness to testify about non-privileged information concerning its evidence preservation policies and practices as applied in this case, and as to Topic No. 2, Intel will allow a 30(b)(6) witness to testify concerning non-privileged information about its auto-delete policies, as applied to email and other electronic data, and any suspension or deviation from these policies in connection with this litigation.

- <u>Other Deposition Topics</u>.  Mark Samuels and I have been corresponding separately about the depositions.  We have exchanged potential deposition dates for Eva Almirantearena and Perry Olson, and we are awaiting confirmation from Mark as to AMD's availability.

---

[3] For some examples of documents responsive to Request Nos. 2, 25, 27, and 45, see the documents produced in native form bearing native production numbers 68902-000005 through 68902-000010. Documents responsive to Request Nos. 23 and 28 are voluminous and are present throughout both the Investigation Documents collection and the additional 9,000 "Causation/Culpability" documents.

**GIBSON, DUNN & CRUTCHER LLP**

James M. Pearl, Esq.
November 21, 2007
Page 10

      We trust this letter addresses the issues you raised. Again, we are available to sit down with you to discuss any of these issues further.

Very truly yours,

*[signature]*

Richard Levy

RPL/rag

cc:    Robert E. Cooper
        Kay E. Kochenderfer