**RICHARDS, LAYTON & FINGER**
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

March 5, 2008

**VIA ELECTRONIC MAIL & HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.* C.A. No. 05-441-JJF, *In re Intel Corporation*, C.A. No. 05-1717-JJF, and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-485-JJF

Dear Judge Poppiti:

This replies to Intel's February 29, 2008 letter opposing the proposal advanced by AMD and Class Plaintiffs that the Court adopt a "window" approach to deposition discovery. As we show, key facts Intel concedes actually support such an approach and make the case against the rigid and unimaginably stingy deposition limits Intel would impose on plaintiffs now.

First, while espousing "feasibility," "practicality" and "manageability," Intel concedes facts showing that plaintiffs ***cannot possibly meet their burden*** with 50 one-day Intel depositions. One only needs to look at its description of its own document production ("massive" and "unprecedented") to understand that its proposal will gut this case before the first substantive deposition commences by choking off any reasonable access to witnesses. It concedes that in order to adequately respond to document requests essentially asking for a roadmap of six years of its customer transactions and other potentially exclusionary conduct, Intel had to cough up 145 million pages of paper (and this from just a sampling of custodians with relevant, non-duplicative materials). Although Intel now attempts to suggest otherwise, AMD's document requests were reasonable and appropriate and Intel never sought to have them quashed or limited.

If it took Intel truckloads of documents to detail its customer dealings, it will take a commensurate number of depositions for AMD to piece together this massive paper trail into a cohesive, admissible story. That is because without authenticating and explanatory testimony, those 145 million pages might as well be consigned to a shredder. That's effectively what Intel proposes. By limiting plaintiffs to 50 Intel depositions in the face of such a massive production, each Intel deponent on average would have to explain 2,900,000 pages -- the vast majority, under Intel's proposal, ***in only one day.***

RLF1-3259939-1

Obviously, plaintiffs will not need to examine about every document. But Intel concedes that AMD is "quite right" in its assertion that "chip suppliers negotiate purchase terms with chip customers for shorter terms, often quarterly." Indeed, Intel goes even further, stating that "[i]n the microprocessor industry, negotiations with each OEM are virtually continuous" and result in "a series of buying arrangements of short duration." (Oppo. at 7). And for both Intel and customer negotiating teams, turnover is the rule of the day. So it will be the rare case that only one or even a few Intel witnesses will be able to describe the restrictions on doing business with AMD that Intel expressly or impliedly built into those myriad quarterly transactions. Add to this the dozens and dozens of local, regional and multinational customers that comprise the relevant market, and plaintiffs have a monumental task ahead of them to show substantial foreclosure.

Intel responds that trials are of necessarily limited duration, as is a jury's attention span. But depositions serve more than the purpose of providing the jury with admissible testimony. Indeed, in a case of this magnitude and complexity, the burden will fall largely on experts to aggregate the evidence and summarize the nature, scope, and duration of Intel's exclusionary conduct. But experts must rely on matters of record, and without a sufficient number of depositions to interpret and piece together the paper trail, plaintiffs' experts will have little to talk about -- undoubtedly the goal of Intel's deposition limits in the first place.

Should there be any doubt, we lodge *in camera* with this reply our current working version of a "must-have" Intel deponent list. In terms of the requirements for any particular customer, it is generally barebones -- *e.g.*, six in the case of Dell and ten in the case of IBM/Lenovo, two of the most significant industry players. But given the number of customers and other participants in the distribution chain that comprise the relevant market -- and plaintiffs must show exclusion from a substantial portion of the relevant market -- the numbers still add up. Currently, our "must-have" list stands at 126 Intel witnesses at less than the halfway mark for document review, and our understanding of each customer is still very much developing. Lest the court doubt, for example, the necessity of ten depositions of Intel employees with responsibility for IBM/Lenovo, plaintiffs would be pleased to submit *in camera* the 175 page bible we have compiled that describes AMD's prolonged and tortured exclusion from just that one customer's business.

In short, fifty one-day Intel depositions, under the circumstances, is absurd, as is Intel's request that plaintiffs be limited to twenty-five third party depositions. Granted, we don't currently know the right number. But the solution is a deposition framework that allows the parties to crank up the deposition process on multiple tracks, move it along at a pace that each party deems consistent with the status of document production and review, and to take stock several months from now.

Indeed, Intel concedes the prematurity of setting hard and fast deposition limits now. It admits that of the 145 million pages it has produced, ***75 million pages went to plaintiffs after***

*January 1, 2008*.[1] Intel does not dispute that AMD should have the opportunity to conduct an "appropriate review and analysis of th[is] huge number of documents" before deciding on deponents and conducting depositions. In fact, Intel claims it would be "backwards" for AMD to begin depositions before doing so. (Oppo. at 5). Yet, Intel nevertheless wants the Court to impose strict limits *now*. At this juncture, however, any such limits could not even possibly be based on the parties' or the Court's informed assessment, in light of the parties' document productions, of which or how many individuals it would be appropriate to depose.[2]

The April 2009 trial date may well be "the elephant in the room," as Intel characterizes it. But the meager deposition slots Intel proposes would retard progress of the case toward an April 2009 trial, not advance it. This is true for the simple reason that, rather than being able to proceed with the deposition of any particular witness at an appropriate time (*e.g.* after the documents produced by that witness have been reviewed), as AMD's proposal contemplates, under Intel's approach prudence will require the parties to wait and evaluate each prospective witness' potential testimony against the potential significance of scores of other possible deponents -- many of whose documents will not yet have been completely reviewed -- before deciding to spend a limited deposition slot for that witness. (Indeed, as noted, Intel's proposal appears to contemplate that AMD will engage in precisely such a process.) Since that is at least months away, deposition discovery would not likely start in earnest under Intel's proposal before the second half of the year at the earliest. By permitting the parties to proceed with individual depositions when they are ready to do so, AMD's approach in contrast will allow deposition discovery to start whenever a likely deposition candidate's documents have been collected and reviewed.

Intel unconvincingly strains to gin up a parade of horribles that it says will result from the absence of strict numeric limits, but there is no reason to believe that the parties "will become hopelessly mired in a landscape of endless cumulative and unnecessary depositions" or that "a herd of AMD lawyers" intends to "stampede through the employee ranks of Intel and numerous other computer manufacturers." To the contrary, AMD, with a fraction of Intel's lawyers, lacks the time or resources to take cumulative and unnecessary depositions and needs to move this case quickly toward trial, not become "hopelessly mired" in deposition discovery. Moreover,

---

[1] That number does not even include additional material from custodians for whom Intel had to re-produce due to its substantial preservation failures. Although it is not entirely clear from their respective letter briefs, the parties appear to be using different means of counting the number of paper "pages" that would be generated by the electronic files and documents they actually are producing.

[2] Indeed, Intel's desire for strict, up-front deposition limits seems driven primarily by remorse over a document production it now describes as "protracted, wasteful, and excessive." This belated, new-found remorse rings hollow but is in any event inappropriate in light of the fact that the parties' custodian based approach to document production was proposed by Intel and limited Intel's obligation to produce documents to only approximately one-third of the custodians whom Intel itself identified as having an appreciable quantity of non-duplicative, material evidence.

AMD's counsel has no intention of "stampeding" anywhere, much less as a "herd." Notwithstanding Intel's colorful conjuring of worst case scenarios, there is no reason to believe that AMD's proposals will lead to abuse. In fact, the opposite is true. AMD's proposal, unlike Intel's, will allow the parties to begin deposition discovery soon, proceed with appropriate depositions at a steady pace when they are ready to do so, and complete those depositions in an efficient manner within a reasonable time.

Although Intel's opposition also pleads for deposition parity, Intel does not bear nearly the same burden as AMD and Class Plaintiffs. Plaintiffs face the task of assembling proof on a transaction-by-transaction, customer-by-customer basis from witnesses they can only access through deposition that Intel conditioned concessions or withheld retribution based on the customer's willingness to forego business with AMD. Intel, by contrast, can simply have witnesses it knows and controls testify at trial that they never attempted to leverage Intel's competitive position or tried to bribe its customers. Except perhaps in the case of former employees, it doesn't even need a deposition. And proving a defense based on AMD's so-called self-inflicted wounds shouldn't be deposition intensive. Intel has apparently already identified the best of the best on the subject, AMD's highest-ranking sales executive, Mr. Henri Richard. It's hard to imagine that more than another handful of witnesses on the subject wouldn't be cumulative. In the face of these realities, it is hardly surprising that Intel never justifies its need for "an equal number of depositions" as AMD, Oppo. at 3, a plea we view as larding it on just to drive up the total number of depositions to create the appearance of frighteningly endless depositions.

Finally, AMD notes that Intel's brief almost entirely fails to respond to AMD's discussion of the broader economic and public policy importance of this case, except to accuse AMD of "smearing" it "by pointing to the investigations of Intel by Japan, South Korea, the European Union, as well as the New York's Attorney General's Office." Intel attempts to dismiss these investigations by the competition authorities of two sovereign nations, the EU, and the State of New York as part of a "global campaign" by AMD and instead argues that "[t]his case is only about AMD's Delaware complaint." That may be true, but this case also is about Intel's conduct, and Intel cannot and does not dispute the fact that the outcome of this case will have a very substantial impact on public policy and on the future of the entire computer industry. The Federal Rules contemplate that the scope of discovery in a case should be based on the importance, complexity, and challenges in proving that case. *See e.g., Steelcase, Inc. v. Hawarth, Inc.*, 954 F. Supp. 1195 W.D. Mich 1997) (scope of discovery guided by "nature and scope of proofs" at trial). AMD's proposal for deposition discovery recognizes the importance, complexity, and challenges of this case. Intel's does not.

                    Respectfully submitted,

                    /s/ *Frederick L. Cottrell, III*

                    Frederick L. Cottrell, III

FLC,III/afg

RLF1-3259939-1

The Honorable Vincent J. Poppiti
March 5, 2008
Page 5

cc:   Richard L. Horwitz, Esq. (via Electronic Mail)
      James L. Holzman, Esq. (via Electronic Mail)

RLF1-3259939-1