

Potter
Anderson
& Corroon LLP

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

May 5, 2008

VIA EMAIL & HAND DELIVERY

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

  Re: **In re Intel Corporation, C.A. No. 05-441-JJF - Que Choisir Motion to Intervene and Application Pursuant to 28 U.S.C. § 1782**

Dear Judge Poppiti:

  Intel respectfully submits this letter to explain why there is no urgency to the motion by Union Federale des Consommateurs - Que Choisir ("QC") to intervene to modify the protective order and its application pursuant to 28 U.S.C. § 1782. First, expedited treatment is unnecessary because the European Commission ("EC" or "Commission") has its own power to obtain any documents it deems necessary for its proceedings, has steadfastly objected to the use of § 1782 in Commission matters, and thus is unlikely to accept evidence obtained by a third party under § 1782. Second, QC has not followed the appropriate EC procedures to obtain discovery. Third, the record in the EC Intel proceeding (Case 37990) is closed so QC cannot submit evidence to the Commission and, even if it does so, the EC cannot make use of the evidence unless it reopens the proceedings. Fourth, modification of the protective order in this case impacts the rights of more than seventy third parties and the Court has stated its intention to provide them a full opportunity to be heard on the issues underlying the § 1782 application.

I. **The Commission Exercised Its Powers in Case 37990 to Obtain All the Documents It Needs and Rejects the Use of § 1782 in Its Competition Proceedings**

  In *Intel v. AMD*, 542 U.S. 241, 247 (2004), the Supreme Court held that § 1782 "authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." The district court is to consider the following four factors in ruling on a § 1782 request: (1) whether the foreign tribunal can itself order the discovery sought from a party; (2) the nature of the foreign tribunal, the character of the proceedings under way, and the receptivity of the foreign tribunal to U.S. federal court assistance; (3) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States";

and (4) whether the request is unduly burdensome or intrusive. *Id.* at 264-65. As will be shown during the merits briefing, all of these factors strongly favor denial of QC's motion. The first three also demonstrate that there is no urgency to QC's request, and thus Intel here focuses on those factors.

The EC has repeatedly opposed past attempts to use § 1782 to gain access to evidence for use in a European Commission proceeding on the ground that § 1782 would interfere with EC procedures. Its opposition has been clearly set forth in several cases involving Microsoft and in the *Intel v. AMD* case that went to the Supreme Court. (*See* Declaration of James S. Venit, ¶ 18e [hereinafter Venit Decl.])

As it has emphasized in opposing § 1782 requests, the Commission has the power to obtain any evidence that it deems necessary, including from third parties. Council Regulation 1/2003 "provides specific means for investigating suspected infringements of competition law...."[1] Article 18 of the regulation empowers the EC to "'require undertakings to provide all necessary information' whether or not they are the target of an investigation or suspected of an infringement of the competition rules." Comm'n Novell Brief at 10-11; Venit Decl. ¶ 18a. As the EC has explained, it "has all the power to request any information from...any other third party company at any time that is relevant to the proceedings...." Comm'n Novell Brief at 11.[2]

The Commission, which is aware of the pendency of this litigation, has already exercised its powers and collected all the information it deemed necessary from Intel and third parties in its investigation in Case 37990. Venit Decl. ¶ 18b. Specifically, the EC solicited and received numerous documents from Intel and third parties that participate in the computer industry, including Dell, HP, and IBM. *Id.* When, as here, the evidence sought is already available to the foreign tribunal, the use of § 1782 is "both unnecessary and improper." *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006).

Despite QC's representation to the Court that "there is no ... opposition by the EC" to its application for discovery under § 1782,[3] there is no reason to believe that the Commission would

---

[1] Brief for the Commission of the European Communities in Support of Novell, Inc.'s Motion to Quash, at 4, *In re Application of Microsoft Corp.*, 2006 U.S. Dist LEXIS 32577 (D. Mass. Apr. 17, 2006) [hereinafter Comm'n Novell Brief (attached as Ex. 9 to the Venit Decl.)]; *see also* Letter from Philip Lowe, Director-General, European Commission, to Maurits Dolmans, Cleary Gottlieb Steen & Hamilton (Mar. 2006) (Venit Decl. Ex. 13).

[2] If a third party fails to provide the requested information, the Commission can and will induce compliance by ordering production and imposing significant fines under Articles 23 and 24 of Regulation 1/2003. *Id.* The Commission also has additional means to obtain information located in the United States. Such actions include but are not limited to § 1782. *See* the Agreement Between the Government of the United States of America and the Commission of the European Communities Regarding the Application of their Competition Laws, 1995 O.J. (L 95) 47, *as amended by* Exchange of Letters Dated 31 May 1995 and 31 July 1995, 1995 O.J. (L 132) 38, and the Agreement Between the Government of the United States of America and the European Communities on the Application of Positive Comity Principles in the Enforcement of Their Competition Laws, 1998 O.J. (L 173) 28.

[3] Brief of Union Federale des Consommateurs - Que Choisir at 27, *In re Intel Corp. Microprocessor Antitrust Litigation*, C.A. No. 05-441-JJF (Apr. 9, 2008) [hereinafter QC Brief].

reverse its consistent and well-established position that it "is <u>not</u> receptive to the judicial assistance sought...pursuant to 28 U.S.C. § 1782...." Comm'n Novell Brief at 1 (emphasis in original).[4] The EC has expressed the fear that granting such § 1782 requests for use in Commission proceedings would "seriously compromise the Commission's powers of investigation and competition law enforcement." *Id.* at 15. The Commission explained to the Supreme Court in *Intel v. AMD* that allowing use of § 1782 in EC proceedings "would undermine the European Community's carefully balanced policies regarding the disclosure of confidential information, by allowing complainants to obtain via § 1782 documents that they are *not* permitted to review under European law" (Comm'n Intel Brief at 4 (emphasis added)), and "object[ed] to the potential subversion of limits that the European Union has imposed ... on access by an antitrust complainant to the information that the Commission gathers in its investigation, including confidential business information of the target company...."[5]

The EC has consistently rejected the use of § 1782 as it would "facilitate[] circumvention of the European Union's considered policies on access to information...." Comm'n Intel Brief at 14. As the Commission has exercised its power to get all the evidence it needs and opposes the use of § 1782 in competition matters, an expedited briefing schedule is simply unnecessary.

## II.    QC Has Not Followed Procedures Mandated By EU Law

In opposing the use of § 1782, the Commission has stated that, "the laws of the European Community embody a deliberate decision *not* to authorize private parties to conduct their own discovery."[6] (Emphasis added.) Rather, a defendant seeking additional discovery for an EC competition proceeding must first ask the Commission to obtain the documents. Comm'n Sun Brief at 10. The Commission's decision on whether or not to grant the request is subject to appellate court review. *Id.*; Comm'n Novell Reply Brief at 2-3. If a defendant has to follow this procedure, *a fortiori*, an intervener with substantially fewer procedural rights, would surely have to do so as well. To Intel's knowledge, QC has not followed this procedure in its quest to obtain the Delaware litigation documents. Rather, QC has attempted to circumvent EC law by directly approaching this Court. Thus, any evidence obtained by QC under § 1782 could not be accepted.

---

[4]  *See also* Brief for the Commission of the European Communities as Amicus Curiae Supporting Reversal, at 2, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) [hereinafter Comm'n Intel Brief] (Venit Decl. Ex. 10).

[5]  *Id.* at 13 (quoting Case 53/85, *AZKO Chemie BV v. Comm'n of the European Communities*, 1986 E.C.R. 1965, ¶ 28). On remand, the district court found the Commission's views dispositive and rejected AMD's 1782 application. *AMD, Inc. v. Intel Corp.*, 2004 U.S. Dist. LEXIS 21437, at *6 (N.D. Cal. Oct. 4, 2004).

[6]  Brief of the Commission of the European Communities in Opposition to Microsoft Corporation's Objections to Magistrate's Order at 10, *In re Application of Microsoft Corp.*, Case No. 06-80038 JF (PVT) (Apr. 17, 2006) (N.D.Cal.) [hereinafter Comm'n Sun Brief] (Venit Decl. Ex. 6); *see also* Reply Brief of the Commission of the European Communities in Support of Novell, Inc.'s Motion to Quash at 2-3, *In re Application of Microsoft Corp.*, C.A. 06-MBD-10061 (MLW) (Apr. 12, 2006) (D. Mass) [hereinafter Comm'n Novell Reply Brief] (Venit Decl. Ex. 7).

### III. QC May Not Submit New Information in Case 37990 Either Now or in the Future

QC's argument that it urgently needs § 1782 discovery so that it can submit information to the EC before the Commission decides Case 37990 suffers from a complete failure to understand the procedural posture of the case and QC's limited rights of participation. As Mr. Venit's declaration explains, there are three phases to a Commission investigation: (i) an investigatory phase where the Commission uses its investigatory powers to obtain evidence; (ii) a defense/contentious phase that begins with the issuance of a Statement of Objections ("SO") to which the defendant is given an opportunity to respond; and (iii) a decision-making phase during which the staff of DG Competition consults with the Competition Commissioner, the Commission's Legal Service, and the Member States through the Advisory Committee to reach a decision. Venit Decl. ¶ 9.

The investigatory and defense/contentious phases of the EC's procedures in Case 37990 have concluded, the record is closed, and the EC is now engaged in its internal decision-making process. Venit Decl. ¶ 13. The EC must rely on the existing record in Case 37990 should it adopt a decision establishing the existence of an infringement. *Id.* ¶ 17. Thus, unless the EC chooses to reopen the investigatory phase (which would then entail a subsequent re-opening of the defense phase and a revised SO), the record in Case 37990 is closed with regard to the further submission of new evidence. *Id.* ¶ 15. QC, whose rights as a third-party intervener are narrowly circumscribed, has no further right to be heard or to make submissions to the EC absent re-opening, which obviates the need for urgency. *Id.* ¶ 14.

Moreover, any urgency is of QC's own creation. QC intervened in the EC's case against Intel at the final stroke of the eleventh hour. Despite years of notice of the EC's investigation,[7] QC did not seek to intervene in the EC proceedings until February 26, 2008, barely two weeks before the oral hearing. Venit Decl. ¶ 29. Despite this last minute intervention, the EC allowed QC to be heard at the oral hearing. After the conclusion of the hearing, QC had no right under EU law to make submissions about the factual record absent an express invitation from the Hearing Officer. *Id.* ¶ 11. The Hearing Officer generously invited QC to submit additional written comments limited to matters raised at the hearing by March 26, 2008, but QC did not do so. *Id.* ¶¶ 11, 27.[8]

QC argues that the EC did not afford it enough time and that it could not have submitted the class plaintiffs' expert report (expected May 16, 2008) because the report did not yet exist. *See* QC Letter Brief at 2-3; Venit Decl. ¶ 24. This argument is irrelevant. The EC only invited QC to submit written comments by March 26 on matters raised *at* the hearing and not to introduce new evidence. The EC's invitation did not extend to extraneous matters relating to expert reports supporting class certification, *i.e.* dealing with common proof of consumer injury in the United States resulting from an *assumed* violation. *See* QC Letter Brief at 3. Asserted

---

[7] The Commission's investigation of Intel received international press in 2001 when the Commission initiated the case, in 2004 when the Commission renewed the investigation, in 2005 when the Commission conducted "dawn raids" of Intel's European offices, and again in July 2007 when the Commission issued a statement of objections against Intel. *See* Venit Decl. ¶ 28.

[8] Letter brief of Proposed Intervenor Union Federale des Consommateurs - Que Choisir (Apr. 28, 2008) at 2, *In re Intel Corp. Microprocessor Antitrust Litigation*, C.A. No. 05-441-JJF [hereinafter QC Letter Brief].

4

evidence of U.S. consumer injury certainly is not central to the EC *liability* issues considered at the oral hearing, and thus cannot be considered in the decision phase of Case 37990.

### IV. Third-Party Interests Warrant Caution Rather than Urgency

The parties submitted their first proposed protective order in April 2006. After lengthy negotiations, revised proposals, and a 117-page report from the Special Master, the final Protective Order was entered five months later by Judge Farnan in September 2006.

During the protective order proceedings, third parties raised "vehement objection" to the potential use of their discovery materials outside Delaware, including specifically in Japan.[9] The "issue was a lightening rod for objection by Third Parties...." Special Master Report at 110. The third parties expressed "great concerns that the Proposed Protective Order would serve as a 'blank check' to permit" the use of the third parties' confidential information in other litigations "without adequate assurance that the terms of the Proposed Protective Order would be honored or could be enforced if violated, particularly with respect to individuals and entities outside the jurisdiction of this Court." *Id.* at 112. Your Honor was "not persuaded ... that limiting the use of Confidential Discovery Materials to the captioned cases would 'tie' the hands of the Parties - or even other participants - with respect to ... other litigations and/or investigations." *Id.* at 114. The Protective Order thus prohibits the use of any Confidential Discovery Material outside of the AMD Litigation or Class Litigation.[10]

QC now proposes eight modifications to the Protective Order, including a new provision that it "may use Confidential Discovery Material produced by Intel or Third Parties, or information derived therefrom, for purposes of participating in the EC Proceedings and/or preparing or participating in [unidentified prospective] EU Consumer Damages Litigation." QC Brief at 24. The Protective Order contemplates that third parties would be given sufficient notice and an opportunity to be heard to oppose the production of their documents to another governmental authority. Protective Order ¶¶ 18, 20. And Your Honor has specified that any § 1782 applications would require "the safeguard of providing both the Parties and the Third Parties an *opportunity to be fully heard* for the purpose of developing the evidentiary record contemplated under the Supreme Court's decision in *Intel*." Special Master Report at 116 (emphasis added).

More than seventy third parties – including virtually every major player in the computer industry – have been subpoenaed in this case. Given the potential third party impact, the history of contention surrounding the issue, the large number of third parties, and the length of time previously required to achieve the Protective Order, the accelerated schedule proposed by QC is unreasonable.

---

[9] Special Master's Report and Recommendations Regarding Proposed Protective Order at 110, *In re Intel Corp. Microprocessor Antitrust Litigation*, C.A. No. 05-441-JJF (June 27, 2006) [hereinafter Special Master Report].

[10] Confidentiality Agreement and Protective Order ¶ 1, *In re Intel Corp. Microprocessor Antitrust Litigation*, C.A. No. 05-441-JJF (Sept. 26, 2006) [hereinafter Protective Order].

Respectfully,

*[signature]*

Richard L. Horwitz
(I.D. No. 2246 #)

RLH/msb
862982/29282