# EXHIBIT 6

Final

**FORMAT PER N.D. CAL LOCAL RULES**

Attorneys for the Commission of the European Communities

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| | Case No. 06-80038 JF (PVT) |
| *In re* | **MEMORANDUM OF THE COMMISSION OF THE EUROPEAN COMMUNITIES IN OPPOSITION TO MICROSOFT CORPORATION'S OBJECTIONS TO MAGISTRATE'S ORDER** |
| Application Of | |
| MICROSOFT CORPORATION, | |
| Applicant. | Date:  TBD<br>Time:  TBD<br>Courtroom:  3, 5th Floor |
| | Hon. Jeremy D. Fogel |

## I.    INTRODUCTION

The Commission of the European Communities (the "European Commission" or the "Commission") respectfully submits this Memorandum in Opposition to Microsoft Corporation's Objections to Magistrate's Order ("Microsoft's Opposition"). The Magistrate's Order should be affirmed because Microsoft's subpoenas to Sun Microsystems, Inc., Morgan, Lewis & Bockius LLP, and Jeffrey Kingston (hereinafter referred to collectively as "Sun") and Oracle Corporation, Clifford Chance LLP, Daniel Harris and Ronald Alepin (hereinafter referred to collectively as "Oracle") are an effort by Microsoft to circumvent both the Commission's procedures and deliberate restrictions on a litigant's access to documents from third parties embodied in the laws of the European Community. Permitting the discovery requested by Microsoft for use in the Commission's proceedings would contravene principles of international comity because, in this case, the Commission does not need and is *not* receptive to the United States judicial assistance sought by Microsoft pursuant to 28 U.S.C. §1782. In order to protect the Commission's procedures and the policies of the European Community they are intended to advance, the Commission respectfully asks that this Court affirm the Magistrate's Order granting the motions to quash the subpoenas.

Microsoft's Opposition is grounded on the mistaken premise that the Commission is powerless to obtain the documents that Microsoft seeks through its subpoenas. (Opposition to Microsoft Corporation's Objections to Magistrates Order ("MS Opp.") at 13.) In a recent filing before the U. S. District Court for the District of Massachusetts relating to Microsoft's attempted enforcement of its subpoena to Novell, Inc. ("Massachusetts Case"), Microsoft conceded this mistake. (Microsoft Corporation's Reply to Response of Novell, Inc. ("MS Reply") at 1, attached to the Declaration of Elizabeth I. Rogers as Exhibit A.) Accordingly, Microsoft was forced to shift its position (and presumably will refocus its position before this Court as well) to

argue that, despite the Commission's clear authority to request the third-party documents that Microsoft seeks, Microsoft nonetheless requires the intervention of United States courts because Microsoft *itself* does not have the ability unilaterally to obtain those third-party documents or to compel the Commission to do so. (*See* MS Opp. at 13.) But Microsoft's observation that it has no automatic right under European Community law to obtain the requested documents from Sun and Oracle highlights the flaw in its argument. Contrary to Microsoft's argument, the fact that the European Community has decided *not* to empower litigants before the Commission to obtain directly third-party documents reflects important law and policy considerations and weighs heavily in favor of affirming the Magistrate's Order. It is precisely because of that sovereign decision that this Court should decline to permit Microsoft to circumvent the laws and policies of the European Community.

## II.    BACKGROUND

### A.    Background On the Institutional Structure of the Commission And its Decision-Making Process

To provide a context for the Commission's role and decision-making authority, the Commission offers a brief explanation of the institutional structure put in place by the relevant international treaties and agreements that established the European Community. Pursuant to the Treaty establishing the European Community (the "Treaty"), the Member States have agreed to transfer a large part of their sovereign powers in many areas to the European Community.[1] The European Commission, which is one of the institutions of the European Community, is the European Community's basic executive and administrative organ, or department. Among the Commission's functions is to ensure the effective enforcement of and compliance with the

---

[1]    See consolidated version in OJ C 325, 24.12.2002, p. 33.

provisions of the Treaty – making it the so-called "guardian of the Treaty."[2] Functionally, the Commission's powers include proposing legislation, managing and implementing European Union policies, budgeting and law enforcement. The Commission is also entrusted with the task of representing the European Community on the international stage, including in contexts of litigation like this where the European Community's interests are at stake or likely to be affected.

In a number of areas, the Commission has been granted powers to enforce directly the Treaty regulations and decisions promulgated pursuant to it. With regard in particular to competition law and policy, the Treaty conferred on the Commission substantial decision-making powers. Through the Directorate-General for Competition (hereinafter "DG Competition"), which is one the of the Commission's internal departments, the Commission enforces the Treaty's provisions relating to competition law.[3] These provisions include, in particular, Article 81 (relating to anticompetitive agreements, including cartels), Article 82 (relating to abuse of dominant position, which is roughly equivalent to what is called monopolization in the United States), Article 87 (relating to market-distorting state aid), and specific legislation regulating concentrations of undertakings with Community dimension (i.e., mergers). It is pursuant to this grant of authority that the Commission decided that Microsoft infringed, *inter alia*, Article 82 and subsequently that Microsoft failed to comply with the Commission's orders.

---

[2]     See Article 211 of the EC Treaty
[3]     DG Competition, as an internal department of the European Commission, has no power to act autonomously. The actions and law enforcement activities it undertakes are carried out under the prior authorization and on behalf of the European Commission, the Commission being the decision making organ of the European Community in areas of competition law.

B.   **The Proceedings Against Microsoft Pursuant To Article 24 of Regulation 1/2003**

On March 24, 2004, the Commission adopted a decision in Case COMP/C-3/37.792 – Microsoft ("the Decision"), in which it concluded that Microsoft had abused its dominant position in PC operating systems by:

- (i) refusing to provide interoperability information necessary for competitors to be able to effectively compete in the work group server operating system market, and

- (ii) tying its Windows Media Player with the Windows PC operating system.

The Commission imposed a fine of €497,196,304 on Microsoft and ordered it to bring the above-mentioned infringements of Article 82 EC to an end (Article 4 of the Decision). In particular, the Decision ordered Microsoft to supply interoperability information to interested entities on reasonable and non-discriminatory terms and conditions ("the interoperability remedy", Article 5 of the Decision) and to offer a full-functioning version of its Windows PC operating system that does not incorporate Windows Media Player ("the tying remedy," Article 6 of the Decision).

The Decision also provided for the establishment of a mechanism to monitor proper and accurate implementation, including the appointment of a Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision. Microsoft was granted a deadline of 120 days to implement the interoperability remedy, and a deadline of 90 days to implement the tying remedy.

The obligations imposed by the Decision on Microsoft were suspended, pending judicial review of the Decision -- in particular, the Court of First Instance's consideration of Microsoft's request for interim measures. Microsoft's application for interim measures was, however,

dismissed by the President of the Court of First Instance on December 22, 2004.[4]  Consequently, Microsoft is under an obligation to comply with the Decision without delay.

On July 28, 2005, the Commission adopted another decision concerning the monitoring mechanism contained in Article 7 of the Decision.[5]  The July 2005 decision sets out, in particular, the framework under which the Monitoring Trustee, mentioned earlier, will work. Pursuant to this July 2005 decision, the Commission invited Microsoft to put forward candidates for appointment as Monitoring Trustee.  On October 4, 2005, on the basis of a short list of candidates submitted by Microsoft and with Microsoft's agreement, the Commission appointed as Monitoring Trustee Professor Neil Barrett, a British computer science expert.

In the meantime, on the basis of an opinion about Technical Documentation pursuant to the March 2004 Decision rendered by the firm, OTR ("Organization and Technology Research"), which is an outside expert firm retained by the Commission to assist it on technical issues, the Commission was concerned that Microsoft might not be complying with the interoperability provisions of the March 2004 Decision.  Article 24 of Council Regulation 1/2003 grants the Commission the power to impose on parties daily penalty payments, not exceeding 5% of the average daily turnover (revenues) of the parties concerned in the preceding business year.  The purpose is to compel parties to put an end to infringement of Article 81 or 82 EC Treaty following a prohibition decision taken against them by the Commission pursuant to Article 7 of Regulation 1/2003 (see Article 24(1)(a)).

The Commission thus initiated proceedings against Microsoft in order to ensure that Microsoft is complying with the Decision and, if necessary, to compel its compliance.  On November 10, 2005, the Commission issued another decision against Microsoft, pursuant to

---

[4]    Order of the President of the Court of First Instance of  December 22, 2004 in Case T-201/04 R, Microsoft v Commission, [2004] ECR, not yet reported.
[5]    See doc. C (2005) 2988 final.

Article 24(1) of Regulation 1/2003 ("the Art 24(1) Decision"), for failure to comply with the interoperability provisions of its March 2004 Decision. The Art 24(1) Decision is the first step in a procedure that can lead to the imposition of daily penalty payments pursuant to Article 24 of Regulation 1/2003. The Art 24 (1) decision imposed a penalty payment of up to €2 million per day on Microsoft, commencing December 15, 2005, in the event that it is established that Microsoft did not comply with Article 5(a) and (c) of the Decision, i.e., its obligations to: (i) supply complete and accurate interoperability information and (ii) to make that information available on reasonable terms, as explained above.

Meanwhile, the new Monitoring Trustee had been appointed, assumed his advisory functions, and submitted reports to the Commission regarding the state of the Technical Documentation provided to the Commission by Microsoft in response to the Art 24(1) Decision. In light of the Monitoring Trustee's reports, the Commission, on December 21, 2005, adopted a Statement of Objections against Microsoft which took the preliminary view that Microsoft had not yet complied with its obligation to supply complete and accurate interoperability information. It is in connection with this Statement of Objections that Microsoft seeks documents from Oracle and Sun in this Court, from Novell, Inc. in the U.S. District Court for the District of Massachusetts, and from International Business Machines Corporation ("IBM") in the U.S. District Court for the Southern District of New York.

## C.    Access To Third-Party Documents In Connection With Commission Proceedings

The Commission's powers of enforcement in competition law are set out in Council Regulation 1/2003 (OJ No L 1, 4.1.2003, p. 1, a copy of which is attached to the Declaration of Elizabeth I. Rogers as Exhibit B).[6] Regulation 1/2003 provides specific means for investigating suspected violations of competition law, including issuing formal requests for information,

---

[6]    Council Regulation 1/200 replaced Council Regulation No. 17/62.

taking oral statements, conducting on-site inspections, and obtaining documents from third-parties.

It is well established in European Community law in general, and competition law in particular, that the rights of defense and the right to be heard of potentially affected entities and individuals are properly respected. As the European Court of Justice has held in its judgment in connection with *Hoffman-La Roche Co. AG v. Commission*, [1979] ECR 461: *"observance of the right to be heard is in all proceedings in which sanctions, in particular fines or penalty payments, may be imposed a fundamental principle of Community law which must be respected [...]".*[7]

In line with this judgment and established case law of the European Court of Justice and the Court of First Instance, the Commission has put in place a number of procedural rules which guarantee the application of the principle of equality of arms, the protection of the rights of defense and due process in proceedings before the Commission. In particular, in order to enable any affected party to effectively exercise its right of defense in competition proceedings before the Commission, the Commission has in place procedures for litigants to obtain both documents held in the Commission's file and documents outside of the Commission's file held by third parties.

The "Commission's file" in a competition law investigation (hereinafter also referred to as "the file") consists of all documents that have been obtained, produced and/or otherwise assembled by the Commission during the investigation phase.[8] Access to the file is granted to

---

[7]     Judgment of the Court of February 13, 1979 in Case 85/76, *Hoffmann-La Roche & Co. AG v. Commission* [1979] ECR 461, a copy of which is attached to the Declaration of Elizabeth I. Rogers as Exhibit C.
[8]     See Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, and Articles 53, 54 and 57 of the EEA Agreement and Regulation (EC) No 139/2004, OJ 2005/C 325, 22.12.2005, p. 7 ("Notice on access to file"), at paragraph 7, a copy of which is attached to the Declaration of Elizabeth I. Rogers as Exhibit D. This notice replaces an earlier but similar Commission Notice of 1997 on access to file; see OJ C 23 of 23.01.1997.

adversely affected parties in proceedings before the Commission. The access is granted to all documents making up the Commission's file, with the exception of internal documents,[9] business secrets of other entities or other confidential information.[10] In this instance, following the Statement of Objections addressed to Microsoft, Microsoft requested and ultimately obtained all non-confidential Sun and Oracle documents within the Commission's file. Microsoft does not dispute that it received the documents it requested from the Commission's file. It now seeks, instead, "documents that are in the exclusive possession of third parties." (MS Opp. at 1)

In matters before the Commission, a litigant who believes documents in the possession of third parties bear on an issue before the Commission may request that the Commission obtain and furnish those documents. To date, Microsoft has not sought to obtain through the Commission any of the Sun and Oracle documents it purportedly seeks through the subpoenas at issue here (*i.e.*, those that were not contained in the Commission's file).

## III.    ARGUMENT

**A.    Microsoft's Opposition Is Based On Misunderstandings Of The Law Of The European Community.**

Microsoft apparently recognizes that the Commission has a process to obtain third-party documents,[11] but it does not recognize the law and public policy implications of its failure to follow that process. Had Microsoft followed Commission procedures (instead of opting to seek

---

[9]    "Internal documents" can be neither incriminating nor exculpatory under the law of the European Community. They do not constitute part of the evidence on which the Commission can rely in its assessment of a case. Thus, the parties will not be granted access to internal documents in the Commission file. Given their lack of evidentiary value, this restriction on access to internal documents does not prejudice the proper exercise of the parties' right of defense. See Commission Notice on access to file, at paragraph 3.1, attached to the Declaration of Elizabeth I. Rogers as Exhibit D.

[10]    The European Court of Justice has confirmed that "the Commission is allowed to preclude from the administrative procedure evidence which has no relation to the allegations of fact and of law in the Statement of Objections and which therefore has no relevance to the investigation." See Judgment of the Court of Justice of January 7, 2004, in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland, [2004] ECR, not yet reported, at paragraph 126, a copy of which is attached to the Declaration of Elizabeth I. Rogers as Exhibit E.

[11]    Microsoft apparently understands this procedure because it has previously requested that the Commission obtain for it copies of correspondence between the Trustee and third parties. The Commission obtained this material, put it in the file, and provided it to Microsoft.

the assistance of this Court), the Commission would have been able to exercise appropriately its discretion, balancing the needs of the requesting party and the interests of the third party in a manner consistent with the laws and public policy of the European Community.

Microsoft argues that the assistance of United States courts is nevertheless needed here because, "even if the Commission did have the authority to discover documents from Sun and Oracle, that would not offer *Microsoft* a way to obtain evidence related to its defense." (MS Opp. at 13) (emphasis in original). But the laws of the European Community embody a deliberate decision not to authorize private parties to conduct their own discovery. To the contrary, under the laws of the European Community, private parties must first ask the Commission to obtain the documents they seek, and the Commission determines in the first instance whether the request is appropriate. The Commission's determination is ultimately subject to appellate review by the European courts in order to ensure that the rights of the requesting litigant are protected.[12]

If the Commission does not act upon a request to obtain documents from a third-party, the litigant may appeal the final decision of the Commission to the Court of First Instance and, if unsuccessful there, to the European Court of Justice. Such an appeal could include arguments related to procedural irregularities or breach of fundamental principles of law, such as the rights of defense. Thus, if Microsoft had followed the procedure established under European Community law by asking the Commission to obtain the documents it now seeks and the Commission had declined to do so, the Commission's rejection of Microsoft's request would ultimately be subject to review by the European courts. It is the province of the European courts, not the United States courts, to balance Microsoft's rights as a defendant against the limitations on proof-gathering that are a matter of legal and public policy of the European Community.

---

[12] A final Commission decision against Microsoft can be challenged in accordance with Article 230 of the EC Treaty. *Cf.* Case 60/81 *IBM v Commission* [1981] ECR-2639.

**B.**    **Microsoft's Request Should Be Denied For Important Reasons Of Comity And Legal Policy.**

The Magistrate's decision here properly concludes that the subpoenas to Oracle and Sun

should be quashed and that:

> [I]ssues of comity weigh against allowing the discovery in this case. "Congress did not seek to place itself on a collision course with foreign tribunals and legislatures, which have carefully chosen the procedures and laws best suited to their concepts of litigation." *In re Application of Asta Medica, S.A.,* 981 F.2d 1, 6 (1st Cir. 1992), *abrogated* (to the extend it held §1782 included a categorical foreign-discoverability requirement) by *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. at 259-262. As a matter of comity, this court is unwilling to order discovery when doing so will interfere with the European Commission's orderly handling of its own enforcement proceedings. (Order Granting Motions to Quash Subpoenas and Vacating Prior Order, dated March 29, 2006 ("Magistrate's Order".))

No matter how Microsoft chooses to justify it, Microsoft cannot overcome the fact that its

subpoenas are an attempt to end-run the procedures for and limitations on proof-gathering

established by the laws of the European Community. Those laws reflect the sovereign

determination of the European Community about the proper scope, availability, and mechanisms

of such proof-gathering. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264

(2004) (stating that courts may consider "whether the §1782(a) request conceals an attempt to

circumvent foreign proof-gathering limits or other policies of a foreign country ...").

Microsoft's argument that its subpoenas should be enforced because the Hearing Officer

in connection with the proceedings before the Commission determined that Microsoft would be

entitled to the type of documents it now seeks had they been in the Commission's file (MS Opp.

at 14) misses the point entirely. That argument concerns, at most, issues of relevance and of

Microsoft's right of access to documents on which the Commission is relying in its decision-

making. By contrast, Microsoft's subpoenas to Oracle and Sun implicate procedures governing,

and substantive limitations on, the scope of discovery from third-party of documents not in the Commission's file. Under the laws of the European Community, the Commission is charged in the first instance with weighing the litigant's need for such documents against the costs and burdens on third parties of being required to produce them.

Microsoft' subpoenas ignore the applicable provisions of European law. Its attempt to side-step the law of the European Community should be rejected for a number of related reasons.

### 1.    The Commission Is Not Receptive To United States Court Intervention.

Perhaps most important, the Commission neither requires nor wants the assistance of the United States courts in this matter. *See id.* (stating that courts may consider "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"). The Magistrate, in her Order, recognizes the significance of this fact as a consideration weighing against the discovery Microsoft seeks. (Magistrate's Order at 5-6.)        Although Microsoft apparently concedes that the Commission is a "tribunal" under 28 U.S.C. §1782 (MS Opp. at 16), it argues that the Magistrate should not have credited the views on "receptivity" expressed by DG Competition in its letter, dated March 13, 2006, from Philip Lowe, the Director-General Competition (a copy of which is attached as Exhibit I to the Declaration of Christopher S. Yates in Support of Oracle's Motion to Quash), on the ground that DG Competition does not speak for the Commission in this matter (MS Opp. at 13). Microsoft is wrong about that; the letter from DG Competition, one of the Commission's services, does accurately reflect the views of the Commission. In any event, the Commission's position -- that it is *not* receptive to the involvement of the U.S. courts in this matter -- is stated clearly here.[13]

---

[13] A copy of the Authority issued by the Commission in this matter is attached to the Affidavit of Elizabeth I. Rogers as Exhibit F.

Microsoft takes its argument a step further by claiming that the Magistrate also erred in according deference to the Commission itself because "[s]ince 'comity' here means deference to the views of a prosecutor, this suffers from the same infirmity as the Magistrate's reliance on the views of DG Comp." (MS Opp. at 17.) But the Commission is not a "prosecutor." It is an institution that is analogous to a United States regulatory agency, such as the Federal Trade Commission, that undertakes investigations, conducts hearings and adjudicates cases, and whose decisions are subject to judicial review. It is, moreover, as Microsoft concedes, a "tribunal" under Section 1782.

Under *Intel* and other cases, the fact that the Commission opposes this Court's intervention in this process warrants substantial deference. *See, e.g., Advanced Micro Devices, Inc. v. Intel Corp.*, Civ. A. No. 01-7033, 2004 WL 2282320 at *2 (N.D. Cal. Oct. 4, 2004) (denying application for discovery under 28 U.S.C. §1782 because the Commission had the authority to obtain the requested discovery on its own, chose not to, and clearly stated that it was not receptive to judicial assistance from United States courts). Indeed, permitting Microsoft to enforce the subpoenas in the face of the Commission's stated opposition would undermine the very purpose of 28 U.S.C. §1782 by interfering with, rather than assisting, a foreign proceeding. *See In re Matter of Application of Schmitz*, 259 F. Supp. 2d 294, 298-299 (S.D.N.Y. 2003), *aff'd*, 376 F.3d 79 (2d Cir. 2004) (denying request under 28 U.S.C. §1782 in part because of the German authorities' clear opposition).

## 2.    Principles of Comity Require Deference To The Commission's Procedures And European Community Law.

Principles of comity require that this Court not permit Microsoft to ignore the Commission's established procedures for obtaining documents from third parties. The Commission's procedures for providing access to third-party documents not in the Commission's

- 13 -

possession are designed to provide access to evidence in a manner that is fair and transparent and
to enable the Commission to maintain control over proof-gathering activity in the matters before
it. *See Intel*, 542 U.S. at 261 (maintaining that comity may be an "important touchstone" of a
district court's discretion).

Similarly, the Court should not permit Microsoft to avoid the substantive limitations on a
litigant's access to third-party documents under the laws of the European Community. *See*
*Advanced Micro Devices*, 2004 WL 2282320 at *3 (rejecting petition under 28 U.S.C. §1782 in
part because it appeared "to be an attempt to circumvent the [Commission's] decision not to
pursue such discovery"). Because the Commission's procedures are adequate to permit the kind
of discovery Microsoft wants, Microsoft's stated concern – that it might not be able to obtain
through the Commission's procedures all the documents it hopes to obtain – is in essence a
complaint that the deliberate restrictions on a litigant's ability to obtain documents from third
parties in proceedings before the Commission are not to Microsoft's liking. If Microsoft were to
avail itself of the Commission's procedure and ask the Commission to obtain the documents it
now seeks, the Commission would consider under the laws of the European Community whether
the probative value of the requested documents is sufficient to justify the costs – both to the
Commission and to the producing third party – of obtaining them. This Court should not by

enforcing Microsoft's subpoenas usurp the authority of the Commission (and of European courts reviewing the Commission's decision) to make that judgment.[14]

### 3.    The Policy of the European Community To Encourage Third-Party Participation In Enforcement Of The Law Would Be Undermined By Permitting Discovery In U.S. Courts.

Finally, enforcing Microsoft's subpoenas would undermine the policy of the European Community to encourage private entities to participate in the enforcement of the law – here, in enforcement of competition law. The Commission depends on private parties to bring potential violations to the attention of the Commission and to provide information to the Commission when needed.[15] Given the time and cost of document collection and production and the costs associated with necessary legal representation, third-party discovery can be burdensome and expensive for the recipient of a subpoena. To the extent that private entities with a presence in the United States may face the prospect of onerous and intrusive discovery in the United States, those entities could be deterred from aiding the Commission in the future. In turn, the Commission's ability to enforce the law of the European Community would be weakened.

This consideration has particular relevance here, where Microsoft purports to seek documents from Sun and Oracle precisely because Sun and Oracle provided information to a Monitoring Trustee appointed by the Commission to review Microsoft's compliance with a

---

[14]    While the Supreme Court in *Intel* held that a discovery request under 28 U.S.C. §1782 would not be categorically barred whenever the same documents were not discoverable in the relevant foreign jurisdiction, it did so on the ground that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to foreign aid." 542 U.S. at 260-61. In other words, the Supreme Court held only that lack of discoverability abroad would not preclude discovery under 28 U.S.C. §1782 where that discovery would assist the foreign proceedings and is not objected to by the foreign authority. *Id.* at 262. Here, the scope of discoverability under Commission procedures is guided by the Commission's balancing of the interest of the requesting party and the interest of the producing party. If, as Microsoft might fear, Microsoft would be unable to obtain through the Commission's procedures all the documents it seeks by its subpoenas, it would be because of substantive limitations on proof-gathering imposed by the law of the European Community. That law would be undermined, not assisted, if this Court were to require broader discovery sought by Microsoft.

[15]    The Commission's Notice on Leniency – which offers cartel participants confidentiality in return for their confessions of wrongdoing – is a primary illustration of this general policy. *Cf.* Commission Notice on Immunity from Fines and Reduction of Fines in Cartel Cases, OJ 2002 C 45, page 03.

Commission decision. The participation of Sun and Oracle and other third parties is important in enabling the Commission to render a reasoned judgment concerning Microsoft's compliance with the Commission's decision that it provide to third parties adequate interoperability information concerning its operating system. The Commission has a substantial interest in enabling companies like Sun and Oracle to assist it in such Monitoring activities. To protect that interest, it is necessary that the Commission (subject to review by the courts of the European Community) apply its own standards of access to documents, taking into account both the litigant's need for the documents and the need to protect third-parties from burden and intrusion.

## IV.    CONCLUSION

For the reasons set forth herein, the Magistrate's Order should be affirmed, and the motions to quash Microsoft's subpoenas should be granted.

Respectfully submitted,

Commission of the European Communities
By its Attorneys,

Of Counsel:

A. Douglas Melamed
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.
Washington, District of Columbia 20037-1420
(202) 663-6090

Michelle D. Miller, BBO #60898
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526 6116

Elizabeth I. Rogers
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, California 94304
(650) 858-6000


_____ /s/ _____

Theofanis Christoforou
Legal Advisor of the Legal Service
of the Commission of the
European Communities


Per Hellstrom
Member of the Legal Service
of the Commission of the
European Communities


Dated:  April 17, 2006

US1DOCS 5612071v1

# EXHIBIT 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE:   )  )  ) | |
| APPLICATION OF MICROSOFT )  CORPORATION )  )  )  )  ) | Civil Action 06-MBD-10061 (MLW) |

REPLY MEMORANDUM OF THE COMMISSION OF THE EUROPEAN
COMMUNITIES IN SUPPORT OF NOVELL, INC.'S MOTION TO QUASH

The Commission of the European Communities (the "Commission") submits this reply to

two recent filings by Microsoft Corporation ("Microsoft"):  Microsoft Corporation's Response to

the Commission's Memorandum in Support of Novell, Inc.'s Motion to Quash and Microsoft

Corporation's Reply to the Response of Novell, Inc.  Microsoft's continued efforts to enforce its

subpoena is an attempt to circumvent both the Commission's procedures and deliberate

restrictions, embodied in the laws of the European Community, on a litigant's access to

documents from third parties such as Novell.  In order to protect those procedures and the laws

and the policies they are intended to advance, the Commission supports Novell's Motion to

Quash.

Until its most recent filing, the foundation of Microsoft's petition under 28 U.S.C. §1782

was Microsoft's mistaken premise that the Commission is powerless to obtain the third-party

documents that Microsoft seeks through its subpoena.  Microsoft now concedes that it was

mistaken. (Microsoft Corporation's Reply to Response of Novell, Inc. ("MS Reply") at 1.) As a

result, Microsoft now shifts its argument and asserts that, despite the Commission's clear

authority to request the documents Microsoft seeks, Microsoft nonetheless requires the

intervention of United States courts because Microsoft *itself* does not have the ability unilaterally

to obtain documents from Novell, or to compel the Commission to do so. (MS Reply at 1;
Microsoft Corporation's Response to the Memorandum of the Commission of the European
Communities in Support of Novell, Inc.'s Motion to Quash ("MS Response") at 3.) But
Microsoft's observation that it has no ability under European Community law to obtain the
requested documents directly from Novell highlights the flaw in its argument. Contrary to
Microsoft's argument, the fact that the European Community has decided *not* to empower
litigants before the Commission to obtain directly third-party documents reflects important law
and policy considerations and weighs heavily against this Court providing the assistance
Microsoft seeks. It is precisely because of that sovereign decision that this Court should decline
to permit Microsoft to circumvent the laws and policies of the European Community.

I.    **ARGUMENT**

    A.    **Microsoft's Initial And Revised Responses Are Both Based On
        Misunderstandings Of The Law Of The European Community.**

      Apparently satisfied that it has obtained the documents it seeks in the Commission's file,
Microsoft's present focus is on obtaining documents from Novell that are *not* in the
Commission's file. Unlike the documents in the Commission's file, Microsoft did not first seek
these documents through established Commission procedure but, instead, argued to this Court
that the Commission lacked the power to obtain documents from third parties. (MS Response at
2.) Microsoft now concedes that any litigant before the Commission who believes documents in
the possession of third parties bear on an issue before the Commission may request that the
Commission seek and obtain those documents. Had Microsoft followed this procedure (instead
of opting to seek the assistance of this Court)[1], the Commission would have been able to exercise
appropriately its discretion, balancing the needs of the requesting party and the interests of the

---

[1]    Microsoft apparently understands this procedure because it has previously requested that the Commission
obtain for it copies of correspondence between the Trustee and third parties. The Commission obtained this
material, put it in the file, and provided it to Microsoft.

third party in a manner consistent with the laws and public policy of the European Community discussed below.

Anticipating a hypothetical negative decision by the Commission, Microsoft further argues that the assistance of United States courts is needed here because Microsoft "has no way to require the Commission to request documents from Novell." (MS Reply at 1.)   Microsoft simply ignores the fact that the procedure in the European Community includes the right of ultimate appellate review to protect the rights of the requesting litigant.[2] If the Commission does not act upon such a request to obtain documents from a third-party, the litigant may appeal the final decision of the Commission to the Court of First Instance and, if unsuccessful there, to the European Court of Justice.[3]

Such an appeal could include arguments related to procedural irregularities or breach of fundamental principles of law, such as the rights of a defendant to prepare a defense. Thus, if Microsoft had followed the procedure established under European Community law, but the Commission had declined to obtain the requested third-party information, the Commission's rejection of Microsoft's request would ultimately be open for review by the European courts.  It is the province of the European courts, not the United States courts, to balance Microsoft's rights as a defendant against the limitations on proof-gathering that are a matter of legal and public policy of the European Community.

---

[2]    A final Commission decision against Microsoft could be challenged in accordance with Article 230 of the EC Treaty. *Cf.* Case 60/81 *IBM v Commission* [1981] ECR-2639.

[3]    Microsoft's argument implicitly suggests that the Commission is merely a prosecuting authority and, as a result, that Microsoft requires the aid of U.S. courts to ensure due process within the European Courts. (*See* Microsoft's Reply at 3 ("[T]he Commission only requests such documents if it decides that the documents are necessary for the Commission's own purposes.").)  To the contrary, the Commission is an institution (and a "tribunal" under Section 1782), analogous to a regulatory agency here, such as the Federal Trade Commission, that conducts hearings and adjudicates cases and whose decisions are subject to judicial review.

**B.    Microsoft's Request Should Be Denied For Important Reasons Of Comity And Legal Policy.**

No matter how Microsoft chooses to justify it, Microsoft's subpoena is a thinly veiled attempt to circumvent the procedures for and limitations on proof-gathering established by the laws of the European Community. Those laws reflect the sovereign determination of the European Community about the proper scope, availability, and mechanisms of such proof-gathering. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (stating that courts may consider "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country ..."). Microsoft's suggestion that its subpoena would not circumvent European limitations merely because the Hearing Officer determined that Microsoft would have been entitled to the documents it seeks had they been in the Commission's file misses the point entirely. (MS Reply at 2.) Relevance aside, Microsoft's subpoena not only avoids limitation the Commission may place on the scope of third-party document requests, but importantly also avoids the manner in which a litigant obtains third-party documents under the law of the European Community (*i.e.*, that the documents are requested and pursued by the Commission rather than by the litigant).

This attempt by Microsoft to side-step the law of the European Community should be rejected for a number of related reasons. Perhaps most important, the Commission neither requires nor wants the assistance of the United States courts in this matter. *See id.* (stating that courts may consider "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"). As Microsoft now admits, the Commission has the authority to obtain the requested documents and exercises that authority as appropriate to maintain control of the proof-gathering practices in matters before it. Microsoft also concedes that the Commission is a "tribunal" under 28 U.S.C. §1782, (MS Reply at 2), and, as such, under *Intel* and other cases, the fact that the Commission opposes this Court's intervention in this

- 4 -

process warrants substantial deference. *See, e.g., Advanced Micro Devices, Inc. v. Intel Corp.,*
Civ. A. No. 01-7033, 2004 WL 2282320 at \*2 (N.D. Cal. Oct. 4, 2004) (denying application for
discovery under 28 U.S.C. §1782 because the Commission had the authority to obtain the
requested discovery on its own, chose not to, and clearly stated that it was not receptive to
judicial assistance from United States courts).  Indeed, permitting Microsoft to enforce the
subpoena in the face of the Commission's stated opposition would undermine the very purpose
of 28 U.S.C. §1782 by interfering with, rather than assisting, a foreign proceeding. *See In re
Matter of Application of Schmitz,* 259 F. Supp. 2d 294, 298-299 (S.D.N.Y. 2003), *aff'd,* 376 F.3d
79 (2d Cir. 2004) (denying request under 28 U.S.C. §1782 in part because of the German
authorities' clear opposition).

Microsoft should not be permitted to ignore the Commission's established procedures for
obtaining documents from third parties.  The Commission's procedures for providing access to
third-party documents not originally in the Commission's possession are designed to provide
access to evidence in a manner that is fair and transparent, while respecting a third party's right
to confidentiality, and to maintain control over proof-gathering activity in the matters before it.
Principles of comity require that those procedures be respected. *See Intel,* 542 U.S. at 261
(maintaining that comity may be an "important touchstone" of a district court's discretion).

Similarly, the Court should not permit Microsoft to avoid the substantive limitations on a
litigant's access to third-party documents under the laws of the European Community. *See
Advanced Micro Devices,* 2004 WL 2282320 at \*3 (rejecting petition under 28 U.S.C. §1782 in
part because it appeared "to be an attempt to circumvent the [Commission's] decision not to
pursue such discovery"). Because the Commission's procedures are adequate to permit the kind
of discovery Microsoft wants, Microsoft's stated concern – that it might not be able to obtain
through the Commission's procedures all the documents it hopes to obtain – is in essence a

complaint that the deliberate restrictions on a litigant's ability to obtain documents from third

parties in proceedings before the Commission are different from the restrictions on discovery in

United States courts and are not to Microsoft's liking. If Microsoft were to avail itself of the

Commission's procedure and ask the Commission to obtain the documents it now seeks, the

Commission would consider, under the law of the European Community, whether the probative

value of the requested documents is sufficient to justify the costs – both to the Commission and

to the producing third party – of obtaining them.[4] This Court should not by enforcing

Microsoft's subpoena usurp the authority of the Commission (and of European courts reviewing

the Commission's decision) to make that judgment.[5]

Finally, enforcing Microsoft's subpoena has the potential to undermine the policy of the

European Community to encourage private entities to participate in the enforcement of the law –

here, in enforcement of competition law. The Commission depends on private parties to bring

potential violations to the attention of the Commission and to provide information to the

Commission when needed.[6] Given the time and cost of document collection and production and

the costs associated with necessary legal representation, third-party discovery can be burdensome

and expensive for the subjects of the subpoena. To the extent that private entities with a

---

[4]    While it argues that the Hearing Officer has said generally that the "type" of documents Microsoft requests
are relevant to the Commission's proceeding (Microsoft Corporation's Opposition to Motion to Quash Subpoena
Duces Tecum to Novell, Inc. at 8), Microsoft has offered no reason to believe it is on anything but a "fishing
expedition." Microsoft has not described particular responsive documents that Novell has or explained the
relevance of such documents to its defense.

[5]    While the Supreme Court in *Intel* held that a discovery request under 28 U.S.C. §1782 would not be
categorically barred whenever the same documents were not discoverable in the relevant foreign jurisdiction, it did
so on the ground that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal
practices, culture, or traditions – reasons that do not necessarily signal objection to foreign aid." 542 U.S. at 260-61.
In other words, the Supreme Court held only that lack of discoverability abroad would not preclude discovery under
28 U.S.C. §1782 where that discovery would assist the foreign proceedings and is not objected to by the foreign
authority. *Id.* at 262. Here, the scope of discoverability under Commission procedures is guided by the
Commission's balancing of the interest of the requesting party and the interest of the producing party. If, as
Microsoft might fear, Microsoft would be unable to obtain through the Commission's procedures all the documents
it seeks by its subpoena, it would be because of substantive limitations on proof-gathering imposed by the law of the
European Community. That law would be undermined, not assisted, if this Court were to require broader discovery
sought by Microsoft.

presence in the United States may face the prospect of onerous and intrusive discovery in the United States, those entities could be deterred from aiding the Commission in the future. In turn, the Commission's ability to enforce the law of the European Community would be weakened.

This consideration has particular relevance here, where Microsoft purports to seek documents from Novell precisely because Novell provided information to a Monitoring Trustee appointed by the Commission to review Microsoft's compliance with a Commission decision. The participation of Novell and other third parties is important in enabling the Commission to render a reasoned judgment concerning Microsoft's compliance with the Commission's decision that it provide to third parties adequate interoperability information concerning its operating system. The Commission has a substantial interest in encouraging companies like Novell to assist it in such Monitoring activities. To protect that interest, it is necessary that the Commission (subject to review by the courts of the European Community) apply its own standards of access to documents, taking into account the other parties' interests of confidentiality. Under the applicable law, described above, it is the Commission itself – not the litigant – that pursues requests to third parties for production of documents.

## II.    CONCLUSION

For the reasons set forth herein, Novell's Motion to Quash the subpoena should be granted.

---

[6]    The Commission's Notice on Leniency – which offers cartel participants confidentiality in return for their confessions of wrongdoing – is a primary illustration of this general policy. *Cf.* Commission Notice on Immunity from Fines and Reduction of Fines in Cartel Cases, OJ 2002 C 45, page 03.

Respectfully submitted,

Commission of the European Communities
By its Attorneys,

Of Counsel:

\_\_\_\_\_/s/ Michelle D. Miller_____

A. Douglas Melamed                          Michelle D. Miller, BBO #60898
Wilmer Cutler Pickering Hale and Dorr LLP   Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.                          60 State Street
Washington, District of Columbia 20037-1420 Boston, MA  02109
(202) 663-6090                              (617) 526 6116

Theofanis Christoforou
Legal Advisor of the Legal Service
of the Commission of the
European Communities

Per Hellstrom
Member of the Legal Service
of the Commission of the
European Communities

Dated:  April 12, 2006

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on April 12, 2006.

\_\_\_\_\_/s/ Michelle D. Miller_____

# EXHIBIT 8



THE WALL STREET JOURNAL. ONLINE

FORMAT FOR PRINTING sponsored by **TOSHIBA** Leading Innovation ≫

February 13, 2008

# Intel, Retailers Hit By EU Raids

*February 13, 2008; Page B7*

The European Commission raided **Intel** Corp.'s German offices and several computer retailers as part of an antitrust investigation into the U.S. chip maker's alleged anticompetitive practices.

Intel said the commission raided its Munich offices and added it was "cooperating with the investigation." Retailers Metro AG of Germany, **DSG International** PLC of the U.K. and **PPR** SA of France said they were also caught up in the European Union sweep.

A spokesman for **DSG International** PLC, a U.K. electronics retailer, said EU officials were conducting an inspection at its retail support center in Hemel Hempstead, England. Intel rival **Advanced Micro Devices** Inc. said in 2006 that Metro unit Media Markt and Intel shut AMD out of the retailer's stores.

The EU began examining the issue that year. Intel has maintained its practices are fair and lawful.

**URL for this article:**
http://online.wsj.com/article/SB120287887038965017.html

### DOW JONES REPRINTS

≪R≫ This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

**Copyright 2008 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit **www.djreprints.com**.

**RELATED ARTICLES AND BLOGS**

**Related Articles from the Online Journal**
• EU Raids Intel's Office in Germany
• Intel to Seek EU Hearing Over Antitrust Charges
• New York's Cuomo Subpoenas Intel
• European Shares Fall As Retailers Tumble

**Blog Posts About This Topic**
• Intel offices raided in Germany  fatmatrix.com
• EU conducts antitrust raid on Intel, retailers | Tech News on ZDNet  news.zdnet.com

**More related content**     *Powered by Sphere* 

 **COMPANIES**
IT

Close

# EU regulators raid Intel offices



By Nikki Tait in Brussels, Richard Waters in San Francisco and Tom Braithwaite in London
Published: February 12 2008 17:34 | Last updated: February 12 2008 20:37

Competition regulators on Tuesday raided the offices of **Intel** and top European electrical goods retailers, in a sign that the antitrust probe against the world's largest chipmaker is expanding.

European Commission officials visited Intel's Munich offices, as well as Europe's biggest electronic chain, Media Markt, its second biggest, **DSG International**, operator of PC World, and French retailer PPR.

"The Commission has reason to believe that the companies concerned may have violated EC treaty rules on restrictive business practices and/or abuse of a dominant market position," the regulator said.

It stressed that the raids did not pre-judge the outcome of the investigation.

Intel, Media Markt, PPR and DSG all confirmed the visits and said they were co-operating with the investigation.

The Commission's move comes at an unusual stage in its long-running probe into Intel, which began nearly seven years ago after a complaint from the US company's smaller rival, Advanced Micro Devices.

Having carried out raids in 2005, the Commission formally accused Intel six months ago of trying to do deals with computer makers to push AMD out of the central processing unit business.

The latest raids appear to be focused primarily on Intel's relationships with retailers, rather than computer makers, suggesting that the Commission may be enlarging the scope of its probe.

Commission officials declined to comment on Tuesday. However, it is not unknown for the European antitrust regulator to file additional charges against suspected offenders as investigations proceed.

In a short statement, Giuliano Meroni, AMD's president for Europe, Middle East and Africa, said: "This is an important expansion of the Commission's investigation."

In its earlier complaint in July last year, the Commission accused Intel of offering rebates to manufacturers if they agreed to obtain most of their CPU chips from Intel, and inducing makers to delay or cancel the start-up of products using AMD chips.

Intel submitted a confidential response to those charges and said it believed the microprocessor market was "functioning normally to the benefit of consumers", but declined to elaborate on its reply.

Intel and AMD make virtually all the chips at the processing heart of the world's computers and servers, but Intel has the lion's share of the business.

Copyright The Financial Times Limited 2008

"FT" and "Financial Times" are trademarks of the Financial Times. Privacy policy | Terms
© Copyright The Financial Times Ltd 2008.

# EXHIBIT 9

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: ) | |
| ) | |
| ) | |
| **APPLICATION OF MICROSOFT** ) | **Civil Action 06-MBD-10061 (MLW)** |
| **CORPORATION** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

### MEMORANDUM OF THE COMMISSION OF THE EUROPEAN COMMUNITIES IN SUPPORT OF NOVELL, INC.'S MOTION TO QUASH

The Commission of the European Communities (hereinafter "European Commission" or "Commission") respectfully submits this Memorandum in support of Novell, Inc.'s ("Novell") motion to quash the subpoena served by Microsoft Corporation ("Microsoft"). The European Commission respectfully submits that denying Novell's motion to quash and permitting the discovery requested by Microsoft would contravene principles of international comity since, in this case, the Commission is <u>not</u> receptive to the judicial assistance sought by Microsoft pursuant to 28 U.S.C. §1782 and, indeed, believes that enforcement of Microsoft's subpoena would pose a serious risk that the Commission's rules and procedures concerning competition law enforcement would be circumvented.

## I.     INTRODUCTION

### A.     Background On the Institutional Structure of the Commission And its Decision-Making Process.

The European Commission will first provide a brief explanation of the institutional structure put in place by the relevant international treaties and agreements that established the European Union. For purposes of the present proceedings, the relevant treaty is the Treaty

establishing the European Community (see consolidated version in OJ C 325, 24.12.2002, p. 33.) The main institutional provisions of this Treaty may be summarized as follows.

The Member States have agreed to transfer a large part of their sovereign powers in many areas to the European Community. The competences transferred are exercised by the European Parliament and the Council of Ministers acting as co-legislator on the basis of proposals submitted by the European Commission. The European Commission, which is one of the institutions of the European Community, is its basic executive and administrative organ. Among its functions is to ensure the effective enforcement of and compliance with the provisions of the Treaty, a role which is referred to as the "guardian of the Treaty" (see Article 211 of the EC Treaty). The Commission's responsibilities within the organizational structure of the European Community extend to a wide range of subject areas. Functionally, the Commission's powers include proposing legislation, managing and implementing European Union policies, budget and law enforcement. In a number of areas, the Commission has been granted powers to enforce directly the Treaty regulations and decisions promulgated pursuant to it.

Although it has no legal personality itself, which is vested with the European Community, the Commission is also entrusted with the task of representing the European Community on the international stage, including in contexts of litigation like in this case where the European Community's interests are at stake or likely to be affected.

With regard in particular to competition law and policy, the Treaty conferred on the Commission substantial decision-making powers. Through the Directorate-General for Competition (hereinafter "DG Competition"), which is one the of the Commission's internal

- 2 -

departments[1], the Commission enforces the Treaty's provisions relating to competition law. These provisions include, in particular, Article 81 (relating to anti-competitive agreements, including cartels), Article 82 (relating to abuse of dominant position), Article 87 (relating to market-distorting state aid), and specific legislation regulating concentrations of undertakings with Community dimension (i.e. mergers).

### B.   Microsoft's Application For Discovery Before The District Court.

The European Commission has been informed that on March 3, 2006, Microsoft filed an ex parte application pursuant to 28 U.S.C § 1782 in this Court requesting the Court to endorse a subpoena to Novell to produce documents. The Commission has also been informed that the Court issued an order on March 7, 2006, authorizing Microsoft to serve the subpoena and authorizing Novell to file a motion to quash. The Commission has further learned that the Court held a hearing on March 28, 2006 and provisionally ordered Novell to produce certain of the documents requested in Microsoft's subpoena. On March 30, 2006, pursuant to the Court's instruction, Novell and Microsoft agreed that the scope of Microsoft's subpoena to Novell would be modified to request the following:

> "Novell shall produce all non-privileged documents in its possession, custody or control as of the date of service of the original subpoena on Novell, that constitute or summarize communications between Novell, the Commission, the Monitoring Trustee, OTR or any other third party known or believed by Novell to have been retained by the Commission, relating specifically to or referencing the subject matter of the SO, namely Microsoft's compliance or alleged failure to comply with its obligations under Articles 5(a) and (c) of the 2004 Decision to provide complete and accurate technical documentation embodying the Interoperability Information."

---

[1] DG Competition, as an internal department of the European Commission, has no power to act autonomously. The actions and law enforcement activities it undertakes are carried out under the prior authorization and on behalf of the European Commission, the Commission being the decision making organ of the European Community in areas of competition law.

- 3 -

The Commission also has been informed that the Court suspended issuing its provisional

order of March 28, 2006 until April 6, 2006 to offer *inter alia* the Commission an opportunity to

authoritatively present its position on Microsoft's (revised) discovery request.

The European Commission is grateful for this opportunity and, by the present

Memorandum, would like to state its position authoritatively on Microsoft's discovery request

and Novell's motion to quash.[2]  The Commission believes that Microsoft's request raises very

important issues and problems of law and policy, in particular as regards the enforcement of the

rules on access to material in the Commission's file and rights of a defendant in the

Commission's antitrust investigations.

## II.  FACTUAL AND LEGAL BACKGROUND

### A.  The Framework Within Which The European Commission Carries Out Its Antitrust Investigations.

The Commission's powers of enforcement in competition law are set out in Council

Regulation 1/2003 (OJ No L 1, 4.1.2003, p. 1, a copy of which is attached as Exhibit B).[3]

Regulation 1/2003 provides specific means for investigating suspected infringements of

competition law, notably by issuing formal requests for information, taking oral statements,

conducting on-site inspections, etc.  Regulation 1/2003 is further implemented by Commission

Regulation No. 773/2004, which sets out more precise rules governing certain procedural issues

in competition law enforcement before the Commission.

It is well established in European Community law, in general, and competition law, in

particular, that the rights of defense and the right to be heard of potentially affected entities and

individuals are properly respected.  As the European Court of Justice has held in its judgment in

connection with <u>Hoffman-La Roche Co. AG v. Commission</u>, [1979] ECR 461: *"observance of*

---

[2] A copy of the Authority issued by the Commission in this matter is attached hereto as Exhibit A.

[3] Council Regulation 1/200 replaced Counsil Regulation No. 17/62.

- 4 -

*the right to be heard is in all proceedings in which sanctions, in particular fines or penalty payments, may be imposed a fundamental principle of Community law which must be respected [...]".* [4]

In line with this judgment and established case law of the European Court of Justice and the Court of First Instance, the Commission has put in place a number of procedural rules which guarantee the application of the principle of equality of arms, the protection of the rights of defense and due process in proceedings before the Commission. In particular, the rules on access to material in the Commission's file were adopted for the purpose of enabling potentially any affected party to effectively exercise their rights of defense in Commission competition proceedings.

The "Commission's file" in a competition law investigation (hereinafter also referred to as "the file") consists of all documents, which have been obtained, produced and/or otherwise assembled by the Commission, during the investigation phase. [5] Access to the file is granted to adversely affected parties in proceedings before the Commission. The access is granted to all documents making up the Commission's file, with the exception of internal documents, business secrets of other entities or other confidential information. [6] This access is granted after a Statement of Objections has been addressed to the party concerned setting out the Commission's provisional findings from the investigation concerning a potential violation of the competition

---

[4] Judgment of the Court of February 13, 1979 in Case 85/76, <u>Hoffmann-La Roche & Co. AG v. Commission</u> [1979] ECR 461, a copy of which is attached as Exhibit C.
[5] See Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, and Articles 53, 54 and 57 of the EEA Agreement and Regulation (EC) No 139/2004, OJ 2005/C 325, 22.12.2005, p. 7 ("Notice on access to file"), at paragraph 7, a copy of which is attached as Exhibit D. This notice replaces an earlier but similar Commission Notice of 1997 on access to file; see OJ C 23 of 23.01.1997.
[6] "Internal documents" can be neither incriminating nor exculpatory. They do not constitute part of the evidence on which the Commission can rely in its assessment of a case. Thus, the parties will not be granted access to internal documents in the Commission file. Given their lack of evidential value, this restriction on access to internal documents does not prejudice the proper exercise of the parties' right of defense. See Commission Notice on access to file, at paragraph 3.1.

- 5 -

rules.[7]  Obviously there are certain limitations to access.  The European Court of Justice has

confirmed that *"the Commission is allowed to preclude from the administrative procedure*

*evidence which has no relation to the allegations of fact and of law in the Statement of*

*Objections and which therefore has no relevance to the investigation."* [8]

Where an adversely affected party believes that the Commission's Services (i.e. in this

case DG Competition) have erroneously or unlawfully withheld documents which are necessary

for its defense, it may make a request to the Hearing Officer for a decision to enable it to have

access to such documents.  The Hearing Officer is responsible for safeguarding the rights of

defense of the parties concerned in Commission proceedings.[9]  The Hearing Officer, from

administrative and functional points of view, is <u>not</u> an official of DG Competition.  He or she is

independent and directly attached to the office of the Commissioner in charge of competition

policy.[10]  The Hearing Officer reports to the competition Commissioner and ultimately the

Commission.

The Hearing Officer, once properly seized of a request by an interested party, has the

power to decide *inter alia* whether to grant or refuse access to the documents sought.  A decision

by the Hearing Officer to authorize or not to authorize the disclosure of certain documents to a

party concerned is ultimately susceptible to judicial review by the Court of First Instance and the

European Court of Justice.  Similarly, an entity which considers that certain of the documents in

the Commission's file contain its business secrets that should not be disclosed to the defendant

seeking access, can appeal directly a decision by the Hearing Officer authorizing access to the

---

[7] See Notice on access to file, supra, at paragraph 10.
[8] See Judgment of the Court of Justice of January 7, 2004, in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland, [2004] ECR, not yet reported, at paragraph 126, a copy of which is attached as Exhibit E.
[9] See Articles 1 and 8 of the Commission Decision of May 23, 2001 on the terms of reference of hearing officers in certain competition proceedings, OJ 2001 L 162, 19.6.2001, p. 21 (hereinafter "the Hearing Officer Decision"). Currently, there are two persons serving as Hearing Officers.
[10] See Article 2 of the Hearing Officer Decision, supra.

- 6 -

Court of First Instance and the European Court of Justice.[11]

Documents obtained through access to the file cannot be used for any purpose other than the proceedings applying competition law before the Commission or in proceedings before the European courts. This safeguard is contained in Article 15 of Regulation 773/2004, which stipulates that documents obtained through access to file may only be used *"[...] for the purposes of judicial and administrative procedures for the application of Articles 81 and 82 of the Treaty."* Furthermore, the European Commission Notice on access to file states that:

> "Should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action."[12]

It is important to note that the Commission makes that obligation and the attending sanctions clear in a standard letter to all concerned and their counsel, when addressing to them a Statement of Objections and providing access to file.

**B.      The Proceedings Against Microsoft Pursuant To Article 24 of Regulation 1/2003.**

On March 24, 2004, the Commission adopted a decision in Case COMP/C-3/37.792 – Microsoft ("the Decision"), in which it concluded that Microsoft had abused its dominant position in PC operating systems by:

- (i) refusing to provide interoperability information necessary for competitors to be able to effectively compete in the work group server operating system market, and

- (ii) tying its Windows Media Player with the Windows PC operating system.

The Commission imposed a fine of €497,196,304 on Microsoft and ordered it to bring the above-mentioned infringements of Article 82 EC to an end (Article 4 of the Decision). In particular, the Decision ordered Microsoft to supply interoperability information to interested

---

[11] See Article 9 of the Hearing Officer Decision, *supra.*
[12] Commission Notice on access to file, p. 7.

US1DOCS 5597699v1

undertakings on reasonable and non-discriminatory terms and conditions ("the interoperability remedy", Article 5 of the Decision), and to offer a full-functioning version of its Windows PC operating system which does not incorporate Windows Media Player ("the tying remedy," Article 6 of the Decision).

The Decision also provided for the establishment of a mechanism to monitor proper and accurate implementation, including the appointment of a Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision. Microsoft was granted a deadline of 120 days to implement the interoperability remedy, and a deadline of 90 days to implement the tying remedy.

The obligations imposed by the Decision on Microsoft were suspended, pending the Court of First Instance's consideration of Microsoft's request for interim measures. Microsoft's application for interim measures was, however, dismissed by the President of the Court of First Instance on December 22, 2004.[13] Consequently, Microsoft is under an obligation to comply with the Decision without delay.

On July 28, 2005, the Commission adopted another decision concerning the monitoring mechanism contained in Article 7 of the Decision.[14] The July 2005 decision sets out, in particular, the framework under which the Monitoring Trustee, mentioned earlier, will work. Subsequent to this July 2005 decision, the Commission invited Microsoft to put forward candidates for appointment as Monitoring Trustee. On October 4, 2005, on the basis of a short list of candidates submitted by Microsoft itself, the Commission appointed as Monitoring Trustee by common agreement with Microsoft, Professor Neil Barrett, a British computer science expert.

---

[13] Order of the President of the Court of First Instance of December 22, 2004 in Case T-201/04 R, Microsoft v Commission, [2004] ECR, not yet reported.
[14] See doc. C (2005) 2988 final.

- 8 -

It is important to clarify at this stage that Article 24 of Council Regulation 1/2003 grants the Commission the power to impose on parties daily penalty payments, not exceeding 5% of the average daily turnover of the parties concerned in the preceding business year. The purpose is to compel parties to put an end to infringement of Article 81 or 82 EC Treaty following a prohibition decision taken against them by the Commission pursuant to Article 7 of Regulation 1/2003 (see Article 24(1)(a)).

In this context, the Commission, on the basis of an opinion on the Technical Documentation from the firm, OTR ("Organization and Technology Research"), which is an outside technical expert firm retained by the Commission to assist it on technical issues, decided to open proceedings against Microsoft in order to compel it to comply with its obligations stemming from the Decision. Consequently, on November 10, 2005, the Commission issued another decision against Microsoft, pursuant to Article 24(1) of Regulation 1/2003 ("the Art 24(1) Decision"), for failure to comply with the interoperability provisions of its March 2004 Decision. This November 2005 decision is the first step in a procedure leading to the imposition of daily penalty payments pursuant to Article 24 of Regulation 1/2003. By means of this November 2005 decision, a penalty payment of up to €2 million per day was imposed on Microsoft, from December 15, 2005, in the event that it is established that Microsoft did not to comply with Article 5(a) and (c) of the Decision, i.e. its obligations to: (i) supply complete and accurate interoperability information, and (ii) to make that information available on reasonable terms, as explained earlier.

In the meantime, the Monitoring Trustee had been appointed and assumed his advisory functions. In light of his reports on the state of the Technical Documentation provided to the Commission by Microsoft in response to the Art 24(1) Decision, the Commission, on December

- 9 -

21, 2005, adopted a Statement of Objections against Microsoft. This December 2005 Statement

of Objections took the preliminary view that Microsoft had not yet complied with its obligation

to supply complete and accurate interoperability information. A hearing was held at the request

of Microsoft on March 30-31, 2006 on the objections raised in the December 2005 Statement

concerning compliance with the interoperability remedy.

## III.     ARGUMENT

In Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), the United States

Supreme Court articulated the factors that a Court should consider when it rules on an

application pursuant to 28 U.S.C. § 1782(a). According to the Supreme Court, a District Court

may *inter alia* take into account: *"the receptivity of the foreign government or the court or*

*agency abroad to U.S. federal-court assistance,"* and also *"whether the § 1782(a) request*

*conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a*

*foreign country or the United States." (Id.* at 264) (emphases added).

The Commission respectfully submits that, in this case, it is <u>not</u> receptive to U.S. federal-

court assistance for essentially two reasons: (1) the Commission does not require assistance from

the United States federal courts under 28 U.S.C. § 1782(a) because the Commission has the

power to lawfully obtain from Novell all documents relevant to its investigation; and (2)

Microsoft's discovery request under 28 U.S.C. § 1782(a) is seen rather as an attempt to

circumvent established rules on access to file in proceedings before the Commission.

### A.     There Is No Need Here For United States Federal Court Assistance.

It should first be noted that, contrary to what is suggested in the Court's preliminary order

of March 28, 2006, the Commission has the legal power, under Article 18 of Council Regulation

No 1/2003, to *"require undertakings and associations of undertakings to provide all necessary*

*information"* whether or not they are the target of an investigation or suspected of an

- 10 -

infringement of the competition rules. Indeed, the Commission has such powers and exercises them very frequently. If the parties or third parties do not provide the requested information, the Commission can order and has many times in the past ordered production and imposed heavy fines, under Article 23 of Regulation 1/2003 (and Article 15 of the preceding Regulation 17/62), in order to induce compliance.

The Commission has made use of its powers to gather information and obtained from Novell the information which it deemed relevant in the present proceedings. More precisely, Novell was one of the companies which evaluated the technical documentation provided by Microsoft in regard to the interoperability remedy. Following this first evaluation, the Commission addressed a request for information, pursuant to Article 18 of Regulation No. 1/2003, to Novell on October 4, 2005. Novell responded to this request on October 13, 2005. The information gathered by means of this request was relied upon in the December 21, 2005 Statement of Objections addressed to Microsoft.[15]

This information gathering power of the Commission, under Article 18 of Regulation No. 1/2003, does not and did not depend on Novell being a party to the Commission proceedings against Microsoft. Novell is in any event an "interested third party," pursuant to Article 13 of Regulation No 773/2004, in the proceedings against Microsoft. Moreover, Novell, as an "interested third party," was also heard at the oral hearing held at the request of Microsoft on March 30-31, 2006.

In sum, the Commission has all the power to request any information from Novell or any other third company at any time that is relevant to the proceedings in the Microsoft case. Therefore, the Commission authoritatively submits to the District Court that it does not need, in

---

[15] See paragraph 22 of the Statement of Objections. For the precise formulation of the questions raised, see footnote 23 of the Statement of Objections.

US1DOCS 5597699v1

the present case, judicial assistance from the United States federal courts under Section 1782(a).

Indeed, the Commission has already exercised these powers in the present case to gather from

Novell all the information it deemed necessary in the context of the relevant proceedings in the

Microsoft case concerning the interoperability remedy.

**B.      Ordering Discovery Would Circumvent The European Community Rules On Access To File.**

In the Commission's view, a discovery request under 28 U.S.C. §1782(a) relating to an

ongoing investigation risks circumventing the established rules and procedures applicable to

access to file in proceedings before the European Commission chiefly for the following reasons.

1.      *Microsoft's rights of defense are adequately protected by the applicable European rules on access to file.*

The Commission submits that Microsoft's rights of defense, in relation to the objections

raised in the December 2005 Statement of Objections for failure to comply with the

interoperability remedy, are adequately protected by the existing rules on access to file that are

routinely applicable to all parties subject to such competition law proceedings before the

European Commission.

Indeed, once it received the above-mentioned Statement of Objections, Microsoft

requested access to the file and to the documents identified in the annex to the Statement of

Objections, including all the documents exchanged between the Commission services and the

Monitoring Trustee and all the documents exchanged between the Commission's Services and

the company OTR in relation to all matters covered by the Statement of Objections.[16]  By letter

of January 30, 2006, Microsoft requested further access to the Commission's file pertaining to

the correspondence between the Commission, on the one hand, and third parties such as the

companies Sun, Oracle, IBM and Novell, on the other hand.  Furthermore, Microsoft requested

---

[16] E-mail from Jean-Yves Art, Microsoft's Director of Competition EMEA, of December 23, 2005.

- 12 -

access to file reflecting the discussions that have taken place between third parties, in particular Sun, IBM and OTR, and the Monitoring Trustee.[17]

Following Microsoft's request, the Hearing Officer took the position that the correspondence between the Commissions' services, on the one hand, and the Monitoring Trustee and OTR, on the other hand, constitute internal documents which, according to the applicable rules and provisions explained earlier, are in principle not accessible to Microsoft.[18] By contrast, after confidentiality waivers had been provided by those undertakings participating as third parties, Microsoft was given timely access to communications between the Commission and those third parties that related to the issues raised in the Statement of Objections of December 21, 2005.[19]

The Commission has, therefore, given to Microsoft access to all third party documentation in its possession, to which Microsoft is lawfully entitled. However, by letter of March 2, 2006, Microsoft specifically requested to have further access to *"any material submitted by its adversaries to the Trustee and OTR."*[20]

In order to verify whether this further request by Microsoft was well-founded, the Commission asked the company OTR and the Monitoring Trustee to disclose and transmit to the Commission any documents they had received directly, without the Commission's knowledge, from third parties or from Microsoft in carrying out their respective duties, as well as any minutes they may have taken as regards communications with third parties or with Microsoft.

---

[17] Letter from Microsoft's counsel Ian Forrester to the Hearing Officer of January 30, 2005.
[18] Correspondence between the Commission and the experts is only rendered accessible if it is necessary for understanding the methodology applied in the experts' reports or for testing their technical correctness. Accordingly, the Hearing Officer took the view that one piece of this correspondence was indispensable for Microsoft's defense and ensured that access was effectively granted to it.
[19] Letter from the Hearing Officer to Ian Forrester of February 8, 2006, a copy of which is attached as Exhibit F.
[20] Letter from Georg Berrisch, Microsoft's counsel, of March 2, 2006, a copy of which is attached as Exhibit G.

- 13 -

In line with well established case law,[21] the Commission, upon receipt of these documents from the Monitoring Trustee, verified whether third parties could lawfully claim confidentiality on any of the documents exchanged with the Trustee. After having examined the confidentiality claims of third parties, the Commission transmitted to Microsoft, by letter of March 28, 2006, all the communications between third parties and the Monitoring Trustee for which no reasonable confidentiality claims were made by the parties and which related to the objections raised in the December 2005 Statement of Objections. [22]

As regards communications between the company OTR and third parties, OTR has confirmed in writing to the Commission that no such communications relating to the Statement of Objections have occurred which are not documented in the Commission's file and to which Microsoft has therefore not already been granted access. Therefore, it came as a surprise to the Commission that Microsoft had decided to turn to a United States federal court for assistance under 28 U.S.C §1782 in order to gain access to the file, which it had one day earlier (i.e. on March 2, 2006) sought to obtain from the Commission and with respect to which a proceeding was pending before the Hearing Officer.[23]

The Commission submits that Microsoft's rights of defense in relation to the objections raised in the December 2005 Statement of Objections have been and are sufficiently and adequately protected. If Microsoft considers that its rights of defense or any other right is being violated or not respected in this case, it can bring the matter before the Court of First Instance for

---

[21] See Judgment of the Court of June 24, 1986 in Case 53/85, AKZO Chemie BV and AKZO Chemie UK Ltd v Commission [1986] ECR 1965, a copy of which is attached as Exhibit H.
[22] Letter of March 28, 2006 from Cecilio Madero, Head of Unit, DG Competition, to Georg Berrisch, Microsoft's counsel, a copy of which is attached as Exhibit I.
[23] In fact, at the time of writing the present intervention, the Hearing Officer has already replied to almost all of Microsoft's requests for access to file. What the Hearing Officer is still cross-checking is whether some of the correspondence between the Commission and the experts is necessary for Microsoft's defense and needs therefore to be rendered accessible. Moreover, Microsoft has not exhausted the possibility it has to turn again to the Hearing Officer with regard to the decision he has taken that certain documents submitted by third parties are confidential and unrelated to the case, if it considers it appropriate and necessary for its defense.

- 14 -

judicial review. Therefore, Microsoft's application under Section 1782(a) does not appear to be

a genuine and reasonable request, but rather an attempt to circumvent the rules on access to file

which are routinely applicable to all parties in proceedings of this nature before the Commission.

> 2.    *There is a serious risk that granting the discovery requests to Microsoft
> under 28 U.S.C. §1782(a) relating to an ongoing antitrust investigation is
> affirmatively harmful to the Commission's sovereign interests.*

The Commission further submits that the discovery requests made by Microsoft under 28

U.S.C. §1782(a) from other participants in the Commission's proceedings, if granted, would

seriously compromise the Commission's powers of investigation and competition law

enforcement.

First, the Commission submits that there is a potential risk of subversion of the regulatory

limits on an antitrust defendant's access to file containing information which the Commission

gathers in its investigation. Those limits are lawfully imposed by the European Community, in

the exercise of its sovereign regulatory powers in its territory and pursuant to the public interest.

Indeed, as a general rule, the Commission is bound by an obligation of confidentiality which

exists under the EC Treaty,[24] and which applies *inter alia* to protect confidential information and

business secrets obtained from entities and individuals under its information-gathering powers.

As a result, there are certain elements of the Commission's files (as explained, internal

documents, commercial information and business secrets) to which a defendant is denied access,

typically by way of appropriate redaction.[25] Should defendants in antitrust investigations before

the Commission be granted discovery requests under 28 U.S.C. §1782(a), there would be a

serious risk that the confidentiality limitations resulting from the rules on access to file would not

be fully respected, for example where the relevant United States rules concerning confidential or

---

[24] See the Treaty Establishing the European Community, Article 287.
[25] See Sections IV.B. and C., paragraphs 39-49, of the Commission's Notice on access to file, *supra.*

USIDOCS 5597699v1

otherwise privileged documents differ from those applicable in the European Community. The careful balance to be carried out on the basis of the facts of each individual proceeding between the defendant's right to access to file and the information provider's right to confidentiality could be seriously jeopardized. In the same vein, the protection space for internal Commission deliberations, contributing to the quality of the decision making, could be jeopardized should internal Commission documents be disclosed to parties through collateral proceedings in the United States courts.

Second, the rules governing the conduct of competition law proceedings before the Commission impose restrictions on the purposes for which the documents obtained through access to file can be used. As explained, Article 15 of Commission Regulation 773/2004 stipulates that documents obtained through access to file may only be used *"[...] for the purposes of judicial and administrative procedures for the application of Articles 81 and 82 of the Treaty."* Furthermore, the Commission's Notice on access to file states that: *"Should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action."*[26] As already explained, the objective of these provisions is to sanction unlawful use of the information obtained, in view of the public interest (efficient law enforcement) and the substantial economic interests at stake. Therefore, the Commission submits that there is a serious risk that the documents, which are subject to a discovery request under 28 U.S.C. §1782(a), may not be protected at all or not protected to the same extent by the rules applicable in other jurisdictions. This is another likely scenario in which the specific rules on

---

[26] Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No139/2004, in OJ 2005/C 325, 22.12.2005, p. 7.

- 16 -

access to file that the Commission has lawfully placed on defendants subject to competition law enforcement in the European Community could be circumvented.[27]

Third, a Commission decision granting or refusing access to file to a defendant in a competition law case is subject to judicial control by the Court of First Instance and the European Court of Justice. These courts have emphasized that the right to access to file is *"a corollary of the principle of respect for the rights of the defense."*[28]  However, these courts have also emphasized that not every failure by the Commission to disclose a document to a defendant constitutes a breach of the rights of defense.[29]  It is for the Community judiciary to finally establish whether a *"document which was not disclosed might have influenced the course of the proceedings and the content of the Commission's decision,"*[30] which could lead to the annulment of the Commission's decision. Therefore, a discovery order by a United States federal court granting access to documents to which the Commission has not granted access would risk interfering seriously with the above-mentioned review by the European Courts concerning the rights of defense and, thus, is likely to circumvent well-established domestic rules on judicial review in the European Community.

### C.    Conclusion

In conclusion, the European Commission submits that if the Court were to deny Novell's Motion to Quash and permit the discovery requested by Microsoft, there would be a serious risk

---

[27] The list of examples contained in this intervention is not exhaustive as to the potential areas where differences between the European Community's and the United States' legal systems are likely to occur. Another example is that the Commission and companies established in the European Community are under obligations as to the treatment of so-called "personal data" contained in documents and information exchanged. See, respectively, Regulation (EC) No. 45/2001 of 18 December 2000 on the protection of individuals with regard to the processing of personal data by the Community institutions and bodies and on the free movement of such data (OJ L 8, 12.1.2001, p. 1), and Directive 95/46 on the Protection of Individuals with regard to the Processing of Personal Data (OJ L 281, 23.11.95, p.31).

[28] See Judgment of the Court of January 7, 2004 in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland A/S, [2004] ECR, not yet reported, at paragraph 68.

[29] See Judgment of the Court of January 7, 2004 in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland A/S, [2004] ECR, not yet reported, at paragraphs 72 and 74, a copy of which is attached as Exhibit E.

[30] See Judgment of the Court of January 7,2004 in Joined Cases C-204/00 P, C-205/00 P, C-211/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aalborg Portland A/S, [2004] ECR, not yet reported, at paragraph 76.

- 17 -

of contravening principles of international comity by interfering with law enforcement and sovereign policy choices in the handling of competition law proceedings in the European Community. The European Commission considers that it already has all the necessary powers to obtain the information and documents relevant for its competition law enforcement and it has, in fact, exercised its powers in this case. The European Commission also considers that Microsoft's rights of defense are adequately protected by the rules applicable in the European Community.

The European Commission, therefore, respectfully submits that it is <u>not</u> receptive to the judicial assistance requested by Microsoft under 28 U.S.C. § 1782(a) because the discovery request in this case is unjustified, unduly intrusive and poses a serious risk of circumventing the applicable rules on access to file in competition law investigations in the European Community.

- 18 -

Respectfully submitted,

Commission of the European Communities
By its Attorneys,

Of Counsel:

_____/s/ Michelle D. Miller_____

A. Douglas Melamed                          Michelle D. Miller, BBO #60898
Wilmer Cutler Pickering Hale and Dorr LLP    Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.                          60 State Street
Washington, District of Columbia 20037-1420  Boston, MA 02109
(202) 663-6090                               (617) 526 6116

Theofanis Christoforou
Legal Advisor of the Legal Service
of the Commission of the
European Communities

Per Hellstrom
Member of the Legal Service
of the Commission of the
European Communities

Dated: April 5, 2006

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on April 6, 2006.

_____/s/ Michelle D. Miller_____

- 19 -

# EXHIBIT 10

No. 02-572

IN THE

## Supreme Court of the United States

———

INTEL CORPORATION,

*Petitioner,*

v.

ADVANCED MICRO DEVICES, INC.,

*Respondent.*

———

**On Writ of Certiorari
to the United States Court of Appeals
for the Ninth Circuit**

———

**BRIEF OF *AMICUS CURIAE*
THE COMMISSION OF THE EUROPEAN
COMMUNITIES SUPPORTING REVERSAL**

———

CARTER G. PHILLIPS*
VIRGINIA A. SEITZ
RICHARD WEINER
GENE C. SCHAERR
MARINN F. CARLSON
SIDLEY AUSTIN BROWN &
  WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Amicus Curiae*

December 23, 2003          * Counsel of Record

TABLE OF CONTENTS

                                                                    Page

TABLE OF AUTHORITIES ............................................    ii

BRIEF OF *AMICUS CURIAE* ..........................................    1

INTERESTS OF *AMICUS CURIAE* ...............................    1

SUMMARY OF ARGUMENT ......................................    3

ARGUMENT.................................................................    5

  I. THE EUROPEAN COMMISSION IS NOT A
     "TRIBUNAL" WITHIN THE MEANING OF
     SECTION 1782 ......................................................    5

    A. The Commission's Investigation Of Competi-
       tion Law Complaints Is Not An Adjudicative
       Process................................................................    5

    B. A Narrow Interpretation Of "Tribunal" Is
       Appropriate In The Section 1782 Context..........    10

    C. A Broad Interpretation Of "Tribunal" Is
       Affirmatively Harmful To The Commission's
       Sovereign Interests ...........................................    11

  II. THE COURT SHOULD STRICTLY CON-
     STRUE SECTION 1782 TO AVOID INAPPRO-
     PRIATELY BURDENING THE COMMISSION
     AND OTHER FOREIGN SOVEREIGNS..............    16

CONCLUSION................................................................    18

ii

# TABLE OF AUTHORITIES

CASES                                                    Page

*Heckler* v. *Chaney*, 470 U.S. 821 (1985) ................    9
*Malev Hungarian Airlines* v. *United Techs. Int'l Inc.*, 964 F.2d 97 (2d Cir. 1992) ..........................    10
*McCulloch* v. *Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10 (1963)..............................    16
*In re Murchison*, 349 U.S. 133 (1955) ....................    9
*Raygor* v. *Regents of the Univ. of Minn.*, 534 U.S. 533 (2002)..........................................................    17
*Withrow* v. *Larkin*, 421 U.S. 35 (1975)...................    9


STATUTES

Act of March 2, 1855, ch. 140, 10 Stat. 630 ...........    11
15 U.S.C. § 2 .........................................................    6
28 U.S.C. § 1782 ....................................................    2, 5


LEGISLATIVE HISTORY

S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782 .............................................    11


INTERNATIONAL TREATIES AND AGREEMENTS

Agreement Between the Government of the United States of America and the Commission of the European Communities Regarding the Application of Their Competition Laws, 1995 O.J. (L 95) 47, *as amended by* Exchange of Letters Dated 31 May 1995 and 31 July 1995, 1995 O.J. (L 132) 38............................................    12
Agreement Between the Government of the United States of America and the European Communities on the Application of Positive Comity Principles in the Enforcement of Their Competition Laws, 1998 O.J. (L 173) 28 ............    12

iii

TABLE OF AUTHORITIES—continued

Page

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.................................................... 11

The Treaty Establishing the European Community, 2002 O.J. (C 325) 33 ..................................... 1, 2

INTERNATIONAL CASES

Case 53/85, *AKZO Chemie BV* v. *Comm'n of the European Communities*, 1986 E.C.R. 1965......... 14

Case T-24/90, *Automec Srl* v. *Comm'n of the European Communities*, 1992 E.C.R. II-2223..... 8

Case C-209/78, *Heintz van Landewyck SARL* v. *Comm'n of the European Communities*, 1980 E.C.R. 3125...................................................... 10, 13

Case T-65/96, *Kish Glass & Co.* v. *Comm'n of the European Communities*, 2000 E.C.R. II-1885 ........................................................... 8

Case T-17/93, *Matra Hachette SA* v. *Comm'n of the European Communities*, 1994 E.C.R. II-595 ...................................................................... 13

Case T-11/89, *Shell Int'l Chem. Co.* v. *Comm'n of the European Communities*, 1992 E.C.R. II-757 ...................................................................... 9

Case T-241/97, *Stork Amsterdam B.V.* v. *Comm'n of the European Communities*, 2000 E.C.R. II-309 ...................................................................... 8

INTERNATIONAL REGULATIONS

Council Regulation 17/62, 1959-1962 O.J. Spec. Ed. 87........................................................... 6, 7, 8, 13

Council Regulation 2842/98, 1998 O.J. (L 354) 18 ...................................................................... 7

iv

TABLE OF AUTHORITIES—continued

Page

Council Regulation 1/2003, 2003 O.J. (L 1) 1 ........    6

SCHOLARLY AUTHORITIES

Brian Eric Bomstein & Julie M. Levitt, *Much Ado
About 1782*, 20 U. Miami Inter-Am. L. Rev.
429 (1989)............................................................    11

Lucien R. LeLievre, *Address, in Letters Rogatory*
(Bernard A. Grossman ed., 1956) ........................    10

OTHER AUTHORITIES

*Twenty-First Annual Report from the Commission
to the European Parliament on the Commun-
ity's Anti-Dumping, Anti-Subsidy and Safe-
guard Activities*, COM (2003)481 final, *avail-
able at* http://trade-info.cec.eu.int/doclib/html/
11368.htm .............................................................    15

Letter from A. Tradacete, Director, European
Commission, to B. Amory, Counsel for Aventis
(June 6, 2002), *filed in A.L. Gilbert* v. *Rhone-
Poulenc S.A. (In re Methionine Litig.)*, No.
3:99cv3491, M:00-CV-1311 (N.D. Cal.).............    15

Press Release, European Comm'n, MEMO/03/33,
Statement on Inspections at Producers of Heat
Stabilisers as well as Impact Modifiers and
Processing Aids—International Cooperation on
Inspections (Feb. 14, 2003), *available at* http://
www.europa.eu.int/rapid/cgi/guesten.ksh............    12

Press Release, European Comm'n, MEMO/03/
107, Spokesperson's Statement on Dawn Raids
in the Copper Concentrate Sector (May 14,
2003), *available at* http://www.europa.eu.int/
rapid/cgi/guesten.ksh ...........................................    12

## BRIEF OF *AMICUS CURIAE*

Pursuant to Supreme Court Rule 37.3(a) on written consent of all parties, the Commission of the European Communities (the "European Commission" or the "Commission") hereby respectfully submits this brief as *amicus curiae*.[1]    The Commission supports reversal of the decision of the United States Court of Appeals for the Ninth Circuit, *Advanced Micro Devices, Inc.* v. *Intel Corp.*, Pet. App. 1a-9a.

## INTERESTS OF *AMICUS CURIAE*

The European Commission is the executive and administrative organ of the European Communities.    The Treaty Establishing the European Community, 2002 O.J. (C 325) 33 (consolidated version), creates a unique tripartite structure in which the Commission is the institutional "Guardian of the Treaty," see *id.* at 119-20, art. 211, while the Council of the European Union represents the national governments of the Member States, and the European Parliament is directly elected by citizens of those Member States, see *id.* at 113, 117, arts. 189, 202.   The European Court of Justice and Court of Auditors round out the Communities' key institutions. See *id.* at 126, 129, arts. 220, 246.

The Commission's responsibilities within this structure extend to a wide range of subject areas, including not only competition (antitrust) law, but also international trade, foreign aid, and environmental protection among other areas. Functionally, the Commission's role includes proposing

---

[1] Pursuant to Supreme Court Rule 37.6, the Commission states that no counsel for any party authored this brief in whole or in part, and no person or entity, other than the Commission or its counsel, made any monetary contribution to the preparation or submission of this brief.  The parties' written consent to the filing of *amicus curiae* briefs is on file with the Court.

2

legislation, managing and implementing European Union policy and budgets, and representing the European Union on the international stage—including in contexts like this case, where the Commission's (and by extension the Communities') interests are directly at stake. In several areas, the Commission has been granted powers to enforce directly the Treaty and European regulations promulgated pursuant to it.

With regard to competition law and policy, the Commission, through the Directorate-General for Competition ("DG Competition"), enforces, *inter alia*, the Treaty's provisions relating to competition. These include in particular Articles 81 (relating to anti-competitive agreements, including cartels), 82 (relating to abuse of dominant position), and 87 (relating to market-distorting state aid). See *id.* at 64-65, 67. The Commission also has enforcement responsibilities under regulations such as the Merger Regulation, which provides for merger review.

The European Commission is taking the highly unusual (for it) step of appearing as an *amicus curiae* in this case because it is deeply concerned that 28 U.S.C. § 1782 ("Section 1782") could be interpreted and applied in a manner—like that embraced by the Ninth Circuit below—that would directly threaten the Commission's enforcement mission in competition law and possibly interfere with the Commission's responsibilities in other areas of regulatory concern as well. Far from its intended, laudable purpose of aiding the tribunals of foreign sovereigns, Section 1782 could become a threat to foreign sovereigns if interpreted expansively by this Court.

More specifically, the Commission perceives a serious threat to European Union competition law and policy and to the European Commission's ability to carry out its governmental responsibilities if Section 1782 is read (i) to treat the Commission as a "tribunal" in connection with competition law and other enforcement actions, and (ii) to delegate to district courts discretion merely to weigh the

3

Commission's interests in considering Section 1782 requests relating to such enforcement actions.   Deeming the Commission a "tribunal" poses a serious threat to the Commission's law enforcement functions, in particular the operation of its cartel-related Leniency Policy.   Leaving Section 1782 requests to a multi-factor balancing test within the discretion of district courts would place heavy and inappropriate burdens on the Commission and other foreign governments to monitor and appear in such actions to defend their sovereign interests on a case-by-case basis.

In the Commission's view, respectfully, such an interpretation would be misguided.  An accurate understanding of the European Commission's nature and functions should rule out any application of the term "tribunal" to it, and principles of comity should guide the Court away from a freewheeling balancing approach and toward a bright-line rule.   The Commission files this *amicus* brief in order to provide the Court with a fuller explanation of both.[2]

## SUMMARY OF ARGUMENT

Section 1782 is intended to facilitate the collection of evidence in aid of proceedings before foreign tribunals, so that those tribunals can readily obtain the information necessary to carry out their adjudicative functions. However, no such proceeding before a "tribunal" was underway or forthcoming when Advanced Micro Devices, Inc. ("AMD") invoked Section 1782 to obtain discovery from its commercial competitor, Intel Corp. ("Intel").  The European

---

[2] The European Commission wishes to be clear that this filing in no way reflects Commission support with respect to the merits of the underlying claims made by either party to this proceeding.  Rather, it reflects the Commission's judgment that reversal of the Ninth Circuit's decision and appropriate limiting interpretations of Section 1782 are essential to the continued proper fulfillment of the Commission's enforcement responsibilities.

4

Commission is engaged in a preliminary investigation of Intel that was triggered by AMD's complaint alleging violations of European competition laws. But in that role, the Commission is not an adjudicative "tribunal"—it is an investigative entity fulfilling its responsibilities to enforce the competition laws in the public interest.

The European Commission respectfully submits that Section 1782 should be read to exclude discovery requests predicated on the Commission's investigation and evaluation of alleged infringement of competition laws. The nature of the Commission and its responsibilities make clear that the Ninth Circuit's characterization of its competition law proceedings as involving a "tribunal" cannot stand.

A contrary reading would have serious adverse consequences for the Commission, and thus should also be rejected in the interests of comity. Permitting discovery requests on the grounds endorsed by the court below would undermine the European Community's carefully balanced policies regarding the disclosure of confidential information, by allowing complainants to obtain via Section 1782 documents that they are not permitted to review under European law. Notably, the discovery sought by AMD is information that the Commission has thus far declined to seek on its own behalf. Such a rule could encourage companies to file pretextual complaints with the Commission solely in order to use Section 1782, wasting the Commission's scarce resources. In addition, characterizing the Commission as a "tribunal" poses serious threats to its anti-cartel Leniency Program by jeopardizing the Commission's ability to maintain the confidentiality of documents submitted to it.

In the Commission's view, it would not be appropriate to leave such concerns to be balanced by district courts in case-by-case evaluations of Section 1782 requests. Such an approach would greatly burden the Commission and other foreign sovereigns by requiring them to monitor and appear in district court proceedings throughout the United States in

5

order to explain their interests in blocking such requests. On the other hand, a proper, narrow construction of Section 1782 would avoid subjecting the United States' foreign policy partners to such burdens and indignities. This approach fully satisfies the manifest purpose of Section 1782 without needlessly interfering with the Commission's enforcement responsibilities.

## ARGUMENT

### I. THE EUROPEAN COMMISSION IS NOT A "TRIBUNAL" WITHIN THE MEANING OF SECTION 1782.

The parties have and will set forth legal arguments employing methods of statutory interpretation with respect to Section 1782. The Commission will not repeat those arguments here. Rather, it wishes to draw the Court's attention to an additional and independent interpretive question of special significance to it: whether the Commission can properly be designated a "tribunal" for purposes of Section 1782. The correct answer is no, and that answer requires reversal of the decision below.[3]

### A. The Commission's Investigation Of Competition Law Complaints Is Not An Adjudicative Process.

Respondent AMD requested the district court's assistance in obtaining discovery from Petitioner Intel under Section 1782 on the premise that the documents sought were "for use in a proceeding in a foreign or international tribunal." The requisite "proceeding in a foreign ... tribunal," 28 U.S.C. § 1782(a), AMD contended, was the European Commission's investigation of Intel under Article 82 of the Treaty for

---

[3] Likewise, of course, a determination in Intel's favor as to whether Section 1782 incorporates either a discoverability requirement or a "pending or ... imminent" proceeding requirement, Pet. i, would mandate reversal.

6

alleged abuse of a dominant position (a charge akin to a claim of monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, in the United States). That investigation, in turn, had been automatically triggered by AMD's own filing of an Article 82 complaint against Intel, one of its chief commercial competitors. AMD encouraged the Commission to seek for itself the documents specified in AMD's Section 1782 request; the Commission, exercising its investigative discretion, has declined to do so.

Reversing the district court's refusal to issue the order sought by AMD, the Ninth Circuit held that the Commission's investigation constituted, or was at least "related to," a "'proceeding before a [foreign] tribunal'" within the meaning of Section 1782. Pet App. 7a. That holding, however, rests on a fundamentally mistaken—and potentially very harmful—understanding of the nature of the Commission's responsibilities in enforcing competition law.

The European Commission's overriding responsibility in this area is to conduct *investigations* into alleged violations of the European Union's competition laws. The Commission's staff (namely, DG Competition) may do so in response to a complaint like that filed by AMD, or it may do so on its own initiative. DG Competition may take into account information provided by a complainant, and it may seek information directly from the target of the complaint. See Council Regulation 17/62, art. 11, 1959-1962 O.J. Spec. Ed. 87. It is authorized, for example, to conduct "dawn raids," in which it enters and searches for information on the premises of the alleged infringer's business. See *id*. at art. 14.[4]

---

[4] DG Competition's investigative powers will be further enhanced under a new "modernisation" regulation due to take effect May 1, 2004, that will replace and expand upon Regulation 17/62. DG Competition will have powers, for example, to interview individuals during inspections, to enter private homes, and to seal raided premises and books or records, as well as enhanced powers to impose fines for noncompliance with its investigations. *See* Council Regulation 1/2003, arts. 19-21, 23-24, 45,

7

Ultimately, DG Competition's preliminary investigation results in a formal written decision whether to pursue the complaint. If it declines to proceed, that decision is subject to judicial review. Should it pursue the matter further, DG Competition moves into a more formal investigative mode. Typically, DG Competition initiates proceedings by serving the target with a formal "statement of objections" that outlines DG Competition's preliminary views that infringement of the competition laws has occurred, and advises the target of DG Competition's intention—subject to hearing out the target—to recommend a decision adverse to it. If the target so requests, an independent hearing officer will hold a non-adversarial hearing to engage in further information-gathering from the target of the complaint, and will report his or her conclusions. See *id.* at art. 19; Council Regulation 2842/98, arts. 10-14, 1998 O.J. (L 354) 18, 21. DG Competition then faces another decision point—*viz.*, whether to recommend a finding of infringement against the target. No matter what action the Commission then takes on that recommendation—whether it dismisses the complaint, or issues a decision finding infringement and imposing penalties as appropriate—that action is again subject to judicial review.

What this process plainly reveals is that neither DG Competition nor the Commission as a whole is ever engaged in adjudicating rights as between private parties. It never performs the functions of a tribunal, because it never decides the merits of any dispute between the complainant and the target. The Commission's actions are directed against the target of its investigations, *i.e.* the addressee of the statement of objections and of any Commission decision. The complainant is not a party to the Commission's investigations. A complainant does have certain procedural

--------------------

2003 O.J. (L 1) 1, 14-18, 25. These features all reinforce the Commission's capacity to enforce the competition laws.

8

rights that give it an onlooker's role in the proceedings.[5]  But the complainant does not have any right to confront the target, and the Commission does not act on its behalf.  The limited, observer's role conferred on the complainant in no way marks the Commission's proceedings as adjudicative.

As the Court of Justice has explained, a Commission investigation "does not constitute an adversary procedure as between the [companies] concerned but a procedure commenced by the Commission ... in fulfillment of its duty to ensure that the rules on competition are observed."  See Case T-65/96, *Kish Glass & Co.* v. *Comm'n of the European Communities*, 2000 E.C.R. II-1885, ¶ 33.  The Commission acts solely to protect the public interest and solely to investigate and, as necessary, to enforce the competition laws. It is by assessing where the public interest lies that the DG Competition and the Commission decide at each step whether or not to proceed further with investigations and decisions.[6]

By far the greatest part of the Commission's activities, therefore, is not in any sense adjudicative.  Rather, the Commission functions as an executive agency investigating and determining whether to initiate proceedings concerning a

---

[5] For example, a complainant has opportunities to present information in support of its allegations, *see* Council Regulation 17/62, art. 19(3), 1959-1962 O.J. Spec. Ed. 87, as well as the right to seek judicial review of Commission decisions not to proceed with investigation or action on its complaint, *see* Case T-241/97, *Stork Amsterdam B.V.* v. *Comm'n of the European Communities*, 2000 E.C.R. 309, ¶¶ 51-53.  The complainant does not, however, have access to confidential information.  *See infra* at note 15.

[6] *See* Case T-24/90, *Automec Srl* v. *Comm'n of the European Communities*, 1992 E.C.R. II-2223, ¶ 85 (explaining that "unlike the civil courts, whose task is to safeguard the individual rights of private persons in their relations inter se, an administrative authority must act in the public interest. Consequently, the Commission is entitled to refer to the Community interest in order to determine the degree of priority to be applied to the various cases brought to its notice.").

9

violation of European competition law. Only at the very end of the process, when the Commission acts on DG Competition's final recommendation to abandon the investigation or to make a finding of infringement, does the investigative function blur into decisionmaking. But while the line between prosecutorial and adjudicative functions in the last stage of the proceeding may be less sharp than that which exists in United States practice,[7] that modest convergence in no way converts the Commission into a "tribunal" of the sort contemplated in Section 1782.[8]

Nor is the prospect of judicial review of the Commission's prosecutorial decisions sufficient to warrant Section 1782 discovery in connection with competition law investigations. To be sure, judicial review of decisions *not* to proceed with further investigation or prosecution is not familiar in connection with enforcement activities undertaken by United States agencies. See *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985). But if that feature were sufficient for a Section 1782 petitioner to claim that discovery is "for use in a foreign ... tribunal," it would open the statute to discovery requests in connection with virtually *every* administrative agency action, regulation, investigation, license or permit anywhere in the world, so long as the action is ultimately subject to judicial review. Congress cannot have intended such an extreme result.

---

[7] United States courts nevertheless have considerable experience in differentiating between prosecutorial and adjudicative functions and in wrestling with the consequences of governmental and quasi-governmental schemes that blur the two. *See, e.g.*, *Withrow* v. *Larkin*, 421 U.S. 35, 49-55 (1975); *In re Murchison*, 349 U.S. 133, 137-38 (1955).

[8] *See* Case T-11/89, *Shell Int'l Chem. Co.* v. *Comm'n of the European Communities*, 1992 E.C.R. II-757, ¶¶ 39-40 (holding that "the fact that certain Commission officials acted in the administrative procedure both as investigators and rapporteurs" [prosecutors] does not violate target's rights of defense; Commission is not a tribunal and its conduct is governed by appropriate regulations).

10

## B.  A Narrow Interpretation Of "Tribunal" Is Appropriate In The Section 1782 Context.

The Commission believes that the preponderance of law enforcement functions in its competition law responsibilities makes clear that it is not a "tribunal" within the meaning of Section 1782 and that the federal courts lack power to order discovery in connection with the Commission's activities. Indeed, that is also the conclusion of the European Court of Justice.  See Case C-209/78, *Heintz van Landewyck SARL* v. *Comm'n of the European Communities*, 1980 E.C.R. 3125, ¶¶ 80-81 (holding that Commission in competition law investigation is not "tribunal" triggering rights for target under European Convention for the Protection of Human Rights).[9]  In any event, even if there were any question as to the (in)applicability of the term "tribunal" to the Commission, the Court should construe that term restrictively.

That rule of construction is eminently appropriate in light of the historical roots of Section 1782.  It is universally acknowledged that the intent of Section 1782 is to further international comity, and to inspire reciprocal assistance from foreign countries, by assisting foreign tribunals in developing the evidence needed to adjudicate disputes before them.  See, *e.g.*, Pet. App. 8a; *Malev Hungarian Airlines* v. *United Techs. Int'l Ins.*, 964 F.2d 97, 100 (2d Cir. 1992).  International law has long provided for the device of letters rogatory, or letters of request, from the courts of one country to the courts of another seeking their assistance in obtaining evidence for use in proceedings in the requesting courts.  This practice, which originally depended solely on each country's courts' attitude of comity toward the courts of the other, see Lucien R.

---

[9] Under that Convention, a hallmark of a "tribunal" is the separation of an adjudicative body from the executive. *See Heintz*, 1980 E.C.R. 3125, ¶ 80 (noting Commission argument that it cannot be a tribunal under Convention because Commission embodies, rather than being separate from, the Community's executive power).

11

LeLievre, *Address*, *in Letters Rogatory* 9, 10-11 (Bernard A. Grossman ed., 1956), has been codified in international agreements such as the Hague Convention on the Taking of Evidence Abroad,[10] and in domestic statutes like Section 1782. Section 1782 itself has been in existence in some form since 1855, see Act of March 2, 1855, § 2, ch. 140, 10 Stat. 630, 630.[11]

However, throughout this history—including in the liberalizing amendments that transformed Section 1782 into its current form—it has always been clear that the intent is to serve the interests of *adjudication*.[12]   While the statute's present use of "tribunal" encompasses a wider range of entities than courts alone, Section 1782's deep roots in court-to-court practice should not be disregarded.   Rather, the statute should be construed to be faithful to that purpose, by applying the term "tribunal" solely to adjudicative bodies and not to bodies, like the Commission, that are entrusted principally with investigative rather than adjudicative functions.

### C.  A  Broad  Interpretation  Of  "Tribunal"  Is Affirmatively  Harmful  To  The  Commission's Sovereign Interests.

The term "tribunal" in Section 1782 should be read narrowly for practical as well as for legal reasons.

At the threshold, it is worth noting that such a reading in no way impairs the Commission's ability to carry out its

---

[10] Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.

[11] *See also* Brian Eric Bomstein & Julie M. Levitt, *Much Ado About 1782*, 20 U. Miami Inter-Am. L. Rev. 429, 430-32 (1989) (recounting statutory evolution).

[12] *See* S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788.

12

investigative functions.    Other channels exist for the European Commission, as a governmental actor, to obtain information located in the United States if the Commission considers it necessary to do so. It is the Commission's clear preference, for example, to rely on the formal mechanisms that it has carefully negotiated with the United States specifically for the purpose of cooperation in competition law enforcement.  The Community entered into a cooperation agreement in 1995 with the United States Department of Justice and the United States Federal Trade Commission to share information, including information about current enforcement activities, and to conduct parallel investigations, as well as a subsequent 1998 agreement deepening that cooperative relationship.[13]    That cooperation is extremely effective in practice, as demonstrated, for example, by investigations coordinated among the Commission, the United States antitrust agencies, and even competition authorities in other countries.[14]  Similarly, while the European

---

[13] Agreement Between the Government of the United States of America and the Commission of the European Communities Regarding the Application of their Competition Laws, 1995 O.J. (L 95) 47, *as amended by* Exchange of Letters Dated 31 May 1995 and 31 July 1995, 1995 O.J. (L 132) 38; Agreement Between the Government of the United States of America and the European Communities on the Application of Positive Comity Principles in the Enforcement of Their Competition Laws, 1998 O.J. (L 173) 28.  Even the Commission's filing of this brief will be the subject of an informational exchange between the Commission and the United States, pursuant to Article II(5) of the 1995 Agreement, 1995 O.J. (L 95) at 48.

[14] *See, e.g.,* Press Release, European Comm'n, MEMO/03/107, Spokesperson's Statement on Dawn Raids in the Copper Concentrate Sector (May 14, 2003) (describing raids coordinated with United States Department of Justice and Canadian Competition Bureau), *available at* http://www.europa.eu.int/rapid/start/cgi/guesten.ksh; Press Release, European Comm'n, MEMO/03/33, Statement on Inspections at Producers of Heat Stabilisers as well as Impact Modifiers and Processing Aids— International Cooperation on Inspections (Feb. 14, 2003) (describing raids coordinated with United States Department of Justice, Canadian

13

Union itself does not have one in place, several Member States have entered into treaties with the United States providing for mutual legal assistance in criminal matters, should alleged anticompetitive conduct rise to that level.

Far more important, however, is the very real risk that unless its preferred, narrow reading of "tribunal" prevails, the Commission's competition law enforcement programs will be placed in jeopardy.

First, the Commission objects to the potential subversion of limits that the European Union has imposed, in the exercise of its sovereign regulatory powers, on access by an antitrust complainant to the information that the Commission gathers in its investigation, including confidential business information of the target company. As a general rule, the Commission is bound by an obligation of confidentiality, as a result of which there are many elements of the Commission's files (including commercial information and business secrets) to which the complainant is denied access.[15]  The Court of Justice has mandated in no uncertain terms that "a third party who has submitted a complaint may not in any circumstances be given access to documents containing business secrets."

---

Competition Bureau and Japan Fair Trade Commission), *available at* http://www.europa.eu.int/rapid/start/cgi/guesten.ksh.

[15] *See generally* Council Regulation 17/62, art. 20, 1959-1962 O.J. Spec. Ed. 87 (prohibiting disclosure). If the Commission dismisses a complaint, the complainant has access only to the non-confidential parts of the file on the basis of which the Commission rejects the complaint. If the Commission proceeds with a case, the complainant again has access only to a summary and non-confidential version of the statement of objections. *See also Heintz*, 1980 E.C.R. 3125, ¶ 46 (complainant's rights do not include right to receive confidential information); Case T-17/93, *Matra Hachette SA* v. *Comm'n of the European Communities*, 1994 E.C.R. II-595, ¶ 34 ("In particular, contrary to the applicant's contention, third parties cannot claim a right of access to the file compiled by the Commission on the same basis as the [companies] under investigation ....").

14

Case 53/85, *AKZO Chemie BV* v. *Comm'n of the European Communities*, 1986 E.C.R. 1965, ¶ 28.

As the Court of Justice explained, "[a]ny other solution would lead to the unacceptable consequence that [a competitor] might be inspired to lodge a complaint with the Commission solely in order to gain access to its competitors' business secrets." *Id.* Of course, a broad reading of "tribunal" in Section 1782 would directly undermine the Court of Justice's effort to protect the investigation process from abuse. Under the Ninth Circuit's decision, a complainant in Europe may use the Commission investigation that his complaint triggers to obtain access in the United States to confidential documents describing his competitor's business practices. This situation provides a powerful incentive to file pretextual complaints at the Commission, in order to be eligible to employ Section 1782—an incentive that is perhaps even more powerful than that feared by the Court of Justice in the European context, given the uniquely liberal discovery standards that govern in United States courts. Thus, deeming the Commission to be a "tribunal" for Section 1782 purposes not only facilitates circumvention of the European Union's considered policies on access to information, but also may cause a co-equal competition authority to waste precious time and resources on unfounded antitrust complaints. Indeed, those consequences are so grave that the Commission could be forced to rethink the very structure and future existence of the complaint procedure under European law. Comity is sorely lacking in such a scheme.

Second, the Commission is profoundly concerned that characterizing it as a "tribunal" within the meaning of Section 1782 will have adverse collateral consequences for its ability to protect its prosecutorial and law enforcement prerogatives in other proceedings. The European Commission has needed to invoke the law enforcement investigative privilege in civil actions in the United States to

15

protect from disclosure documents that it gathers in its antitrust law enforcement capacity.[16]    Of paramount importance are documents submitted to the Commission under its Leniency Program by cartel participants who confess their own wrongdoing.    If the Commission were deemed a "tribunal" in the competition context, it could find itself no longer able to guarantee the confidentiality of those Leniency Program confessions by, *inter alia*, resort to the law enforcement privilege wherever necessary.    Companies make delicate balancing judgments in deciding to come forward under the Leniency Program, and any enhanced risk of public disclosure of their confessions will deter their participation.    Section 1782 as read by the Ninth Circuit thereby threatens to undercut the effectiveness of the Commission's Leniency Program.

Third, there is no reason to believe that these adverse consequences of an overbroad interpretation of "tribunal" will be limited to the antitrust context. "Interested parties" who might benefit from fishing expeditions under United States discovery rules abound in Commission proceedings.    For example, private industry complaints can also trigger Commission investigations in the international trade arena, such as in anti-dumping and anti-subsidy enforcement.[17]

In sum, vital Commission interests—in the protection of confidential information, in the rational deployment of its

---

[16] *See, e.g., Amicus* Br. of the Comm'n of the European Communities at 7, *In re Vitamin Antitrust Litig.*, Misc. No. 99-197 (D.D.C. filed May 20, 2002); Letter from A. Tradacete, Director, DG Competition, European Comm'n to B. Amory, Counsel for Aventis (June 6, 2002), *filed in A.L. Gilbert* v. *Rhone-Poulenc S.A. (In re Methionine Litig.)*, No. 3:99cv3491, M:00-CV-1311 (N.D. Cal.).

[17] *See Twenty-First Annual Report from the Commission to the European Parliament on the Community's Anti-Dumping, Anti-Subsidy and Safeguard Activities*, COM (2003)481 final at 17-19 (outlining complaint and investigation procedures), *available at* http://trade-info.cec. eu.int/doclib/html/113638.htm.

16

competition enforcement resources, in the viability of its Leniency Program, and in the effective administration of other areas of Commission responsibility—are jeopardized by characterizing the Commission as a "tribunal" under Section 1782.

## II. THE COURT SHOULD STRICTLY CONSTRUE SECTION 1782 TO AVOID INAPPROPRIATELY BURDENING THE COMMISSION AND OTHER FOREIGN SOVEREIGNS.

In the European Commission's view, a construction of "tribunal" that excludes the Commission necessarily follows from the nature of the Commission's responsibilities; in the event of any doubt, the serious adverse policy consequences noted above should weigh strongly in favor of that construction. However, the Commission anticipates an argument that the statute should not be interpreted to establish clear limits, and that concerns such as those expressed by the Commission are appropriately left for district courts to take into account in exercising discretionary authority to rule on Section 1782 requests. That is, some may argue against any clear, limiting interpretations (such as a narrow construction of "tribunal") that restrict resort to Section 1782 from the outset, and instead favor case-by-case assessments of the propriety of each Section 1782 request.

The latter approach, however, offends principles of comity by placing heavy and inappropriate burdens on foreign countries and their agencies. Where a statute implicates sovereign interests and is intended to foster international cooperation, it should be construed to further, not frustrate, those interests. Indeed, in construing a statute in this sensitive inter-sovereign context, the federal courts should apply a strong presumption against any interpretation that undermines international comity. See *McCulloch* v. *Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 19-21 (1963) (favoring statutory construction that avoided disturbance in United States international relations and conflicts with

17

international and foreign law); cf. *Raygor* v. *Regents of the Univ. of Minn.*, 534 U.S. 533, 543-44 (2002) (requiring a clear statement to infer waiver of state sovereign immunity).

For two reasons, the case-by-case approach ill serves comity. First, a district court can only weigh fairly the complex interests of a foreign sovereign in aiding or blocking a Section 1782 discovery request if it is made aware of those interests. Private litigants cannot speak with authority to the policy interests of the European Commission. But so far as the Commission is aware, there is no system for providing it with notice of Section 1782 cases in which its interests are at stake, much less any regular procedure through which the Commission might appear and make those interests known. More important, even if it were feasible for the Commission to appear in every such proceeding, that very notion—that a sovereign government should be obliged to appear regularly in courts across the United States to explain itself and its objections to Section 1782 discovery—is contrary to principles of comity. And each adverse decision by an individual district court will be a potential irritant in relations between these important allies, and will risk interference with the normal conduct of international cooperation between the Commission and United States law enforcement authorities. Section 1782 applied in this fashion will promote international friction, not international comity.

Second, under the case-by-case approach, each of the scores of United States district courts will have discretion to conduct a balancing process to determine whether discovery is warranted in connection with a specific international proceeding. Each district court could develop its own approach, and each would be free to differ with other district courts with respect to both the appropriate balance in a given set of circumstances and the general rules to apply to the balancing process. The inevitable unpredictability and inconsistency simply exacerbate the problems already inherent in requiring a foreign sovereign to monitor United

18

States litigation to determine when it should appear and explain its interests in a United States tribunal. In this setting, clear rules are required.

Where two interpretations of a statute are available to it, the Court should favor the interpretation that does not offend the sovereign interests of the United States' foreign policy partners. Here, that interpretation—namely, that the European Commission in its antitrust capacity is not a "tribunal" on whose nominal behalf Section 1782 can be invoked—not only has clear factual and legal support, but also avoids a host of harms to the Commission and the competition law programs for which it is responsible.

## CONCLUSION

For the foregoing reasons, *amicus curiae* the European Commission respectfully suggests that the decision below should be reversed.

Respectfully submitted,

CARTER G. PHILLIPS*
VIRGINIA A. SEITZ
RICHARD WEINER
GENE C. SCHAERR
MARINN F. CARLSON
SIDLEY AUSTIN BROWN &
 WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Amicus Curiae*

December 23, 2003          * Counsel of Record

# EXHIBIT 11



EUROPA > Press Room > Press Releases                    Contact | Search on EUROPA

 RSS ▌Midday ▌Recent     |Select a topic                          ▼| Search
              Express ▌Press
                      Releases

* ↪ **Login**
* ↪ **Register**
* ↪ **Documentation**
* ↪ **What's New**
* ↪ **Poll**
* ↪ **About**

## Competition: Commission confirms sending of Statement of Objections to Intel

Reference: MEMO/07/314   Date: 27/07/2007

HTML: EN
PDF:  EN
DOC:  EN

**MEMO/07/314**

Brussels, 27 July 2007

**Competition: Commission confirms sending of Statement of Objections to Intel**

*The European Commission can confirm that it has sent a Statement of Objections (SO) to Intel on 26th July 2007. The SO outlines the Commission's preliminary view that Intel has infringed the EC Treaty rules on abuse of a dominant position (Article 82) with the aim of excluding its main rival, AMD, from the x86 Computer Processing Units (CPU) market.*

In the SO, the Commission outlines its preliminary conclusion that Intel has engaged in three types of abuse of a dominant market position. First, Intel has provided substantial rebates to various Original Equipment Manufacturers (OEMs) conditional on them obtaining all or the great majority of their CPU requirements from Intel. Secondly, in a number of instances, Intel made payments in order to induce an OEM to either delay or cancel the launch of a product line incorporating an AMD-based CPU. Thirdly, in the context of bids against AMD-based products for strategic customers in the server segment of the market, Intel has offered CPUs on average below cost.

These three types of conduct are aimed at excluding AMD, Intel's main rival, from the market. Each of them is provisionally considered to constitute an abuse of a dominant position in its own right. However, the Commission also considers at this stage of its analysis that the three types of conduct reinforce each other and are part of a single overall anti-competitive strategy.

Intel has 10 weeks to reply to the SO, and will then have the right to be heard in an Oral Hearing. If the preliminary views expressed in the SO are confirmed, the Commission may require Intel to cease the abuse and may impose a fine.

**Background**

A Statement of Objections is a formal step in Commission antitrust investigations in which the Commission informs the parties concerned in writing of the objections raised against them. The addressee of a Statement of Objections can reply in writing to the Statement of Objections, setting out all facts known to it which are relevant to its defence against the objections raised by the Commission. The party may also request an oral hearing to present its comments on the case.

The Commission may then take a decision on whether conduct addressed in the Statement of Objections is compatible or not with the EC Treaty's antitrust rules. Sending a Statement of Objections does not prejudge the final outcome of the procedure.

# EXHIBIT 12



## EU antitrust officials raid Intel

By Dawn Kamamoto
http://www.news.com/EU-antitrust-officials-raid-Intel/2100-1014_3-5784428.html

Story last modified Tue Jul 12 15:08:52 PDT 2005

**update European regulators raided the offices of Intel and a number of PC-related companies early Tuesday as part of an antitrust investigation into the chip giant.**

As part of the dawn raid, European Commission officials and national competition authorities in Milan, Italy; Munich, Germany; Madrid, Spain; and Swindon, England, descended on several Intel offices, a Commission representative said and an Intel representative confirmed. The officials also visited a number of companies that manufacture or sell computers.

"These inspections are being carried out within the framework of an ongoing investigation," a Commission representative said.

**Related story**
**Intel chief fires back at AMD suit** ▶
Intel's Paul Otellini says his company competes aggressively and fairly.

Intel said it is cooperating fully with investigators.

"Our normal business practice is to cooperate, and we are doing (that) so far in this case," Intel representative Chuck Mulloy told CNET News.com. "We firmly believe that our business practices are fair and lawful."

The United Kingdom's Office of Fair Trading, or OFT, said that it had assisted the European competition authorities in an "on-site inspection" of Intel's Swindon offices.

"It is really a European Commission matter," said an OFT spokeswoman. She said the inspection was likely to have been carried out under article 81 of the EC Treaty, which prohibits price fixing and other distortions of competition within the European Union. The spokeswoman could not say whether anything was removed from Intel's offices.

The investigation comes just weeks after rival Advanced Micro Devices filed suit against Intel, alleging the chip giant has used scare tactics and coercion to prompt computer makers and other companies to use Intel's chips instead of rivals'. Intel's chief executive, Paul Otellini, has said that he expects his company to come out on top in the dispute.

In the European inquiry, other PC makers and retailers were reportedly questioned.

Dell, which exclusively sells products based on Intel chips, said the company's headquarters in Bracknell, England, were visited Tuesday by officials from the Commission's competition division. But the company declined to give details of what the officials were doing or the nature of the visit.

As of 5:30 p.m. local time, Commission investigators were still on the premises and Dell was cooperating fully, said Claire Ramage, a Dell representative in Europe.

European representatives of Hewlett-Packard said that the company's offices were not visited by Commission officials on Tuesday. IBM representatives were not immediately available to comment.

Other PC makers had little to say. German electronics retailer MediaMarkt declined to state its relationship with either Intel or AMD. And DSR Retail, the parent company for U.K.-based online retailer Dixons, declined to say whether it was visited as part of the probe, but reiterated its earlier stance that a reference to Dixons in AMD's complaint against Intel is factually incorrect.

A source familiar with antitrust issues predicted that Intel will not have much to say about the probe right away.

"Normally, these companies are pissed when their offices are raided, but there is nothing they can do about it," the source said. "They see what investigators have come up with and what is being accused...before they contact" authorities with an explanation.

In most cases, investigators search through hard-copy documents and computer files, the source noted.

An AMD spokesman praised the Commission's raid.

"The strong steps taken by the European Commission today shows Intel cannot escape the scrutiny of antitrust officials around the world, nor the consequences of anticompetitive actions," said Mike Simonoff, an AMD spokesman.

**A history of disputes**
AMD filed its suit against Intel on June 24. A few days later, AMD Japan filed suit against Intel K.K., the chip giant's Japanese unit.

But AMD's recent lawsuits are only the latest battle the company has waged with Intel, and the smaller chipmaker in fact urged the European Commission to look at its rival. AMD complained to European antitrust regulators five years ago, alleging that Intel was engaging in "abusive" marketing programs. But the investigation remained relatively quiet for a couple of years.

AMD filed a new complaint with the Commission last year, and after a raid of Intel's offices by Japanese officials as part of a separate inquiry, European antitrust regulators said they were taking a close look at Intel and sent out 64 letters of inquiry to computer makers and retailers.

Japanese officials had made the findings of their raid available to antitrust agencies in other countries.

Intel reached an agreement a few months ago with Japan's Fair Trade Commission, which called on the chip giant to stop requiring PC makers to limit the use of competitors' chips in exchange for discounts. Intel agreed to abide by the recommendations, though the company said it disagreed with the agency's findings and conclusions.

Also last year, European officials said they would investigate the practice of some member states' procurement policies, which restricted computer purchases to only those that used Intel chips.

*Graeme Wearden and Matt Loney of ZDNet UK contributed to this report.*

Copyright ©1995-2008 CNET Networks, Inc. All rights reserved.



**Biting the hand that feeds IT**



FASTEST

The Register » Personal » PCs »

Original URL: http://www.theregister.co.uk/2005/07/12/ec_raids_intel/

## EC officials raid Intel offices

By Tony Smith
Published Tuesday 12th July 2005 14:44 GMT

European Commission investigators today raided Intel EMEA offices in a bid to find evidence that the chip giant violated the Union's antitrust laws.

The raids, which extended to Intel's distribution partners and PC maker customers, and are part of an ongoing investigation into Intel's behaviour, were confirmed by the company this afternoon.



Two premises were targeted, in Munich and Swindon.

"DG Competition officials, accompanied by officials from national competition authorities are conducting inspections of several premises of Intel in Europe as well as a number of IT firms manufacturing or selling computers," the spokesman said, according to a Reuters report (http://today.reuters.com/news/newsArticle.aspx? type=technologyNews&storyID=2005-07-12T131209Z_01_L12353461_RTRIDST_0_TECH-EU-INTEL-PROBE-DC.XML).

An Intel spokesman told *The Register* the chip maker's "normal practice is to attempt to co-operate with authorities from regulatory agencies and we are doing so in this case.

"Intel believes its business practices are both fair and lawful," he added.

The EC investigation was launched (http://www.theregister.co.uk/2001/04/06/europe_commences_intel_investigation/) in 2001. AMD submittted further evidence in 2003 which ultimately prompted investigators to conntact PC OEMs and distributors in the summer of 2004 to seek formal statements on the matter.

In March, Japanese antitrust investigators found Intel guilty of anticompetitive actions - again following complaints from AMD. They said Intel offered price-rebates to five PC makers, including Sony, NEC, Hitachi, Fujitsu and Toshiba, in return for their agreement not to source processors from AMD. Intel denies that its actions constitute an infringement of "internationally accepted" antitrust principles.

Soon afterward, AMD initiated legal proceedings against the chip giant in the US and Japan. ®

### Related stories

Dixons disses AMD claims (http://www.channelregister.co.uk/2005/07/11/dixons_amd_intel/)
AMD wants Intel evidence from 30 firms
(http://www.channelregister.co.uk/2005/07/04/amd_wins_intel_info/)
AMD Japan sues Intel for $50m damages - and then some
(http://www.channelregister.co.uk/2005/06/30/amd_japan_sues_intel/)
AMD files anti-trust suit against Intel
(http://www.channelregister.co.uk/2005/06/28/amd_files_antitrust/)
Japan.gov bans Intel for two months
(http://www.channelregister.co.uk/2005/05/09/intel_japan_ban/)
EC relaunches Intel antitrust probe (http://www.theregister.co.uk/2004/06/09/intel_ec_probe/)
Europe commences Intel investigation
(http://www.theregister.co.uk/2001/04/06/europe_commences_intel_investigation/)
Intel heeds Japanese antitrust probe warning
(http://www.channelregister.co.uk/2005/04/01/intel_responds_japan_antitrust_probe/)
© Copyright 2008

# EXHIBIT 13

European Commission
The Director-General

Brussels,
COMP/C-3/TK/hcD(2006)*D190

Cleary Gottlieb Steen & Hamilton
Att. Mr. Maurits Dolamans
Rue de la Lei 57
1040 Bruxelles

Subject:    Case COMP/C-3/37.792    Microsoft; Microsoft's discovery requests
with US courts

Dear Mr. Dolmans:

By letter of 6 March 2006 you informed us of discovery requests filed with the U.S.
District Court for the Southern District of New York by Microsoft Corporation addressed to your
client IBM and Cleary Gottlieb Steen & Hamilton. You also informed us of an *ex parte* order
issued by the said court on 3 March 2006 and the related subpoenas served on IBM and Cleary
Gottlieb Steen & Hamilton by Microsoft.

Following your request and in view of the fact that DG Competition considers that the
discovery requests in this case raise issues of considerable importance in relation to the
Commission's rules on access to file, I am sending you herewith observations (in annex) that
have been prepared by DG Competition with regard to these requests.

I should like to point out that the annexed document reflects the views of DG
Competition, which is a service of the European Commission. Should this be deemed necessary
and appropriate, the European Commission would like to be able to seek leave to intervene as
*amicus curiae*. I should be grateful therefore if you would keep us informed in a timely way of
developments in this proceeding.

As specified in the attached statement, the present observations do not seek to support,
intervene in favour of or otherwise assist any of the parties involved in the proceeding.

Yours sincerely,

Philip Lowe

EUROPEAN COMMISSION
DG Composition

**Annex to the letter of 9 March 2006**
**addressed to Cleary Gottlieb Steen & Hamilton**

**Subject:**    **Discovery requests *in re* Microsoft Corporation before the United States**
**District Court for the Southern District of New York**

# I.    INTRODUCTION

### 1.1    The pending litigation before the US District Court for the Southern District of New York

1.    The Directorate-General for Competition ("DG COMP") of the European Commission ("Commission") has been informed that Microsoft Corporation on 3 March 2006 has made an application for discovery pursuant to 28 U.S.C. § 1782 with the US District Court for the Southern District of New Yolk and asked for the authorisation to serve subpoenas on international Business Machines Corporation ("IBM") and Cleary Gottlieb Steen & Hamilton LLP ("Cleary"). The Commission has also been informed that an *ex parte* order has been issued on 3 March 2006 by the said court ordering IBM and Cleary to essentially produce:

a.    *All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between IBM or Cleary and the Commission, the Monitoring Trustee or OTR relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.*[1]

b.    *All documents that contain, constitute, reflect, evidence, or refer to any communication or correspondence between IBM or Cleary and any other third party, relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information" as used in the 2004 Decision.*[2]

c.    *All documents that contain, constitute, reflect, evidence, or refer to any communication between IBM or Cleary and the Commission, the Monitoring Trustee or OTR about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(a)(1) Decision, or the SO.*[3]

---

[1]  Points 1, 2 and 3 of Microsoft's request.

[2]  Point 4 of Microsoft's request.

[3]  Points 5, 6, 7 of Microsoft's request.

d.      *All documents that contain, constitute, reflect, evidence, or refer to any communication between IBM or Cleary and any other third party about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(a)(1) Decision, or the SO.*[4]

2.      Given the importance of the policy issues that this matter raises, the Directorate-General for Competition of the European Commission wishes to state its position on these issues. The Commission may seek leave from the Court to intervene at a later date by filing an *amicus curiae* brief, should this be deemed necessary and appropriate, after following its decision making procedures.

3.      DG COMP wishes to underline that it does not intend to support or otherwise assist any of the parties to the pending litigation.

### 1.2.    The framework within which the Commission carries out its antitrust investigations

4.      The Commission is the institution entrusted within the European Union with the enforcement of the competition provisions of the Treaty establishing the European Community ("the EC Treaty"), notably Articles 81 ("agreements in restraint of trade") and 82 ("abuse of dominance").[5]  The Commission's powers of competition enforcement are stated in Council Regulation 1/2003 (previously in Council Regulation No. 17/62) which provides for specific means for investigating infringements of European antitrust rules, notably issuing formal requests for information, taking oral statements and conducting on-site inspections.  Commission Regulation No. 773/2004 provides for more precise rules governing Commission procedures.

5.      As the European Court of Justice points out in its Hoffman-La Roche judgment the "*observance of the right to be heard is in all proceedings in which sanctions, in particular fines or penalty payments, may be imposed a fundamental principle of Community Law which must be respected* [....]."[6]

6.      In line with this judgment the Commission has established a number of procedural rules which are intended to guarantee the application of the principle of equality of arms and the protection of the rights of defence in proceedings before the Commission.  In particular, the rules on access to file are intended to enable the effective exercise of the rights of defence by defendants in a Commission proceeding.

---

[4]  Point 8 of Microsoft's request.

[5]  Articles 81 and 82 provide for provisions comparable to those of Sections (1) and (2) of the Sherman Act.

[6]  Judgment of the Court of 13 February 1979 in Case 85/76 Hoffman-La Roche & Co. AG v. Commission [1979] [ECR-461.

7.    The "Commission file" in a competition investigation (hereinafter also referred to as "the file") consists of all documents, which have been obtained, produced and/or assembled by DG COMP, during the investigation.[7]  Access to file is granted to defendants in proceedings before the Commission to all documents making up the Commission file with the exception of internal documents, business secrets of other undertakings, or other confidential information after a Statement of Objections has been addressed to them.[8]

8.    Access is obviously only granted to those documents of the administrative procedure which relate to the objections raised by the Commission.  The European Court of Justice confirmed that "*the Commission is allowed to preclude from the administrative procedure evidence which has no relation to the allegations of fact and of law in the Statement of Objections and which therefore has no relevance to the investigation*".[9]

9.    In case a defendant believes that the Commission services have erroneously withheld documents which are necessary for its defence it can make a request for a decision of the Hearing Officer, who is responsible for safeguarding the rights of defence in Commission proceedings."[10]

10.    A decision by the Hearing Officer not to disclose certain documents to a defendant can be reviewed by the European Court of First Instance ("CFI").  Similarly, an undertaking which deems that certain of its business secrets on the Commission file should not be disclosed to the defendant pursuant to a decision by the Hearing Officer can appeal to the CFI."[11]

11.    Documents obtained through access to file may only be used for the purpose of the Commission's proceedings.  This is underlined in Article 15 of Regulation 773/2004, which stipulates that documents obtained through access to file may only be used "[...] *for the purposes*

---

[7]  See Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EPA Agreement and Council Regulation (EC) No. 139/2004, OJ 2005/C 325/07 of 22/12/2005 ("Notice on access to file"), at paragraph 7.  This notice replaces an earlier but similar Commission Notice of 1997 on access to file, OJC 23 of 23.01.1997.

[8]  Notice on access to file, at paragraph 10.

[9]  Judgment of the Court of 7 January 2004 in Joined Cases C-204/00 P, C-205/00 P, C-213/00 P, C-217/00 P and C-219/00 P, Aulborg Portland, not yet reported, at paragraph 126.

[10]  See Articles 1 and 8 of the Commission Decision of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings, OJ 200[ ] 62/21 of 19.6.2001.

[11]  See Article 9 of the Commission Decision of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings.

4

*of judicial and administrative procedures for the application of Articles 81 and 82 of the Treaty"*. Furthermore, the Notice on access to file states "*Should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action.*"[12] Lastly, the Commission makes that obligation clear in a standard letter to the parties when addressing to them a Statement of Objections and providing access to file.

### 1.3. The proceedings against Microsoft pursuant to Article 24 of Regulation 1/2003

12.     On 24 March 2004, the Commission adopted a decision in Case COMP/C-3/37.792 Microsoft ("the Decision") in which it concluded that Microsoft had abused its dominant position in PC operating systems by (i) refusing to provide interoperability information necessary for competitors to be able to effectively compete in the work group server operating system market and (ii) tying its Windows Media Player with the Windows PC operating system. The Commission imposed a €497,196,304 fine on Microsoft and ordered it to bring the above-mentioned infringements of Article 82 EC to an end (Article 4 of the Decision).

13.     In particular, the Commission ordered Microsoft to supply interoperability information to interested undertakings on reasonable and non-discriminatory terms ("the interoperability remedy", Article 5 of the Decision) and to offer a full-functioning version of its Windows PC operating system which does not incorporate Windows Media Player ("the tying remedy", Article 6 of the Decision). The Decision also provided for the establishment of a monitoring mechanism, including a Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision. Microsoft was granted a deadline of 120 days to implement the interoperability remedy and a deadline of 90 days to implement the tying remedy. The obligations imposed by the Decision were suspended pending the Court of First Instance's consideration of Microsoft's request for interim measures. This application for interim measures was dismissed by the President of the Court of First Instance on 22 December 2004.[13]

14.     On 28 July 2005, the Commission adopted a decision on the monitoring mechanism foreseen in Article 7 of the Decision.[14] This decision sets out *inter alia* the framework under which the Monitoring Trustee, whose role is to provide expert advice to the Commission on Microsoft's compliance with the Decision, will work. Subsequently, the

---

[12] Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No. 139/2004, in OJ 2005/C 325/07 cf 22/12/2005.

[13] Order of the President of the Court of First Instance of 22 December 2004 in Case T-201/04 R, Microsoft, not yet reported.

[14] C(2005) 2988 final.

Commission invited Microsoft to put forward candidates for the position of Monitoring Trustee. After a selection procedure, on 4 October 2005, on the basis of a shortlist of candidates submitted by Microsoft, the Commission appointed as Monitoring Trustee Professor Neil Barrett, a British computer science expert.

15.    Article 24 of Regulation 1/2003 grants the Commission the power to impose on undertakings daily penalty payments not exceeding 5% of the average daily turnover in the preceding business year in order to compel them to put an end to an infringement of Article 81 or 82 EC, in accordance with a prohibition decision taken pursuant to Article 7 of Regulation 1/2003 (Article 24(i)(a)).

16.    On the basis of an opinion from its outside technical experts OTR on the Technical Documentation, the Commission decided to open proceedings against Microsoft in order to compel it to comply with its obligations stemming from the Decision.  Consequently, on 10 November 2005, the Commission adopted a decision pursuant to Article 24(1) of Regulation 1/2003 ("the Art 24(1) Decision").  This decision is the first step in a procedure pursuant to Article 24 of Regulation 1/2003.  By means of this decision, a periodic penalty payment of €2 million per day was imposed on Microsoft as from 15 December 2005 in the event that it were not to comply with Article 5(a) and (c) of the Decision, i.e. its obligations to (i) supply complete and accurate Interoperability information; and (ii) to make that information available on reasonable terms.

17.    In the light of the Monitoring Trustee's reports on the state of the Technical Documentation provided to the Commission by Microsoft in response to the Art 24(1) Decision, the Commission, on 21 December 2005, adopted a Statement of Objections in which it took the preliminary view that Microsoft had not yet complied with its obligation to supply complete and accurate interoperability information.  A hearing on the objections raised by the Commission is scheduled for 30-31 March 2006.

**2.    DG COMP'S POSITION WITH REGARD TO MICROSOFT'S REQUEST FOR DISCOVERY**

**2.1.    Microsoft's request to obtain all documents exchanged between the Commission, the Monitoring Trustee, OTR and third parties relating to the Interoperability Information or to the proper interpretation of the terms "Interoperability" or "Interoperability Information"**

18.    After the issuance of the Statement of Objections Microsoft has requested access to the documents identified in the annex to the Statement of Objections, including to all documents exchanged between the Commission services and the Trustee and all documents exchanged between the Commission services and OTR in relation to all matters covered by the

Statement of Objections.[15]  By letter of 30 January 2006 Microsoft requested access to documents on the Commission's file pertaining to the correspondence between the Commission on the one hand and third parties such as Sun, Oracle, IBM and Novell on the other as well as access to documents reflecting discussions that have taken place between third parties, in particularly Sun, IBM and OTR and the Trustee.[16]

19.    Following Microsoft's request the hearing Officer took the position that the correspondence between the Commission services and the Trustee constitutes internal documents which are inaccessible to Microsoft whilst, after confidentiality waivers had been provided by third parties; Microsoft was given access to the communication between the Commission and third parties that relates to the issues raised in the Statement of Objections of 21 December 2005.[17]

20.    The Commission has therefore given Microsoft access to all third party documents in its possession.  However, by letter of 2 March 2006 Microsoft specifically requested to have access to "*any material submitted by its adversaries to the Trustee and OTR.*"[18]

21.    This request is currently under scrutiny by the Hearing Officer.  In order to verify whether Microsoft's request is well founded the Commission has asked OTR and the trustee to disclose and transmit to the Commission any documents they have directly, without the Commission's knowledge, received from third parties or Microsoft in carrying out their duties as well as any minutes they have taken as regards communications with third parties or Microsoft.

22.    It came as a surprise to DG COMP that Microsoft decided to turn to a US court for assistance under 28 U.S.C. §1782 in order to gain access to documents which it had one day before sought to obtain from the Commission and on the disclosure of which a proceeding is currently pending before the Commission's Hearing Officer.

23.    DG COMP takes the position the Microsoft's rights of defence in relation to the objections raised in the Statement of Objections of 21 December 2005 are adequately protected by the European rules on access to file.  Therefore an application by Microsoft on the basis 28 U.S.C. § 1782 is not objectively necessary but rather an attempt to circumvent the established rules on access to file in proceedings before the Commission.

---

[15]  E-mail from Jean-Yves Art, Microsoft's Director of Competition EMEA, of 23 December 2005.

[16]  Letter from Microsoft's counsel Ian Forrester to the Hearing Officer of 30 January 2005.

[17]  Letter from the Hearing Officer to Ian Forrester of 8 February 2006.

[18]  Letter from Georg Berrisch, Microsoft's counsel, of 2 March 2006.

**2.2.    Microsoft's request to obtain all documents exchanged between the Commission, the Monitoring Trustee or OTR and third parties about Microsoft's compliance or alleged failure to comply with European Community competition laws, including without limitation the 2004 Decision, the Article 24(1)(a) Decision**

24.    With regard to Microsoft's request to get access to documents which are not related to the Statement of Objections of 21 December 2005 the Commission would like to stress that such documents are not necessary for Microsoft to defend itself as the Commission has not a this stage raised any objections vis-a-vis Microsoft on these other issues. Microsoft will be given proper access to file once and if the Commission issues a Statement of Objections related to these matters.

25.    Microsoft's request to get access to such documents before a Statement of Objections has been issued is therefore unduly intrusive and totally at odds with the European rules on access to file which such a request would circumvent and undermine.

26.    The European Court of First Instance has indeed recognised that "*there is no right under Community law to be informed of the state of the administrative procedure before the statement of objections is formally issued*" and that, if I there were "*a right to be informed of an investigation in circumstances where suspicions exist in respect of an undertaking,*" this would "*seriously hamper the work of the Commission.*"[19]

27.    Therefore a premature request by Microsoft for disclosure under 28 U.S.C. § 1782 in order to find out if a company has filed a document pertaining to Microsoft's compliance or alleged failure to comply with European Community competition laws, or more specifically on an issue where a Statement of Objections has not yet been adopted is apt to seriously harm the Commission's investigation process and circumvent the European rules on access to file.

## 3.    CONCLUSION

28.    In sum, DG COMP is of the opinion that the described European access to file rules properly protect Microsoft's rights of defence and that the discovery requests presented by Microsoft are an attempt to circumvent these well established rules. DG COMP therefore sees no necessity for Microsoft to avail itself of the assistance of US courts pursuant to 28 U.S.C. § 1782.

*Brussels, 8 March 2006*

100429913_1 (2).DOC

---

[19]  Judgment of the Court of First Instance of 8 July 2004 in Case T-50/00 Dalmine v. Commission, not yet reported, paragraphs 83 and 110.