FREDERICK L. COTTRELL, III
DIRECTOR

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

Direct Dial
(302) 651-7509
COTTRELL@RLF.COM

June 11, 2008

**BY ELECTRONIC MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226

      Re:    *Advanced Micro Devices, Inc. et al. v. Intel Corporation, et al., C.A. No. 05-441-JJF; In re Intel Corporation, C.A. No. 05-MD-1717-JJF; DM 15*

Dear Judge Poppiti:

      Intel ascribes to the school that the best defense is a scorched-earth offense.

      On May 30, 2008 -- the *very day* that Intel revealed .pst folders for over 160 Intel custodians that it had failed to produce and began a "remediation of its remediation" -- Intel served Rule 30(b)(6) discovery focused on AMD preservation efforts. This turnabout was not prompted by any lapse on AMD's part. As AMD has continually assured Intel, AMD executed an exemplary preservation program, and it suffered none of the systematic breakdowns plaguing Intel. Indeed, we have advised Intel of the very few innocent and innocuous AMD custodian errors in preservation, and their data losses, if any, are inconsequential.

      Intel has ratcheted up its efforts to find some flaw in AMD's preservation only as the integrity of its own system has disintegrated under Court-ordered probes by AMD and the Special Master's expert. Intel did not initiate any discovery of AMD until after it disclosed its own evidence destruction problems. Even then, the parties reached agreement as to what AMD disclosures would satisfy Intel's Rule 30(b)(6) catalog of questions. Consistent with that agreement, AMD detailed its preservation program, the efforts it undertook to execute it, and the cause and extent of the few designated custodian data losses of which it became aware. Intel has not legitimately complained that AMD failed to deliver all the information it promised.

      Ignoring the parties' agreement over the scope of proper Rule 30(b)(6) preservation inquiries of a party that has faithfully fulfilled its preservation obligations, and AMD's performance under that agreement, Intel wants to start over but with a vastly expanded set of questions. Even ignoring the parties' prior understanding, the current request is manifestly improper. As outlined below, the benefit of Intel's proposed discovery is vastly outweighed by

Page 2

the enormous burden and expense Intel seeks to impose.  Pursuant to Fed. R. Civ. P. 26(b)(2)(C), AMD therefore moves to quash Intel's Rule 30(b)(6) deposition notice and document request, and for a protective order limiting discovery to that which AMD already has produced.

**Intel Is Waging An Illicit Discovery War**:  AMD has provided information about its preservation efforts since the start of this case.  Indeed, it was AMD that first proposed and secured Intel's agreement for the parties to exchange their evidence preservation protocols.  (*See* Declaration of David L. Herron ("Herron Decl.") ¶ 2, attached hereto.)  Those disclosures and AMD's discovery into Intel's evidence destruction demonstrate that AMD undertook a dramatically different approach to document preservation than Intel.

For instance, Intel never disabled its aggressive, system-wide email "auto-delete" until it was forced to, whereas AMD never instituted such an auto-delete function.  AMD's litigation hold notices broadly require retention of all relevant material, while Intel's notices -- which Intel never provided to over 300 custodians until February 2007 -- neither instructed custodians to save "sent" emails nor how to avoid the relentless destruction of Intel's auto-delete.  In November 2005, Intel migrated some custodian email accounts to dedicated servers but, despite its representations to the contrary, failed to migrate hundreds of others.  In contrast, in November 2005, AMD instituted and began migrating custodian email accounts to two email archiving systems:  A vault that backs-up custodians' email on a 30-day cycle; and a journal that captures all sent and received email.  Intel did not institute any email archiving system until over sixteen months later in March 2007, far too late to avoid or cure prior evidence destruction.  (*Id*. ¶ 3.)

This case thus involves two materially different document retention systems:  AMD's, which has proven effective; and Intel's, which failed catastrophically.  Those material differences matter because they -- as well as evidence of loss or systemic failure, or the *absence* of such evidence -- dictate and define the proper scope of preservation discovery.  Without factual or legal support, however, Intel now contends that "AMD and Intel should be on equal footing" (*id*. ¶ 18, Exh. P), and that AMD must submit to discovery "similar or identical" to the Court-ordered discovery into Intel's evidence spoliation.  (*Id*. at p. 2.)  Intel is thus trying without justification to inflict on AMD the same scope of discovery that Intel inflicted on itself as a consequence of its confessed preservation failures.

**AMD Has Produced All Agreed Preservation Data**:  Intel's discovery escapade has proved a long march that AMD tolerated until now.  It began on April 11, 2007 -- two weeks *before* Intel submitted a remediation plan -- when Intel's lead trial counsel delivered a six-page, single-spaced letter filled with scores of intrusive, burdensome inquiries that Intel itself has never answered.  (*Id*. ¶ 4, Exh. A.)  Intel acknowledged then that it had no basis "to suggest that AMD has not undertaken its preservation obligations," and sought information only in "the spirit" of the Federal Rules of Civil Procedure -- but not under any Rule or other authority.  (*Id*. at p. 1.)

AMD nonetheless conducted a review of its preservation program.  (*Id*. ¶ 5, Exh. B.)  As to the 108 AMD party-designated custodians then "in play," AMD reported that its "preservation program appears to be working as designed and intended; no lapses in the program have been identified."  (*Id*. ¶ 6, Exh. C.)  With AMD poised to commence Court-ordered discovery into Intel's evidence spoliation, however, Intel took to the offensive again.  On August 22, 2007, Intel

served a Rule 30(b)(6) deposition notice containing 12 overbroad deposition topics and 9 onerous document requests, much of which seeks plainly privileged information. (*Id.* ¶ 7, Exh. D.) AMD responded by objecting, but also by promising to produce the information Intel truly needed to assess AMD's document retention program and efforts. (*Id.* ¶ 9, Exh. G; *see also* ¶ 8, Exhs. E and F.)

Exchanges followed. (*See id.* ¶¶ 10-12, Exhs. H and I.) After months of negotiations, the parties managed to narrow Intel's discovery, and reached agreement about AMD's production of information that would satisfy it. Specifically, AMD first produced an IT Manager for an "informal technical interview" about AMD's email archiving systems. (*Id.* ¶ 11.) Intel then made a written proposal to "narrow, or even eliminate, the issues that might be open for discovery." (*Id.* ¶ 13, Exh. J.) Intel's proposal identified specific Deposition Topics and Document Requests to "outline the areas that we propose to now pursue," represented that Intel had "greatly reduced the original requests," "reduced considerably the number of topics for which we are requesting information," and that, as narrowed, these requests would "result in what we view, as an appropriate exchange of information." (*Id.*) AMD then delineated the disclosures it agreed to make. (*Id.* ¶ 14, Exh. K.) Intel confirmed virtually every aspect of this agreement, mimicking precisely the language that AMD had used to accept it. (*Id.* ¶ 15, Exh. L.)

Consistent with this agreement, AMD has produced documents, charts, summaries, lists and a witness to detail the structure, components and operation of its document retention system:

- An interview with an AMD IT manager about AMD's email archive systems;
- A summary of "AMD's Backup Tape Retention Protocols" (*id.* ¶ 16, Exh. M);
- A list of dates on which AMD's journaling email archive was activated for all AMD custodians (*id.*);
- A "Summary of AMD's Document Collection Protocols" (*id.*, Exh. N);
- Lists of dates on which AMD collected all of its designated custodians' electronic data and documents (*id.* ¶¶ 16, 21, Exh. S);
- All litigation hold notices delivered to AMD's designated custodians (*id.*), and a hold notice delivered to AMD's IT personnel (*id.* ¶ 16, Exh. V); and
- A chart identifying the dates litigation hold notices were delivered to every designated AMD custodian, and the version of the hold notice delivered. (*Id.*)

Unlike Intel, AMD has not experienced any systemic preservation failure and so advised Intel. AMD also informed Intel about all of the data losses AMD is aware of with respect to its designated custodians, and has repeatedly acknowledged its ongoing duty to apprise Intel of such losses. (*See id.* ¶¶ 17, 24, Exhs. B, C, E, K, O and S.) Specifically, AMD has informed Intel about corrupted .pst folders; late delivery of written hold notices to four custodians; a stolen laptop and a failed hard drive image for one custodian who was on email archiving; use of a self-initiated auto-delete rule on sent email by one custodian (who saved relevant sent items); and a single, Japan-based custodian who accidentally lost email while trying to save it for this case, a loss (if it is one) that AMD has already remediated. (*Id.* ¶ 24, Exhs. C, O and S.)

**Intel's New Discovery Is A Tactical Ruse**: Nothing new has happened since the parties agreed to narrow Intel's preservation discovery and AMD responded to it. Undeterred, Intel

Page 4

pounced on the AMD Japanese custodian's botched backup, and used it as a pretext to renege on the parties' agreement and launch its current Rule 30(b)(6) missile. (*Id.* ¶ 18, Exh. P.) That the Japanese miscue is a ruse is perfectly demonstrated by Intel's repeated rejection of AMD's offer to fly the Japanese custodian to the U.S. for deposition. (*Id.* ¶¶ 19-23, Exhs. Q, R, S and T.)

Moreover, despite AMD's repeated requests, Intel has never identified any authority or any AMD data loss or preservation issue that could begin to justify the electronic colonoscopy it now wants to conduct. Instead, Intel mistakenly equates its preservation disaster with AMD's few, minor data losses to insist on a "level playing field," that AMD and Intel must stand on "equal footing," and that AMD be subjected to "identical" discovery obligations simply because Intel destroyed evidence and has to answer for it. (*Id.*, Exhs. P, R and T.) No fact or law justifies this.

Intel's motive is transparent. Intel timed service of its new and expanded Rule 30(b)(6) deposition notice to coincide exactly with its disclosure about its failure to produce remedial .pst files. (*Id.* ¶¶ 22-23, Exh. T.) This discovery's overbreadth and redundancy to information AMD already produced is obvious. (*Id.*, Exh. U.) AMD, for instance, now faces Intel's demand to produce a witness to testify to such things as Deposition Topic 9, that specifies 8 separate sub-topics for *each* of the 470 "individual AMD Custodian[s]" -- taken as drafted, the equivalent of over 3,200 separate questions -- about harvesting dates, journaling, vaulting, hard drives, servers, lost laptops or data corruption, and back-up tapes. (*Id.*) This is well beyond the pale.

**The Special Master Should Quash Intel's Discovery**: Rule 26 grants this Court broad authority to limit or preclude discovery when it is unreasonably cumulative or duplicative, can be obtained by alternate, less burdensome and expensive means, or if the party seeking discovery already had ample opportunity to obtain it. Fed. R. Civ. P. 26(b)(C)(i) - (iii). Discovery also is precluded when its burden or expense outweighs its likely benefit, considering case needs, the amount in controversy, the party's resources and importance of the discovery. *Id.*

Research reveals no case permitting the type of onerous and expensive preservation discovery Intel proposes as a matter of course, or based on a party's vague and unsubstantiated suspicions of data loss or preservation irregularity. Even when there is a demonstrated loss justifying deposition, inquiry can be circumscribed to focus on the precise issue presented. *See, e.g., Alexander v. F.B.I.*, 188 F.R.D. 111, 117-19 (D.D.C. 1998). Here, Intel's proposed deposition topics and document requests far surpass reasonableness: The inquiries are redundant to AMD's productions; less expensive means could be -- and have been -- employed; and the undue burden and expense Intel seeks to impose is both daunting and unnecessary.

At a hearing a year ago, AMD advised the Special Master about Intel's preservation discovery shenanigans. The Special Master then observed: "There is nothing in this record that would suggest to me that I should be focused on the document retention activity of AMD. And I do not intend to get sidetracked unless there is a reason to turn my attention to that . . . ." (*Id.* ¶ 25, Exh. W.) There is nothing new in the record to alter the Court's assessment. Instead, the record as supplemented with AMD's preservation disclosures reinforces the conclusion that Intel's pursuit of this wasteful and needless discovery is simply a distraction intended to deflect attention from the only genuine preservation lapses in this case – Intel's.

Page 5

                                Respectfully,

                                */s/ Frederick L. Cottrell, III*

                                Frederick L. Cottrell, III (#2555)
                                cottrell@rlf.com

FLC,III/afg
cc:     Clerk of the Court (By Electronic Filing)
        Richard L. Horwitz, Esq. (Via Electronic Mail)
        James L. Holzman, Esq. (Via Electronic Mail)

## CERTIFICATION PURSUANT TO
## DISTRICT OF DELAWARE LOCAL RULE 7.1.1

Counsel for Plaintiffs has consulted with counsel for Defendants pursuant to District of Delaware Local Rule 7.1.1, and has determined that Defendants will not consent to the relief sought in the attached motion.

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)

RLF1-3291885-1