IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | )<br>)<br>)<br>) | MDL Docket No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC., a<br>Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICE LTD,<br>a Delaware corporation,, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No. 05-441-JJF |
| INTEL CORPORATION, a Delaware<br>corporation, and INTEL KABUSHIKI KAISHA,<br>a Japanese corporation, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Civil Action No. 05-485-JJF |
| v. | )<br>) | CONSOLIDATED ACTION |
| INTEL CORPORATION, | )<br>) | |
| Defendant. | ) | |

**<u>DECLARATION OF DAVID L. HERRON</u>**

RLF1-3291692-1

Of Counsel:
Charles P. Diamond
Linda J. Smith
O'Melveny & Myers, LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, CA 90067-6035
(310) 553-6700

Mark A. Samuels
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, 90071
(213) 430-6340

Jesse A. Finkelstein (#1090)
Frederick L. Cottrell, III (#2555)
Chad M. Shandler (#3796)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Finkelstein@rlf.com
Cottrell@rlf.com
Shandler@rlf.com
Fineman@rlf.com
Attorneys for Plaintiffs Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd.

Dated: June 11, 2008

## DECLARATION OF DAVID L. HERRON

I, David L. Herron, declare and state as follows:

1. If called as a witness in this matter, I could and would testify competently to the following facts, which are within my personal knowledge. I am a partner with the law firm of O'Melveny & Myers LLP, and am one of the attorneys principally responsible for representing plaintiff Advanced Micro Devices, Inc. ("AMD") in this matter. I make this declaration in support of AMD's Motion to Quash and for a Protective Order with respect to discovery propounded by defendant Intel Corporation ("Intel") under Fed. R. Civ. P. 30(b)(6).

2. Shortly after this case began, I and my colleagues proposed to, and secured the agreement of, Intel's counsel John Rosenthal of Howrey LLP for the parties to exchange their evidence preservation protocols, which in fact occurred in September and October 2005.

3. Those disclosures, Intel's subsequent disclosures to the Court, and discovery into Intel's evidence preservation problems reveal the contours of the evidence preservation system that Intel adopted. AMD undertook a materially different approach to document preservation than Intel. For instance, unlike Intel, AMD did not institute a system-wide auto-delete function with respect to email, and AMD's litigation hold notices (which AMD has produced to Intel) broadly require retention of all relevant material. In addition, in November 2005, AMD instituted and began migrating custodian email accounts to two email archiving systems: A vault that backs-up custodians' email on a 30-day cycle; and a journal that captures all sent and received email. As set forth by way of summary in the letter brief filed concurrently herewith, this is dramatically different than the preservation system Intel put in place.

4. On April 11, 2007 -- two weeks *before* Intel submitted a remediation plan with regard to the evidence preservation problems it had disclosed to the Court -- Intel's lead trial counsel, Robert Cooper, sent a letter to me which for the first time posed a lengthy set of inquires regarding AMD's evidence preservation system. (A true and correct copy of a letter dated April 11, 2007, from Mr. Cooper to me is attached hereto as Exhibit A.) I am unaware of any true concern or evidence loss by AMD that could have prompted these inquiries by Intel, and Mr. Cooper's letter acknowledged that he knew of nothing either. (*Id.* at 1.)

5. AMD provided an initial response to Mr. Cooper's letter shortly thereafter in which, among other things, AMD agreed to review and report about its preservation program. (A true and correct copy of my letter dated April 23, 2007, to Intel's counsel, Mr. Cooper, is attached hereto as Exhibit B.)

6. On August 10, 2007, AMD reported to Intel about the review of its preservation program that had been completed with respect to the 108 AMD party-designated custodians that were then "in-play" in the litigation (meaning that these custodians had been designated pursuant to the Stipulation and Order Regarding Document Production). At that time, AMD reported that its "preservation program appears to be working as designed and intended; no lapses in the program have been identified." (A true and correct copy of a letter dated August 10, 2007, from AMD's counsel, Mark A. Samuels, to Intel's counsel, Mr. Cooper, is attached hereto as Exhibit C.) The letter also disclosed a few issues about AMD custodians that AMD had discovered. (*Id.*)

7. By mid-August 2007, AMD was poised to commence Court-ordered discovery into Intel's evidence preservation problems. At precisely that time, on August 22, 2007, Intel

served AMD with a "Notice of Taking Deposition of Advanced Micro Devices Inc. and AMD International Sales and Services, Ltd. and Request for Production of Documents" pursuant to Federal Rule of Civil Procedure 30(b)(6). (A true and correct copy of Intel's Rule 30(b)(6) deposition notice and document request served on AMD on August 22, 2007, is attached hereto as Exhibit D.)

8. AMD responded initially to Intel's Rule 30(b)(6) discovery by letter on August 23, 2007, and requested, among other things, that Intel meet and confer, and provide authority for its claimed entitlement to conduct the wide-ranging discovery Intel had propounded. (A true and correct copy of the letter dated August 23, 2007, from AMD's counsel, Charles P. Diamond, to Intel's counsel, Mr. Cooper, is attached hereto as Exhibit E.) By the time AMD's written response to Intel's Rule 30(b)(6) was due, Intel had neither provided such authority nor met and conferred with AMD's counsel in any material way. (*See* Exhibit F attached hereto, which is a true and correct copy of an email dated September 18, 2007, from AMD's counsel, James Pearl, to Intel's counsel, Richard P. Levy.)

9. Accordingly, on September 19, 2007, AMD timely served its formal written response to Intel's Rule 30(b)(6) deposition notice and document request. (A true and correct copy of the "Response of Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. to Intel Corporation and Intel Kabushiki Kaisha's Notice of Taking Deposition and Request for Production of Document" served on Intel's counsel on September 19, 2007, is attached hereto as Exhibit G.) AMD's written response interposed objections, but also agreed to produce information Intel needed to assess AMD's document retention program and efforts.

10. Exchanges followed. For instance, when AMD served its written response on

September 19, 2007, Intel's counsel wrote to both outline the legal authority on which Intel purportedly was relying to justify its discovery, and to accept AMD's offer to provide an AMD witness on an informal basis to supply technical information requested by Intel regarding AMD's email archiving systems. (*See* Exhibit H attached hereto, which is a true and correct copy of a letter dated September 19, 2007, from Intel's counsel, Mr. Levy, to AMD's counsel, Mr. Pearl.) AMD responded by letter dated September 24, 2007, providing among other things a date for the interview Intel requested. (A true and correct copy of the letter dated September 24, 2007, from AMD's counsel, Mr. Diamond, to Intel's counsel, Mr. Levy, is attached hereto as Exhibit I.)

11. On September 28, 2007, AMD in fact produced one of its IT Managers for what the parties have referred to as an "informal technical exchange" regarding AMD's email archiving systems. AMD did not artificially limit the duration of that interview, and Intel has not reconvened another interview on the topics discussed (although AMD did, in fact, offer to provide this individual for a second interview, if necessary).

12. During the months that followed service of AMD's written response to Intel's Rule 30(b)(6) discovery, the parties had a number of conferences and email exchanges about narrowing Intel's discovery, and the scope and nature of AMD's production of information that would satisfy it. Those discussions involved in part that AMD would provide written summaries in response to certain of Intel's deposition topics and document requests. Just as with the "informal technical interview" of AMD's IT Manager, this manner of supplying information was precisely what Intel had requested, and AMD had agreed, that Intel be permitted to produce in response to AMD's discovery into Intel's evidence preservation issues. For example, in response to AMD's discovery, Intel produced a description of its document collection or "harvesting" protocols, and also provided a written summary description of the steps taken by

LA3:1148348.1                                    4

Intel following discovery of its failure to timely provide Litigation Hold Notices or retention notices to Intel Custodians. During the parties' conferences, AMD thus now proposed, and Intel agreed, to accept these same types of summaries in response to its outstanding discovery.

13. On November 7, 2007, Intel made a written proposal to *"narrow, or even eliminate, the issues that might be open for discovery."* (A true and correct copy of a letter dated November 7, 2007, from Intel's counsel, Mr. Levy, to me and AMD's counsel, Mr. Diamond, is attached hereto as Exhibit J.) Intel's proposal limited and identified by number the specific deposition topics and document requests Intel now was requesting information about in an effort to "outline the areas that we propose to now pursue." (*Id.*) Intel's counsel also represented that Intel had "reduced considerably the number of topics for which we are requesting information," and that this would "result in what we view, as an appropriate exchange of information." (*Id.*) While Intel did not formally withdraw its written discovery, the letter was perfectly clear -- and counsel for AMD was certainly led to believe -- that Intel was proposing that AMD's response to Intel's narrowed requests would be in satisfaction of Intel's Rule 30(b)(6) discovery. Indeed, among other representations, the letter closes with Intel's counsel's statement that: "As you can see, the discovery questions specifically addressed herein *greatly reduce the original requests that we have made* and are specifically targeted." (*Id.*)

14. On November 27, 2007, AMD provided its response to Intel's proposal which delineated the disclosures AMD agreed to make. (A true and correct copy of my November 27, 2007 letter to Intel's counsel, Mr. Levy, is attached hereto as Exhibit K.) Among other things, that letter discusses reciprocal exchanges that AMD and Intel had agreed to with respect to Litigation Hold Notices and, in response to Intel's proposal of November 7, concludes with a bullet-point outline of the discovery Intel requested and AMD agreed to produce. (*Id.* at 3.)

15. As required by Case Management Order No. 3, the parties produced to one another data for a substantial number of designated custodians on February 15, 2008. This included productions for custodians adversely-designated by each party, as well as supplemental productions for party-designated custodians through the Court-ordered June 1, 2006 cut-off date. Shortly after that preoccupying production effort concluded, on March 4, 2008, Intel responded to AMD's November 7 letter regarding the parties' discovery agreement. (A true and correct copy of the letter dated March 4, 2008, from Intel's counsel, Mr. Levy, to me is attached hereto as Exhibit L.) Intel's letter confirmed virtually every aspect of this agreement, mimicking precisely the language that AMD had used to accept it. (*Compare* page 3 of AMD's November 27 letter (Exhibit K), *with* Intel's response letter at pages 1-2 (Exhibit L), which delineate in almost precisely the same language the AMD productions that would satisfy Intel's outstanding Rule 30(b)(6) discovery.) Thus, while the parties were continuing to discuss mutual and concurrent exchanges of information -- such as journaling and harvesting dates, and hold notices -- the parties had settled on the AMD information that, when produced, would satisfy Intel's outstanding Rule 30(b)(6) discovery. (*See id.*, Exhibits J, K and L.)

16. Consistent with this agreement and as negotiated and agreed to by the parties throughout this process, AMD has produced documents, charts, summaries, lists and a witness to detail the structure, components and operation of its document retention system, including all of the following: (a) as noted, an interview with an AMD's IT manager about AMD's email archiving systems; (b) a written summary of "AMD's Backup Tape Retention Protocols" (*see* my letter dated March 11, 2008, to Intel's counsel, Mr. Levy, a true and correct copy of which is attached as Exhibit M); (c) a list of dates on which AMD's journaling email archive was activated for all AMD custodians (*id.*); (d) a written "Summary of AMD's Document Collection

Protocols" (*see* my email dated November 16, 2007, to Intel's counsel, Mr. Levy, a true and correct copy of which is attached as Exhibit N); (e) lists of dates on which AMD collected all of its designated custodians' electronic data and documents, the most recent set of which was produced on May 14, 2008 (*see, infra,* Exhibit S); (f) all litigation hold notices delivered to AMD's designated custodians (*see, e.g., id.*), and a hold notice delivered to AMD's IT personnel (*see,* my June 9, 2008 letter enclosing the latter hold notice to Intel's newest counsel, Donn P. Pickett, a true and correct copy of which is attached as Exhibit V); and (g) a chart identifying the dates litigation hold notices were delivered to every designated AMD custodian, and the version of the hold notice delivered. (*Id.*)

17.   On March 19, 2008, AMD disclosed to Intel the inadvertent loss of email by a Japanese custodian adversely-designated by Intel who lost some email while trying to perserve it for this case. (A true and correct copy of my March 19, 2008 letter to Intel's counsel, Mr. Levy, is attached hereto as Exhibit O.) AMD counsel, Mark Samuels, and I already had informed Intel's counsel, Mr. Levy, of this potential loss on December 7, 2007, and advised Mr. Levy at that time that AMD was investigating it and would make any appropriate disclosure to Intel. The letter disclosing the Japanese custodian's loss is very detailed and, to my knowledge, a far more detailed description of how the loss occurred, the volume of data involved, and the remedial steps taken by AMD than *anything* Intel has produced about any of its custodians. (*Id.*)

18.   Intel pounced on this disclosure about AMD's Japanese custodian in an apparent (and seemingly transparent) effort to renege on the parties' agreement concerning Intel's Rule 30(b)(6) discovery. Indeed, on March 28, 2008, Intel wrote a letter that made vague reference to undisclosed "irregularities in AMD's retention efforts," and now insisted that "Intel and AMD should be on equal footing." (A true and correct copy of a letter dated March 28, 2008, from

Intel's counsel, Mr. Levy, to me is attached hereto as Exhibit P.) Intel went on to assert that this disclosure relating to a single custodian based in a foreign country now led Intel to request "that we get additional information and assurances from AMD similar or identical to those which AMD sought and received from Intel." (*Id.* at 2.)

19. On April 11, 2008, AMD responded to Intel's new discovery tactic by reminding Intel about the reciprocal preservation disclosures the parties had agreed upon, the fact that AMD previously had disclosed that it was investigating this loss issue, and noting that Intel now was attempting to impose on AMD burdens of investigation and disclosure far beyond anything that Intel had done or agreed to. (A true and correct copy of the letter dated April 11, 2008 from AMD's counsel, Mr. Samuels, to Intel's counsel, Mr. Levy, is attached hereto as Exhibit Q.) AMD also offered to fly AMD's Japanese custodian to the United States for deposition so that Intel could make any inquires it liked about this loss that, by now, AMD has remediated. (*Id.*)

20. Intel's responded by expressly demanding "AMD's compliance with our previous discovery requests," and insisting that AMD agree to immediately schedule a Rule 30(b)(6) deposition and produce documents. (A true and correct copy of a letter dated April 24, 2008 from Intel's counsel, Mr. Levy, to me that sets forth Intel's new positions on discovery is attached hereto as Exhibit R.) Surprisingly, Intel also declined AMD's offer to depose its Japanese custodian, stating that Intel had not decided "whether that is necessary." (*Id.*)

21. I then conferred by telephone with Intel's counsel, Mr. Levy. Mr. Levy and I agreed that AMD would set forth its position with respect to Intel's March 28 and April 24, 2008 letters, and provide additional disclosures AMD had agreed to make by May 14, 2008. AMD did so. (A true and correct copy of my May 14, 2008 letter to Intel's counsel, Mr. Levy, is attached

hereto as Exhibit S.) That letter lays out AMD's position that the parties had reached an agreement on the preservation disclosures that AMD would make; that these disclosures were sufficient to apprise Intel about AMD's preservation program; that nothing had happened since agreement was reached to alter this conclusion; and that Intel's demand to revisit the overbroad discovery requests it had already agreed to narrow was unjustified. (*Id.*) Among many other things, that letter also again offered to fly AMD's Japanese custodian to the United States for deposition. (*Id.* at 4.)

22.     While Intel has not disclosed when it "discovered" that it had failed to produce the contents of hundreds of remedial .pst files for over 160 Intel custodians, it is hard to imagine that Intel was not fully aware of that new problem by late March 2008 when it began its current effort to renege on the parties' agreement about Intel's Rule 30(b)(6) discovery. And the timing of Intel's next letter seems transparently designed to distract attention from that very problem.

23.     Indeed, rather than attempt compromise or even meet and confer, Intel assigned two new law firms -- Bingham McCutchen LLP and Perkins Coie -- to pursue the Rule 30(b)(6) that Intel had already agreed repeatedly in writing to narrow. On May 30, 2008 -- the *very day* that Intel belatedly revealed .pst folders for over 160 Intel custodians that it had failed to produce -- Intel's new counsel delivered a 7-page letter that reiterated Intel's demand for full-blown and newly-expanded discovery. (A true and correct copy of the May 30, 2008 letter from Intel's counsel, Donn P. Pickett of Bingham McCutchen, to me is attached hereto as Exhibit T.) This letter enclosed a new Rule 30(b)(6) deposition notice that: Increased the number of deposition topics by almost 50% over the prior notice; expanded the subject matter of virtually every one of the preexisting deposition topics; and did not narrow in any manner whatsoever the deposition topics to account for the multiple disclosures AMD already had made in response to Intel's

discovery. (*Compare* Intel's newly-served Rule 30(b)(6) deposition notice, a true and correct copy of which is attached hereto as Exhibit U (without the various letters that Intel appended as exhibits to that notice), *with* Intel's prior deposition notice, Exhibit G.) That letter also threatened that Intel would file an immediate motion to compel production of documents with respect to Intel's prior Rule 30(b)(6) document request, but failed to either take account of the information AMD already had produced or offered to meet and confer. (*See* Exhibit T.) This letter also repeats Intel's new argument that there must be a "level playing field" with respect to preservation discovery, and asserts that AMD should be forced to produce information to the same extent Intel did in Court-ordered discovery simply because Intel had evidence destruction problems which prompted that discovery -- and wholly without regard to the issue whether there has been true loss or any systemic preservation failure by AMD. (*Id.* at 2, 4.) In addition, Intel produced along with its May 30 letter and thereafter information about its preservation efforts (such as the date it migrated the email accounts of its custodians to Intel's email archive, and the date of the "reharvest" of certain custodians' data) that AMD had been requesting for many months as part of the agreed-upon reciprocal exchanges the parties had negotiated. (*Id.*)

24.    AMD has advised Intel that it has not experienced any systemic preservation failure, has informed Intel about all of the data losses AMD is aware of with respect to its designated custodians, and has repeatedly acknowledged its ongoing duty to apprise Intel of such losses. (*See* Exhibits B, C, E, K, O and S.) Specifically, AMD has informed Intel about corrupted .pst folders (Exhibit C); late delivery of written hold notices to four custodians (Exhibits C and S); a stolen laptop and a failed hard drive image for one custodian who was on email archiving (Exhibit S); use of a self-initiated auto-delete rule on sent email by one custodian (who saved relevant sent items) (Exhibit S); and, as noted, a single, Japan-based custodian who

accidentally lost email while trying to save it for this case, a loss (if it is one) that AMD has already remediated (Exhibit O).

25.    Attached hereto as Exhibit W are relevant excerpts of the transcript of a hearing before the Special Master held on May 24, 2007.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:    June 11, 2008.

_____
David L. Herron