# EXHIBIT K

Case 1:05-cv-00441-JJF    Document 684-9    Filed 06/11/2008    Page 1 of 5



# O'MELVENY & MYERS LLP

| | 400 South Hope Street | |
|---|---|---|
| BEIJING | Los Angeles, California 90071-2899 | NEW YORK |
| BRUSSELS | | SAN FRANCISCO |
| CENTURY CITY | TELEPHONE (213) 430-6000 | SHANGHAI |
| HONG KONG | FACSIMILE (213) 430-6407 | SILICON VALLEY |
| LONDON | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
008,346-163

November 27, 2007

WRITER'S DIRECT DIAL
(213) 430-6230

**VIA E-MAIL AND U.S. MAIL**

WRITER'S E-MAIL ADDRESS
dherron@omm.com

Richard Levy, Esq.
Gibson Dunn & Crutcher
333 South Grand Avenue
Los Angeles, California 90071

Re:   *AMD v. Intel*

Dear Rich:

On November 16, 2007, we delivered to you a written summary of AMD's document collection protocols. This letter responds to the remainder of the issues raised in your November 7 letter concerning AMD document preservation.

Your letter raises seven items, which we address mostly in the order that you did. First, you raise AMD's email journaling system, stating that Intel is interested "simply in learning how the system worked both from an AMD user's perspective and from AMD's IT perspective." As you know, on September 28, 2007, we did make AMD's Jerry Meeker available to you for an informal interview on the subject of AMD's email journaling system. We did not artificially limit the length of that interview, and it appears that the general topics you now raise were discussed then and could have been discussed even more fully, had you desired to do so.

We are nevertheless amenable to providing further relevant information if you need it. We cannot tell from your letter whether Mr. Meeker ought to be produced a second time, whether someone else would be better able to answer your questions, whether a written summary would suffice or, indeed, precisely what information you seek beyond that already disclosed. Let's please discuss this in person or, if you prefer, please detail your further inquiries in writing. We can then agree on the means and scope of a further exchange, as necessary. We believe that a written summary would be sufficient.

The second issue you raise is the written summary of AMD's document collection protocols, which has since been provided.

Third, you raise AMD's litigation hold notices and at least three questions related to them. You also ask for our suggestion on how best to proceed to answer these questions, which

Richard Levy, Esq., November 27, 2007 - Page 2

include: (1) whether AMD delivered to its custodians more litigation hold notices than the three AMD already has produced to Intel; (2) which of the notices we've provided was delivered to AMD's IT personnel (i.e., the hold notice dated March 11, 2005); and (3) the approximate distribution dates of the various litigation hold notices that AMD has produced to Intel.

Let me answer your questions in part now and suggest a further, mutual production of litigation hold notices. The litigation hold notices that AMD produced are exemplars of the principal notices delivered by AMD to its custodians in this case, and all of the material terms set forth in these notices are replicated in other versions sent by AMD from time-to-time. Any differences between the notices produced and others sent at various times are slight and non-material (e.g., changing the renamed CPG group to MSS, and changing "[i]n light of the scope of information it appears Intel may seek in discovery, we are expanding our ongoing efforts to preserve documents . . . ." to "[a] critical part of the discovery process requires that we take all reasonable steps to preserve documents . . . ."). These custodian-directed exemplars of litigation hold notices are what we believe the parties agreed to exchange, and are similar to what we appear to have received from Intel as attachments to a letter from Kay Kochenderfer. AMD has not yet produced the litigation hold notice dated March 11, 2005, that was directed to AMD IT personnel, as we did not understand this to be part of the agreed-upon exchange.

Nor, apparently, have we received IT-related litigation notices from Intel. Indeed, other than those notices attached to Kay's letter, thorough searches through the documents Intel has produced in remediation and culpability discovery have not uncovered any litigation hold notices delivered by Intel to its IT personnel (as referenced by Intel in its various filings with the Court concerning its evidence preservation issues). For instance, while we have found emails sent among Intel IT personnel, we have not located any litigation hold notice directed by Intel (or its in-house counsel) to IT personnel with respect to Intel's "complaint freeze" effort that Intel said it undertook in June and July 2005, or any litigation hold notice issued by Intel to its IT personnel at the time of the discovery of Intel's evidence preservation issues in October 2006.

While AMD is not opposed to producing its March 11, 2005 notice, subject again to an agreement that by doing so no privilege will be deemed waived, we would like the exchange to be mutual. If Intel already has produced the litigation hold notices it delivered to its IT personnel, we would appreciate your identifying those documents by bates number. If Intel has not produced those documents, let's please set a date for mutual exchange.

Finally on litigation hold notices, AMD is prepared to reproduce the litigation hold notices already produced, this time with their dates evident. This ought to answer many or all of the questions your letter poses. If there are additional questions about litigation hold notices that need to be answered after this production, they can be answered promptly.

Fourth, your letter (items 4, 5 and 7) inquires about document retention failures by AMD custodians, including non-compliance with litigation hold notices. As we have previously advised, AMD has already conducted a review of AMD's preservation program with respect to its 108 AMD party-designated production custodians. While your letter mentions use of the word "systemic" in prior correspondence, Mark Samuels' August 10, 2007 letter reporting on the

Richard Levy, Esq., November 27, 2007 - Page 3

results of that review did not use that term but, instead, provided Intel with AMD's "report that our preservation program appears to be operating as designed and intended; no lapses in that program have been identified." That same letter discussed the further production of .psts for certain custodians, and identified two instances in which litigation notices were sent out in September 2006. If AMD learns information with respect to these (or any other) AMD production custodians or as to AMD's preservation program more generally that require modification of these representations, please be assured that AMD will so notify Intel.

At present, however, AMD reiterates the representations regarding its preservation program made in Mr. Samuels' prior letter. AMD also acknowledges its duties to monitor compliance with litigation hold notices and to report instances where AMD has identified losses of relevant data that require disclosure. We also believe that disclosures in response to item 6 in your letter (as discussed below) will provide Intel with responsive information. In addition, and as you know, AMD (like Intel) is in the process of harvesting, reviewing and producing documents from adversely-designated custodians. In that process, AMD remains mindful of the disclosure obligations imposed as outlined above and will adhere to them.

Finally, your letter's item 6 asks for a large variety of information, some of which AMD already has produced in part. We agree with your suggestion that information responsive to the topics raised in item 6 are best supplied in written summaries, and are prepared to assemble and produce to Intel the following:

* The date on which AMD's custodian's documents were harvested in the litigation. As you know, AMD already has produced these dates for the AMD party-designated production custodians. AMD is in the midst of "reharvesting" these custodians' data through the June 1, 2006 cutoff date agreed to by the parties, and is in the process of harvesting, reviewing and producing data of the AMD custodians recently designated adversely by Intel. We can supply an interim update to the prior harvest date list supplied already, but think that it may be more efficient to pick a later date for exchange of this information -- with both Intel and AMD updating and producing this harvesting information -- after all such harvesting has been completed. Late December or early January seem like appropriate times for this exchange.

* The date on which AMD's custodians were put on the email journaling system.

* Identification of known losses of relevant data from an AMD custodian's harddrive due to file corruption, lost laptop or other, similar means of loss.

* The months for which AMD custodian data has been preserved on monthly backup tapes and "complaint freeze tapes." This is best described, we believe, by way of written summary, perhaps to be accompanied with a spreadsheet of relevant data.

AMD already is in the process of preparing this information for disclosure. We suggest disclosing this information to Intel on a rolling basis as it is assembled. We should be able to begin production in the next few weeks.

Richard Levy, Esq., November 27, 2007 - Page 4

    We trust that this is responsive to your requests. There is, obviously, some detail we ought to discuss, so please call me for that purpose.

Sincerely,

David L. Herron
of O'MELVENY & MYERS LLP

LA3:1141891.1