**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE | ) | |
| INTEL CORPORATION | ) | |
| MICROPROCESSOR ANTITRUST | ) | MDL No. 05-1717-JJF |
| LITIGATION | ) | |
| ——————————————————————— | ) | |
| | ) | |
| ADVANCED MICRO DEVICES, INC. a Delaware | ) | |
| corporation, and AMD INTERNATIONAL SALES | ) | |
| & SERVICE, LTD., a Delaware corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | C. A. No. 05-441 (JJF) |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, a Delaware corporation, | ) | |
| and INTEL KABUSHIKI KAISHA, a Japanese | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————————— | ) | |
| | ) | |
| | ) | |
| PHIL PAUL, on behalf of himself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 05-485-JJF |
| | ) | |
| v. | ) | CONSOLIDATED ACTION |
| | ) | |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————————— | ) | |

**THIRD PARTIES' OPPOSITION TO MOTION OF UNION FEDERALE DES
CONSOMMATEURS – QUE CHOISIR TO INTERVENE FOR THE
PURPOSE OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER
AND APPLICATION PURSUANT TO 28 U.S.C. §1782**

OF COUNSEL:

John F. Schultz
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-1921
john.shultz@morganlewis.com

Dale A. Rice
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104
(415) 772-6000
(415) 772-6268 (fax)
dale.rice@hellerehrman.com

**DRINKER BIDDLE & REATH LLP**

David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
(302) 467-4200
(302) 467-4201 (fax)
david.primack@dbr.com

Attorneys for Hewlett-Packard Company

**MONTGOMERY, MCCRACKEN  LLP**

R. Montgomery Donaldson (DE#4367)
Montgomery, McCracken, Walker & Rhoads, LL
1105 Market Street
Wilmington, DE  19801-1223
(302) 504-7840
(302) 504-7820 (fax)
rdonaldson@mmwr.com

Attorneys for Microsoft Inc.

**JONES DAY**

Daniel Conrad (admitted pro hac vice)
Thomas Jackson
2727 N. Harwood St.
Dallas, TX  75201
(214) 969-5230
(214) 220-3939 (fax)
dtconrad@jonesday.com
trjackson@jonesday.com

Attorneys for Dell Inc.

Dated: June 26, 2008

## TABLE OF CONTENTS

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ............................. 1

II.     SUMMARY OF ARGUMENT ................................................................ 1

III.    STATEMENT OF FACTS ..................................................................... 2

        A.      History of The Protective Order ............................................ 2

        B.      QC's Proposed Use of Confidential Discovery Material........................ 5

IV.     ARGUMENT ..................................................................................... 6

        A.      QC's Application Does Not Meet The Threshold Requirements of 28 U.S.C.
        §1782 ............................................................................................. 6

        B.      QC Also Fails To Meet The Discretionary Requirements Set Forth In *Intel* ........ 7

        C.      The Twin Aims of §1782 Weigh Against Allowing QC Access To Confidential
        Discovery Material.......................................................................... 14

        D.      QC Should Not Be Given Access To Confidential Material Because QC Does Not
        Meet The Requirements For Modifying The Protective Order ........................ 15

        E.      Providing QC With Access To Confidential Discovery Materials Creates
        Tremendous Risk And Places An Unreasonable Burden On The Third Parties............... 18

V.      CONCLUSION ................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

*Advanced Micro Devices, Inc. v. Intel Corp.*,
No. C01-7033, 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004)...................................... 9

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (S.D.N.Y. 2006)................................................. 5, 9, 14

*In re Microsoft Corp.*,
No. C06-80038 JF(PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006).................... 5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)................................................................. passim

*John Deere Ltd. v. Sperry Corp.*,
754 F. 2d 132 (3rd Cir. 1985) .................................................... 10

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004)......................................................... 14

### STATUTES

28 U.S.C. §1782......................................................................... passim

### OTHER AUTHORITIES

Civil Procedure Rules 31.17 (U.K.)...................................................... 13

Code civil art. 145 (France) ........................................................... 13

Codice di procedura civile art. 692 *et. seq.* (Italy) ................................. 13

European Commission Regulation 773/2004, art. 15(1) 2004 O.J. (L123/22)...................... 11

Ley de Enjuiciamiento Civil art. 256 *et seq.* (Spain) .......................... 13

Zivilprozessordunung sec. 384(3) (Germany) ..................................... 12

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On April 9, 2008 non-party Union Federale des Comsommateurs – Que Choisir ("QC") filed a motion for leave to intervene and modify the Protective Order in these actions ("Motion").  QC additionally applied for an order pursuant to 28 U.S.C. §1782 requiring Intel and all third parties to provide QC access to documents and deposition testimony from these actions for use in certain as-yet unidentified foreign proceedings ("Application").  Third parties Dell Inc., Hewlett-Packard Company, and Microsoft Corporation (collectively "Third Parties") object to both QC's Application and Motion and respectfully request the Special Master recommend that QC's Application and Motion be denied.[1]

## II.    SUMMARY OF ARGUMENT

QC seeks access to each and every document and deposition transcript produced in the U.S. litigation to "assist" the European Commission ("EC") in its proceeding, as well as for future use in hypothetical foreign proceedings.  To date, the parties and third parties to the U.S. litigation have produced millions of pages of documents to which QC would like complete and unfettered access.  The information sought by QC includes highly sensitive and confidential business information, which Third Parties have gone to great lengths to protect.

Recognizing the sensitivity of this information and the serious harm to Third Parties if this information is disclosed, the Court approved a Protective Order to limit the dissemination and use of documents produced in the U.S. litigation.  It was in reliance on that Protective Order that Third Parties produced their documents in this litigation.  QC

---

[1] In filing this Opposition, Third Parties preserve any objection they may have to this Court's jurisdiction over them with respect to any issues that may arise in connection with this litigation.

seeks to undermine that Protective Order and obtain copies of all of Third Parties'

documents. QC hopes that this Court will assist it in its fishing expedition, and

circumvention of foreign restrictions, in some potential later filed foreign litigation.

QC's Application fails to meet the threshold requirements of 28 U.S.C. §1782 and

the factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*,

542 U.S. 241 (2004). Additionally, QC's proposed modifications to the Protective Order

fail to protect the interests of Third Parties adequately. Those proposals do not ensure

that QC, including its 124,000 members, will be bound by the confidentiality, notice, and

other obligations imposed on recipients of Confidential Discovery Material, and they do

not take into account the substantial burden placed on Third Parties and the Court to

monitor and enforce compliance. Accordingly, QC's Application and Motion should be

denied.

## III. STATEMENT OF FACTS

### A. History of The Protective Order

On April 28, 2006, AMD, Intel, and the Class Plaintiffs brought a joint motion for

approval and entry of a Proposed Protective Order in the present actions. *See* Stipulation

and Order Regarding Protective Order Approval Process (D.I. 109), Ex. A ("Proposed

Protective Order"). Various third parties commented on the proposed order and, as the

Special Master is well aware, the issue that prompted the most vehement objection was

whether Confidential Discovery Material from these actions could be used in other

proceedings. *See* Special Master's Report and Recommendations Regarding Proposed

Protective Order (D.I. 177) ("Special Master's Report") at 110.

Under the terms of the Proposed Protective Order, AMD, Intel, and the Class

Plaintiffs would have been expressly permitted to use Confidential Discovery Material

2

produced in these actions—including Confidential Discovery Material produced by third parties—in certain foreign proceedings (i.e., the "Japan Litigation," *see* Proposed Protective Order, Definition B), in a class litigation pending in California state court (the "California Class Litigation," *see* Proposed Protective Order, Definition D), and in certain future domestic or foreign governmental antitrust investigations involving AMD or Intel (i.e., "Competitive Investigation," *see* Proposed Protective Order, Definition E). *See* Proposed Protective Order at 1.   As the Special Master described it, that issue was a "lightning rod" for objection by third parties.  Special Master's Report at 110.   At least ten of the third parties that provided comments on the language of the Proposed Protective Order objected to the use of Confidential Discovery Material in other proceedings.  *See id.* at 110-11 & 111 n. 8.

     At the June 12, 2005 hearing on the Proposed Protective Order, a number of third parties argued to the Special Master that the proposed order provided a "blank check" for third parties' confidential information to be used in other proceedings without adequate assurance that "the terms of the Proposed Protective Order would be honored or could be enforced if violated, particularly with respect to individuals and entities outside the jurisdiction of this Court."  *Id.* at 112.  These third parties expressed concern about the Court's lack of jurisdiction over participants in the Japan Litigation and the California Class Litigation, and its possible lack of jurisdiction over participants in potential investigations that had not yet commenced.  *See id.* at 111.  Third parties argued that if their documents were relevant in other proceedings, then the proper procedure was for the parties in those actions to take third party discovery, not to obtain an order from this

3

Court effectively compelling third parties to produce documents in those other

proceedings.  *See id.* at 111-12.

On The Special Master agreed with the third parties and recommended the entry of a

Protective Order that prohibited the use of Confidential Discovery Material in other

proceedings.  *See id.* at 116-17.  In a detailed and carefully reasoned report, the Special

Master concluded that

> "[a]lthough Third Parties may voluntarily agree to such use in
> order to avoid the burden of multiple productions of similar
> discovery materials, . . . this Court should not prematurely
> circumvent the defenses that Third Parties may wish to raise and/or
> actions they may wish to take to protect their confidential
> information from disclosure to persons not subject to the
> jurisdiction of this Court."

*Id.* at 116.  That recommendation is embodied in Paragraph 1 of the Protective

Order, which expressly limits the use of Confidential Discovery Material to the

present actions.  *See* Protective Order, Paragraph 1.

On Approximately twenty months have passed since the Court entered the

Protective Order.  In that time, Third Parties have produced millions of pages of

the most sensitive confidential business information, including pricing data, sales

and marketing strategies, product roadmaps, and other highly sensitive strategic

business documents.  As the Special Master noted, these documents are "of the

utmost proprietary and commercially sensitive nature."  Special Master's Report

at 113.  It would be detrimental to Third Parties for their documents to be

disseminated without being able to maintain control of the documents and their

final destination.  There are no protections that QC can offer that would eliminate

this risk.  The Protective Order was put in place to prevent exactly this type of

uncertainty.  Without the protections provided by the Protective Order, Third

Parties would not have produced such sensitive and confidential information.

### B.    QC's Proposed Use of Confidential Discovery Material

QC seeks access to every piece of discovery produced in these actions by any

third party or Intel.  QC does not seek that information for use in this action, for it is a

non-party, but instead intends to use the information to "assist" the EC in its proceeding

involving Intel, as well as in some not-yet-initiated European Union consumer damages

litigation against Intel.  *See* QC Brief in Support of Motion to Intervene and Modify

Protective Order and Application for Order Pursuant to 28 U.S.C. § 1782 ("QC Brief").

QC is a foreign consumer association with no apparent assets in the United States,

and is comprised of 170 local associations and more than 124,000 members.  QC Brief at

3.  QC is also a founding member of the European Bureau of Consumer Unions, an

organization that purportedly represents the interests of more than forty consumer

organizations across Europe.  QC Brief at 4.

The EC, which is currently investigating Intel, is capable of obtaining discovery

through its own procedures.  In fact, the EC has asked for or seized many of the very

same documents that QC is now seeking from several of the third parties.  Furthermore,

the EC has repeatedly opposed past attempts of private litigants to obtain U.S. judicial

assistance in obtaining discovery for use in EC proceedings.  *See Intel*, 542 U.S. at 265-

66; *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 191-92 (S.D.N.Y. 2006).  Additionally,

under European law, private third parties, such as QC, are prohibited from taking their

own discovery in connection with an EC investigation.  *See In re Microsoft Corp.*, No.

06-80038 JF(PVT), 2006 WL 825250 at *2 (N.D. Cal. Mar. 29, 2006).

As to the speculative consumer damages litigation, QC has not identified any supposedly injured parties on whose behalf a damages claim might be brought, the countries in which a damages claim might be brought, the time frame any such action might cover, or why Third Parties' confidential information would have any relevance to that imagined litigation. QC also has not shown it would even have standing to bring such a case, particularly anywhere other than France. Because of all the difficulties that QC would face in trying to obtain these documents from the EC, and its obvious difficulty with obtaining these documents from the as-yet unidentified foreign tribunals, QC seeks to use this Court to circumvent the foreign restrictions and assist it in its fishing expedition in hopes of "finding" a claim to bring in a foreign tribunal.

## IV.    ARGUMENT

QC seeks documents and information pursuant to 28 U.S.C. §1782, in order to: (1) assist with the EC's investigation of Intel; and (2) use in hypothetical consumer lawsuits that it or its members may someday file against Intel in unidentified foreign jurisdictions. Because 28 U.S.C. §1782 does not permit fishing expeditions or attempts to circumvent foreign restrictions, QC's Application and Motion should be denied.

### A.    QC's Application Does Not Meet The Threshold Requirements of 28 U.S.C. §1782

Section 1782 provides that a district court **may** order a person to produce discovery only if (a) the discovery is "for use in a proceeding in a foreign or international tribunal," (b) the application is made by an "interested person," and (c) the person from whom discovery is sought resides or is found in the district where the application is filed. *See* 28 U.S.C. §1782(a).

QC cannot satisfy two of these threshold requirements.  First, QC is not an "interested person" in the EC proceeding.  While the Supreme Court has held that a complainant in an EC proceeding is an "interested person," *Intel*, 542 U.S. at 256-57, QC is not a complainant – QC is, at best, an interested third party observer.  A third party does not have the type of "significant role" that the Supreme Court found a complainant possessed in *Intel*.  *Id.* at 256.  A third party has no participation *rights* in an EC proceeding.  Just because the EC gave QC an opportunity to be heard in its proceeding does not afford QC additional rights.  QC is still a third party with no right to be heard or submit information unless the EC is so inclined.

Second, the Supreme Court has held that the foreign proceeding must be "within reasonable contemplation."  *Id.* at 259.  QC's reference to potential unidentified proceedings in unidentified countries, in an unidentified time frame falls substantially short of satisfying this requirement.  There must be a reliable indication that the proceedings will be commenced within a reasonable time frame.  QC has provided no such indication.

**B.    QC Also Fails To Meet The Discretionary Requirements Set Forth In *Intel***

Even if QC were able to meet the threshold requirements under §1782, QC's Application should still be denied because it fails to satisfy the four factors the Supreme Court identified in *Intel,* which district courts should consider when evaluating §1782 requests for discovery.  Those four factors are:

(1) Whether the person from whom discovery is sought is a party to the
foreign litigation;

(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) Whether the §1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and

(4) Whether the requests are so intrusive or burdensome as to require trimming or rejection. *Id.*, at 264-265.

Each of these factors overwhelmingly weighs against granting QC's access to the discovery materials. Accordingly, the Court therefore should deny QC's Application and Motion.[2]

1.     *QC's stated desire of assisting the European Commission's investigation is an insufficient basis upon which to grant the requested relief*

QC's Application is allegedly fueled by a desire to assist the European Commission in its investigation of Intel. QC's request falls well short of what is needed to obtain §1782 relief. To begin with, the need for aid under §1782 is less apparent where, as here, the foreign tribunal has jurisdiction over the person from whom discovery is sought. *Intel*, 542 U.S. at 264. Indeed, the EC has already seized, or requested and received, documents and information from the parties and several third parties, including, among others, HP and Dell. Thus, the EC has demonstrated the wherewithal to obtain any information it requires for its investigation.

---

[2] The *Intel* Court recognized that §1782 authorizes, but **does not require**, district courts to lend assistance to requesting parties. *Intel*, 542 U.S. at 247.

Two district courts facing similar arguments to those made by QC have denied §1782 applications in recent years.  In *In re Microsoft Corp.*, 428 F. Supp. 2d at 194, the district court denied Microsoft's §1782 application to obtain documents from IBM and its attorneys for use in defending itself before the EC because the evidence was already available to the EC.  The court found the §1782 request "both unnecessary and improper" under the circumstances and added that it was irrelevant that Microsoft would have to request the documents from the EC rather than from the document holders directly.  In *Advanced Micro Devices, Inc. v. Intel Corp.*, No. C01-7033, 2004 WL 2282320 at *3 (N.D. Cal. Oct. 4, 2004), the court denied AMD's §1782 application because, *inter alia*, "the EC has jurisdiction over Intel, and therefore could simply ask Intel to produce any or all of the discovery AMD now seeks."

2.    *The EC is not receptive to U.S. federal-court judicial assistance*

The second factor for consideration—the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance—also weighs in favor of denying QC's Application.  QC has already provided the EC with its views on the proceeding[3] and the Commission has concluded the investigatory and defense stages of its work.  In fact, the EC has gone so far as to issue a Statement of Objections ("SO") to Intel which triggered the internal decision-making process that precedes the issuance of a decision on the SO by the Commission.  *See* Intel Letter dated May 5, 2008 to The Honorable Vincent J. Poppiti at 4.  For QC to now seek to submit additional evidence to the EC at this late date, the EC would have to agree to reopen its

---

[3] *See* QC Brief at 7.

investigation.  Such an occurrence is unlikely since it would require the Commission to
undo the substantial work it has already completed.  And, just like its position in other
cases where this issue has been raised, the EC does not need or want federal district court
assistance in obtaining discovery.[4]

        3.      *QC is attempting to circumvent the proof-gathering restrictions of the EC*

The third factor a court should consider is whether the §1782 applicant is
attempting to circumvent the proof-gathering restrictions or other policies of the foreign
country in which the documents are intended to be used.  *Intel*, 542 U.S. at 264-265.  The
Third Circuit has noted that the concern that foreign discovery practices are being
circumvented is heightened where, as here, the request comes from an individual litigant
rather than from the foreign tribunal.  *John Deere Ltd. v. Sperry Corp.*, 754 F. 2d 132,
136 (3rd Cir. 1985) ("Concern that foreign discovery provisions not be circumvented by
procedures authorized in American courts is particularly pronounced where a request for
assistance issues not from letters rogatory, but from an individual litigant.").

QC is attempting to circumvent the procedures of the EC.  The EC has a very
specific set of rules governing access by third parties to documents collected by the
Commission.  As noted by QC in its brief supporting its Application and Motion:

> The proceedings before the Commission are in principle
> confidential and information collected by the Commission for the
> purposes of its investigation shall only be used for the purpose for
> which it was acquired.  Although the parties against whom the
> Commission proposes to make an infringement decision may
> inspect the file of documents which the Commission relies on to
> support its case, that file does not include the business secrets of

---

[4] For a more complete description of the European Commission's historic resistance to aid
pursuant to §1782, *see* Section I of Intel's letter of May 5, 2008 to The Honorable Vincent J. Poppiti
opposing QC's proposed briefing schedule.

the parties to the case nor other information covered by a secrecy obligation.

QC Brief at 9 (citing Commission Regulation 773/2004, art. 15, 2004 O.J. (L123/22)).

QC fails to note that, as a third party, it does not have any right of access to the documents that the EC has collected.  Commission Regulation 773/2004, art. 15(1) 2004 O.J. (L123/22) ("If so requested, the Commission shall grant access to the file **to the parties to whom it has addressed a statement of objections**") (emphasis added).

4.      *QC's request is intrusive and overly burdensome*

This Court should also deny QC's Application due to the intrusive and burdensome nature of the requests, the fourth factor to be considered by this Court. Despite its statement that it has issued no document requests, which is merely semantics, QC seeks complete and unlimited access to each and every document and deposition transcript produced in the U.S. litigation.  To date, the parties and third parties to the U.S. litigation have produced millions of pages of documents including highly sensitive and confidential business information, which Third Parties have gone to great lengths to protect.  QC has not demonstrated the need for a single document from a single person or entity, let alone the need for the volumes of information it seeks.

QC has not even attempted to explain how the many different kinds of documents would be relevant to the EC proceedings.  The U.S. actions primarily involve alleged violations of U.S. antitrust laws and the claimed damage to AMD and U.S. consumers allegedly arising therefrom.  By contrast, the EC is engaged in an investigation pursuant to European competition laws as it relates to conduct within Europe.  QC's request is nothing more than a fishing expedition.

11

The burden on Third Parties and the Court that such a production to QC would create is immeasurable. Third Parties have produced highly confidential information about their business operations and strategies, including very detailed and highly sensitive information related to the producing party's sales and marketing, pricing policies, costs of production, revenue, distribution strategies, operations, and product roadmaps. Although QC claims it would be bound by the Protective Order in this case, it does not address: whether the hypothetical foreign tribunals would afford the same protections; whether the Court would be able to enforce any violation of the use of the documents in the hypothetical foreign litigation; whether and how a Third Party could know if, when, and to whom its documents are being produced so it can lodge any necessary objections; and how those parties to whom QC produces the documents would be bound by the Protective Order.

None of the four factors to be used in deciding a motion for relief under §1782(a) favor granting QC's request. To the contrary, each and every one of them weighs heavily against QC and supports a denial of its Application. Consequently, Third Parties respectfully request that QC's Application be denied.

> 5. *QC Has Failed To Meet Its Burden With Regard To Requesting §1782(a) Relief In Connection With Unidentified Consumer Actions*

With regard to the hypothetical consumer damages litigation, QC has provided this Court with no ability to evaluate whether the statutory requirements have been met based on the limited information provided by QC. QC fails to identify a single foreign tribunal in which a claim will be asserted, who the proposed parties will be, or the nature of its claims. European courts have their own procedures in place to obtain discovery from third parties. *See, e.g.*, Zivilprozessordunung sec. 384(3) (Germany) (allowing third

parties to withhold documents containing trade secrets); Civil Procedure Rules 31.17 (U.K.) (allowing discovery from a third party in the United Kingdom if (a) the documents sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings; and (b) disclosure is necessary in order to dispose fairly of the claim or to save costs).[5]  QC's request is a thinly veiled attempt to circumvent these procedures.

Without more information, this Court cannot conclude that the requested relief is necessary to assist QC.  Relief under §1782 is only available if the foreign proceeding is "within reasonable contemplation."  This Court cannot conclude that such litigation is reasonably contemplated based on the speculative and incomplete information provided by QC.  *Intel*, 542 U.S. at 259.

QC's request to use the evidence in as-yet unidentified proceedings also will impose significant costs on Third Parties to enforce the terms of the Protective Order and somehow attempt to monitor unidentified proceedings.  Third Parties have stressed, and the Special Master has acknowledged, that the documents they are producing are extremely confidential and will cause significant commercial disadvantage if they are disclosed improperly.  *See* Special Master's Report at 110-17.  For third parties to avoid serious commercial harm, they will be forced to track the use of all documents and testimony in litigation in potentially dozens of foreign jurisdictions to which they may not be parties and of which they may be unaware.  These efforts are far in excess of what was contemplated when the Protective Order was entered and were exactly the kind of

---

[5] Furthermore, most European courts do not permit pre-filing discovery or do so only in very limited circumstances.  *See, e.g.,* Code civil art. 145 (France); Codice di procedura civile art. 692 *et. seq.* (Italy); Ley de Enjuiciamiento Civil art. 256 *et seq.* (Spain).

efforts all affected third parties sought to avoid in their opposition to the Proposed

Protective Order, as discussed above.  Third Parties would be left with no ability to

maintain the confidentiality of their materials once placed in QC's hands.  In addition to

the weight of the four factors set forth by the *Intel* court, this Court should exercise its

discretion and deny QC's Application due to the unavailability of sufficient measures to

assure the protection of the confidential documents of the third parties.

### C.    The Twin Aims of §1782 Weigh Against Allowing QC Access To Confidential Discovery Material

The twin aims of §1782 are to "provid[e] efficient means of assistance to

participants in international litigation in our federal courts and encourag[e] foreign

countries by example to provide similar means of assistance to our courts."  *See, e.g.*,

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (citing *In*

*Re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).  Here,

allowing QC access to the Confidential Discovery Material would not satisfy any of the

aims of the statute.  No efficiency would be achieved since the EC has already sought and

obtained the documents it needs from the Parties and Third Parties and the EC has

concluded the fact-finding phase of the proceeding.  In addition, providing QC access to

discovery will have no effect on the EC's willingness to provide similar means of

assistance to U.S. courts.  Given its rules against allowing third parties to conduct

discovery, and its past vocal opposition to private party application for U.S. assistance,

the EC has made it clear that it does not want U.S. judicial assistance.  *See Intel*, 542 U.S.

at 265-66; *In re Microsoft Corp.*, 428 F. Supp. 2d at 191-92.

The speculative consumer damages litigation in Europe is just that, speculative.

QC has not shown when, where, or how the speculative proceeding will take place or that

the material it is presently seeking would be discoverable in that speculative proceeding. There is no pending international litigation to which the Court would be providing assistance or from whom similar assistance may be sought.  Accordingly, there is no judicial body with jurisdiction over QC and its thousands of members to enforce the need to keep Third Parties' information confidential.

> **D.     QC Should Not Be Given Access To Confidential Material Because QC Does Not Meet The Requirements For Modifying The Protective Order**

For the same reasons that QC's §1782 Application should be denied, QC's request for modification of the Protective Order should be denied as well.  QC proposes eight modifications to the Protective Order.  *See* QC Brief at 24-25.  QC has asserted that its proposed modifications to the Protective Order will sufficiently protect the interests of third parties if QC is given access to Confidential Discovery Material.  *See id.* at 16. Even a cursory review of QC's proposed modifications, however, demonstrates that assertion is wrong and that QC's request should be denied.

> 1.     *QC would not be bound by the confidentiality, notice, or other obligations on recipients of Confidential Discovery Material under the proposed modifications to the Protective Order*

According to QC, once this Court has made its eight proposed modifications to the Protective Order, QC will be bound by all the provisions of that order.  *See* QC Brief at 25 ("With the proposed modifications in place, [QC] will then be bound by the Protective Orders"); *see also* Intel's Notice of QC's Application and Motion at 4 ("QC has agreed to be bound by the Protective Order (subject to the modifications being proposed by QC)").  That is wrong.  QC proposes no modifications that would bring QC within the scope of many of the provisions of the Protective Order.  *See, e.g.*, Protective Order, Paragraphs 9, 14, 16, 20 and 27.  QC's proposed modifications do not assure that

QC will treat Confidential Discovery Material "just as the parties and numerous third

parties in the present case are treating it," QC Brief at 25.

2.     *QC's proposed modifications to the Protective Order allow any individual or entity affiliated with QC to access Confidential Discovery Material without the protections afforded by the Protective Order*

Third Parties have produced millions of pages of their most sensitive and

confidential business information, including pricing data, sales and marketing strategies,

product roadmaps, and other highly sensitive strategic business documents.  These

documents are "of the utmost proprietary and commercially sensitive nature."  Special

Master's Report at 113.  Disclosure of this information would cause significant

commercial harm to Third Parties.  There are no protections to protect Third Parties

against the tremendous risk that their documents and information will be disclosed.

The Protective Order currently allows eight, narrowly defined categories of

individuals to access Confidential Discovery Material, such as "Outside Counsel [for the

Parties]" and "Two In-House Litigation Counsel [for the Parties] identified to the

Producing Party."  *See* Protective Order, Paragraph 6.  Under QC's proposed

modifications to the Protective Order, any individual or entity affiliated with QC

potentially could access Confidential Discovery Material.  QC's failure to limit the

individuals or entities affiliated with QC who would have access to Confidential

Discovery Material is inimical to the interests of Third Parties.  QC describes itself as a

consumer association "comprised of approximately 170 local associations with more than

124,000 members."  QC Brief at 3.  It is unclear who the members of QC are and whether

or not they are competitors or are affiliated with companies that compete with Third

Parties.  Yet under QC's proposed modifications to the Protective Order, QC could

16

disclose Confidential Discovery Material to these 170 associations and 124,000 members and as-yet-unidentified courts and tribunals.

> 3.  *QC should not be allowed to use Confidential Discovery Material in speculative future proceedings*

QC should not be able to use Confidential Discovery Material in future actions in as-yet unidentified tribunals.  Without further information as to any potential future proceedings, the Court cannot evaluate whether the as-yet unidentified courts could provide adequate protections to the Confidential Discovery Material sought by QC or whether the Court has the ability to enforce any violation of the use of the documents in that hypothetical foreign litigation.  QC does not address how Third Parties would know whether, when, and to whom its documents are being produced, or how those parties to whom QC produces documents would be bound by the Protective Order.  The burden such a production to QC would place on Third Parties and the Court is immeasurable.

Furthermore, QC should not be permitted to use the Confidential Discovery Material "for purposes of . . . preparing . . . in EU Consumer Damages Litigation," as requested by QC in its proposed modifications, since the phrase "preparing . . . in EU Consumer Damages Litigation" is unintelligible.

The Special Master has already concluded that Confidential Discovery Material from this litigation should not be available in foreign proceedings, much less in as-yet unidentified foreign proceedings.  *See* Special Master's Report at 116-17.  QC has offered no reason why its need for the documents produced in this litigation, for use in its hypothetical case, is any more compelling than the litigation in Japan and California, which was in contemplation at the time the Protective Order was negotiated. Accordingly, QC's request to modify the Protective Order should be denied.

E.    **Providing QC With Access To Confidential Discovery Materials Creates Tremendous Risk And Places An Unreasonable Burden On The Third Parties**

The Court should exercise its discretion and deny QC's Application and Motion due to the unavailability of sufficient measures to assure the protection of the confidential documents of Third Parties.  The Protective Order was carefully negotiated and drafted to provide significant protection for the confidential business documents being produced in this litigation.  These protective measures were necessary to protect against the tremendous risk to the parties should the massive volumes of confidential information be exposed to competitors, customers, and the public.

QC's Application and Motion would undermine all of those efforts by making the confidential documents of Intel and the third parties available to QC.  To the extent QC, its member associations, or its individual members seek to use the documents in litigation in foreign jurisdictions, the third parties will be without adequate judicial procedures to protect the confidentiality of their documents.  But even if it were possible for third parties to enforce the Protective Order against QC and any others that may come into possession of the documents, the burden on the third parties to do so would be tremendous.  The ability of third parties to monitor the dissemination and use of their documents would be virtually eliminated.

V.    **CONCLUSION**

Based on the foregoing, the Third Parties respectfully request that the Special Master recommend that QC's Application and Motion be denied.

18

Respectfully submitted,

Dated: June 26, 2008                    **DRINKER BIDDLE & REATH LLP**

    /s/ David P. Primack
David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
(302) 467-4200
(302) 467-4201 (fax)
david.primack@dbr.com

Attorney for Hewlett-Packard Company

**JONES DAY**

    /s/ Daniel Conrad
Daniel Conrad (admitted pro hac vice)
Thomas Jackson
2727 N. Harwood St.
Dallas, TX 75201
(214) 969-5230
(214) 220-3939 (fax)
dtconrad@jonesday.com
trjackson@jonesday.com

Attorneys for Dell Inc.

**MONTGOMERY, MCCRAKEN, WALKER &
    RHOADS, LLP**

    /s/ R. Montgomery Donaldson
R. Montgomery Donaldson (DE#4367)
Montgomery, McCracken, Walker & Rhoads, LLP
1105 Market Street
Wilmington, DE 19801-1223
(302) 504-7840
(302) 504-7820 (fax)
rdonaldson@mmwr.com

Attorney for Microsoft Inc.

19

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that this 26th day of June, 2008, I caused a copy of the foregoing THIRD-PARTIES' OPPOSITION TO MOTION OF UNION FEDERALE DES CONSOMMATEURS-QUE CHOISIR TO INTERVENE FOR THE PURPOSE OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER AND APPLICATION PURSUANT TO 28 U.S.C. §1782 to be served via CM/ECF on parties in this case and via Email on the following parties:

> Frederick L. Cottrell, III (cottrell@rlf.com)
> Chad M. Shandler (shandler@rlf.com)
> Richards, Layton & Finger, P.A.
> One Rodney Square, P.O. Box 551
> Wilmington, DE  19899

> James L. Holzman (jlholzman@prickett.com)
> J. Clayton Athey (jcathey@prickett.com)
> Prickett, Jones &  Elliot, P.A.
> 1310 King Street, P.O. Box 1328
> Wilmington, DE  19899

> Richard Horwitz (rhorwitz@potteranderson.com)
> W. Harding Drane, Jr. (wdrane@potteranderson.com)
> Potter Anderson & Corroon LLP
> 1313 North Market Street, P.O. Box 951
> Wilmington, DE  19801

Dated:  June 26, 2008                    **DRINKER BIDDLE & REATH LLP**

                                         __/s/ David P. Primack_____
                                         David P. Primack (DE 4449)
                                         1100 N. Market Street, Suite 1000
                                         Wilmington, DE  19801-1254
                                         (302) 467-4200
                                         (302) 467-4201 (fax)