## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTEL CORP. MICROPROCESSOR | ) | MDL No. 05-1717-JJF |
| ANTITRUST LITIGATION | ) | |
| | ) | |
| | ) | |
| ADVANCED MICRO DEVICES, INC., a | ) | |
| Delaware corporation, and AMD | ) | |
| INTERNATIONAL SALES & SERVICE, | ) | |
| LTD., a Delaware corporation, | ) | Civil Action No. 05-441-JJF |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, a Delaware | ) | |
| corporation, and INTEL KABUSHIKI | ) | |
| KAISHA, a Japanese corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PHIL PAUL, on behalf of himself and al | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 05-485-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| INTEL CORPORATION, | ) | CONSOLIDATED ACTION |
| | ) | |
| Defendant. | ) | |

**ACER AMERICA CORPORATION'S OPPOSITION TO (1)UNION FEDERALE DES
CONSOMMATEURS – QUE CHOISIR'S MOTION TO INTERVENE FOR THE
LIMITED PURPOSE OF SEEKING MODIFICATION TO PROTECTIVE ORDERS;
AND (2) APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER
REQUIRING INTEL AND THIRD PARTIES TO PROVIDE ACCESS TO
DOCUMENTS AND DEPOSITION TESTIMONY FOR USE IN FOREIGN
PROCEEDINGS**

J. Travis Laster (# 3514)
John M. Seaman (# 3868)
ABRAMS & LASTER LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
302.778.1000
laster@abramslaster.com
seaman@abramslaster.com

*Attorneys for Non-Party
Acer America Corporation*

Dated: June 26, 2008

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ................... 1

III.  SUMMARY OF ARGUMENT ................................................................... 1

IV.   STATEMENT OF FACTS ........................................................................ 3

V.    ARGUMENT ........................................................................................... 6

    A.    UFCQC Has Failed To Meet The Fundamental Requirements Mandated
        By § 1782(a). ............................................................................... 7

        1.    UFCQC Is Not An "Interested Person" Within The Meaning
            Of 28 U.S.C. § 1782. ....................................................... 7

        2.    UFCQC Has Not Demonstrated That The Documents And
            Testimony That It Seeks To Have Produced To It By Third Parties
            Are Third Parties Which Reside Or Are Found Within
            The Jurisdiction Of This Court. .......................................... 8

    B.    The Court Should Exercise Its Discretion To Deny UFCQC's Application. .......... 9

        1.    The First Factor Weighs Heavily Against Permitting UFCQC To
            Obtain Access To AAC's And The Other Third Parties'
            Discovery Materials Indirectly Through Intel. ....................... 10

        2.    The First Factor Also Weighs Against Permitting UFCQC To
            Obtain Direct Access To Discovery Materials From AAC (And
            The Other Third Parties) Because The European Commission
            Has Already Obtained Information From Acer For Its Use In The
            European Commission Proceeding Against Intel. ..................... 11

        3.    The Second Factor Also Weighs Heavily Against Granting
            UFCQC's Application To Gain Access To The Third Parties'
            Discovery Materials Either Directly Or Indirectly. ................. 12

        4.    The Third Factor Weighs Against Granting UFCQC's Application
            To Gain Access To The Third Parties' Discovery Materials
            Either Directly Or Indirectly. ............................................ 12

5.  The Fourth Factor Weighs Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly. ....................................................13

 i.  UFCQC's Application Is Overly Intrusive. ....................................13

 ii.  UFCQC's Application Will Impose Severe Burdens On AAC And Other Third Parties. ......................................................14

6.  The Fifth Factor Weighs Strongly Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly. ....................................................15

C.  The Court Should Not Modify The Protective Order. ............................................16

1.  Because AAC (And Other Third Parties) Relied Heavily On The Current Terms of the Protective Order In Its Considerations As Whether Or Not To Produce Highly Confidential Information, UFCQC's Application Should Be Denied. .................................................16

2.  The Court Should Also Consider The Realistic Ability Of The Court To Enforce The Terms Of The Protective Order Against UFCQC If It Abuses The Protective Order In Europe. ............................17

VI.  CONCLUSION .................................................................................................17

TABLE OF AUTHORITIES

CASES

*Advanced Micro Devices, Inc.* v. *Intel Corp.*
   2004 WL 2282320 (N.D. Cal. 2004) ............................................................. 10

*In re Microsoft (IBM)*
   428 F.Supp. 2d 188, 194 (S.D.N.Y. 2006) ..................................................... 12

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
   542 US 241 (2004) ........................................................................... 2, 7, 9-12

*Pansy* v. *Borough of Stroudsburg*
   23 F.3d 772, 790 (3rd Cir. 1994) .................................................................... 16

STATUTES

28 U.S.C. § 1782 .................................................................................... *passim*

Federal Rule of Civil Procedure, Rule 24(b) .................................................. 1

OTHER AUTHORITIES

*European Commission Legislation Regarding Access To Commission Files*
   http://european.eu/scadplus/leg/en/lvb/110106.htm .................................... 12

## I.    **INTRODUCTION**

Third party Acer America Corporation ("AAC") strongly urges the Court to deny Union Federale des Consommateurs – Que Choisir's ("UFCQC") motion to intervene and request to modify the Protective Order,[1] and its further application for an order requiring Intel and the third parties to provide UFCQC access to discovery materials produced in the cases presided over by this Court ("Application"). Although AAC has joined in the Opposition of other third parties, AAC submits this Opposition separately to emphasize certain aspects of its fierce opposition to UFCQC's Application.

In filing this Opposition and the supporting declarations, AAC does not intend to waive any objections that it has to this Court's jurisdiction over AAC with respect to any issues present in this litigation. Indeed, AAC hereby expressly reserves all of its rights.

## II.    **STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.**

Pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1782(a), UFCQC has moved to intervene in the above-captioned actions for the stated purpose of seeking modifications to the Protective Order(s), and for an order requiring Intel and the third parties to provide access to documents and deposition testimony for use in foreign proceedings. AAC hereby opposes UFCQC's Application.

## III.    **SUMMARY OF ARGUMENT**

UFCQC has completely failed to establish that it has met the requirements mandated 28 U.S.C. § 1782(a) to obtain access to discovery materials in the present case(s) for use in future possible proceedings. First, UFCQC has failed to establish that it has met the fundamental requirement that the third parties from whom it seeks discovery information

---

[1] Docket Item Number ("D.I.) 275. (Unless otherwise cited, the Docket Items cited herein shall only refer to the docket in Case No. 05-md-1717-JJF).

"reside" or can be "found" in the jurisdiction of this Court. Second, it has not established that it qualifies as an "interested person" under § 1782(a).

In addition to those failures, the Court should exercise its discretion to deny UFCQC's Application based upon the 28 U.S.C. § 1782(a) factors enumerated in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which weigh heavily against granting UFCQC Application. First, the need for § 1782(a) aid in this matter is not as apparent given Acer Europe's participation in the European Proceeding and the European Commission's jurisdiction over Acer Europe. Second, while the European Commission has begun an investigation against Intel, it has informed the United States Supreme Court that it does not want the district court's assistance in the Intel investigation. Third, UFCQC's attempt to gain access to the discovery materials in the present case is merely an attempt to circumvent the rules established by the European Commission for access to information. Fourth, UFCQC's Application is unduly intrusive, overly broad, and, if granted, will impose severe burdens on AAC (and other third parties). Fifth, granting access to the discovery materials and otherwise modifying the Protective Order would frustrate the efforts of the Court, the Parties, and especially the Third Parties.

The Protective Order in this matter should not be modified because AAC and the other third parties have been induced to produce documents in reliance on the current terms of the Protective Order, and they have relied heavily on the current terms of the Protective Order to protect their information against disclosure to third parties. Moreover, there is a strong risk that the Court will not be able to enforce the protections of the Protective Order against UFCQC or abroad, and thus there is an extreme risk that AAC's (and the other Third Parties') highly confidential information will be disclosed.

## IV.    STATEMENT OF FACTS

On or about October 4, 2005, plaintiff Advanced Micro Devices, Inc. ("AMD") attempted to serve third-party Acer America Corporation ("AAC") with a subpoena *duces tecum* for the production of business records ("AMD Subpoena). McMahon Decl., 3. Similarly, on or about July 26, 2006, Intel Corporation ("Intel") attempted to serve ACC with a subpoena *duces tecum* for the production of business records ("Intel Subpoena"). *Id.* In addition, during the approximately June 23, 2006 through June 26, 2006 time period, Class Plaintiffs attempted to serve a series of subpoenas on AAC ("Class Subpoenas") (the AMD, Intel, and Class Subpoenas will hereinafter be collectively referred to as the "Subpoenas") (AMD, Intel, and the Class Plaintiffs will hereinafter be collectively referred to as the "Parties"). *Id.* AAC timely objected to the improperly served and/or otherwise invalid Subpoenas. *Id.*

On or about April 20, 2006, the Court ordered the Parties to file a joint proposed protective order. (Case No. 1:05-cv-00441-JJF - Minute Entry). Thereafter, pursuant to Case Management Order No. 1, the Court instructed the Parties to provide notice to third parties from whom extensive discovery was expected to be taken. D.I. 123. The third parties were invited to submit their written comments and objections to the proposed protective order. *Id.* At least twenty-one (21) third parties ("Third Parties") provided written comments and objections to the Court regarding the terms of the proposed protective order. D.I.'s 127, 128, 132-134, 136, 139, 141-146. Following the third parties submission of objections/comments, the Parties filed responses thereto. D.I. 148 -149.

On or about June 9, 2006, the Parties distributed to the Third Parties a revised version of the proposed protective order. McMahon Decl., 4. On June 12, 2006, the Court

3

held a marathon hearing wherein it listened to more than six hours of oral argument and considered the comments and objections of the Third Parties and the Parties. *Id.*, at 5. Several Third Parties, including AAC, joined in the objections, comments, and arguments of other Third Parties but allowed one representative of such Third Parties to address the Court on numerous issues – while reserving all rights and objections. *Id.* During the hearing, the Third Parties caucused together and with the Parties to resolve several of the disputes concerning the proposed protective order. *Id.* Some issues, on which the Third Parties and Parties could not agree, were resolved by the Special Master. *Id.* Moreover, other issues which remained unresolved were taken under advisement. *Id.*

As found by the Special Master in the present matter, the most controversial issue – *and the most "vehemently opposed" by the Third Parties* – was the use of discovery materials produced in the present litigation (Case Nos. 05-1717; 05-441; and 05-485) in other litigations (*i.e.*, the Japan Litigation and the California Class Action Litigation). *See e.g.*, Special Master's Report (D.I. 221), at 79 and 110. In this regard, the Special Master carefully considered the Parties' proposal to be able to use such discovery materials in litigations outside the present ones – and rejected it. *Id.*, at 116-117.

On or about June 27, 2006, the Special Mater issued his report and recommended a revised form of the proposed protective order. D.I. 221. Shortly thereafter, on or about July 17, 2006, AMD and Class Plaintiffs filed objections to the Special Master's Report and Recommendations. D.I. 232. On or about July 20, 2006, Intel filed its response to AMD's objections. D.I. 235. On September 26, 2006, the Court adopted the revised form of the proposed protective order as recommended by the Special Master ("Protective Order"). D.I. 275.

4

Since the Protective Order was entered, AAC's counsel has, from time-to-time, sporadically engaged in discussions with AMD and Intel relating to "electronic information" related document production, and with the Parties' counsel regarding "transactional data" production. McMahon Decl., ¶ 6.   The Parties have been interested in obtaining information from not only AAC, a California corporation – but also a separate entity, Acer, Inc., a Taiwanese company headquartered in Taipei, Taiwan.   *Id.*    The issues as to whether the Parties' assorted Subpoenas have been properly served on Acer, Inc., whether Acer, Inc. is subject to the jurisdiction of this Court, and the scope of the Subpoenas in the present matter have been hotly contested.   *Id.*, at ¶ 7.   Indeed, because of such disputes, to date, AAC has produced only a limited sample of transactional data to the Parties, while Acer, Inc. has not yet produced any electronic information or transactional data to the Parties.   *Id.*

Ultimately, to avoid protracted discovery disputes and expensive motion practice, the Parties' counsel and AAC's counsel have engaged in good faith discussions geared toward the production of more information.   *Id.*    Indeed, although to date AAC's counsel has not reached any agreement with the Parties relating to a full production of "transactional data" (which Parties' counsel seeks to include Acer, Inc.'s information), AAC's counsel has in recent weeks been actively engaged in meet and confer discussions with Parties' counsel about that subject.   *Id.*    Moreover, in March and April of 2008, ACC's counsel was also involved in discussions regarding the terms of a "discovery agreement" with AMD's and Intel's counsel regarding a production of "electronic information."   *Id.*    Under the terms of the proposed agreement, both AAC and Acer, Inc. would voluntarily produce requested information as defined by the agreement.   *Id.*

Then, on or about June 11, 2008, AAC's counsel received the "Notice Regarding Motion to Modify Protective Order to Provide Access to Documents and Deposition Testimony for Use in Foreign Proceedings Pursuant to 28 U.S.C. Section 1782." *Id.*, at ¶ 8.

## V.    ARGUMENT

In its Application, among other things not discussed herein, UFCQC is seeking that the Court issue a two-pronged order requiring (i) the Third Parties,[2] and (ii) Intel - to provide access to documents and deposition testimony produced in the present matter for use in unspecified and imagined foreign proceedings. *See* Application, Section C. As it relates to the Third Parties, the manifest implications of UFCQC's Application are as follows: if UFCQC's Application were to be granted by the Court, in the future, UFCQC could either (1) obtain access to Third Party produced discovery materials – directly from the Third Parties; or (2) UFCQC could obtain access to Third Party discovery materials produced to Intel by the Third Parties – indirectly through Intel.

UFCQC's Application is fundamentally flawed as to the Third Parties, and otherwise deficient as to Intel. Moreover, even beyond the fundamental deficiencies of UFCQC's Application, the Court should use its discretion to deny UFCQC's Application because the five factors enunciated by the United States Supreme Court to guide district courts each weigh against UFCQC. As a result, at a minimum, the Court should deny this aspect of UFCQC's Application, as well as UFCQC's request to modify the Protective Order.

---

[2] "Third Parties" refers to the third parties, who the Parties in the present action have attempted to subpoena and/or have subpoenaed, including, but not limited to, AAC.

### A.    UFCQC Has Failed To Meet The Fundamental Requirements Mandated By § 1782(a).

First, UFCQC has completely failed to show that it has any right to obtain discovery materials directly from the Third Parties. Pursuant to 28 U.S.C. § 1782(a), upon a request made by a foreign or international tribunal or upon the application of any "interested person," a district court has discretion to order a person who "resides" within or is "found" within its district to produce documents or to give testimony for use in a proceeding in a foreign or international tribunal. *See* 28 U.S.C. § 1782(a). Accordingly, the Court should deny UFCQC's Application on the grounds that it has not met the fundamental requirements mandated by § 1782.

### 1.    UFCQC Is Not An "Interested Person" Within The Meaning Of 28 U.S.C. § 1782.

Simply because UFCQC may have been granted permission by the European Commission to appear at the March 11, 2008 hearing in Brussels to present its views on behalf of consumers" (*see* King Decl., ¶ 7) - that does not mean UFCQC is an "interested person" within the meaning of § 1782. Although UFCQC cites some of the pertinent considerations listed by the Supreme Court in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), UFCQC utterly fails to explain how and why it qualifies as an "interested person" under the Supreme Court's reasoning.

In *Intel*, the Supreme Court confined its holding that AMD qualified as an "interested person" specifically because AMD was *the complainant* in a European Commission investigation. *Id.*, at 256. Indeed, weighing heavily in the Supreme Court's consideration as to whether AMD qualified as an "interested person" were the facts that: (1) "the complainant has significant procedural rights;" (2) that the complainant could "seek judicial review of the Commission's disposition of a complaint;" (3) that "[t]he complainant who triggers a European

7

Commission investigation has a significant role in the process;" and (4) that "in addition to prompting an investigation, the complainant has the right to submit information for DG-Competition's consideration...." *Id.*, at 255-256. In the present case, UFCQC has failed to demonstrate that its role before the European Commission is equally weighty. Accordingly, because UFCQC has failed to demonstrate that it has such "participation rights" before the European Commission (as was considered especially important by the Supreme Court) – its Application should be denied. *Id.*, at 256.

> **2.      UFCQC Has Not Demonstrated That The Documents And Testimony That It Seeks To Have Produced To It By Third Parties Are Third Parties Which Reside Or Are Found Within The Jurisdiction Of This Court.**

The breadth of UFCQC's Application is too sweeping. Its attempt to gain access to the documents and testimony of third parties who are voluntarily providing such materials in their effort to avoid the burden and expense of becoming embroiled in this clash of titans, and/or who are otherwise not subject to the jurisdiction of this Court - goes far beyond the purview of § 1782. Indeed, UFCQC has not provided any argument, much less evidence, to demonstrate to the Court that each third party from whom it seeks access to such third parties' most confidential information "resides" or can be "found" within the jurisdiction of this Court. For this reason alone, UFCQC's Application must be denied.[3]

In the matter at bar, as just one example, the Parties attempted to serve subpoenas on AAC, a California corporation, which purported to require AAC to produce the documents of Acer, Inc., which is a Taiwanese corporation headquartered in Taipei, Taiwan. McMahon Decl., ¶ 6.     AAC timely objected to the Subpoenas. *Id.*, at ¶ 7. Thereafter, the

---

[3]  Such considerations are critical to third party foreign entities who have negotiated in good faith with the Parties to produce documents in this matter but who have vehemently opposed and objected to the Parties' attempts to subjugate such entities to the jurisdiction of the Court without following the proper procedural mechanisms mandated by the Federal Rules of Civil Procedure.

Parties' counsel and AAC's counsel have hotly disputed whether in this U.S.-based action the Parties are entitled to any of Acer, Inc.'s documents that are not otherwise in the custody, control, or possession of AAC – especially, in addition to other reasons, in light of this Court's dismissal of the Parties' "foreign claims." *Id.* Ultimately, after numerous discussions, Parties' counsel and AAC's counsel have agreed to disagree – but have pursued the idea of resolving their disputes by engaging in a voluntary production of electronic information and transactional data. *Id.* The idea would be to avoid protracted and expensive motion practice by having AAC and Acer, Inc. voluntarily produce a limited amount of information that was otherwise requested under the Subpoenas. *Id.*

In its Application, UFCQC has not established its right under § 1782(a) to such information. Accordingly, UFCQC's Application must be denied to the extent that it seeks access to the aforementioned information directly from any Third Party.

**B.    The Court Should Exercise Its Discretion To Deny UFCQC's Application.**

In the unlikely event that the Court finds that UFCQC has met the fundamental requirements of § 1782(a) mentioned above, the Court should nonetheless exercise its discretion to deny UFCQC's Application to obtain access to discovery materials produced in this matter. In Intel, the Supreme Court emphasized "that district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so. *Intel*, 542 U.S. at 264. To assist district courts, the Supreme Court listed factors that the district court should consider when ruling on a § 1782(a) request, to wit:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.

9

Second,…a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.

[Third], a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.

[Fourth], unduly intrusive or burdensome requests may be rejected or trimmed.

[Fifth], [t]he District Court might also consider the significance of the protective order entered in the matter.

*Intel*, 542 U.S. at 264-266, fn 19.  When considered in the context of the present application, these factors weigh heavily against granting UFCQC's Application.

1.    **The First Factor Weighs Heavily Against Permitting UFCQC To Obtain Access To AAC's And The Other Third Parties' Discovery Materials Indirectly Through Intel.**

In *Intel*, the Supreme Court remanded the case to the United States District Court for the Northern District of California ("Northern District") for considerations of the factors enumerated by the Supreme Court.  *Intel*, 542 U.S. at 266.  Thereafter, in the remand proceeding in *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 2004 WL 2282320 (N.D. Cal. 2004) ("*AMD v. Intel*"), the Northern District found that because the Supreme Court had already determined that Intel was a participant in the European Commission proceedings – the first factor weighed against granting AMD's application in that matter.  *AMD v. Intel*, WL 2282320, at *2.  Since UFCQC's present attempt to gain access is purportedly tied to the same European Commission investigation, *a fortiori*, this factor weighs strongly against UFCQC's Application.  As a result, UFCQC's end-around attempt to avoid the fatal deficiencies discussed above by seeking such Third Party produced documents indirectly from Intel should be denied.

10

2.      **The First Factor Also Weighs Against Permitting UFCQC To Obtain Direct Access To Discovery Materials From AAC (And The Other Third Parties) Because The European Commission Has Already Obtained Information From Acer For Its Use In The European Commission Proceeding Against Intel.**

In its discussion of the first factor, and why the need for § 1782(a) assistance is not necessary where the person from whom discovery is sought is a participant in the foreign proceeding, the Supreme Court in *Intel* went on to explain that because "[a] foreign tribunal has jurisdiction over those appearing before it…[it] can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunals jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

In the present case, the European Commission conducted a dawn raid at several industry related companies, including the offices of Acer Europe Services s.r.l. ("Acer Europe") and gathered documents and electronic information from Acer Europe – an entity within the jurisdiction of the European Commission. Wang Decl., ¶ 3. Thereafter, on or about December 15, 2005, the European Commission served a "Request for Information" on Acer Europe, and Acer Europe fully cooperated by answering questions propounded by the European Commission, and by producing further requested documentary and electronic information that was not seized in the dawn raid.[4] *Id.*, at ¶ 4. In addition, on several occasions since the European Commission launched its investigation into Intel, Acer Europe personnel and representatives have been interviewed and have answered questions propounded by Case Officers for the European Commission. *Id.*, at ¶ 5   Moreover, Acer Europe has provided

---

[4]   Please note that Acer Europe's productions to the European Commission have largely included "Confidential" materials which contain "Business Secrets." Wang Decl., ¶ 8. As a result, the European Commission is required to adhere to certain procedural safeguards to ensure that the information remain secret. *See* http://european.eu/scadplus/leg/en/lvb/110106.htm.

supplemental responses to the European Commission as information has become available through Acer Europe's efforts to cooperate. *Id.* ¶ 7. In short, Acer Europe has been *participating* in the European Commission's investigation for more than three years. Accordingly, as the Supreme Court opined in *Intel*, the need for § 1782(a) aid is not "apparent." *Intel*, 542 U.S. at 264; *see also In re Microsoft (IBM)*, 428 F.Supp. 2d 188, 194 (S.D.N.Y. 2006) (where the district court denied Microsoft's § 1782(a) application because the documents sought by Microsoft were "within the Commission's reach.").

**3.      The Second Factor Also Weighs Heavily Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly.**

The European Commission has already informed the United States Supreme Court that it did not want the district court's assistance in the Intel investigation. *Intel*, 542 U.S. at 265. In addition, since UFCQC has not filed any actions against Intel at this juncture – and has indicated that it will not do so until the European Commission has rendered a decision – the district court in the present case is at a loss to be able to evaluate "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.*, at 264. Accordingly, UFCQC's Application should be denied.

**4.      The Third Factor Weighs Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly.**

It appears obvious that UFCQC's attempt to gain access to the discovery materials in the present case is merely an attempt to circumvent the rules established by the European Commission for access to information. Indeed, it appears that UFCQC would not have access to much of the data gathered by the European Commission. *See* http://european.eu/scadplus/leg/en/lvb/110106.htm. Thus, it is plain UFCQC is merely

attempting to circumvent established European Commission procedures. As a result, its Application should be denied.

**5.     The Fourth Factor Weighs Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly.**

**i.     UFCQC's Application Is Overly Intrusive.**

UFCQC's Application is unequivocally unduly intrusive and extremely overbroad as it pertains to discovery materials that it seeks from AAC and other third parties. As noted above, the Parties are seeking that AAC (and Acer, Inc.) produce electronic information and transactional data, which has included (and is proposed to include) highly confidential information, to wit: sales and cost data, pricing information, discount information, product and technical information, marketing materials, and highly sensitive communications between senior level executives and customers. Wang Decl., ¶ 9.

It is difficult to imagine a more intrusive demand than that being proposed by UFCQC. Even the Special Master noted that the most controversial issue relating to the Protective Order – *and the most "vehemently opposed" by the Third Parties* – was the use of discovery materials produced in the present litigation in other litigations (i.e., the Japan Litigation and the California Class Action Litigation). *See e.g.*, Special Master's Report (D.I. 221), at 79 and 110. In this regard, the Special Master and the Court carefully considered the Parties' proposal to be able to use such discovery materials in the Japan Litigation and the California Class Action Litigation – and rejected it. *Id.*, at 116-117. In so deciding, the Special Master gave "significant weight" to the Third Parties' arguments that their Confidential Discovery Materials were of "the utmost proprietary and commercially sensitive nature." *See* Special Master's Report (D.I. 221), at 113. The same considerations apply to UFCQC's

13

present Application – but with an even more heightened concern given the nature of UFCQC, and its complete lack of need for the discovery materials demanded.

UFCQC's Application is also intrusive because it is grossly overbroad. The information sought includes information that does not pertain whatsoever to *European* matters. Indeed, UFCQC has failed to articulate how its sweeping access to electronic information and transactional data relevant to the present action in the United States will be relevant and/or admissible in European actions. In addition, UFCQC has admitted in its Application that "[i]n many Member States of the EU, a decision of the European Commission finding an infringement is…conclusive proof in the civil courts.…" Such an admission thus begs the question: "If UFCQC will have "conclusive proof" of Intel's infringement – what possible reason would it have for needing access to gigabytes of information which it would not need to use? *See* Application, p. 9. UFCQC has offered no explanation. Moreover, UFCQC has further admitted in its Application that: "It has neither the time nor the resources to troll through millions of pages of documents, attend the potentially hundreds of depositions.…" *See* Application, p. 23. So what is the point of giving it access? Accordingly, UFCQC's Application is manifestly overbroad – even by its own admissions – and thus its Application should be denied.

ii.    **UFCQC's Application Will Impose Severe Burdens On AAC And Other Third Parties.**

According to the vague representations of UFCQC, it plans to use the discovery materials to which it gains access under its Application in future consumer litigations, if any. *See e.g.*, Application, p. 14. It does not state where, it does not state when. Accordingly, for years to come, AAC and the other third parties will have to constantly monitor the use of its documents in potentially dozens of other jurisdictions across Europe. Moreover, AAC may

14

have to respond to an equal number of challenges to documents marked "Confidential" under the Protective Order – thereby subjecting AAC and the other third parties to a stream of expensive litigations over several years.

6.     <u><b>The Fifth Factor Weighs Strongly Against Granting UFCQC's Application To Gain Access To The Third Parties' Discovery Materials Either Directly Or Indirectly.</b></u>

The Court may deny a § 1782(a) application that frustrates the protective order entered by the district court. *Intel*, 542 at 266, fn. 19. In the present case, the modification of the Protective Order to permit UFCQC to have access to the discovery materials of the Third Parties directly, or indirectly through Intel, would gravely frustrate the Protective Order in place in the present matter.

In the case at bar, this Court wisely foresaw the litany of challenges that individual third parties would raise at different intervals as the Parties sought access to their data. In a novel and praiseworthy effort to short-circuit such intermittent challenges, and in an effort to craft a protective order which considered the most wide-ranging of viewpoints from those persons and entities who where known to be imminently impacted by the terms and conditions of the protective order, this Court took the bold and unprecedented steps of seeking written comments and objections to the proposed protective order from the affected third parties; and listening to and considering hours and hours oral argument by such third parties. Ultimately, the Court issued the Protective Order in this case – *which may be the most carefully considered protective order in the history of U.S. litigation.*

Now, Johnny-come-lately UFCQC seeks to frustrate all of that effort by the Third Parties, the Parties, and the Court. In simple words, it is completely unacceptable to AAC (*see* Wang Decl., ¶ 10) (as well as other third parties as demonstrated by the briefs submitted herein) to modify the Protective Order to permit UFCQC to gain access to the

15

discovery materials already submitted in this matter – and proposed to be submitted in the future.  As a result, the Court should deny UFCQC's Application.

C.     **The Court Should Not Modify The Protective Order.**

AAC also writes separately here to emphasize two of its gravest concerns relating to UFCQC's Application.  Among the factors that the district should consider in deciding whether to modify the Protective Order in this case are: (1) AAC's and the other parties' reliance on the current form of the Protective Order; and (2) the extent to which the Court will be able to enforce the terms of the Protective Order against UFCQC.  *See e.g., Pansy* v. *Borough of Stroudsburg*, 23 F.3d 772, 790 (3rd Cir. 1994) ("one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.").

1.     **Because AAC (And Other Third Parties) Relied Heavily On The Current Terms of the Protective Order In Its Considerations As Whether Or Not To Produce Highly Confidential Information, UFCQC's Application Should Be Denied.**

"The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery…. For instance, reliance would be greater where a trade secret was involved…." *See Pansy*, 23 F.3d at 790, fn. 25.  In the present case, AAC relied heavily on the final terms and conditions of the Protective Order in deciding whether to produce highly confidential electronic information and transactional data to the Parties, and with respect to its considerations of the follow up productions currently proposed.  Wang Decl., ¶ 9.  As a result, the terms of the Protective Order should not be modified.

16

2.     **The Court Should Also Consider The Realistic Ability Of The Court To Enforce The Terms Of The Protective Order Against UFCQC If It Abuses The Protective Order In Europe.**

AAC is gravely concerned about the enforceability of the Protective Order against UFCQC.   Wang Decl., ¶ 11.   According to UFCQC, it is a French consumer association comprised of approximately 170 local associations with more than 124,000 members.  *See* Application, p. 3.   Presumably, although not clearly detailed by UFCQC, UFCQC – or perhaps some or all of these associations and/or members at some point (UFCQC does not say when or if certain) - will initiate damages litigations against Intel, and will somehow require the information that AAC (and other third parties) have produced in the present action.   There is absolutely no way this Court can effectively enforce the terms and conditions of the Protective Order under such circumstances.   Accordingly, the Court should deny UFCQC's Application.

## VI.   CONCLUSION

For the reasons stated herein, and for the reasons separately argued by other Third Parties (and Intel), AAC respectfully requests that the Court deny UFCQC's Application.

Respectfully submitted,


   */s/ John M. Seaman*
J. Travis Laster (# 3514)
John M. Seaman (# 3868)
ABRAMS & LASTER LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
302.778.1000
Laster@abramslaster.com
Seaman@abramslaster.com

*Attorneys for Non-Party*
*Acer America Corporation*

DATED: June 26, 2008

17