Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.), 2004-2 Trade Cases P 74,569
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.))

▷ Advanced Micro Devices v. Intel Corp.
N.D.Cal.,2004.

United States District Court,N.D. California.
ADVANCED MICRO DEVICES, INC., Plaintiff,
v.
INTEL CORPORATION, Defendant.
No. C 01-7033.

Oct. 4, 2004.

Patrick Lynch, David I. Hurwitz, O'Melveny & Myers LLP, Los Angeles, CA, for Plaintiff.
Joseph Kattan, Gibson Dunn & Crutcher, Washington, DC, Robert E. Cooper, Samuel G. Liversidge, Gibson Dunn & Crutcher LLP, Los Angeles, CA, James A. Murray, Santa Clara, CA, for Defendant.

ORDER DENYING IN FULL AMD'S AMENDED APPLICATION PURSUANT TO 28 U.S.C. § 1782(a)

WARE, J.

I. INTRODUCTION

*1 Advanced Micro Devices, Inc. ("AMD") initiated this miscellaneous action to obtain discovery from Intel Corporation ("Intel") pursuant to 28 U.S.C. § 1782(a). The Court referred the action to Magistrate Judge Lloyd, who issued an "Order Granting in Part AMD's Amended Application For Order Directing Intel To Produce Documents Pursuant To 28 U.S.C. § 1782 And Denying Intel's Cross-Application."On September 27, 2004, the Court heard argument on Intel's Motion for *denovo* Determination of AMD's Amended Application and Intel's Cross-Application Pursuant to 28 U.S.C. § 1782; Objections To Magistrate Judge's Recommended Decision. Having conducted a *denovo* review, and based upon all papers filed to date and the comments of counsel, the Court denies in full AMD's amended application for discovery.

II. BACKGROUND

In October of 2000, AMD filed a complaint with he European Commission ("EC") against Intel for engaging in alleged anti-competitive behavior in violation of European laws. AMD describes the complaint as including the following three major charges:

(1) that Intel uses "Intel Inside" and other "market development fund" programs as loyalty rebates to secure the agreement of PC manufacturers and retailers to deal exclusively in Intel-based PCs,

(2) that Intel withholds product allocations, roadmap information, or technology to coerce PC manufacturers and retailers to deal exclusively with Intel, and

(3) that Intel forms private, standard-setting cartels that establish interfaces between microprocessors and other components of the PC system, and by excluding AMD and other disfavored firms from access to this critical information Intel promotes its monopoly on microprocessors.

In pursuit of that complaint, AMD filed an application in this Court for an order directing Intel to produce documents pursuant to 28 U.S.C. § 1782.Section 1782(a) provides that a federal district court "may order" a person "resid[ing]" or "found" in the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal ... upon application of any interested person."In its present form, AMD's application consists of seventy (70) document requests, sixty-seven (67) of which essentially seek Intel documents produced to Intergraph Corporation in an action between the parties in the Northern District of Alabama, *Intergraph Corporation v. Intel Corporation,* CV 97-N-3023-NE (the "Intergraph case"). Intel produced approximately 500,00 pages of confidential business information in the course of the Intergraph case.

The Intergraph case included allegations of patent infringement, state law violations, and antitrust claims. Intergraph's antitrust claims were reportedly based upon assertions that Intel's decision not to

Case 1:05-cv-00441-JJF    Document 749-2    Filed 06/26/2008    Page 2 of 3

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.), 2004-2 Trade Cases P 74,569
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.))**

supply Intergraph with the patented Intel sample and pre-release microprocessors constituted monopolization of the microprocessor market; that Intel violated Section 2 of the Sherman Act by using its monopoly microprocessors to leverage a competitive advantage in the downstream markets of workstations, graphics accelerators and chipsets; and that Intel conspired with Intergraph workstation competitors to hinder Intergraph's sale of workstations to selected digital animation customers. Intergraph's antitrust claims were rejected on summary judgment.*Intergraph Corp. v. Intel Corp., 88 F.Supp.2d 1288 (N.D.Ala.2000), aff'd 253 F.3d 695 (Fed.Cir.2001).*

### III. DISCUSSION

*2 This Court has the benefit of the Supreme Court's determination that Section 1782(a) authorizes, but does not require a federal district court to authorize the discovery sought in this case. *Intel Corp. v. Advanced Micro Devices, Inc.,* --- U.S. ----, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004).[FN1] To guide this Court on remand, the Supreme Court delineated four main factors that "bear consideration" in ruling on a § 1782 request. First, the Supreme Court found that "when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."*Id.* at 2483. The Supreme Court reasoned as follows:

> FN1. In reaching this conclusion, the Supreme Court resolved three key issues. First, it held that Section 1782 does not contain a "foreign-discoverability" requirement. *Id.* at 2476. Thus, AMD is not required in this case to make a threshold showing that the discovery it seeks would have been discoverable in the European Commission investigation had those documents been located within the Union. Second, the Supreme Court held that Section 1782(a) makes discovery available to complainants, such as AMD, who do not have the status of private "litigants" and are not sovereign agents. *Id.* Third, the Supreme Court held that a "proceeding" before a foreign "tribunal" need not be "pending" nor "imminent" for an applicant to invoke § 1782(a).*Id.* Instead, " § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation."*Id.* at 2480.

A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.... In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.* Second, the Supreme Court found that the district court faced with a § 1782(a) request "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."*Id.* Third, the Supreme Court also stated that "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."*Id.* Fourth, the Supreme Court instructed that "unduly intrusive or burdensome requests may be rejected or trimmed."*Id.*

Having considered the factors set forth by the Supreme Court, this Court, in its discretion, holds that AMD's application for discovery should be denied in full. First, the Supreme Court has already determined that Intel is a participant in the EC proceedings, and that participant-status is significant because the EC has jurisdiction over Intel, and therefore could simply ask Intel to produce any or all of the discovery AMD now seeks. The EC, however, has not sought the documents AMD now seeks. Therefore, the first factor weighs against granting AMD's application.

Second, the EC is not receptive to judicial assistance in this case. On this issue, it is significant to this Court that the Supreme Court cited to the EC's two *amicuscuriae* briefs to support the finding that the EC "does not need or want" this Court's assistance in obtaining the documents AMD seeks. *See* European Commission *Amicus Curiae* 11-16; Brief for European Commission as *Amicus Curiae* in Support of Pet. for Cert. 4-8. The EC also stated that it "does not consider it necessary to request or even

Case 1:05-cv-00441-JJF   Document 749-2   Filed 06/26/2008   Page 3 of 3

Not Reported in F.Supp.2d                                                                                  Page 3
Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.), 2004-2 Trade Cases P 74,569
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.))**

subsequently to review the documents sought" by AMD in this case. Brief for European Commission as *Amicus Curiae* in Support of Pet. for Cert. 4. Moreover, the EC has stated that granting AMD's § 1782(a) request would jeopardize "vital Commission interests." *See* European Commission *Amicus Curiae* 15.

*3 Third, AMD's § 1782(a) application appears to be an attempt to circumvent the EC decision not to pursue such discovery. *See* European Commission *Amicus Curiae* 6.

Because three out of the four factors discussed above clearly weigh against granting AMD's application, the Court finds it largely unnecessary and purely academic to address the final factor, namely whether the requests are unduly intrusive or burdensome. Nevertheless, for the sake of completeness, the Court finds that the documents sought in AMD's application are unduly intrusive and burdensome. AMD has made no attempt to tailor its application to the subject matter of the EC complaint. For example, AMD's document requests do not contain the words "Europe" or "European," the name of any European country, or the name or description of any European OEM or retailer. Instead, it appears that AMD intentionally kept the requests broad, essentially lifting 67 out of its 70 document requests verbatim from requests served on Intel by Intergraph. The breadth of AMD's application, when considered in light of the EC's determination that the requested documents are unwanted and unlikely to be reviewed, weighs against granting any portion of AMD's application.

### IV. CONCLUSION

For the reasons set forth above, AMD's amended application for discovery is denied in full. Intel's cross-application is denied as moot.

N.D.Cal.,2004.
Advanced Micro Devices v. Intel Corp.
Not Reported in F.Supp.2d, 2004 WL 2282320 (N.D.Cal.), 2004-2 Trade Cases P 74,569

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.