**ABRAMS & LASTER LLP**
20 MONTCHANIN ROAD, SUITE 200
WILMINGTON, DE 19807
MAIN: 302-778-1000
FAX: 302-778-1001

JOHN M. SEAMAN

DIRECT DIAL NUMBER
302-778-1152
SEAMAN@ABRAMSLASTER.COM

July 1, 2008

**VIA CM/ECF, EMAIL AND HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 North Market Street, Suite 800
Wilmington, DE 19801-4226

RE: Amended Case Management Order No. 6:
*In Re Intel Corp.* (05-md-1717-JJF);
*Advanced Micro Devices, Inc. v. Intel Corp* (05-cv-441-JJF); and
*Phil Paul v. Intel Corp* (05-cv-485-JJF) (Consolidated Action)

Dear Judge Poppiti:

This firm, in addition to McMahon Serepca LLP, represents non-party Acer America Corporation ("AAC") in connection with the above-referenced actions. We write in response to the Court's Amended Case Management Order No. 6 ("Order No. 6"), filed on June 20, 2008 (05-md-1717, D.I. 965). Specifically, we write in response to Paragraph 6 of Order No. 6 (Third Party Document Production Cut-Off), wherein the Court instructed third parties as follows: "*Any third party that believes that it cannot comply with this deadline shall apply to this Court for relief from it on or before July 1, 2008.*" AAC hereby makes such application, and respectfully seeks an additional sixty (60) days to complete any production of electronic information and/or transactional data.

**Background:**

Between October 4, 2005 and July 26, 2006, plaintiff Advanced Micro Devices, Inc. ("AMD"), defendant Intel Corporation ("Intel"), and the Class Plaintiffs attempted to serve subpoenas on AAC (the "Subpoenas") (AAC, AMD, Intel, and Class Plaintiffs shall hereinafter be collectively referred to as the "Parties"). AAC timely objected to the improperly served and/or otherwise invalid Subpoenas.

Following the lengthy process relating to the issuance of the Protective Order in the above-referenced matters, AAC's counsel has, from time-to-time, sporadically engaged in discussions with AMD and Intel relating to "electronic information" related document

The Honorable Vincent J. Poppiti
July 1, 2008
Page 2

production, and with the Parties' counsel regarding "transactional data" production. The Parties have been interested in obtaining information from not only AAC, a California corporation – but also a separate entity, Acer, Inc. ("AI"), a Taiwanese company headquartered in Taipei, Taiwan. To date, only AAC has produced a limited sample of transactional data to the Parties. Ultimately, to avoid protracted discovery disputes and expensive motion practice, the Parties' counsel and AAC's counsel have engaged in good faith discussions geared toward the production of more information. Indeed, although to date AAC's counsel has not reached any agreement with the Parties relating to a "full" production of "transactional data" (in which the Parties' counsel seek to include AI's information), AAC's counsel has in recent weeks been actively engaged in meet and confer discussions with the Parties' counsel about that subject. Moreover, in March and April of 2008, ACC's counsel was also involved in discussions regarding the terms of a "discovery agreement" with AMD's and Intel's counsel regarding a production of "electronic information." Under the terms of the proposed agreement, both AAC and AI would voluntarily produce requested information as defined by the agreement.

**Production Discussions To Date:**

*Electronic Information*: During the March and April 2008 timeframe, AMD, Intel, and AAC's counsel met and conferred regarding what electronic information would be produced. After much discussion, AMD, Intel, AAC and AI tentatively reached a "discovery agreement" wherein certain "Relevant Custodians" would be identified, and such Relevant Custodians' computers would be "harvested" via a "key word search," using terms provided by the Parties.

*Transactional Data*: On approximately April 5, 2007, representatives of the Parties and representatives of AAC held a teleconference for the purpose of discussing the scope of the "transactional data" the Parties were seeking under the Subpoenas. During this teleconference, the Parties and AAC agreed that AAC would provide a limited sample of transactional data pertaining to one product across five categories as identified by the Parties (the "Sample"). Following this teleconference and pursuant to the discussions held with the Parties, AAC selected one product, searched its files pertaining to that product, and on June 5, 2007, provided the Parties with the requested Sample. Sporadically, over the course of the next twelve months, the Parties' counsel asked AAC's counsel follow-up questions regarding the Sample and AAC provided answers. In recent weeks, the Parties' counsel have proposed that they are interested in a "full" production – that would include not only AAC's transactional data, but also AI's transactional data.

**Production Schedule:**

*Electronic Information*: Under the time lines currently contemplated pursuant to the "discovery agreement" tentatively reached between AMD, Intel, AAC, and AI, in part because of the schedules of the proposed Relevant Custodians, the "harvesting" of the Relevant Custodians' computers is scheduled for the week of July 14, 2008. Thereafter, according to the proposed terms of the Discovery Agreement, a Technical Vendor will have to process the data; the data

{A&L-00067920-}

The Honorable Vincent J. Poppiti
July 1, 2008
Page 3

will then have to be reviewed by AAC's counsel; and then provided to the Parties for review. During the Parties' review process, the Parties will "mark" selected documents. Subsequently, the Technical Vendor will "merge" the "marked" documents and will then create a "Production Set." Given the volume of expected data – covering more than eight years – and the number of Relevant Custodians, it is reasonably expected that this process will take far more than six weeks to complete.

*Transactional Data*: To date, the Parties and AAC have not yet reached any specific agreement regarding the scope of the proposed "full" production of transactional data, which is proposed to include AI's data. Especially given the fact that it took eight weeks for AAC to provide the Parties with a limited Sample, we do not believe that it is realistic that AAC and AI will be able to achieve a "full" production in less than eight weeks over the summer when multiple vacations are expected.

**AAC's Request:**

AAC has timely cooperated with the Parties regarding discovery and the production of electronic information and transactional data throughout the three year saga of this case. AAC understands that given the extreme number of third parties involved in the above-referenced matters, and the complicated nature of the litigation in question, that the Parties have had their hands full. However, AAC (and AI) should not be burdened into completing its production in such a short window of time when it is a non-party, and the circumstances of this case are beyond its control.

Accordingly, AAC respectfully requests that it be granted until October 31, 2008, to complete any production of electronic information and/or transactional data.

Respectfully submitted,

John M. Seaman (#3868)

JMS:smg
cc:    All counsel of record (by CM/ECF)

{A&L-00067920-}