# Exhibit [18]

## Articles 133, 134, 138, 147, 148, 149, 156, 166 et 167 of the French New Code of Civil Procedure

# Exhibit [    ]

---

## Articles 133, 134, 138, 147, 148, 149, 156, 166 and 167 of the French New Code of Civil Procedure

---



### Article 133 of the French New Code of Civil Procedure

If the relevant documents are not communicated (spontaneously), a petition may be submitted to the judge, without any formality, asking him to order such communication.

## Article 134 of the French New Code of Civil Procedure

The judge determines, if necessary subject to a periodical penalty payment, the time limit and where applicable the terms of the communication of evidence.



### Article 138 of the French New Code of Civil Procedure

If, during the proceedings, any party wishes to rely on any notarized deed or private deed to which the requesting party was not a party or to any document held by a third party, such requesting party may ask the judge, to whom the matter is referred, to order the delivery of a certified copy or to order the production to the court of the said deed or document.



**<u>Article 147 of the French New Code of Civil Procedure</u>**

The judge must limit the order to what is sufficient for the resolution of the dispute, by seeking to select the simplest and least costly measures.



## Article 148 of the French New Code of Civil Procedure

The judge may combine several inquiries. He may, at any time, even while such inquiries are being carried out, decide to add any other necessary inquiry to those that have already been ordered.



## Article 149 of the French New Code of Civil Procedure

The judge may, at any time, extend or restrict the scope of the prescribed inquiries.



**Article 156 of the French New Code of Civil Procedure**

The judge may travel outside his jurisdiction to implement the preparatory inquiry or to supervise its implementation.



**Article 166 of the French New Code of Civil Procedure**

The judge, entrusted with preparatory inquiry or the supervision of its implementation, may order such other inquiry as would be made advisable by the implementation of the already ordered investigation.



**Article 167 of the French New Code of Civil Procedure**

Any difficulties arising in connection with the implementation of the preparatory inquiry shall be settled, at the request of the parties, by the appointed expert, or *sua sponte*, either by the judge in charge or by the judge entrusted with the supervision of the inquiry.

Je, soussignée, Karen RENEL,
Traductrice Expert près la Cour d'Appel
d'Amiens certifie que la traduction qui
précède est conforme à l'original
libellé en langue ...Anglaise...
visé ne varietur sous le n° ...9...
Fait à ...Paris..., le ...12/25/07
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [19]

**Regulation (EC) No 1049/2001 of the European Parliament and of the Council of 30 May 2001 regarding public access to European Parliament, Council and Commission documents, Official Journal, L 145, 05/31/2001, p.43.**

31.5.2001    EN    Official Journal of the European Communities    L 145/43

## REGULATION (EC) No 1049/2001 OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL

### of 30 May 2001

### regarding public access to European Parliament, Council and Commission documents

THE EUROPEAN PARLIAMENT AND THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 255(2) thereof,

Having regard to the proposal from the Commission (¹),

Acting in accordance with the procedure referred to in Article 251 of the Treaty (²),

Whereas:

(1) The second subparagraph of Article 1 of the Treaty on European Union enshrines the concept of openness, stating that the Treaty marks a new stage in the process of creating an ever closer union among the peoples of Europe, in which decisions are taken as openly as possible and as closely as possible to the citizen.

(2) Openness enables citizens to participate more closely in the decision-making process and guarantees that the administration enjoys greater legitimacy and is more effective and more accountable to the citizen in a democratic system. Openness contributes to strengthening the principles of democracy and respect for fundamental rights as laid down in Article 6 of the EU Treaty and in the Charter of Fundamental Rights of the European Union.

(3) The conclusions of the European Council meetings held at Birmingham, Edinburgh and Copenhagen stressed the need to introduce greater transparency into the work of the Union institutions. This Regulation consolidates the initiatives that the institutions have already taken with a view to improving the transparency of the decision-making process.

(4) The purpose of this Regulation is to give the fullest possible effect to the right of public access to documents and to lay down the general principles and limits on such access in accordance with Article 255(2) of the EC Treaty.

(5) Since the question of access to documents is not covered by provisions of the Treaty establishing the European Coal and Steel Community and the Treaty establishing the European Atomic Energy Community, the European Parliament, the Council and the Commission should, in accordance with Declaration No 41 attached to the Final Act of the Treaty of Amsterdam, draw guidance from

this Regulation as regards documents concerning the activities covered by those two Treaties.

(6) Wider access should be granted to documents in cases where the institutions are acting in their legislative capacity, including under delegated powers, while at the same time preserving the effectiveness of the institutions' decision-making process. Such documents should be made directly accessible to the greatest possible extent.

(7) In accordance with Articles 28(1) and 41(1) of the EU Treaty, the right of access also applies to documents relating to the common foreign and security policy and to police and judicial cooperation in criminal matters. Each institution should respect its security rules.

(8) In order to ensure the full application of this Regulation to all activities of the Union, all agencies established by the institutions should apply the principles laid down in this Regulation.

(9) On account of their highly sensitive content, certain documents should be given special treatment. Arrangements for informing the European Parliament of the content of such documents should be made through interinstitutional agreement.

(10) In order to bring about greater openness in the work of the institutions, access to documents should be granted by the European Parliament, the Council and the Commission not only to documents drawn up by the institutions, but also to documents received by them. In this context, it is recalled that Declaration No 35 attached to the Final Act of the Treaty of Amsterdam provides that a Member State may request the Commission or the Council not to communicate to third parties a document originating from that State without its prior agreement.

(11) In principle, all documents of the institutions should be accessible to the public. However, certain public and private interests should be protected by way of exceptions. The institutions should be entitled to protect their internal consultations and deliberations where necessary to safeguard their ability to carry out their tasks. In assessing the exceptions, the institutions should take account of the principles in Community legislation concerning the protection of personal data, in all areas of Union activities.

(12) All rules concerning access to documents of the institutions should be in conformity with this Regulation.

---

(¹) OJ C 177 E, 27.6.2000, p. 70.
(²) Opinion of the European Parliament of 3 May 2001 (not yet published in the Official Journal) and Council Decision of 28 May 2001.

L 145/44    EN    Official Journal of the European Communities    31.5.2001

(13) In order to ensure that the right of access is fully respected, a two-stage administrative procedure should apply, with the additional possibility of court proceedings or complaints to the Ombudsman.

(14) Each institution should take the measures necessary to inform the public of the new provisions in force and to train its staff to assist citizens exercising their rights under this Regulation. In order to make it easier for citizens to exercise their rights, each institution should provide access to a register of documents.

(15) Even though it is neither the object nor the effect of this Regulation to amend national legislation on access to documents, it is nevertheless clear that, by virtue of the principle of loyal cooperation which governs relations between the institutions and the Member States, Member States should take care not to hamper the proper application of this Regulation and should respect the security rules of the institutions.

(16) This Regulation is without prejudice to existing rights of access to documents for Member States, judicial authorities or investigative bodies.

(17) In accordance with Article 255(3) of the EC Treaty, each institution lays down specific provisions regarding access to its documents in its rules of procedure. Council Decision 93/731/EC of 20 December 1993 on public access to Council documents (¹), Commission Decision 94/90/ECSC, EC, Euratom of 8 February 1994 on public access to Commission documents (²), European Parliament Decision 97/632/EC, ECSC, Euratom of 10 July 1997 on public access to European Parliament documents (³), and the rules on confidentiality of Schengen documents should therefore, if necessary, be modified or be repealed,

HAVE ADOPTED THIS REGULATION:

### Article 1

### Purpose

The purpose of this Regulation is:

(a) to define the principles, conditions and limits on grounds of public or private interest governing the right of access to European Parliament, Council and Commission (hereinafter referred to as 'the institutions') documents provided for in Article 255 of the EC Treaty in such a way as to ensure the widest possible access to documents,

(¹) OJ L 340, 31.12.1993, p. 43. Decision as last amended by Decision 2000/527/EC (OJ L 212, 23.8.2000, p. 9).
(²) OJ L 46, 18.2.1994, p. 58. Decision as amended by Decision 96/567/EC, ECSC, Euratom (OJ L 247, 28.9.1996, p. 45).
(³) OJ L 263, 25.9.1997, p. 27.

(b) to establish rules ensuring the easiest possible exercise of this right, and

(c) to promote good administrative practice on access to documents.

### Article 2

### Beneficiaries and scope

1. Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, has a right of access to documents of the institutions, subject to the principles, conditions and limits defined in this Regulation.

2. The institutions may, subject to the same principles, conditions and limits, grant access to documents to any natural or legal person not residing or not having its registered office in a Member State.

3. This Regulation shall apply to all documents held by an institution, that is to say, documents drawn up or received by it and in its possession, in all areas of activity of the European Union.

4. Without prejudice to Articles 4 and 9, documents shall be made accessible to the public either following a written application or directly in electronic form or through a register. In particular, documents drawn up or received in the course of a legislative procedure shall be made directly accessible in accordance with Article 12.

5. Sensitive documents as defined in Article 9(1) shall be subject to special treatment in accordance with that Article.

6. This Regulation shall be without prejudice to rights of public access to documents held by the institutions which might follow from instruments of international law or acts of the institutions implementing them.

### Article 3

### Definitions

For the purpose of this Regulation:

(a) 'document' shall mean any content whatever its medium (written on paper or stored in electronic form or as a sound, visual or audiovisual recording) concerning a matter relating to the policies, activities and decisions falling within the institution's sphere of responsibility;

(b) 'third party' shall mean any natural or legal person, or any entity outside the institution concerned, including the Member States, other Community or non-Community institutions and bodies and third countries.

31.5.2001          EN          Official Journal of the European Communities          L 145/45

## Article 4

### Exceptions

1.    The institutions shall refuse access to a document where disclosure would undermine the protection of:

(a) the public interest as regards:

— public security,

— defence and military matters,

— international relations,

— the financial, monetary or economic policy of the Community or a Member State;

(b) privacy and the integrity of the individual, in particular in accordance with Community legislation regarding the protection of personal data.

2.    The institutions shall refuse access to a document where disclosure would undermine the protection of:

— commercial interests of a natural or legal person, including intellectual property,

— court proceedings and legal advice,

— the purpose of inspections, investigations and audits,

unless there is an overriding public interest in disclosure.

3.    Access to a document, drawn up by an institution for internal use or received by an institution, which relates to a matter where the decision has not been taken by the institution, shall be refused if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

Access to a document containing opinions for internal use as part of deliberations and preliminary consultations within the institution concerned shall be refused even after the decision has been taken if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

4.    As regards third-party documents, the institution shall consult the third party with a view to assessing whether an exception in paragraph 1 or 2 is applicable, unless it is clear that the document shall or shall not be disclosed.

5.    A Member State may request the institution not to disclose a document originating from that Member State without its prior agreement.

6.    If only parts of the requested document are covered by any of the exceptions, the remaining parts of the document shall be released.

7.    The exceptions as laid down in paragraphs 1 to 3 shall only apply for the period during which protection is justified on the basis of the content of the document. The exceptions may apply for a maximum period of 30 years. In the case of documents covered by the exceptions relating to privacy or commercial interests and in the case of sensitive documents, the exceptions may, if necessary, continue to apply after this period.

## Article 5

### Documents in the Member States

Where a Member State receives a request for a document in its possession, originating from an institution, unless it is clear that the document shall or shall not be disclosed, the Member State shall consult with the institution concerned in order to take a decision that does not jeopardise the attainment of the objectives of this Regulation.

The Member State may instead refer the request to the institution.

## Article 6

### Applications

1.    Applications for access to a document shall be made in any written form, including electronic form, in one of the languages referred to in Article 314 of the EC Treaty and in a sufficiently precise manner to enable the institution to identify the document. The applicant is not obliged to state reasons for the application.

2.    If an application is not sufficiently precise, the institution shall ask the applicant to clarify the application and shall assist the applicant in doing so, for example, by providing information on the use of the public registers of documents.

3.    In the event of an application relating to a very long document or to a very large number of documents, the institution concerned may confer with the applicant informally, with a view to finding a fair solution.

4.    The institutions shall provide information and assistance to citizens on how and where applications for access to documents can be made.

## Article 7

### Processing of initial applications

1.    An application for access to a document shall be handled promptly. An acknowledgement of receipt shall be sent to the applicant. Within 15 working days from registration of the application, the institution shall either grant access to the document requested and provide access in accordance with Article 10 within that period or, in a written reply, state the reasons for the total or partial refusal and inform the applicant of his or her right to make a confirmatory application in accordance with paragraph 2 of this Article.

2.    In the event of a total or partial refusal, the applicant may, within 15 working days of receiving the institution's reply, make a confirmatory application asking the institution to reconsider its position.

L 145/46    EN    Official Journal of the European Communities    31.5.2001

3. In exceptional cases, for example in the event of an application relating to a very long document or to a very large number of documents, the time-limit provided for in paragraph 1 may be extended by 15 working days, provided that the applicant is notified in advance and that detailed reasons are given.

4. Failure by the institution to reply within the prescribed time-limit shall entitle the applicant to make a confirmatory application.

### Article 8

#### Processing of confirmatory applications

1. A confirmatory application shall be handled promptly. Within 15 working days from registration of such an application, the institution shall either grant access to the document requested and provide access in accordance with Article 10 within that period or, in a written reply, state the reasons for the total or partial refusal. In the event of a total or partial refusal, the institution shall inform the applicant of the remedies open to him or her, namely instituting court proceedings against the institution and/or making a complaint to the Ombudsman, under the conditions laid down in Articles 230 and 195 of the EC Treaty, respectively.

2. In exceptional cases, for example in the event of an application relating to a very long document or to a very large number of documents, the time limit provided for in paragraph 1 may be extended by 15 working days, provided that the applicant is notified in advance and that detailed reasons are given.

3. Failure by the institution to reply within the prescribed time limit shall be considered as a negative reply and entitle the applicant to institute court proceedings against the institution and/or make a complaint to the Ombudsman, under the relevant provisions of the EC Treaty.

### Article 9

#### Treatment of sensitive documents

1. Sensitive documents are documents originating from the institutions or the agencies established by them, from Member States, third countries or International Organisations, classified as 'TRÈS SECRET/TOP SECRET', 'SECRET' or 'CONFIDENTIEL' in accordance with the rules of the institution concerned, which protect essential interests of the European Union or of one or more of its Member States in the areas covered by Article 4(1)(a), notably public security, defence and military matters.

2. Applications for access to sensitive documents under the procedures laid down in Articles 7 and 8 shall be handled only by those persons who have a right to acquaint themselves with those documents. These persons shall also, without prejudice to Article 11(2), assess which references to sensitive documents could be made in the public register.

3. Sensitive documents shall be recorded in the register or released only with the consent of the originator.

4. An institution which decides to refuse access to a sensitive document shall give the reasons for its decision in a manner which does not harm the interests protected in Article 4.

5. Member States shall take appropriate measures to ensure that when handling applications for sensitive documents the principles in this Article and Article 4 are respected.

6. The rules of the institutions concerning sensitive documents shall be made public.

7. The Commission and the Council shall inform the European Parliament regarding sensitive documents in accordance with arrangements agreed between the institutions.

### Article 10

#### Access following an application

1. The applicant shall have access to documents either by consulting them on the spot or by receiving a copy, including, where available, an electronic copy, according to the applicant's preference. The cost of producing and sending copies may be charged to the applicant. This charge shall not exceed the real cost of producing and sending the copies. Consultation on the spot, copies of less than 20 A4 pages and direct access in electronic form or through the register shall be free of charge.

2. If a document has already been released by the institution concerned and is easily accessible to the applicant, the institution may fulfil its obligation of granting access to documents by informing the applicant how to obtain the requested document.

3. Documents shall be supplied in an existing version and format (including electronically or in an alternative format such as Braille, large print or tape) with full regard to the applicant's preference.

### Article 11

#### Registers

1. To make citizens' rights under this Regulation effective, each institution shall provide public access to a register of documents. Access to the register should be provided in electronic form. References to documents shall be recorded in the register without delay.

2. For each document the register shall contain a reference number (including, where applicable, the interinstitutional reference), the subject matter and/or a short description of the content of the document and the date on which it was received or drawn up and recorded in the register. References shall be made in a manner which does not undermine protection of the interests in Article 4.

3. The institutions shall immediately take the measures necessary to establish a register which shall be operational by 3 June 2002.

31.5.2001    [EN]    Official Journal of the European Communities    L 145/47

### Article 12

#### Direct access in electronic form or through a register

1.    The institutions shall as far as possible make documents directly accessible to the public in electronic form or through a register in accordance with the rules of the institution concerned.

2.    In particular, legislative documents, that is to say, documents drawn up or received in the course of procedures for the adoption of acts which are legally binding in or for the Member States, should, subject to Articles 4 and 9, be made directly accessible.

3.    Where possible, other documents, notably documents relating to the development of policy or strategy, should be made directly accessible.

4.    Where direct access is not given through the register, the register shall as far as possible indicate where the document is located.

### Article 13

#### Publication in the Official Journal

1.    In addition to the acts referred to in Article 254(1) and (2) of the EC Treaty and the first paragraph of Article 163 of the Euratom Treaty, the following documents shall, subject to Articles 4 and 9 of this Regulation, be published in the Official Journal:

(a) Commission proposals;

(b) common positions adopted by the Council in accordance with the procedures referred to in Articles 251 and 252 of the EC Treaty and the reasons underlying those common positions, as well as the European Parliament's positions in these procedures;

(c) framework decisions and decisions referred to in Article 34(2) of the EU Treaty;

(d) conventions established by the Council in accordance with Article 34(2) of the EU Treaty;

(e) conventions signed between Member States on the basis of Article 293 of the EC Treaty;

(f) international agreements concluded by the Community or in accordance with Article 24 of the EU Treaty.

2.    As far as possible, the following documents shall be published in the Official Journal:

(a) initiatives presented to the Council by a Member State pursuant to Article 67(1) of the EC Treaty or pursuant to Article 34(2) of the EU Treaty;

(b) common positions referred to in Article 34(2) of the EU Treaty;

(c) directives other than those referred to in Article 254(1) and (2) of the EC Treaty, decisions other than those referred to in Article 254(1) of the EC Treaty, recommendations and opinions.

3.    Each institution may in its rules of procedure establish which further documents shall be published in the Official Journal.

### Article 14

#### Information

1.    Each institution shall take the requisite measures to inform the public of the rights they enjoy under this Regulation.

2.    The Member States shall cooperate with the institutions in providing information to the citizens.

### Article 15

#### Administrative practice in the institutions

1.    The institutions shall develop good administrative practices in order to facilitate the exercise of the right of access guaranteed by this Regulation.

2.    The institutions shall establish an interinstitutional committee to examine best practice, address possible conflicts and discuss future developments on public access to documents.

### Article 16

#### Reproduction of documents

This Regulation shall be without prejudice to any existing rules on copyright which may limit a third party's right to reproduce or exploit released documents.

### Article 17

#### Reports

1.    Each institution shall publish annually a report for the preceding year including the number of cases in which the institution refused to grant access to documents, the reasons for such refusals and the number of sensitive documents not recorded in the register.

2.    At the latest by 31 January 2004, the Commission shall publish a report on the implementation of the principles of this Regulation and shall make recommendations, including, if appropriate, proposals for the revision of this Regulation and an action programme of measures to be taken by the institutions.

*Article 18*

### Application measures

1.    Each institution shall adapt its rules of procedure to the provisions of this Regulation. The adaptations shall take effect from 3 December 2001.

2.    Within six months of the entry into force of this Regulation, the Commission shall examine the conformity of Council Regulation (EEC, Euratom) No 354/83 of 1 February 1983 concerning the opening to the public of the historical archives of the European Economic Community and the European Atomic Energy Community (¹) with this Regulation in order to ensure the preservation and archiving of documents to the fullest extent possible.

3.    Within six months of the entry into force of this Regulation, the Commission shall examine the conformity of the existing rules on access to documents with this Regulation.

*Article 19*

### Entry into force

This Regulation shall enter into force on the third day following that of its publication in the *Official Journal of the European Communities*.

It shall be applicable from 3 December 2001.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 30 May 2001.

|  |  |
|---|---|
| *For the European Parliament* | *For the Council* |
| *The President* | *The President* |
| N. FONTAINE | B. LEJON |

---

(¹) OJ L 43, 15.2.1983, p. 1.

# Exhibit [20]

Judgment of the Court of first instance of the European Communities, 13 April 2005, Verein für Konsumenteninformation (VKI) v. Commission of the European Communities, case T-2/03

**IMPORTANT LEGAL NOTICE** - The information on this site is subject to a disclaimer and a copyright notice.

JUDGMENT OF THE COURT OF FIRST INSTANCE (First Chamber, Extended Composition)

13 April 2005 (*)

(Access to documents – Regulation (EC) No 1049/2001 – Request relating to a very large number of documents – Total refusal of access – Obligation to carry out a concrete, individual examination – Exceptions)

In Case T-2/03,

**Verein für Konsumenteninformation,** established in Vienna (Austria), represented by A. Klauser, lawyer,

applicant,

v

**Commission of the European Communities,** represented by S. Rating and P. Aalto, acting as Agents, with an address for service in Luxembourg,

defendant,

supported by

**Bank für Arbeit und Wirtschaft AG,** established in Vienna, represented by H.-J. Niemeyer, lawyer, with an address for service in Luxembourg,

and by

ÖsterreichischeVolksbanken AG, established in Vienna,

and

Niederösterreichische Landesbank-Hypothekenbank AG, established in Sankt Pölten (Austria),

represented by R. Roniger, A. Ablasser and W. Hemetsberger, lawyers,

interveners,

APPLICATION for annulment of Commission Decision D (2002) 330472 of 18 December 2002 relating to a request for access to the administrative file in Case COMP/36.571/D-1, Austrian banks – 'Lombard Club',

THE COURT OF FIRST INSTANCE OF THE EUROPEAN COMMUNITIES (First Chamber, Extended Composition),

composed of B. Vesterdorf, President, M. Jaeger, P. Mengozzi, M.E. Martins Ribeiro and I. Labucka, Judges,

Registrar: H. Jung,

having regard to the written procedure and further to the hearing on 28 September 2004,

gives the following

**Judgment**

**Legal framework**

1    Regulation (EC) No 1049/2001 of the European Parliament and of the Council of 30 May 2001 regarding public access to European Parliament, Council and Commission documents (OJ 2001 L 145, p. 43) defines the principles, conditions and limits governing the right of access to documents of those institutions, provided for in Article 255 EC. That regulation has been applicable since 3 December 2001.

2    Commission Decision 2001/937/EC, ECSC, Euratom of 5 December 2001 amending its rules of procedure (OJ 2001 L 345, p. 94) repealed Commission Decision 94/90/ECSC, EC, Euratom of 8 February 1994 on public access to Commission documents (OJ 1994 L 46, p. 58), which ensured that effect was given, as regards the Commission, to the code of conduct on public access to Council and Commission documents (OJ 1993 L 340, p. 41, 'the code of conduct').

3    Article 2 of Regulation No 1049/2001 provides:

'1. Any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, has a right of access to documents of the institutions, subject to the principles, conditions and limits defined in this Regulation.

...

3. This Regulation shall apply to all documents held by an institution, that is to say, documents drawn up or received by it and in its possession, in all areas of activity of the European Union.

...'

4    Article 3 of Regulation No 1049/2001 lays down certain definitions as follows:

'For the purpose of this Regulation:

(a)    "document" shall mean any content whatever its medium (written on paper or stored in electronic form or as a sound, visual or audiovisual recording) concerning a matter relating to the policies, activities and decisions falling within the institution's sphere of responsibility;

(b)    "third party" shall mean any natural or legal person, or any entity outside the institution concerned, including the Member States, other Community or non-Community institutions and bodies and third countries.'

5    Article 4 of Regulation No 1049/2001, relating to the exceptions to the abovementioned right of access, states:

'1. The institutions shall refuse access to a document where disclosure would undermine the protection of:

...

(b)    privacy and the integrity of the individual, in particular in accordance with Community legislation regarding the protection of personal data.

2. The institutions shall refuse access to a document where disclosure would undermine the protection of:

–    commercial interests of a natural or legal person, including intellectual property,

–    court proceedings and legal advice,

–    the purpose of inspections, investigations and audits,

unless there is an overriding public interest in disclosure.

3. Access to a document, drawn up by an institution for internal use or received by an institution, which relates to a matter where the decision has not been taken by the institution, shall be refused if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

Access to a document containing opinions for internal use as part of deliberations and preliminary consultations within the institution concerned shall be refused even after the decision has been taken if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

4. As regards third-party documents, the institution shall consult the third party with a view to assessing whether an exception in paragraph 1 or 2 is applicable, unless it is clear that the document shall or shall not be disclosed.

...

6. If only parts of the requested document are covered by any of the exceptions, the remaining parts of the document shall be released.

...'

### Background to the dispute

6    The Verein für Konsumenteninformation ('the VKI' or 'the applicant') is a consumer organisation constituted under Austrian law. In order to facilitate its task of safeguarding the interests of consumers, Austrian law confers on the VKI the right to bring proceedings before the Austrian civil courts in order to assert certain financial claims of consumers, which the latter have previously assigned to it.

7    By Decision 2004/138/EC of 11 June 2002 relating to a proceeding under Article 81 of the EC Treaty (in Case COMP/36.571/D-1: Austrian banks – 'Lombard Club') (OJ 2004 L 56, p. 1), the Commission found that eight Austrian banks had participated, over a number of years, in a cartel known as the 'Lombard Club' covering almost the whole of Austria ('the Lombard Club decision'). In the Commission's view, the banks referred to had, within that cartel, inter alia, fixed jointly the interest rates for certain investments and loans. The Commission therefore imposed fines totalling EUR 124.26 million on those banks, which included in particular the Bank für Arbeit und Wirtschaft AG ('BAWAG'), the Österreichische Volksbanken-AG ('ÖVAG') and the Niederösterreichische Landesbank-Hypothekenbank AG ('NÖ-Hypobank').

8    The VKI is currently conducting several sets of proceedings against BAWAG before the Austrian courts. In those proceedings, the VKI claims that, on account of an incorrect adjustment of the interest rates applicable to variable-interest loans granted by BAWAG, the latter charged its customers too much interest over a number of years.

9    By letter of 14 June 2002, the applicant requested authorisation from the Commission to consult the administrative file relating to the Lombard Club decision. In support of its request, the VKI stated inter alia that, in order to secure damages for the consumers on whose behalf it was acting, it had to be able to put forward specific claims regarding both the illegality of BAWAG's conduct under competition law and the effects of that conduct. To that end, consultation of the Lombard Club file would have been a significant, or even indispensable, help to it.

10    By letter of 3 July 2002, the Commission asked the VKI to clarify its request and, in particular, its legal basis. In reply to that letter, by letter of 8 July 2002, the VKI stated that its request was based inter alia on Article 255(1) and (2) EC, on Regulation No 1049/2001, on the provisions implementing that regulation and on Article 42 of the Charter of fundamental rights of the European Union proclaimed at Nice on 7 December 2000 (OJ 2000 C 364, p. 1, 'the Charter of fundamental rights'), as well as on Articles 5 EC and 10 EC.

11    On 24 July 2002, at a meeting with the Commission's staff, the representatives of the VKI raised the possibility that the applicant could give an undertaking in writing to use the information obtained solely for the purpose of asserting consumers' claims in the national proceedings against BAWAG.

12    By letter of 12 August 2002, the VKI supplemented its request by confirming that it was prepared

to give the undertaking mentioned at the meeting on 24 July 2002.

13    By letter of 12 September 2002, the Commission, basing its decision on Regulation No 1049/2001, rejected the VKI's request in its entirety.

14    On 26 September 2002, the VKI made a confirmatory request as referred to in Article 7((2) of Regulation No 1049/2001, in which it stated, inter alia, while maintaining its request, that it was not interested primarily in the Commission's internal documents.

15    On 14 October 2002, the Commission acknowledged receipt of that confirmatory request and informed the applicant that, owing to the number of documents requested, the time-limit for replying which was applicable to the processing of its request was extended by 15 working days.

16    On 18 December 2002, the Commission adopted Decision D (2002) 330472 relating to a request for access to the administrative file in Case COMP/36.571/D-1, Austrian banks – 'Lombard Club' ('the contested decision'). The contested decision confirms the rejection of 12 September 2002.

17    In the contested decision, the Commission divided, in the first place, the documents in the Lombard Club file, except for the internal documents, into 11 separate categories. Excluding internal documents, that file contains more than 47 000 pages.

18    In the second place, the Commission detailed the reasons on which it based its view that each of the categories previously identified was covered by one or more of the exceptions provided for by Regulation No 1049/2001.

19    In the third place, the Commission took the view that, in cases where the application of certain exceptions would necessitate a balancing of the conflicting interests, the VKI had not referred to an overriding public interest in the access requested.

20    In the fourth place, the Commission listed the reasons why partial access was not possible in this case. In the Commission's view, a detailed examination of each document, which was necessary for any partial consultation, would have represented an excessive and disproportionate amount of work for it.

21    In the fifth place, the Commission took the view that no consultation of third parties in order to consider possible access to the documents of which they were the authors was necessary in this case since, pursuant to Article 4(4) of Regulation No 1049/2001, it was clear that those documents did not have to be disclosed.

22    The Commission concluded in the contested decision that the applicant's request for access had to be rejected in its entirety.

### Procedure before the Court of First Instance

23    By application lodged at the Registry of the Court of First Instance on 7 January 2003, the VKI brought an action for annulment of the contested decision. By separate document lodged on the same day, it applied to have that action adjudicated on under an expedited procedure in accordance with Article 76a of the Rules of Procedure of the Court of First Instance.

24    By separate document lodged on 8 January 2003, the VKI applied for legal aid.

25    On 20 January 2003, the Commission lodged its observations on the application for an expedited procedure.

26    The First Chamber of the Court of First Instance, to which the case was assigned by decision of 20 January 2003, rejected the application for an expedited procedure by a decision of 28 January 2003, which was notified to the applicant on the following day.

27    On 18 February 2003, the Commission lodged its observations on the application for legal aid.

28    On 10 March 2003, the Commission lodged its defence.

29    The applicant's application for legal aid was rejected by order of the President of the Court of 14 March 2003.

30    By letter of 1 April 2003, the applicant waived its right to lodge a reply.

31    On 15 April 2003, BAWAG lodged an application to intervene in support of the form of order sought by the Commission. The Kingdom of Sweden and the Republic of Finland applied, on 16 and 25 April respectively, to intervene in support of the form of order sought by the VKI. Finally, on 29 April 2003, ÖVAG and NÖ-Hypobank jointly applied to intervene in support of the form of order sought by the Commission.

32    By order of the President of the First Chamber of the Court of First Instance of 1 August 2003, the Republic of Finland and the Kingdom of Sweden were granted leave to intervene in support of the form of order sought by the applicant. In the same order, BAWAG, on the one hand, and ÖVAG and NÖ-Hypobank, on the other, were granted leave to intervene in support of the form of order sought by the Commission.

33    Those applications having been made within the period prescribed in Article 115(1) of the Rules of Procedure, the interveners received, pursuant to Article 116(2) of the Rules of Procedure, a copy of every document served on the parties.

34    The Republic of Finland and the Kingdom of Sweden lodged, on 10 and 12 September 2003 respectively, applications to withdraw their interventions.

35    On 26 September 2003, BAWAG, on the one hand, and ÖVAG and NÖ-Hypobank, on the other, lodged their statements in intervention.

36    Since the VKI and the Commission did not lodge any observations on the applications to withdraw lodged by the Republic of Finland and the Kingdom of Sweden, the President of the First Chamber, by order of 6 November 2003, removed from the file of this case the interventions of those interveners and ordered the VKI and the Commission to bear their own costs in respect of those interventions.

37    On 14 November 2003, the applicant lodged its written observations on the statements in intervention, whereas those of the Commission were lodged on 11 November 2003.

38    Pursuant to Article 14 of the Rules of Procedure and acting on a proposal from the First Chamber, the Court decided, after the parties had been heard in accordance with Article 51 of those rules, to refer the case to a Chamber with an extended composition.

39    Upon hearing the Report of the Judge-Rapporteur, the Court (First Chamber, Extended Composition) decided to open the oral procedure and, as a measure of organisation of procedure provided for in Article 64 of the Rules of Procedure, put certain questions in writing to the Commission and the interveners.

40    On 6 July 2004, the Commission and the interveners replied in writing to the Court's questions.

41    The parties presented oral argument and their replies to the Court's questions at the hearing on 28 September 2004.

### Forms of order sought by the parties

42    The applicant claims that the Court should:

–    annul the contested decision;

–    order the production of, and examine, the file in question with a view to determining whether the claims of the VKI are well founded;

    &minus;    order the Commission to pay the costs.

43    The Commission contends that the Court should:

    &minus;    dismiss the action;

    &minus;    order the applicant to pay the costs.

44    BAWAG, in support of the Commission, submits that the Court should:

    &minus;    dismiss the action;

    &minus;    order the applicant to pay the costs, including those incurred by the intervener.

45    Finally, ÖVAG and NÖ-Hypobank, in support of the Commission, submit that the Court should:

    &minus;    dismiss the action;

    &minus;    order the applicant to pay the costs.

**Law**

*The framework of the dispute and the admissibility of certain arguments put forward by the interveners*

46    It is not disputed that the Commission adopted the contested decision under Regulation No 1049/2001.

47    The VKI's action is based, essentially, on six pleas. By its first plea, the VKI submits that it is incompatible with the right of access to documents and, in particular, with Regulation No 1049/2001 to refuse access to the whole of an administrative file without having first actually examined each of the documents contained in the file. In its second plea, the VKI claims that the Commission applied or interpreted incorrectly several of the exceptions provided for in Article 4(1) and (2) of Regulation No 1049/2001. In its third plea, the VKI argues that the Commission concluded unlawfully that the balance of the conflicting interests was not in favour of disclosure of the administrative file referred to by its request. In its fourth plea, the VKI maintains that the Commission should, at the very least, have granted it partial access to the file. By its fifth plea, the VKI claims that the failure to consult the banks which were the authors of certain documents constitutes an infringement of Article 4(4) of Regulation No 1049/2001. Finally, in its sixth plea, the applicant complains that the Commission infringed Article 255 EC, Article 42 of the Charter of fundamental rights and Articles 5 EC and 10 EC.

48    In their statements in intervention, BAWAG, on the one hand, and ÖVAG and NÖ-Hypobank, on the other, put forward a number of arguments ('the additional arguments') intended to show, in the first place, that Regulation No 1049/2001 applies only to documents produced during the Community legislative process, in the second place, that the right of access to documents concerning competition cases was, at the material time, governed only by Regulation No 17 of the Council of 6 February 1962, First Regulation implementing Articles [81] and [82] of the Treaty (OJ, English Special Edition 1959-1962, p. 87), in the third place, that an association with public-law status does not enjoy the right of access provided for by Regulation No 1049/2001, in the fourth place, that the VKI's request for access was unlawful under Regulation No 1049/2001, in the fifth place, that Regulation No 1049/2001 is contrary to Article 255 EC in that it allows access to documents originating from third parties and, in the sixth place, that that regulation can apply only to documents which came into the possession of the institutions after it became applicable, that is, from 3 December 2001.

49    The additional arguments thus seek to demonstrate, firstly, that Regulation No 1049/2001 was not applicable in this case, or, secondly, that it was applied incorrectly by the Commission, or, thirdly, that it constitutes an unlawful legal basis for the contested decision.

50    Consequently, if one or more of the additional arguments were to be accepted by the Court, that would permit a finding that the contested decision is unlawful. However, it should be pointed out

that the interveners were granted leave to intervene in this case in support of the form of order sought by the Commission and that, moreover, the latter contends that the action for annulment should be dismissed.

51    When questioned in writing and at the hearing about the compatibility of the additional arguments with the form of order supported by the interveners, the latter replied in essence that, according to case-law, an intervener is entitled to advance arguments which differ from or even conflict with those of the party which he supports (Case 30/59 *De Gezamenlijke Steenkolenmijnen in Limburg* v *High Authority* [1961] ECR 1, 17 and 18, and Joined Cases T-228/99 and T-233/99 *Westdeutsche Landesbank Girozentrale* v *Commission* [2003] ECR II-435, paragraph 145).

52    However, under the fourth paragraph of Article 40 of the Statute of the Court of Justice, which applies to the Court of First Instance by virtue of Article 53 of that Statute, an application to intervene must be limited to supporting the form of order sought by one of the parties. In addition, under Article 116(3) of the Rules of Procedure, the intervener must accept the case as it finds it at the time of its intervention. Although those provisions do not preclude an intervener from using arguments different from those used by the party it is supporting, that is nevertheless on the condition that they do not alter the framework of the dispute and that the intervention is still intended to support the form of order sought by that party (see, to that effect, Case C-245/92 P *Chemie Linz* v *Commission* [1999] ECR I-4643, paragraph 32; Case C-248/99 P *France* v *Monsanto and Commission* [2002] ECR I-1, paragraph 56; and Case T-119/02 *Royal Philips Electronics* v *Commission* [2003] ECR II-1433, paragraphs 203 and 212).

53    In this case, since, on the one hand, assuming that they are well founded, the additional arguments would permit a finding that the contested decision is unlawful and since, on the other hand, the form of order sought by the Commission is the dismissal of the action for annulment and is not supported by arguments seeking a declaration that the contested decision is unlawful, it is clear that consideration of the additional arguments would have the effect of altering the framework of the dispute as defined in the application and the defence (see, to that effect, Joined Cases T-447/93 to T-449/93 *AITEC and Others* v *Commission* [1995] ECR II-1971, paragraph 122, and Case T-243/94 *British Steel* v *Commission* [1997] ECR II-1887, paragraphs 72 and 73).

54    Moreover, the interveners' claim that the additional arguments support, in essence, the form of order sought by the Commission, namely, refusal of the access to documents requested by the applicant, must be rejected. Firstly, in this case, the Commission has certainly not contended that the requested access to the documents at issue should be refused regardless of the reasons for the contested decision, but only that the action for annulment should be dismissed. Secondly, it is not for the Court, when reviewing the lawfulness of a measure, to assume the role of the Commission and determine whether access to the contested documents is to be refused for reasons other than those mentioned in the contested decision.

55    The additional arguments must therefore be rejected as inadmissible.

*The first plea, alleging failure to carry out a concrete examination of the documents referred to in the request for access, and the fourth plea, alleging infringement of the right to partial access*

56    The first and fourth pleas put forward by the applicant must be examined first and together.

Arguments of the parties

–    The first plea, alleging failure to carry out a concrete examination of the documents referred to in the request for access

57    In its first plea, the VKI claims that, in the contested decision, the Commission, contrary to Regulation No 1049/2001, exempted the whole of the Lombard Club file from the right of access without carrying out a concrete examination of each of the documents contained in that file. However, only actual circumstances applying to specific documents can justify an exception to the right of access to those documents.

58    In reply to the applicant's first plea, the Commission contends that, in this case, it is not necessary to determine whether it refused access to all the documents referred to in the request for access, but only whether it gave a proper statement of reasons for its refusal in respect of all those documents. However, the Commission certainly did not, in this case, exclude the whole of the Lombard Club file from the right of access but, on the contrary, explained why the reasons for

refusal listed in Article 4 of Regulation No 1049/2002 precluded disclosure of the documents in that file.

59    The Commission adds that it is not contrary to Community law to refuse access to various categories of documents without examining each of the documents in those categories where, as in this case, the reasons for the Commission's refusal are stated in respect of each category. The Court has expressly held that the Commission is entitled to subdivide a file into categories, to which it may then refuse access altogether, provided that it mentions the reasons for its refusal (Case T-105/95 *WWF UK* v *Commission* [1997] ECR II-313, paragraph 64).

60    Finally, the Commission points out that examination of the various documents and parts of documents within those categories did not take place since the effort involved in such an operation would have been disproportionate.

        –    The fourth plea, alleging infringement of the right to partial access

61    The VKI submits that total refusal of access to the file would have been justified only if all the documents in it were covered by at least one of the exceptions in Article 4 of Regulation No 1049/2001. Since that condition was not satisfied in this case, the applicant should at least have been entitled to partial access. The Commission's 'commendable' concern to limit its workload cannot have the consequence of destroying the chances of compensation for the damage suffered by consumers as the result of a cartel.

62    The Commission challenges the validity of those arguments. It acknowledges that the case-law of the Court of Justice and the Court of First Instance recognises the existence of a right of partial access to documents. The Commission none the less points out that such access may be refused where it involves a disproportionate effort for the institution concerned.

63    The effort required for a file of more than 47 000 pages is bound to be disproportionate. That is at the very least the case where, on the one hand, the number of documents likely to be made available in each relevant category is very small and, on the other hand, those documents are manifestly of no use. Since the documents in the file are arranged in chronological order, any partial access would involve reviewing it in its entirety. Moreover, the task of drawing up a table of contents for the whole file would, having regard to the application of the exceptions in Article 4 of Regulation No 1049/2001, be just as disproportionate as partial access. The Commission concedes that the disproportionate nature of the effort involved does not in itself constitute a reason for refusal. However, where it is clear from an analysis of strictly-defined categories of documents that access must be refused, no additional examination of each document within the relevant category is justified.

64    Both BAWAG and ÖVAG and NÖ-Hypobank essentially support the arguments of the Commission. They point out that where an applicant has expressly indicated its interest in its request for access, it is disproportionate to require the institution to which that request is made to grant partial access to documents which do not serve the purpose of the request.

        Findings of the Court

65    It is common ground that the Commission did not carry out a concrete, individual examination of the documents comprising the Lombard Club file. At the hearing, the Commission confirmed that, in response to the applicant's confirmatory request, it had divided the Lombard Club file, excluding the internal documents, into 11 separate categories of documents, although without examining each of the documents. It is also clear from the contested decision that, after defining those categories, the Commission considered that 'one or more exceptions provided for in Article 4 of Regulation No 1049/2001 appl[ied] to each category of document, without there being any overriding public interest in disclosure'. The Commission then stated that, 'for reasons of proportionality, it [did] not appear either necessary or expedient to undertake an examination of the documents beyond the abovementioned categories'. The Commission further stated, 'as a subsidiary consideration', that publication of the Lombard Club decision was sufficient to 'safeguard' the interests of the applicant.

66    In the light of those considerations, it must therefore be determined whether the Commission was obliged, in principle, to carry out a concrete, individual examination of the documents referred to in the request for access, then, if so, to examine to what extent that obligation to examine could be qualified by certain exceptions based, inter alia, on the amount of work entailed by it.

—   The obligation to carry out a concrete, individual examination

67   Article 2 of Regulation No 1049/2001 defines the principle of the right of access to documents of the institutions. Article 4 of Regulation No 1049/2001 sets out a number of exceptions to the right of access. Finally, Articles 6 to 8 of Regulation No 1049/2001 lay down certain procedures according to which a request for access must be processed.

68   The effect of those provisions is that the institution to which a request for access is made under Regulation No 1049/2001 is obliged to examine and reply to that request and, in particular, to determine whether any of the exceptions referred to in Article 4 of the regulation is applicable to the documents in question.

69   According to settled case-law, the examination required for the purpose of processing a request for access to documents must be specific in nature. On the one hand, the mere fact that a document concerns an interest protected by an exception cannot justify application of that exception (see, to that effect, Case T-20/99 *Denkavit Nederland v Commission* [2000] ECR II-3011, paragraph 45). Such application may, in principle, be justified only if the institution has previously assessed, firstly, whether access to the document would specifically and actually undermine the protected interest and, secondly, in the circumstances referred to in Article 4(2) and (3) of Regulation No 1049/2001, there is no overriding public interest in disclosure. On the other hand, the risk of a protected interest being undermined must be reasonably foreseeable and not purely hypothetical (see, to that effect, Case T-211/00 *Kuijer v Council* [2002] ECR II-485, paragraph 56, '*Kuijer II*'). Consequently, the examination which the institution must undertake in order to apply an exception must be carried out in a concrete manner and must be apparent from the reasons for the decision (see, to that effect, Case T-188/98 *Kuijer v Council* [2000] ECR II-1959, paragraph 38, '*Kuijer I*', and Case T-14/98 *Hautala v Council* [1999] ECR II-2489, paragraph 67).

70   That concrete examination must, moreover, be carried out in respect of each document referred to in the request for access. It is apparent from Regulation No 1049/2001 that all the exceptions mentioned in Article 4(1) to (3) are specified as being applicable to 'a document'.

71   The need for such a concrete, individual examination, as opposed to an abstract, general examination, is also confirmed by the case-law concerning the application of the code of conduct.

72   On the one hand, the code of conduct, the principles of which were in part reproduced in Article 4 of Regulation No 1049/2001, contained a first category of exceptions requiring the institution to refuse access to a document where disclosure 'could undermine' the interests protected by those exceptions. The Court has consistently held that the use of the conditional form 'could' means that before deciding on a request for access to documents the Commission must consider, 'for each document requested', whether, in the light of the information in its possession, disclosure is in fact likely to undermine one of the interests protected by the exceptions (Case T-124/96 *Interporc v Commission* [1998] ECR II-231, paragraph 52, and Case T-123/99 *JT's Corporation v Commission* [2000] ECR II-3269, paragraph 64). In view of the fact that the conditional form is maintained in Article 4(1) to (3) of Regulation No 1049/2001, the case-law developed in connection with the code of conduct is capable of being applied to Regulation No 1049/2001. It must therefore be held that an institution is obliged to assess in a concrete and individual manner whether exceptions to the right of access apply to each of the documents referred to in a request.

73   On the other hand, as the Commission rightly points out, the Court has in fact held, in essence, in its judgment in *WWF UK v Commission*, cited in paragraph 59 above (paragraph 64), that an institution is required to indicate, at the very least by reference to categories of documents, the reasons for which it considers that the documents detailed in the request received by it are related to a category of information covered by an exception. Nevertheless, regardless of whether the paragraph relied on by the Commission lays down only a rule that reasons must be stated, a concrete, individual examination is in any event necessary where, even if it is clear that a request for access refers to documents covered by an exception, only such an examination can enable the institution to assess the possibility of granting the applicant partial access under Article 4(6) of Regulation No 1049/2001. In the context of applying the code of conduct, the Court has moreover already rejected as insufficient an assessment of documents by reference to categories rather than on the basis of the actual information contained in those documents, since the examination required of an institution must enable it to assess specifically whether an exception invoked actually applies to all the information contained in those documents (*JT's Corporation v Commission*, cited in paragraph 72 above, paragraph 46).

74    It must therefore be concluded that where an institution receives a request for access under Regulation No 1049/2001 it is required, in principle, to carry out a concrete, individual assessment of the content of the documents referred to in the request.

75    However, that approach, to be adopted in principle, does not mean that such an examination is required in all circumstances. Since the purpose of the concrete, individual examination which the institution must in principle undertake in response to a request for access made under Regulation No 1049/2001 is to enable the institution in question to assess, on the one hand, the extent to which an exception to the right of access is applicable and, on the other, the possibility of partial access, such an examination may not be necessary where, due to the particular circumstances of the individual case, it is obvious that access must be refused or, on the contrary, granted. Such could be case, inter alia, if certain documents were either, first, manifestly covered in their entirety by an exception to the right of access or, conversely, manifestly accessible in their entirety, or, finally, had already been the subject of a concrete, individual assessment by the Commission in similar circumstances.

76    In this case, it is common ground that the Commission based the contested decision on a general analysis by reference to categories of documents of the Lombard Club file. It is also established that the Commission did not carry out a concrete, individual examination of the documents referred to in the request for access in order to assess whether the exceptions relied on applied or whether partial access could be granted.

77    It must therefore be examined whether the applicant's request related to documents in respect of which, by reason of the circumstances of the case, it was not necessary to carry out such a concrete, individual examination.

78    In that regard, the Commission took the view, in the contested decision, that the documents referred to in the applicant's request were covered by four separate exceptions to the right of access.

79    The first of the exceptions relied on by the Commission concerns the protection of the purpose of inspections, referred to in the third indent of Article 4(2) of Regulation No 1049/2001. In the contested decision, the Commission justified the application of that exception on the basis, in essence, of two factors.

80    Firstly, according to the Commission, the Lombard Club decision is the subject-matter of a number of actions for annulment before the Court of First Instance which are still pending and on which the latter has therefore not yet ruled. Consequently, access by third parties to those documents could affect the new assessment it might be called upon to make if its decision were annulled and might lead the applicants to raise certain pleas in those actions.

81    Secondly, according to the Commission, a large number of the documents in the file were provided by the undertakings penalised in the Lombard Club decision, either on the basis of the Commission Notice on the non-imposition or reduction of fines in cartel cases (OJ 1996 C 207, p. 4), which was applicable at the material time, or in connection with requests for information or investigations under Articles 11 and 14 of Regulation No 17. Consequently, allowing third parties access to those documents would deter undertakings from cooperating with the Commission and would be detrimental to inspections and investigations in future cases. The same reasoning applies to documents drawn up by third parties.

82    The Court is of the view, however, that the Commission was not entitled to reach such a general conclusion applicable to the whole of the Lombard Club file without having first carried out a concrete, individual examination of the documents comprising it.

83    Firstly, it is not clear from the contested decision that the Commission specifically ascertained that each document referred to in the request was in fact included in one of the 11 categories identified. On the contrary, the reasons for the contested decision, which were confirmed by the Commission at the hearing, indicate that the manner in which the Commission carried out that division was, at least in part, abstract. The Commission seems to have acted more on the basis of what it imagined the content of the documents in the Lombard Club file to be than on the basis of an actual examination. That division into categories therefore remains approximate, both from the point of view of its exhaustiveness and from the point of view of its accuracy.

84    Secondly, the considerations set out by the Commission in the contested decision, as moreover in

its defence, remain vague and general. In the absence of an individual examination, that is to say, document by document, they do not demonstrate with sufficient certainty and detail that the Commission's argument, even if well founded in principle, applies to all the documents in the Lombard Club file. The fears expressed by the Commission remain mere assertions and are, consequently, utterly hypothetical.

85    There is nothing to show that all the documents referred to in the request are clearly covered by the exception relied on. In point 1 of the contested decision, the Commission itself notes that 'the exception provided for in the third indent of Article 4(2) applies in large part to certain documents, or even in full to all the categories'.

86    It is true that, in the table which it attached to its defence, the Commission stated that, in its view, the exception relied on applied to all the documents referred to in the file. However, as is clear from the considerations set out in the preceding paragraph, that table contradicts the reasons for the contested decision.

87    Finally, and in any event, it is not apparent from the reasons given for the contested decision that each of the documents comprising the Lombard Club file, taken individually, is covered in its entirety by the exception referred to in the third indent of Article 4(2) of Regulation No 1049/2001. It is not clear that disclosure of any information contained in them would undermine the purposes of the Commission's inspections and investigations.

88    The absence of any concrete, individual examination of the documents referred to by the applicant's request is therefore not justified in the case of the documents allegedly covered by the first exception relied on by the Commission.

89    The same finding must apply with regard to the documents covered, according to the contested decision, by the second, third and fourth exceptions. Those exceptions relate to the protection of commercial interests (first indent of Article 4(2) of Regulation No 1049/2001), the protection of court proceedings (second indent of Article 4(2)) and the protection of privacy and the integrity of the individual (Article 4(1)(b)). It is clear from points 2, 3, 10, 12 and 13 of the contested decision that, in the Commission's view, those exceptions concern only some of the documents referred to in the request. In particular, in point 13 of the contested decision, the Commission states that 'it is possible that a large proportion of the documents drawn up by the banks concerned or by third parties also contain information the disclosure of which could affect privacy and the integrity of the individual'.

90    It is therefore apparent from the contested decision that the exceptions relied on by the Commission do not necessarily apply to the whole of the Lombard Club file and that, even in the case of the documents to which they may apply, they may concern only certain passages in those documents.

91    Finally, the interveners rely on the exception in Article 4(3) of Regulation No 1049/2001. They maintain that the Lombard Club decision has been the subject-matter of several actions for annulment and that it is therefore not yet a decision 'taken' within the meaning of Article 4(3), which justifies a total refusal of access. However, since that exception was not relied on by the Commission in the contested decision, it is not for the Court to assume the role of that institution and determine whether that exception is actually applicable to the documents referred to by the request.

92    Consequently, the Commission was bound, in principle, to carry out a concrete, individual examination of each of the documents referred to in the request in order to determine whether any exceptions applied or whether partial access was possible.

93    Nevertheless, since, in this case, the Commission did not carry out such an examination, it must be determined whether it is permissible for an institution to justify a total refusal of access by reason of the very large amount of work which, according to that institution, is entailed by such an examination.

    –    Application of an exception related to the amount of work involved in carrying out a concrete, individual examination

94    Under Article 6(3) of Regulation No 1049/2001, 'in the event of a request relating to a very long

document or to a very large number of documents, the institution concerned may confer with the applicant informally, with a view to finding a fair solution'.

95    In this case, it is apparent from the file that the applicant and the Commission met on 24 July 2002, but that that meeting and the contacts which followed it did not lead to a solution.

96    Regulation No 1049/2001 does not contain any provision expressly permitting the institution, in the absence of a fair solution reached together with the applicant, to limit the scope of the examination which it is normally required to carry out in response to a request for access.

97    In the introductory part of the contested decision, the Commission nevertheless, in essence, justifies the failure to carry out a concrete, individual examination of the documents in question by application of the principle of proportionality. The Commission states inter alia that 'for reasons of proportionality, it does not appear either necessary or expedient to undertake an examination of the documents beyond the [abovementioned] categories'. The Commission also relies on application of the principle of proportionality in points 10, 13 and 24 of the contested decision.

98    It must therefore be examined whether it is in fact permissible, on the basis of the principle of proportionality, to refrain from applying the principle of a concrete, individual examination of the documents referred to in a request for access under Regulation No 1049/2001.

99    According to consistent case-law, the principle of proportionality requires measures adopted by Community institutions not to exceed the limits of what is appropriate and necessary in order to attain the objectives pursued; when there is a choice between several appropriate measures recourse must be had to the least onerous, and the disadvantages caused must not be disproportionate to the aims pursued (Case C-157/96 *National Farmers' Union and Others* [1998] ECR I-2211, paragraph 60, and Case T-211/02 *Tideland Signal* v *Commission* [2002] ECR II-3781, paragraph 39). The principle of proportionality also requires that derogations remain within the limits of what is appropriate and necessary for achieving the aim in view (Case 222/84 *Johnston* [1986] ECR 1651, paragraph 38, and *Hautala* v *Council*, cited in paragraph 69 above, paragraph 85).

100   Consequently, the refusal by an institution to examine concretely and individually the documents covered by a request for access constitutes, in principle, a manifest breach of the principle of proportionality. A concrete, individual examination of the documents in question enables the institution to achieve the aim pursued by the exceptions referred to in Article 4(1) to (3) of Regulation No 1049/2001 and results, moreover, in identification of the only documents covered, in whole or in part, by those exceptions. It therefore constitutes, for the purposes of the applicant's right of access, a measure less onerous than a complete refusal to examine the documents.

101   It should however be borne in mind that it is possible for an applicant to make a request for access, under Regulation No 1049/2001, relating to a manifestly unreasonable number of documents, perhaps for trivial reasons, thus imposing a volume of work for processing of his request which could very substantially paralyse the proper working of the institution. It should also be noted that, where a request relates to a very large number of documents, the institution's right to seek a 'fair solution' together with the applicant, pursuant to Article 6(3) of Regulation No 1049/2001, reflects the possibility of account being taken, albeit in a particularly limited way, of the need, where appropriate, to reconcile the interests of the applicant with those of good administration.

102   An institution must therefore retain the right, in particular cases where concrete, individual examination of the documents would entail an unreasonable amount of administrative work, to balance the interest in public access to the documents against the burden of work so caused, in order to safeguard, in those particular cases, the interests of good administration (see, by analogy, *Hautala* v *Council*, cited in paragraph 69 above, paragraph 86).

103   However, that possibility remains applicable only in exceptional cases.

104   Firstly, concrete, individual examination of the documents referred to in a request for access under Regulation No 1049/2001 is one of the elementary duties of an institution in response to such a request.

105   Secondly, public access to documents of the institutions is an approach to be adopted in principle, whereas the power to refuse access is the exception (see, by analogy with the principle laid down

for application of the code of conduct, *Kuijer II*, paragraph 55).

106    Thirdly, exceptions to the principle of access to documents must be interpreted strictly (see, by analogy with the code of conduct, Case T-111/00 *British American Tobacco International (Investments)* v *Commission* [2001] ECR II-2997, paragraph 40). That case-law justifies a fortiori the need to construe particularly strictly any limitations placed on the diligence which must normally be displayed by an institution in deciding to apply an exception, since such limitations increase, from the time the request is received, the risk that the right of access may be compromised.

107    Fourthly, there are many circumstances in which for the Commission to have discretion not to carry out a concrete, individual examination when such an examination is necessary would run counter to the principle of good administration, which is one of the guarantees afforded by the Community legal order in administrative procedures and to which the duty of the competent institution to examine carefully and impartially all the relevant aspects in the individual case is linked (Case T-44/90 *La Cinq* v *Commission* [1992] ECR II-1, paragraph 86, and Joined Cases T-528/93, T-542/93, T-543/93 and T-546/93 *Métropole télévision and Others* v *Commission* [1996] ECR II-649, paragraph 93).

108    Fifthly, it is not, in principle, appropriate that account should be taken of the amount of work entailed by the exercise of the applicant's right of access and its interest in order to vary the scope of that right.

109    With regard to the applicant's interest, under Article 6(1) of Regulation No 1049/2001 he is not required to justify his request and therefore he does not normally have to demonstrate any interest.

110    As regards the amount of work entailed in processing a request for access, Regulation No 1049/2001 expressly envisages the possibility that a request for access may relate to a very large number of documents, since Articles 7(3) and 8(2) provide that the time-limits for processing initial requests and confirmatory requests may be extended in exceptional cases such as, for example, in the event of an application relating to a very long document or to a very large number of documents.

111    Sixthly, the amount of work entailed in considering a request for access depends not only on the number of documents referred to in the request and their volume, but also on their nature. Consequently, the need to undertake a concrete, individual examination of very numerous documents does not, on its own, provide any indication of the amount of work entailed in processing a request for access, since that amount of work also depends on the required depth of that examination.

112    Accordingly, it is only in exceptional cases and only where the administrative burden entailed by a concrete, individual examination of the documents proves to be particularly heavy, thereby exceeding the limits of what may reasonably be required, that a derogation from that obligation to examine the documents may be permissible (see, by analogy, *Kuijer II*, paragraph 57).

113    In addition, in so far as the right of access to documents held by the institutions constitutes an approach to be adopted in principle, it is with the institution relying on an exception related to the unreasonableness of the task entailed by the request that the burden of proof of the scale of that task rests.

114    Finally, where the institution has adduced proof of the unreasonableness of the administrative burden entailed by a concrete, individual examination of the documents referred to in the request, it is obliged to try to consult with the applicant in order, on the one hand, to ascertain or to ask him to specify his interest in obtaining the documents in question and, on the other, to consider specifically whether and how it may adopt a measure less onerous than a concrete, individual examination of the documents. Since the right of access to documents is the principle, the institution nevertheless remains obliged, against that background, to prefer the option which, whilst not itself constituting a task which exceeds the limits of what may reasonably be required, remains the most favourable to the applicant's right of access.

115    It follows that the institution may avoid carrying out a concrete, individual examination only after it has genuinely investigated all other conceivable options and explained in detail in its decision the reasons for which those various options also involve an unreasonable amount of work.

116   It must therefore be examined, in this case, whether the Commission was in a situation where concrete, individual examination of the documents referred to in the request for access imposed on it a burden exceeding the limits of what might reasonably be required, so that, taking into account the applicant's interest, it could specifically consider other options for processing the request, with a view, where appropriate, to adopting a measure less onerous in terms of its workload.

117   With regard, first, to whether a concrete, individual examination of each of the documents referred to in the request was unreasonable, it should be noted that the contested decision does not mention the precise number of documents in the Lombard Club file, but merely the number of pages which it contains. A mere reference to a number of pages is not sufficient, as such, for the purpose of assessing the amount of work entailed by a concrete, individual examination. Nevertheless, in the light, on the one hand, of the categories identified by the Commission in the contested decision and, on the other, of the nature of the file in question, it is clearly apparent from the papers in the case that the documents referred to are very numerous.

118   In addition, consultation of a file of more than 47 000 pages comprising many documents such as those belonging to the categories identified by the Commission is likely to be an extremely large task.

119   Firstly, it is clear that the documents in the Lombard Club file are filed in chronological order. In that regard, at the hearing, the Commission stated that, in view of the date of the contested decision, the documents referred to in the applicant's request had not yet been recorded in the register provided for by Article 11 of Regulation No 1049/2001, the coverage of which, according to Article 8(1) of the Commission Decision of 5 December 2001 amending its rules of procedure, is to be extended gradually.

120   Secondly, in the light of the main categories identified by the Commission and of the reasons for the contested decision, it can be accepted that the documents referred to by the applicant's request contain a great deal of information which must be subjected to a concrete analysis in the light of the exceptions to the right of access and, in particular, information which could undermine the protection of the commercial interests of the banks involved in the Lombard Club file.

121   Thirdly, in the light of the main categories identified by the Commission, it can also be accepted that the Lombard Club file consists of a large number of documents originating from third parties. Consequently, the volume of work involved in examining concretely and individually the documents contained in that file could be increased by the need, where appropriate, to consult those third parties in accordance with Article 4(4) of Regulation No 1049/2001.

122   In this case, therefore, there are a number of factors which suggest that concrete, individual examination of all the documents in the Lombard Club file might represent a very large amount of work. Nevertheless, without there being any need to take a definitive view as to whether those factors demonstrate sufficiently in law that the amount of work involved exceeded the limits of what might reasonably be required of the Commission, it must be pointed out that the contested decision, which refuses altogether to grant the applicant any access, could in any event be lawful only if the Commission had previously explained specifically the reasons for which the alternatives to a concrete, individual examination of each of the documents referred to also represented an unreasonable amount of work.

123   In this case, the applicant informed the Commission, on 14 June 2002, that the purpose of its request was to enable it to produce certain evidence in proceedings brought against BAWAG before the Austrian courts.

124   It is also clear that, on 24 July 2002, at a meeting with the Commission's staff, the representatives of the VKI mentioned the possibility that the applicant could give an undertaking in writing to use the information obtained solely for the purpose of asserting consumers' claims.

125   In addition, in its confirmatory request of 26 September 2002, the applicant stated that it was not interested primarily in the Commission's internal documents, which prompted the latter to exclude those documents from the scope of its analysis in the contested decision.

126   Notwithstanding those considerations, it is not apparent from the reasons for the contested decision that the Commission considered specifically and exhaustively the various options available to it in order to take steps which would not impose an unreasonable amount of work on it but would, on the other hand, increase the chances that the applicant might receive, at least in respect of part of its

request, access to the documents concerned.

127    Thus, in the contested decision, the Commission stated 'as a subsidiary consideration' that publication of the Lombard Club decision was sufficient to 'safeguard' the interests of the applicant.

128    In addition, in point 24 of the contested decision, the Commission refused, in the following terms, to grant partial access to the documents included in the Lombard Club file:

'We have undertaken in this case, for the purpose of deciding on your request, a categorisation of all the documents in the file and, in the case of some, a sub-categorisation. The alternative would be to examine each document, after consulting third parties where appropriate. In this specific instance, the file consists of more than 47 000 pages, not counting the internal documents. On the basis that an examination by reference to categories indicates that the documents in the file are − with the exception of a few documents already published − very largely subject to the exceptions provided for by the regulation, a separate examination of each document would impose on the Commission an inappropriate and disproportionate amount of work. That is particularly so because the other parts of the documents, or some of them, which could possibly be disclosed, would very probably serve neither the interests [of the] VKI in proving the unlawfulness of the conduct of the banks concerned in civil proceedings, nor other public interests.'

129    It is therefore clear that the Commission took into account the applicant's interest as a very subsidiary consideration in comparing the likely effects of two types of practice, namely, in the first place, an individual examination of the documents included in the Lombard Club file and, in the second place, an examination limited to the categories established among those same documents on the basis of their nature.

130    However, it is not apparent from the reasons for the contested decision that the Commission assessed, in a concrete, specific and detailed manner, on the one hand, the other conceivable options for limiting its workload and, on the other, the reasons which could allow it to avoid carrying out any examination rather than adopting, where appropriate, a measure less restrictive of the applicant's right of access. In particular, it is not apparent from the contested decision that, as regards the identification of documents contained in a file arranged in chronological order, the Commission specifically examined the option of asking the banks involved in the Lombard Club file to provide it with the dates of the documents submitted by them, which might possibly have enabled it to find some of them more easily in its file. In addition, although the Commission stated in its defence that drawing up a table of contents would have been a disproportionate task, the examination of that option is not mentioned at all in the contested decision and therefore cannot be considered to have been specifically examined. Finally, it is likewise not apparent from the contested decision that the Commission evaluated the amount of work involved in identifying, then examining, individually and concretely, the few documents most likely to satisfy immediately and, where appropriate, partially in the first instance the applicant's interests.

131    The outright refusal by the Commission to grant the applicant access is therefore vitiated by an error of law. The first and fourth pleas must therefore be upheld. Consequently, without there being any need to rule on the other pleas put forward by the applicant, the contested decision must be annulled.

### The request for production of documents

132    It is for the Community judicature to decide, in the light of the circumstances of the case and in accordance with the provisions of the Rules of Procedure on measures of inquiry, whether it is necessary for a document to be produced (Case C-196/99 P *Aristrain* v *Commission* [2003] ECR I-11049, paragraph 67).

133    Since the first and fourth pleas of the applicant must be upheld without there being any need to examine the documents in question, there is certainly no need in this case to order the production requested.

### Costs

134    Under Article 87(2) of the Rules of Procedure, the unsuccessful party is to be ordered to pay the costs if they have been applied for in the successful party's pleadings. Since the Commission has

been unsuccessful, it must be ordered to pay the costs borne by the VKI, in accordance with the form of order sought by the latter.

135    Under the third subparagraph of Article 87(4) of the Rules of Procedure, the Court may order an intervener to bear its own costs. In this case, the interveners are to bear their own costs.

On those grounds,

THE COURT OF FIRST INSTANCE (First Chamber, Extended Composition)

hereby:

1.    **Annuls Decision D (2002) 330472 relating to a request for access to the administrative file in Case COMP/36.571/D-1, Austrian banks – 'Lombard Club';**

2.    **Orders the Commission to pay the costs;**

3.    **Orders the interveners to bear their own costs.**


Vesterdorf                               Jaeger                                    Mengozzi


Martins Ribeiro                                                                    Labucka

Delivered in open court in Luxembourg on 13 April 2005.


H. Jung                                                                    B. Vesterdorf

Registrar                                                                  President

---

* Language of the case: German.