IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | ) ) ) ) ) ) | MDL No. 05-1717-JJF |
| | ) **(DM 12)** | |
| ADVANCED MICRO DEVICES, INC. a<br>Delaware corporation, and AMD<br>INTERNATIONAL SALES & SERVICE, LTD.,<br>a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No. 05-441 (JJF) |
| v. | ) ) | |
| INTEL CORPORATION, a Delaware corporation,<br>and INTEL KABUSHIKI KAISHA, a Japanese<br>corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-485-JJF |
| v. | ) ) ) | CONSOLIDATED ACTION |
| INTEL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF MAURICE-ANTOINE LAFORTUNE

OF COUNSEL:

Robert E. Cooper
Daniel S. Floyd
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Michael L. Denger
Joseph Kattan, PC
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036-5306
(202) 955-8500

Darren B. Bernhard
Howrey LLP
1299 Pennsylvania Avenue
N.W. Washington, DC 20004
(202) 783-0800

Dated: July 3, 2008

872671 / 29282

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000

rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendants
Intel Corporation and Intel Kabushiki Kaisha*

# Declaration of Maurice-Antoine Lafortune

Avocat général honoraire à la Cour de cassation
(former Attorney General of the Supreme Court)

### FREE TRANSLATION OF THE AFFIDAVIT OF
### MAURICE-ANTOINE LAFORTUNE

I, Maurice-Antoine Lafortune, hereby make this affidavit intended to be produced before the Court of Delaware, and of which I have full knowledge.

I make this affidavit on the basis of my personal knowledge and I certify the truth of the facts outlined below:

The affidavit is based on my experience and my knowledge of procedures and the law in France. Statements and opinions expressed are given in good faith according to my understanding of the facts and applicable laws.

I was Attorney General for the Financial and Commercial Chamber of the Supreme Court between 1996, the year of my appointment, and 17 January 2007. I would add that I was an associate professor or lecturer in various major French universities. I am an officer of the *Légion d'Honneur*, a Commander of the *Ordre National du Mérite*, a *Chevalier des Palmes Académiques* and a holder of the *Médaille Pénitentiaire*. Prior to my position as a judge of the Supreme Court, I was Attorney General at the Court of Appeal of Paris, Deputy General to the General Prosecutor of the Paris Court of Appeal and a delegate judge working for central government, including the Ministry of Justice.

### 1. Facts on which this affidavit is based

1. In order to prepare this affidavit, I received a copy of the brief in support of (i) the Motion of *Union Fédérale - Que Choisir (Que Choisir)* to intervene with the limited objective to seek amendments to the "protective orders" and (ii) the Application, in accordance with 28 USC §1782 of the order dated 9 April 2008, requiring Intel and related third parties to provide access to documents and testimonies filed for foreign proceedings.

2. Furthermore, I was informed by Intel's legal advisors that the Delaware litigation is based on allegations that Intel has illegally monopolised the market for micro-processors x86. Complaints have been filed against Intel in this action by Advanced Micro Devices (AMD), a competitor of Intel, and by alleged purchasers of personal computers (PCs) containing micro-processors. Intel has also produced an electronic copy of 150 million pages of documents and more than 70 related third parties (such as manufacturers of PCs) have been assigned to produce documents.

3. I understand from these facts that the association *Que Choisir* brought the US action on the basis of Article 1782 of the United States Code related to the "Discovery" procedure, in order to seek evidence which could be used as part of proceedings that could take place in France, after the European Commission decision applying the competition rules.

### 2. Opinion on the action taken by *Que Choisir*

4. It will be shown below that French legal rules which, both in law and procedure, govern the admission of evidence in civil matters in France, render any probation proceedings initiated by an association in the USA inappropriate.

5. Initially, the action engaged in the USA by the association seems inappropriate in that it ignores French legal provisions that allow a party to obtain evidence produced by another party in the framework of an action for damages, such

*MAL*

as those which *Que Choisir* intends to introduce following the European Commission decision.

6. In France, access to evidence held by the opposing party is legally regulated. There is a full set of legal tools which can be used subject to applying for permission from the judge. The application before the judge may be made at any time during the proceedings, including before the proceedings are initiated using, for example, the provisions of Article 145 of the Code of Civil Procedure.

7. These mechanisms are powerful tools available to the judge and the parties to obtain the production of evidence. It is quite surprising that *Que Choisir* has decided to turn to a US Court to obtain evidence especially as it has not made use of the various provisions available under French law nor has it mentioned any difficulty that it might have faced in using such rules.

8. In these circumstances, the action of Que Choisir seems to be an attempt to circumvent French law requirements (for reasons which remains unknown to me) and hence an attempt to *forum shopping*.

9. I would also add that the fact that the evidence which Que Choisir claims to need is located in the USA does not justify the need for it to join the Discovery action in the USA, moreover when the latter is introduced by Intel's competitors.

10. Indeed, Articles 733, 734 and 735 of the Code of Civil Procedure allow the French judge at the request of the parties, or ex officio, to order investigations taking place in a foreign state and other acts necessary by giving letters rogatory to any competent judicial authority of that State or to relevant French diplomatic or consular authorities.

The communication is made through the French Ministry of Justice, unless an international treaty or agreement allows that the letters rogatory be addressed directly to the foreign authority.

12. The internationalisation of the law of evidence must also be taken into account. Thus, decree no. 75-250 dated 9 April 1975 has made applicable in France the Hague Convention of 18 March 1970, regarding the recovering of evidence abroad in civil and commercial matters. I note that the USA is also a signatory to that convention. That convention could therefore be used in order to obtain evidence which Que Choisir is seeking access to. For some reason that I am unaware of, that convention has not been used.

13. The failure to use existing tools has resulted in an attempt to circumvent the French legal rules, which will inevitably raise serious questions in front of the French judge regarding the admissibility of the evidence produced.

14. Indeed, Article 9 of the French Code of Civil Procedure states that "each party must prove in accordance with the law, the facts necessary to the success of its claim." It is admitted under French law that if the judge has the power to order any investigation legally permissible, the judge can neither make up a party's deficiency in the production of evidence (article 146, paragraph 2 , Code of Civil Procedure), nor admit evidence obtained unlawfully or unfairly (Cass. Soc. February 4, 1998, Bull. Civ. V - No. 64).

15. It is also within in the powers of French judge to supervise the "*loyal conduct of the proceedings*" between the parties (Article 763, paragraph 2 of the French Code of Civil Procedure.



16. In my opinion, such a circumvention of legal rules applicable in France can be qualified as an unfair process of obtaining evidence, which is in the judge discretionary power to sanction.

### 3. In conclusion

17. The undersigned declare that the behaviour of the association Que Choisir could be seen as a fraud of the conventional rules, including the provisions of the Hague Convention entered into force in the USA on 7 October 1972, following ratification on 8 August 1972.

Thus, in application of the "forum non conveniens" theory, the US Court in front of which the action has been introduced by the association is authorised to decline jurisdiction in favour of a French civil judge whose competence, in my opinion, seems to be more appropriate.

Similarly, the action of the association Que Choisir may be regarded as being "disloyal" in the course of the lawsuit that might later be brought in France on the basis of the evidence obtained through the earlier American "Discovery" procedure.

Done in Paris on 2 July 2008, in order to help the due process of law take place.

*[signature]*

Maurice-Antoine LAFORTUNE

Honorary General Attorney of the Supreme Court
Consultant Lawyer

## AFFIDAVIT DE MAURICE-ANTOINE LAFORTUNE

Je, Maurice-Antoine Lafortune, réalise le présent affidavit destiné à être produit devant la Cour de Delaware, ce dont j'ai parfaitement connaissance.

Je réalise cet affidavit sur la base de mes connaissances personnelles et j'atteste de la réalité des éléments ci-après exposés:

Cet affidavit repose sur mon expérience et ma connaissance des procédures et de la loi françaises. Les déclarations et avis exprimés sont établis de bonne foi d'après ma compréhension des faits et lois applicables.

J'ai été Avocat général à la Chambre Commerciale et Financière de la Cour de cassation entre 1996, date de ma nomination, et le 17 janvier 2007. J'ajoute que j'ai étais professeur associé ou chargé d'enseignement dans diverses grandes universités françaises. Je suis aussi, Officier dans l'Ordre National de la Légion d'Honneur et Commandeur de l'Ordre National du Mérite ainsi que Chevalier des Palmes Académiques et titulaire de la Médaille Pénitentiaire. Précédemment à mon poste de magistrat à la Cour de cassation, j'ai été Avocat général près la Cour d'appel de Paris, substitut général au Parquet de la Cour d'appel de Paris et magistrat délégué auprès d'administrations centrales, notamment celle du Ministère de la Justice.

**1/ Faits sur lesquels repose le présent affidavit**

1. Dans le but de préparer cet affidavit, j'ai reçu une copie du mémoire au soutien de 1/ la Motion Union Fédérale des consommateurs – Que Choisir (Que Choisir) afin d'intervenir avec l'objectif limité de rechercher les modifications du "protective orders" et de 2/ l'application, conformément à 28 U.S.C. §1782, de l'ordonnance datée du 9 avril 2008, requérant Intel et Les Tiers à fournir l'accès aux documents et aux témoignages déposés aux fins de procédures étrangères.

2. De plus, j'ai été informé par le Conseil d'Intel que le contentieux Delaware repose sur des allégations selon lesquelles Intel a monopolisé illégalement le marché des micro-processeurs x86. Des plaintes ont été déposées contre Intel dans cette action consolidée par Advanced Micro Devices ("AMD"), un concurrent d'Intel, et par de prétendus acheteurs d'ordinateurs personnels (PCs) contenant des micro-processeurs. Intel a aussi produit une version électronique représentant à 150 millions de pages de documents et plus de 70 tiers (tels que des fabricants de PCs) ont été assignés à produire des documents.

3. Je comprends de ces éléments que l'association QUE CHOISIR a introduit aux Etats-Unis une action, sur le fondement de l'article 1782 de l'United States Code relatif à la procédure de "Discovery", pour y rechercher des preuves en vue de leur utilisation

Affidavit M.-A. Lafortune

1

*MAL*

dans le cadre d'instances judiciaires susceptibles de se dérouler en France postérieurement à l'adoption par la Commission européenne d'une décision d'application des règles de concurrence.

**2/ Appréciation de l'action engagée par Que Choisir**

4. Il sera exposé ci-après que les dispositions légales et conventionnelles qui, en droit et en procédure, régissent en France l'admission et l'administration des preuves en matière civile, rendent inopportune la procédure probatoire engagée par cette association aux Etats-Unis.

5. Tout d'abord, l'action engagée aux Etats-Unis par l'association me paraît inopportune en ce qu'elle méconnait les dispositions légales françaises réglementant la production par une partie d'éléments de preuve dans le cadre d'un procès civil en dommages-intérêts, tels que ceux que Que Choisir prétend vouloir intenter après l'adoption par la Commission de sa décision.

6. En France, l'accès aux éléments de preuve détenus par la partie adverse est légalement réglementé. Toute partie a à sa disposition un arsenal juridique qu'elle doit solliciter auprès du juge. Cette sollicitation peut intervenir à tout moment de la procédure, y compris avant même que l'instance soit engagée en utilisant par exemple les dispositions de l'article 145 du code de procédure civile.

7. Ces mécanismes constituent des outils puissants à la disposition du juge et des parties pour obtenir la production d'éléments de preuve. Il est pour le moins surprenant que Que Choisir ait décidé de se tourner vers une juridiction américaine pour obtenir des preuves et ce alors même qu'elle n'indique ni avoir fait usage des dispositions prévues par le droit français ni avoir rencontré une quelconque difficulté dans ce cadre.

8. Dans ces conditions, l'action de Que Choisir me paraît constituer une tentative de contournement (même si j'en ignore et n'en comprends les raisons) des exigences du droit français et partant une tentative de *forum shopping*.

9. J'ajoute également que le fait que les éléments de preuve dont Que Choisir prétend avoir besoin se situent aux Etats-Unis est insusceptible de justifier la nécessité pour elle de se joindre à une action de discovery aux États-Unis, *a fortiori* lorsque cette dernière est introduite notamment par des concurrents.

10. En effet, les articles 733, 734 et 735 du code de procédure civile française permettent au juge, à la demande des parties, ou d'office, de faire procéder dans un Etat étranger aux mesures d'instruction ainsi qu'aux autres actes nécessaires en donnant commission rogatoire soit à toute autorité judiciaire compétente de cet Etat, soit aux autorités diplomatiques ou consulaires françaises.

2

11. La transmission est effectuée par le canal du Ministère de la justice française, à moins qu'en vertu d'un traité la commission rogatoire internationale puisse être adressée directement à l'autorité étrangère.

12. Il faut aussi tenir compte de l'internationalisation du droit de la preuve. C'est ainsi qu'un décret n° 75-250 du 9 avril 1975 a rendu applicable en France la Convention de la Haye du 18 mars 1970 sur l'obtention des preuves à l'étranger en matière civile et commerciale. Je note que les Etats-Unis sont également partie contractante à ladite convention. Cette convention pouvait en conséquence être utilisée pour obtenir les éléments de preuve dont Que Choisir sollicite l'accès. Pour une raison que l'on ignore cette voie de droit n'a pas été utilisée.

13. L'absence d'utilisation des outils existants et le contournement des règles françaises qui en résulte ne manqueront pas aussi d'entraîner devant le juge français de sérieuses questions quant à l'admissibilité de telles éléments.

14. En effet, l'article 9 du Code de procédure civile français énonce que chaque partie doit *"prouver conformément à la loi les faits nécessaires au succès de sa prétention"*. Or il est constant en droit français que si le juge a le pouvoir d'ordonner toutes les mesures d'instruction légalement admissibles, il ne peut suppléer à la carence d'une partie dans l'administration de la preuve (article 146, alinéa 2, du Code de procédure civile), ni admettre des moyens de preuve obtenus de manière illicite ou déloyale (Cass. Soc. 4 février 1998, Bull. civ. V – n° 64).

15. Il entre aussi dans les pouvoirs du juge civil français de veiller utilement *"au déroulement loyal de la procédure"* entre les parties (article 763, alinéa 2, du code de procédure civile français).

16. Pour moi, un tel contournement des dispositions légales et conventionnelles applicables en France est susceptible de s'apparenter à un procédé déloyal d'obtention des preuves qu'il appartient au juge, dans le cadre de son pouvoir d'appréciation, de sanctionner.

### 3/ En conclusion,

17. Le soussigné déclare que le comportement de l'association Que Choisir pourrait s'apparenter à une fraude au droit conventionnel, et notamment aux dispositions de la Convention de La Haye entrée en vigueur aux Etats-Unis le 7 octobre 1972 après une ratification le 8 août 1972.

    Ainsi, en application de la théorie du *"forum non conveniens"*, la juridiction américaine saisie par cette association est autorisée à se dessaisir au profit du juge civil français dont la compétence me paraît plus opportune.

De même, la démarche de l'association Que Choisir peut être considérée comme suspecte de "déloyauté" dans le déroulement d'un procès engagé en France ultérieurement sur le fondement des éléments obtenus par le biais de la procédure américaine antérieure de "discovery".

Fait à Paris, le 2 juillet 2008, pour faire valoir ce que de droit.

Maurice-Antoine LAFORTUNE
Avocat général honoraire à la Cour de cassation
Juriste Consultant

4

Affidavit M.-A. Lafortune