# EXHIBIT A

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
IRVINE SPECTRUM
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

October 24, 2005

OUR FILE NUMBER
008,346-163

**VIA E-MAIL AND U.S. MAIL**

WRITER'S DIRECT DIAL
(213) 430-6230

John J. Rosenthal, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

WRITER'S E-MAIL ADDRESS
dherron@omm.com

Re:     *AMD v. Intel:* **eDiscovery Issue Regarding Preservation**

Dear Mr. Rosenthal:

As agreed, this letter provides AMD's responses to the questions posed to Intel in Jeff Fowler's September 23, 2005 letter regarding preservation efforts.

## Overview of AMD's Preservation Efforts

### Enterprise Level Preservation

- On March 11, 2005, AMD sent preservation notices to the appropriate IT personnel in its various offices. The oldest full backup of the Exchange servers and Windows-environment, network shared file servers were located and preserved.

- Beginning March 19, 2005, full backups were made and retained. Over the next several weeks the backup schedules were coordinated; going forward, full backups are taken and retained every month.

- The monthly full backups are retained in secure locations. Most of the sites send their tapes to Austin, although a few offices retain their backups locally. Compliance is tracked and monitored on a weekly basis.

- AMD's document retention and destruction policies were suspended to prevent the inadvertent destruction of documents that may be relevant to this lawsuit.

O'MELVENY & MYERS LLP
John J. Rosenthal, Esq., October 24, 2005 - Page 2

<u>Custodian Level Preservation</u>

- On April 1, 2005, AMD issued its first wave of document preservation notices to approximately 150 custodians likely to have relevant information. The custodians were instructed to preserve all documents and data relevant to the lawsuit. This includes, of course, e-mail. Like Intel, AMD also is in the process of moving its custodians subject to the hold notice to a new Exchange server on which e-mail can be more easily stored.

- As additional custodians are identified, preservation notices are sent to them and they are put on the litigation hold. To date, the list of custodians includes approximately 440 people. Appropriate follow-up is conducted as needed to ensure custodian understanding and continued compliance with the hold.

**Responses to Follow-up Questions**

<u>One-Time Backup</u>

*How many total tapes were gathered during the snapshot?*
AMD is extracting monthly full backups of its Exchange and Windows-environment, shared network servers. Roughly 200 tapes are collected in these backups.

*How are they organized/indexed?*
These backup tapes are organized by backup type (*i.e.*, Exchange or file server), by site, and by date.

*How were instructions for the one-time backup communicated?*
The instructions for AMD's monthly backup protocol were communicated in writing. Follow-up phone calls were made to the appropriate IT personnel to confirm understanding and compliance.

*Were all snapshots taken on June 20?*
The oldest, full backup in existence as of March 11, 2005, was preserved and full backups were to be taken on and in the few weeks immediately after March 19, 2005. The exact date varied by a week or two depending on the sites' backup schedules. Since about May 2005, backup schedules were (and are now) coordinated worldwide.

*Have any backup tapes covering periods prior to June 20 been recycled?*
Prior to the initiation of the enterprise level hold on March 11, 2005, backup tapes were recycled and rewritten in the ordinary course of business.

*Have any backup tapes covering periods after June 20 been recycled?*
Monthly backup tapes for the Exchange and Window-environment, shared network servers have not been recycled since March 2005.

O'MELVENY & MYERS LLP
John J. Rosenthal, Esq., October 24, 2005 - Page 3

*Is there a legal hold on any existing backup tapes other than those constituting the one-time backup?*
Legal holds on monthly backup tapes are described above.

*Has there been any subsequent effort to target certain systems or segments of the IT structure and conduct more regular backup snapshots of those targets?*
As noted, AMD is conducting monthly backups on its Exchange and Windows-based, shared file environment. This has resulted in a large collection of tapes storing the data collected over the time period specified.

Shared Sources

*Has [AMD] engaged in any preservation efforts for shared sources other than hold notices to custodians?*
As part of the Enterprise Level Preservation, AMD is retaining monthly full backups of its Exchange and Windows-environment, shared network servers – which includes data and documents from employees company-wide.

Custodian Legal Holds

*Exactly how many hold notices have been issued?*
The current count of custodians to whom a litigation hold has been issued is roughly 440. AMD continues to assess the propriety of maintaining that hold with respect to all of these employees, some of whom AMD does not believe have any relevant information or involvement with any issue relevant to this lawsuit. Accordingly, AMD currently is in the process of reviewing its hold list and is considering paring that list, as appropriate.

*How was the hold notice communicated?*
The preservation notice was communicated in writing. Follow-up phone calls were made and emails sent on an as-needed basis.

*Please describe in specific terms the instructions given to custodians for how to preserve their electronic documents.*
At the present time, AMD will adopt Intel's approach to responding to this question.

*Is there a procedure to monitor compliance with the legal hold? What is it?*
Yes. Compliance is monitored in part by requesting acknowledgement of the custodians' receipt and understanding of the hold notice. Periodic email communications are sent to custodians reminding them of their preservation obligations and providing an opportunity to raise any questions or concerns. Follow-up communications occur on an as-needed basis.

*Is there a procedure for preserving the documents of terminated employees?*
Yes. When a custodian is terminated during the pendency of the litigation hold, AMD harvests that custodian's potentially relevant data and documents. AMD either retains or makes a forensic copy of that custodian's hard drive; segregates and preserves data and documents on Exchange and Windows-environment, shared network servers; and paper documents and other physical storage media are collected as appropriate.

O'MELVENY & MYERS LLP
John J. Rosenthal, Esq., October 24, 2005 - Page 4

*Are there different hold instructions for the custodian once his or her computer has been imaged for collection?*
Not at this time.

<u>Miscellaneous Sources</u>

*Does [AMD] archive Instant Messages?*
No. AMD's current instant messaging ("IM") system cannot be configured to save or log IMs. Accordingly, AMD does not have an instant message archiving system.

*What efforts are being made to prevent relevant data from being deleted in Instant Messaging systems?*
Custodians have been specifically instructed not to use IMs for business-related, substantive communication. Such business information is to be conveyed via email, memorandum, or other means that can be saved and retrieved. The litigation hold applies to require preservation of any communications by this or other means that is relevant to the lawsuit.

Please feel free to contact me if you have any questions.

Sincerely,

David L. Herron
of O'MELVENY & MYERS LLP

cc:    Rod Stone, Esq.

CC1:720688.8

# EXHIBIT C

**AMD's Backup Tape Retention Protocols**

Advanced Micro Devices, Inc. ("AMD") provides the following summary of its backup

tape retention protocols in response to the backup tape-related questions set forth in Intel counsel

Richard P. Levy's November 7, 2007 and March 4, 2008 correspondence.  This summary

supplements the backup tape information that AMD already has provided Intel.  (*See, e.g.,*

October 25, 2005 letter from David Herron to John J. Rosenthal, attached hereto as Exhibit "A".)

AMD's backup tape retention protocols have involved three steps.  *First*, on or around

March 11, 2005, IT retained the oldest full backups of every Exchange or file server utilized by

relevant employees involved in AMD's x86 general purpose microprocessor business

("Employees").  *Second*, on or around March 19, 2005, IT took a one-time snapshot of the same

Exchange and file servers.  *Third*, IT indefinitely suspended its backup tape recycling procedures

and, since March 19, 2005, continues to retain 30 day backup tapes of all Exchange and/or file

servers utilized by Employees.  Each of these steps is discussed below.

*Step 1: Retaining the Oldest Full Backups*

On March 11, 2005, AMD instructed IT managers to identify and retain the oldest full

backup of every Exchange and file server utilized by Employees.  IT personnel in the various

offices then delivered the tapes to designated storage vaults.

This backup retention effort involved servers located in Austin, Sunnyvale, Boston,

Longmont, Taipei, Hong Kong, Beijing, Tokyo, Seoul, Dresden, Frimley (UK), Munich, Paris,

Milan, Stockholm, Helsinki, Moscow, Amsterdam, and Antwerp.  The months covered by these

<u>**AMD's Backup Tape Retention Protocols**</u>

tapes vary depending on backup cycles, but most are within the January to March 10, 2005 timeframe.

*Step 2: Taking the March 19, 2005 Snapshot*

On or around March 19, 2005, IT personnel made a special one-time backup of each Exchange and file server in the locations above.  IT personnel from the various offices then delivered the tapes to the same designated storage vaults that maintain the backup tapes collected pursuant to Step 1.  These tapes would contain any data stored on the Exchange and file servers utilized by Employees as of the date that the one-time backup was made for the particular server, on or around March 19, 2005.

*Step 3: Retaining Monthly Backups Since March 2005*

AMD IT has retained 30-day backup tapes for Exchange and file servers utilized by Employees since March 2005.  AMD IT monitors and tracks the monthly backup procedures. Every month, IT personnel in each location are required to report regarding each 30-day backup. Tapes are maintained in designated storage vaults.  This monthly backup tape protocol includes all Exchange servers utilized by Employees; therefore, the resulting backup tapes would include the Exchange mailboxes for all Employees employed at AMD from March 2005 to the present.

# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT F

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT G

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

## SUMMARY OF AMD'S DOCUMENT COLLECTION PROTOCOLS

The following summarizes the document collection protocols that Advanced Micro Devices ("AMD") has implemented to collect potentially responsive documents from custodians designated by the parties pursuant to the Stipulation and Order Regarding Document Production. The summary provided below applies both to the harvesting efforts conducted by AMD prior to the date hereof and to document collections that currently are ongoing.

### AMD's Collection Plan and Pre-Collection Preparations

Before commencing its collection efforts, AMD assembled a team consisting of members of AMD's in-house legal staff, its Information Technology group, its outside counsel, and its electronic discovery consultants, Forensics Consulting Solutions ("FCS"), to develop a legally-compliant electronic discovery collection plan. AMD's goals were to ensure that it used forensically-sound methods to collect the broadest amount of potentially relevant material in the custodians' possession, and to confirm that the preservation protocols that AMD had previously implemented were working as intended. AMD continues to monitor and follow its collection protocols detailed below, which includes members of AMD's team meeting on a weekly basis to ensure that the collection plan's protocols are followed.

AMD's collection plan is designed to provide a comprehensive, forensically-sound collection through three key steps:

1. Conducting attorney-led interviews with custodians to confirm that any and all potentially relevant sources of unique data have been collected;

2. Collecting forensic images or original sources of all unique electronic materials and copies of all potentially relevant hard-copy documents from the relevant time

period.  AMD is not aware of any potential sources of data other than those discussed below; and

3.  Delivering all designated custodians' materials to FCS, which is responsible for processing the data, tracking its chain-of-custody, and preserving the original media in a secure evidence locker.

AMD's in-house legal staff initiates the collection process for actively-employed, designated custodians by sending a written notice.  This notice outlines the collection process and reminds the custodian of her or his on-going duty to preserve documents.

**Collection Interviews**

AMD requires that each custodian is interviewed by an in-house or outside counsel who is familiar with a specific custodian interview protocol.  Custodian interviews cover a litany of topics and questions that are designed to elicit a comprehensive account of the existence and location of all electronic data and other materials, including such topics as how many computers the custodians use for work or any work-related purpose, where their electronic documents are stored (*e.g.*, hard drive, network space, external drives, CDs), and where their paper documents are stored (*e.g.*, office, off-site storage).  The interviews also include discussion of technical issues, such as hard drive failures, that may have affected the custodians' ability to retain documents.  AMD also has instructed the interviewers to remind each custodian during the course of the interview that he or she remains subject to document retention obligations, notwithstanding the harvest of the custodian's electronic data and paper documents.

The electronic discovery team has interviewed several custodians more than once.  Most recently, AMD interviewed several custodians who are current employees in and after September 2007 in order to identify and collect additional potentially responsive materials pursuant to the

parties' agreed-upon June 1, 2006 cut-off date (as set forth in Stipulated Case Management

Order No. 3, executed by the Court on September 19, 2007).

**Collection of Electronic Materials**

*Computers and Other Media*

AMD has used its internal IT personnel and outside vendors to acquire bit-by-bit images

of computer hard drives. This bit-by-bit imaging methodology ensures that AMD has collected a

forensically-sound and comprehensive image of all data stored on the hard drive. Thus, unlike

Intel, AMD has not limited its harvesting to specific file types taken from custodian hard drives

but, instead, captures an image of all data residing on the custodian's hard drive(s) without

regard to its potential relevance to this litigation.

During the original harvest, AMD imaged the hard drive of any computer in the

custodian's possession that contained potentially relevant data. During subsequent re-harvests

designed to obtain responsive material through the agreed-upon June 1, 2006 cut-off, AMD

imaged the hard drive of any computer that a custodian used before June 1, 2006, and that AMD

had not previously collected. There are a limited number of instances where the interviewer

determined that a custodian possessed the same data on multiple electronic media (*e.g.*, back-ups

made of hard drives). In some of those instances, AMD chose not to copy the data from multiple

sources.

Some AMD custodians make copies or back-ups of their hard drives or select files to

external storage media, such as external drives or CDs. If a custodian discloses during the

interview process that she or he has potentially relevant documents saved on external storage

media that are not also maintained on her or his computer's hard drive, or if the custodian is

uncertain as to whether or not all of the relevant data is stored not only externally but also on the

3

hard drive, then AMD collects and copies all external storage media. The copy of that media, or the media itself, is then delivered to FCS for processing.

*Network Space*

AMD provides most, but not all, employees personal space on network file servers so that employees may save work-related materials on AMD's network (hereafter "network space"). These network spaces are personal to each employee, *i.e.*, only that employee's materials are saved in an employee's personal network space. Not all of AMD's custodians use the network space assigned to them to store any data and others are not assigned network space (*e.g.*, employees who work remotely). The electronic discovery team obtains an export of custodians' network space during a custodian's harvest and/or re-harvest. During harvesting interviews, the interviewing attorney asks the custodians how and whether they use their network space to confirm that AMD's IT department has identified and located all storage locations or media of any variety that may contain relevant custodian data. AMD also has retrieved existing data stored on network space for each former AMD employee who has been selected as a party-designated or adverse-party designated custodian for production. AMD delivers all exports of these sources to FCS for processing and storage.

*Journal and Vault Harvesting*

In addition to the hard drives and network spaces collected for each custodian, AMD also collects Journal and Vault email archives. (Details concerning AMD's Journal and Vault previously have been disclosed to Intel during the informal technical exchange in September 2007.) To collect the email archives, AMD's in-house legal staff sends a directive requesting extraction of data from the Journal and/or Vault to AMD's internal IT staff. After AMD IT staff executes the request, the extracted data, organized by custodian, is saved to external storage media that is then delivered to FCS for processing.

**Paper Documents**

During the harvest interviews, attorneys ask custodians to describe how they maintain their paper or hard copy files. Following the interview, a member of the harvesting team, usually a paralegal, returns to the custodian's physical work space to collect these materials. At that time, both paper documents and any CDs or other external storage media containing relevant materials are collected (if such media have not been collected already). This includes all paper documents and, as noted above, all external storage media containing data that is dated after January 1, 2000, and is subject to the litigation hold notice and instructions. During the original harvest, AMD thus obtained paper documents containing data dated after January 1, 2000, to the date of the harvest. During the re-harvest of data designed to supplement the collection of the data of AMD's party-designated custodians through the agreed-upon date of June 1, 2006, AMD collected, or is in the process of collecting, paper documents and external storage media containing data dated after the date of the first collection through June 1, 2006.

Once the electronic discovery team has collected paper documents from the custodians who reside in AMD's principal domestic business locations, they are sent to a copy service (one located in Sunnyvale, California, and a second located in Austin, Texas) to be scanned into .pdf format. Those static images, once created, are then forwarded to FCS for processing. For custodians located outside of one of the AMD main domestic offices (*e.g.*, field sales personnel, or domestic U.S. custodians located outside of Sunnyvale, California, or Austin, Texas, and those custodians located in international offices), attorneys typically instruct the custodians to gather all AMD business-related materials subject to the litigation hold instructions and to forward the originals or copies thereof to AMD's in-house legal staff located in Austin, Texas. After receipt by AMD's in-house legal staff in Austin, the paper documents are delivered to an Austin-based copy service to be scanned into .pdf format. Those static images, once created, are then forwarded to FCS for processing. In a limited number of cases, AMD has instructed a

European-based copy service to scan documents from custodians in Europe into a .pdf format. Those static images are then forwarded to FCS for processing.

### FCS Storage and Tracking

AMD delivers all media, or copies of media, collected for designated custodians to FCS, which maintains a tracking database and stores the data. Each piece of media is sent to FCS with an evidence tracking form on which AMD describes the contents of the media, its chain of custody, and any other information needed to track the data. FCS then enters the tracking information into a database, and utilizes that information as it processes the data. FCS stores the original media in a secure evidence locker.

# EXHIBIT J

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT K

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY