## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORPORATION MICROPROCESSOR<br>ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC., a Delaware<br>corporation, and AMD INTERNATIONAL SALES &<br>SERVICE, LTD., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>INTEL CORPORATION, a Delaware corporation, and<br>INTEL KABUSHIKI KAISHA, a Japanese<br>corporation,<br><br>        Defendants. | C.A. No. 05-441 (JJF) |
| PHIL PAUL, on behalf of himself and all others<br>similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>INTEL CORPORATION,<br><br>        Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

### THIRD PARTY CDW CORPORATION'S BRIEF IN OPPOSITION TO MOTION OF UNION FEDERALE DES CONSOMMATEURS-QUE CHOISIR TO INTERVENE FOR THE PURPOSE OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER AND APPLICATION PURSUANT TO 28 U.S.C. § 1782

OF COUNSEL:

Thomas P. Cimino, Jr., Esq.
Matthew F. Carmody, Esq.
VEDDER PRICE P.C.
222 N. LaSalle Street, Suite 2600
Chicago, IL 60601
312/609-7500

BAYARD, P.A.

Richard D. Kirk, Esq.
222 Delaware Avenue
Suite 900, P.O. Box 25130
Wilmington, DE 19899
302/429-4208

August 18, 2008

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT...................................................................................................... 4

       A.     CDW Does Not Market Products to European Consumers, So The
Information Produced by CDW is Irrelevant to Any Possible Foreign
Action Contemplated By QC on Behalf of French Consumers........................... 4

       B.     QC's Reliance Upon Representations With Respect to the "Japan
Litigation" Are Wholly Unavailing, Especially With Respect to Third
Parties Such as CDW ........................................................................................ 6

IV.   CONCLUSION................................................................................................... 7

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*Collens v. City of New York*,
222 F.R.D. 249, 253 (S.D.N.Y. 2004) ............................................................................. 5

*In re ML-Lee Acquisition Fund II, L.P.*,
151 F.R.D. 37, 41 (D. Del. 1993) ................................................................................... 5

## I.    <u>INTRODUCTION</u>

Third party CDW Corporation ("CDW") strongly opposes the Motion and Application of non-party Union Federale des Comsommateurs – Que Choisir ("QC") to allow QC blanket access to highly confidential discovery materials produced by all third parties in this litigation. In this respect, CDW joins and incorporates by reference those arguments raised in opposition by the other third parties. In addition, CDW submits this separate Opposition Brief to highlight why granting QC's request would be particularly egregious in the case of CDW.

QC describes itself as a "French consumer association" and has made it abundantly clear that it only needs information concerning events taking place in or affecting Europe. (QC Reply p. 3.) However, CDW does not have offices in Europe, nor does it market products in Europe. In short, CDW's confidential information has no bearing on QC's supposed future action, and QC should not be permitted access to CDW's highly confidential information simply to conduct a fishing expedition.

Finally, in addition to the very sound reasons why QC should be denied access to this information in the first instance, QC cannot answer the unavoidable secondary question: *Why now?* The Special Master has determined that the very same information that QC seeks is highly confidential and that third parties such as CDW would suffer great harm if that information fell into the wrong hands. *See* Special Master's Report and Recommendations Regarding Proposed Protective Order (D.I. 221) at 110-17. QC nevertheless seeks immediate *carte blanche* access to this information, having offered no compelling reason why an en masse turnover of this highly sensitive information is presently necessary.

Consider the current circumstances: (1) the European Commission ("EC") has not yet ruled and no official timeline has been revealed as to when the EC might reach a decision; (2) QC has not conclusively determined that it will definitely litigate; (3) *if* QC decides to litigate, it

cannot affirmatively say where it will initiate proceedings—suggesting the possibility of two fora (Portugal and England) having no connection with French consumers; (4) QC also has not yet determined those persons who will serve as plaintiffs in the supposed action it will be filing; (5) no actual proceedings have been filed and no foreign protective order has been entered; and (6) QC has no assets in the United States, is not based here, and has no members here, and, thus, is not subject to the coercive powers of this Court to ensure compliance with the provisions of the protective order in this case.

Should QC file a future action in a foreign jurisdiction, and should that foreign jurisdiction enter an appropriate protective order, perhaps this Court might then be in a position to inquire as to whether third party information from this proceeding would be useful in the foreign proceeding. Were that to occur, this Court could conduct a proper analysis, with ability to evaluate the rules and procedures of the foreign jurisdiction, the scope of the claims, the plaintiffs to the action, the protections available and the need for the requested information. That is not the case here, however.

Right now, QC can only claim that it might file some undetermined claims, on behalf of underdetermined plaintiffs, in an undermined forum, at an undetermined time in the future, with undetermined protections for information produced by others, but that in the spirit of foreign cooperation, this Court must immediately trust QC with blanket access to the highly sensitive information of many of the world's largest technology companies. When broken down to its essential elements, QC's request is immensely premature. It therefore must be denied.

## II.    **BACKGROUND**

CDW is a privately-held company headquartered in Vernon Hills, Illinois and is a leading provider of a full range of computer equipment, software, technology products and related services to a variety of customers throughout North America. Although CDW routinely sells

products sold by brands such as Apple, HP and IBM, including those containing microprocessors manufactured by Intel, CDW itself is not an Original Equipment Manufacturer, or OEM. Therefore, CDW's sole nexus to the Intel Microprocessor Antitrust Litigation is simply that of a reseller; it was merely one conduit by which products containing Intel microprocessors reached North American consumers and business entities.

In connection with this litigation, and pursuant to subpoena, CDW produced highly confidential transactional data relating to sales of such products containing Intel microprocessors (the "Produced Data.") As a reseller, the core essence of CDW's business involves the process by which CDW acquires, prices, markets, and then resells products. The highly confidential data produced in this litigation is revealing of this process, as well as many of CDW's most valued and protected business secrets. CDW's Produced Data is not generally known or readily ascertainable, confers a competitive advantage on CDW, and it would greatly harm CDW if such information were leaked into the public domain or otherwise became known to CDW's customers, suppliers or competitors. As a result, CDW only made the Produced Data available on the precondition that a robust Protective Order was in place to ensure that the confidentiality of its data is maintained.

The purpose of the data produced by CDW in this litigation was to evidence the passage of products containing Intel microprocessors to end-users purchasers, and the prices those purchasers paid to acquire such products. Importantly, CDW does not maintain offices in Europe or market to European consumers. Thus, while CDW's Produced Data does have relevance to sales to North American consumers, it has no connection at all to a potential matter brought on behalf of French consumers.

III.    **ARGUMENT**

CDW adopts and incorporates by reference those arguments set forth by the other third parties as to why QC's request must be denied. In addition, CDW offers the following additional arguments as to why QC's request is gravely overbroad and not applicable to information produced by CDW (and other third parties).

A.    **CDW Does Not Market Products to European Consumers, So The Information Produced by CDW is Irrelevant to Any Possible Foreign Action Contemplated By QC on Behalf of French Consumers.**

The gross overbreadth of QC's request is made evident when considering its effect on third parties such as CDW. In casting its massive net to grab all information produced in this case, QC requests information having absolutely nothing to do with sales to its purported constituency – French consumers.

Unlike some of the other third parties involved here, CDW does not maintain offices in Europe, nor does it market its products to European consumers, whether in England, France, Portugal, or otherwise. The sales information produced by CDW in this matter involves sales to *North American* consumers and businesses.[1] Moreover, CDW is not an OEM, and would not possess information concerning alleged rebates identified by QC as a subject of its inquiry.

QC – by its own admissions throughout its Reply – seeks information exclusively pertaining to conduct in Europe, and principally information from OEM's:

- "QC proposes a targeted method of identifying documents pertaining to Europe that its counsel will review..." (QC Reply p. 3)

---

[1] Given the literally hundreds of thousands of transactions over a multiple year period, CDW cannot entirely rule out that some products sold by CDW in the United States were shipped to locations in Europe. However, because CDW does not have a business presence in Europe nor market products in Europe, such a sale, if it even exists, would be highly unusual, *de minimus*, and a statistically insignificant percentage of CDW's overall sales of Intel microprocessor products. In any event, the relevance of such a isolated event would be grossly outweighed by the potential harm to CDW of giving QC access to its highly confidential information.

- "QC thus is focused on *who* in Europe got *what* payments, *where, when and why,* and *how* such conduct impacted European consumers." (QC Reply p. 4) (emphasis in original)

- "QC proposes that its counsel (who already have access to the productions of Intel and third parties), search only for (1) documents sent to or from Europe; (2) documents in the possession of European custodians of records; (3) documents referencing European countries; or (4) documents relating to European countries but not expressly referencing them…" (QC Reply p. 26)

- "QC simply seeks further details and material relevant to evaluating impact on European consumers." (QC Reply p. 26)

Because QC concedes that the scope of its inquiry is limited to certain alleged conduct that either took place in Europe or affected European consumers, it has no business being granted access to highly confidential business information for sales in North America having nothing to do with Europe. QC seeks to sidestep this obvious deficiency by claiming that it "cannot categorically agree" that information regarding non-European sales would be outside the scope of any possible action QC might bring. Instead, QC offers the weak justification that some information that has been produced "might" bear on the European market. First, as a practical matter, this is exceedingly unlikely for an entity like CDW that does not market its products to European consumers. Second, rifling through highly confidential business information on the mere chance that a piece of information "might" have some collateral relevance to Europe is exactly the type of fishing expedition that courts of the United States do not tolerate. *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D. Del. 1993); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (disallowing discovery request as "based on pure speculation that amount[s] to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses").

CDW's lack of a European presence also would also make it virtually impossible to police QC's compliance with a foreign protective order. In essence, granting QC's request

would place CDW's highly confidential business information in the hands of foreign entities, over which this Court would have little coercive control and would make it extremely difficult for CDW to monitor compliance with the protective order in this case.

**B.    QC's Reliance Upon Representations With Respect to the "Japan Litigation" Are Wholly Unavailing, Especially With Respect to Third Parties Such as CDW.**

QC also relies heavily on purported statements made by Intel in connection with an earlier proposed protective order that would have included the Japan Litigation.  As an initial matter, it is important to note that the Special Master rejected the inclusion of that foreign proceeding within the scope of the protective order, partially out of concern of protecting "some of the most commercially and technically sensitive documents in the world" that were expected to be produced by third parties.  As other third parties now aptly point out, there exists no appropriate reason to deviate from that position.

More importantly, however, QC improperly attempts to impute representations previously made by Intel so that QC might gain access to the third parties' confidential information.  Simply put, the information produced by the third parties does not belong to Intel, nor is it Intel's to bargain away.  Whether Intel was at one time willing to share its information in a foreign proceeding is irrelevant to third parties such as CDW, who have opposed, and continue to oppose, any effort to broaden access to its highly sensitive data beyond what is specifically contemplated in the Protective Order.  Earlier proposals or representations made by Intel with respect to the Japan Litigation are wholly unavailing to QC's current request to gain access to the information of third parties, who are different entities, and should therefore be ignored.

- 6 -

IV.    **CONCLUSION**

For the foregoing reasons, third party CDW respectfully requests the Special Master recommend that QC's modified Motion and Application be denied.

August 18, 2008                              **BAYARD, P.A.**

                                             /s/ Richard D. Kirk (rk0922)
                                             Richard D. Kirk.
                                             222 Delaware Avenue
OF COUNSEL:                                  Suite 900, P.O. Box 25130
                                             Wilmington, DE 19899
Thomas P. Cimino, Jr., Esq.                  302/429-4208
Matthew F. Carmody, Esq.
VEDDER PRICE P.C.                            Attorneys for third party
222 N. LaSalle Street, Suite 2600            CDW Corporation
Chicago, IL 60601
312/609-7500