**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICES, LTD., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-441-JJF |
| v. | ) ) | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | ) ) ) ) | |
| Defendants. | ) ) | |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) ) ) ) | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself And all others similarly situated, | ) ) ) | C.A. No. 05-485-JJF |
| Plaintiffs | ) ) | CONSOLIDATED ACTION |
| v. | ) ) | |
| INTEL CORPORATION, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO MOTION OF NEW YORK TIMES COMPANY, *ET AL.* (1) TO INTERVENE FOR PURPOSES OF UNSEALING JUDICIAL RECORDS AND (2) FOR PARTIAL REASSIGNMENT (DM 17.1)**

OF COUNSEL:

Robert E. Cooper, Esq.
Daniel S. Floyd, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Joseph Kattan, PC
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

Darren B. Bernhard, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 783-0800

Richard L. Horwitz, Esq. (#2246)
W. Harding Drane, Jr., Esq. (#1023)
Potter Anderson & Corroon, LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
Attorneys for Defendants
Intel Corporation and
Intel Kabushiki Kaisha

Dated:  September 8, 2008

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................3

      A.    Special Master Poppiti ordered the Parties to file the Preliminary Pretrial
            Briefs to assist him in resolving a discovery dispute................................................3

      B.    The Parties filed the Preliminary Pretrial Briefs under seal in accordance
            with the Protective Order, which was entered after careful balancing of the
            interests at stake, and on which the Parties and Third Parties have relied in
            producing their sensitive business information..........................................................4

      C.    The *ex parte* teleconferences, conducted *in camera*, related to the
            applicability of the work-product doctrine to the Weil Materials...........................6

      D.    Intel offered to meet and confer regarding Movants' requests, but received
            no response...................................................................................................................6

III.  ARGUMENT .........................................................................................................7

      A.    The motion to unseal the Preliminary Pretrial Briefs should be denied
            because neither the common law nor the First Amendment gives Movants
            a right to access these documents. ...........................................................................7

            1.    The Preliminary Pretrial Briefs were filed in connection with a
                  discovery dispute and considered by the Special Master for that
                  limited purpose................................................................................................7

            2.    The Preliminary Pretrial Briefs were filed under seal pursuant to a
                  valid protective order. ..................................................................................10

      B.    The motion to unseal the transcripts of the *ex parte* teleconferences on the
            Weil Materials should also be denied. ....................................................................13

      C.    The Court should deny Movants' request to have this motion reassigned to
            a judge with no knowledge of this case. .................................................................15

IV.   CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Cryovac, Inc.*,
  805 F.2d 1 (1st Cir. 1986)................................................................. 8, 9, 13, 14

*Cipollone v. Liggett Group, Inc.*,
  785 F.2d 1108 (3d Cir. 1986)......................................................... 11

*Crandall v. City and County of Denver, Colorado*,
  No. 05-cv-00242-MSK-MEH, 2007 WL 1548968 (D. Colo. May 24, 2007) ................. 10

*Gannett Co. v. DePasquale*,
  443 U.S. 368 (1978)......................................................................... 14

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982)......................................................................... 14

*Gumowitz v. First Fed. Sav. & Loan Ass'n of Roanoke*,
  No. 90 Civ. 8083, 1994 WL 683431 (S.D.N.Y. Dec. 6, 1994)........................ 10

*Haines v. Liggett Group*,
  975 F.2d 81 (3d Cir. 1992)............................................................ 15

*In re Cendant Corp.*,
  260 F.3d 183 (3d Cir. 2001)........................................................... 10, 14

*In re Ford Motor Co.*,
  110 F.3d 954 (3d Cir. 1997)........................................................... 15

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  No. 05-1717-JJF, 2008 WL 2310288 (D. Del. June 4, 2008)....................... 6, 15

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
  998 F.2d 157 (3d Cir. 1993).......................................................... 8

*Littlejohn v. BIC Corp.*,
  851 F.2d 673 (3d Cir. 1988).......................................................... 9, 10

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2nd Cir. 2006)................................................... 16

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994)........................................................... 11

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Phillips v. General Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) ............................................................. 9, 12

*Pintos v. Pacific Creditors Ass'n*,
    504 F.3d 792 (9th Cir. 2007) ................................................................ 10

*Press Enterprise Co. v. Superior Court of Cal. for the County of Riverside*,
    478 U.S. 1 (1986) ................................................................................ 13

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ............................................................... 14

*Republic of Philippines v. Westinghouse*,
    949 F.2d 653 (3d Cir. 1991) ................................................................. 15

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ............................................................................ 14

*Seattle Times v. Rhinehart*,
    467 U.S. 20 (1984) ........................................................................ 8, 9, 14

*Shaw v. Mgmt. & Training Corp.*,
    No. 04-2394-KHV-DJW, 2004 WL 2823229 (D. Kan. Dec. 8, 2004) ............................. 10

*United States v. Corbitt*,
    879 F.2d 224 (7th Cir. 1989) ............................................................... 12

*United States v. Smith*,
    123 F.3d 140 (3d Cir. 1997) ............................................................. 13, 14

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    529 F. Supp. 866 (E.D. Pa. 1981) ......................................................... 12

## RULES

Fed. R. Civ. P. 26(c) .......................................................................... 2

## OTHER AUTHORITIES

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to Courts*,
    105 Harv. L. Rev.  (1991) ................................................................... 12

Intel Corporation ("Intel") hereby opposes the motion filed by The New York Times Company, Situation Publishing Ltd., Dow Jones & Co., Inc., The Washington Post, the Reporters Committee for the Freedom of the Press, and the Computer & Communications Industry Association (collectively, "Movants") to intervene for the purpose of unsealing certain briefs and transcripts, and for partial reassignment of this action to another judge.

## I.    INTRODUCTION

Invoking the common law and First Amendment right of public access, Movants have moved to intervene permissively in this case to challenge the sealing of certain documents filed under seal pursuant to this Court's orders.  Specifically, at this juncture of the case, Movants seek access to the following items: (i) the Parties' preliminary pretrial statements and responses (hereinafter, "Preliminary Pretrial Briefs") (D.I. 625, 627, 628, 629, 634, 635, 645, 646, and 648); (ii) the transcript of the June 5, 2008 hearing held before Judge Farnan and Special Master Poppiti (D.I. 683); and (iii) the transcripts of *ex parte* teleconferences conducted *in camera* by Special Master Poppiti, relating to the notes of Intel's counsel investigation interviews ("Weil Materials") (D.I. 633, 647).[1]

As Intel informed Movants before this motion was filed, Intel does not oppose the unsealing of the transcript of the June 5, 2008 hearing.  Disclosure of that hearing would give press access to the relevant considerations and rationales underpinning the deposition discovery plan that the Special Master ultimately adopted.  In addition, Intel offered to meet with Movants to attempt to work out, with the cooperation of all parties to the Protective Order, the terms of a limited unsealing of parts of the Preliminary Pretrial Briefs.  In violation of L.R. 7.1.1., Movants filed their motion without first meeting and conferring with Intel.

---

[1]  On page 6 of the Motion to Intervene, Movants also include D.I. 676 in the list of sealed transcripts they seek to access.  However, D.I. 676 refers to the Order Adopting Report and Recommendations for DI #641, which was not filed under seal.

Intel opposes, however, Movants' demand that the Preliminary Pretrial Briefs be entirely unsealed and the Parties be required to "establish to the Court's satisfaction that any remaining redacted portions are entitled to secrecy." Mot. to Intervene at 2. The Preliminary Pretrial Briefs had a specific purpose – to assist the Special Master in resolving the Parties' dispute over the proper limits of deposition discovery. The Third Circuit has adopted a bright-line rule that discovery motions and supporting materials are *not* subject to the presumptive right of public access. As the Third Circuit has explained, extending the right to such records would essentially open up the discovery process itself, the access to which is properly governed by Federal Rule of Civil Procedure 26(c).

This case validates the logic of the Third Circuit's rule: The Parties filed the Preliminary Pretrial Briefs under seal in accordance with the Confidentiality Agreement and Protective Order (hereinafter, "Protective Order"), which this Court entered after a time consuming and careful balancing of the interests of the Parties, the Third Parties, and the public. The parties then filed redacted copies. Significantly, Movants have not moved to vacate the Protective Order and have made no showing that the Protective Order was improvidently entered. If Movants could nevertheless step in at any point, and demand that the Parties make a specific affirmative showing that each sentence in a discovery motion discussing confidential discovery materials is entitled to secrecy, the Protective Order – on which the Parties and Third Parties have now relied for two years – would be significantly undermined. Because the right of public access does not attach to discovery filings, and because the Preliminary Pretrial Briefs were properly filed under seal pursuant to the Protective Order, Movants' motion to unseal these documents should be denied.

Movants' motion to unseal the transcripts of the *ex parte* teleconferences should also be denied. Not only did those teleconferences relate to a discovery motion, the specific topic of discussion was the applicability of the work-product doctrine to the Weil Materials. Because public disclosure would have destroyed the very purpose of those conferences, the Special Master properly conducted them *in camera*. Furthermore, because this Court has concluded that

the Weil Materials contain core work product that may not be disclosed, the transcripts of those teleconferences should remain under seal.

## II.    STATEMENT OF FACTS

### A.    Special Master Poppiti ordered the Parties to file the Preliminary Pretrial Briefs to assist him in resolving a discovery dispute.

On February 15, 2008, with depositions looming, Intel submitted a letter to the Special Master (D.I. 530[2]), requesting a conference to discuss the entry of a case management order that would govern the taking of depositions in the case.  Intel's letter outlined a proposed deposition discovery plan for the Special Master's consideration.  The following week, Plaintiffs filed a response (D.I. 541), opposing Intel's plan and putting forth their competing proposal for deposition discovery.

Given the complexity of the case, and the immensity of document production, on March 28, 2008 the Special Master ordered each side to submit a preliminary pretrial statement to assist him in resolving the dispute.  DM 9 Order (D.I. 600).  As stated in the Order, these statements were "designed to provide both the Special Master and the parties with a tool for which to focus, frame and define the boundaries of the deposition discovery process in this case."  *Id*.

The Special Master's Order required the Parties to submit, by May 1, 2008, a preliminary pretrial statement that "shall be no longer than 100 pages, and no exhibits shall be attached."  *Id.*  Responses were to be filed no later than May 12, 2008.  These briefs were strictly preliminary in nature; as stated in the Order:  "The preliminary pretrial statement will not have preclusive effect, and the parties will be free to refine or modify their theories or contentions, in any respect."  *Id.*

---

[2]    D.I. numbers refer to the No. 05-441-JJF docket.

**B.    The Parties filed the Preliminary Pretrial Briefs under seal in accordance with the Protective Order, which was entered after careful balancing of the interests at stake, and on which the Parties and Third Parties have relied in producing their sensitive business information.**

The Parties submitted the unredacted versions of the Preliminary Pretrial Briefs for filing under seal, and separately submitted redacted versions for public filing, as they were required to do under the Protective Order.[3]  Specifically, the Protective Order states that "[i]n the event that any Confidential Discovery is contained in any pleading, motion, exhibit, or other paper (collectively, 'papers') filed or to be filed with the Clerk of the Court, the Clerk shall be so informed . . . [and] shall keep such papers under seal until further order of the Court . . . ." Protective Order, ¶ 21 (D.I. 216).  The Protective Order further provides:  "Parties shall produce and file redacted versions of any papers . . . such that there is no disclosure of any Confidential Discovery Material."  Protective Order, ¶ 23.

The Protective Order entered on September 26, 2006 was the product of lengthy negotiations between the Parties, extensive input from Third Parties and interested members of the public, and careful consideration by the Special Master and the Court.  During the negotiation process, which began in September 2005, the Parties sought "to accommodate the confidentiality interests of the Parties and Third Parties while still abiding by the Third Circuit's requirement that documents shielded from public view meet specific prerequisites."  Response of Advanced Micro Devices, Inc., AMD International Sales & Services, Ltd. and Plaintiffs in the MDL Class Litigation to the Comments and Objections of Third Parties Regarding the Proposed Protective Order at 2 (D.I. 149).  After over eight months of extensive negotiations, the Parties agreed upon a draft protective order that they believed adequately addressed these concerns.

---

[3]    In accordance with the Special Master's Order that "no exhibits shall be attached," the Parties did not attach any of the underlying confidential discovery materials to their submissions.

At the Court's direction at the April 20, 2006 Initial Conference, the Parties further negotiated and stipulated to a procedure for the approval of the protective order. "Recognizing that Third Parties would be producing substantial quantities of sensitive information in this action, the Parties agreed that Third Parties should have an opportunity to voice their concerns to the Court." *Id.* Twenty-one Third Parties filed formal objections and responses to the proposed Protective Order.[4] After conferring about the Third Parties' comments, the Parties served a revised proposed protective order (D.I. 150) on May 31, 2006. The Reporter's Committee for Freedom of the Press – one of the Movants here - submitted its own comments on the proposed protective order (D.I. 167) for the Special Master's consideration.

On June 12, 2006, the Special Master held a hearing to consider the protective order and the objections thereto of any party or third party wishing to be heard. Following that hearing, the Special Master issued a 117-page Report and Recommendation (D.I. 177), which recommended – after addressing each of the objections and comments received – that the revised proposed protective order be approved, with some modifications. On September 26, 2006, this Court adopted the proposed Protective Order as modified by the Special Master (D.I. 216, 217).

In reliance on the Protective Order, Intel has produced the electronic equivalent of over 150 million pages of documents, containing some of its most sensitive confidential business information. *See* Decl. of Darren B. Bernhard, Intel's Opp. to Mot. of Union Federale Des Consommateurs - Que Choisir to Intervene, ¶ 3 (D.I. 770). Absent the protections in the Protective Order, Intel would not have produced its confidential business information without

---

[4] *See* D.I. 127 (Hewlett-Packard Company); D.I. 128 (Egenera Inc.); D.I. 132 (Best Buy Company, Inc.); D.I. 133 (Fujitsu Limited, NEC Corporation, Sony Corporation, Sony Electronics, Inc., and Toshiba Corporation); D.I. 134 (Circuit City Stores, Inc.); D.I. 136 (Acer America Corporation); D.I. 139 (ASI Computer Technologies, Inc., Avnet, Inc., Ingram Micro, Inc., Synnex Corporation, and Tech Data Corporation); D.I. 141 (Microsoft Corporation); D.I. 142 (IBM Corporation); D.I. 143 (Dell Inc.), D.I. 144 (Lenovo Group Ltd.); D.I. 145 (Fry's Electronics Inc.); D.I. 146 (Hitachi, Ltd.).

exhausting all judicial remedies available to it.  *Id.*, ¶ 8.  The Third Parties have also relied

heavily on the terms of the Protective Order in producing some of their most highly confidential

business information.[5]

      **C.**     **The *ex parte* teleconferences, conducted *in camera*, related to the applicability of the work-product doctrine to the Weil Materials.**

The other documents sought by Movants relate to another discovery matter – Plaintiffs'

motion to compel Intel to produce the Weil Materials.  The history of that dispute is set forth in

detail in the Special Master's Report and Recommendation on that motion (D.I. 641), and need

not be repeated here.  In connection with that dispute, the Special Master conducted two *in*

*camera* teleconferences with Intel's counsel to discuss which portions of the Weil Materials

qualified as core work product.

In its Order adopting the Special Master's Report and Recommendations, this Court

concluded that Intel had waived fact work product, but *not* the core work product contained in

the Weil Materials.  The Court accordingly ordered Intel to produce the Weil Materials "as

redacted by the Special Master."  *In re Intel Corp. Microprocessor Antitrust Litig.*, C. A. No. 05-

1717-JJF, 2008 WL 2310288, at *18 (D. Del. June 4, 2008).

      **D.**     **Intel offered to meet and confer regarding Movants' requests, but received no response.**

Movants did not satisfy L.R. 7.1.1. in filing this motion.  As the Court is aware, the

Preliminary Pretrial Briefs include many references to third parties and information produced as

confidential under the Protective Order.  Any decision to unredact further portions of the Briefs

---

[5]    *See, e.g.*, Response of Dell, Inc. to Mot. (1) to Intervene for Purpose of Unsealing Judicial Records and (2) for Partial Reassignment at 2 (D.I. 849); Third Parties Hewlett-Packard Co., Microsoft, Inc. and Dell Inc.'s Opposition to Mot. of Union Federale Des Consommateurs - Que Choisir to Intervene at 4-5, 15-18 (D.I. 745); June 26, 2008 Letter from Vernon Proctor to Special Master Poppiti on behalf of Sony Corporation, NEC Corporation, and Toshiba Corporation at 2 (D.I. 746); Joinder of Ingram Micro Inc., Avnet, Inc., and Tech Data Corp. to Opposition of Other Third Parties (D.I. 747).

would require their consent.  Movants first notified Intel of their intent to file this motion on July 7, 2008.  *See* Declaration of Richard Horwitz, ¶ 2, submitted herewith.  On July 10, 2008, Intel advised Movant's counsel that Intel would need 30 days to respond to Movants' concerns.  *Id.* ¶3.  On July 14, 2008, however, Movants imposed an arbitrary 30 day deadline for the complete resolution of any disputes.  *Id.* ¶4.  Meanwhile, Intel had begun a careful review of the Preliminary Pretrial Briefs and transcripts to determine whether any parts could be unsealed and to determine the specific portions that would require the concurrence of third parties or AMD. *Id.* ¶5.  On August 4, 2008, Movants' counsel inquired whether Intel "intend[ed] to make any proposal within the next few days."  *Id.* ¶6.  Intel responded immediately that it was "continuing to work on these issues, both internally and in discussions with the other parties," but that it remained "a complicated process to try to deal with everyone's concerns,"  and that Intel expected to get back to him the following week.  *Id.*  After completing this time consuming review process, Intel's counsel sent a letter to Movants' counsel on August 14, making clear its position that while Movants had no right of access to the requested documents, it was willing to meet and confer with Movants, Plaintiffs, and Third Parties to reach a mutually acceptable result. *Id.* ¶ 7.  Intel received no response to the letter, except for the filing of this motion.

## III.    ARGUMENT

### A.    The motion to unseal the Preliminary Pretrial Briefs should be denied because neither the common law nor the First Amendment gives Movants a right to access these documents.

#### 1.    The Preliminary Pretrial Briefs were filed in connection with a discovery dispute and considered by the Special Master for that limited purpose.

Movants emphasize in their brief that the public's right to review court records in civil cases "is established beyond dispute in this Circuit."  Mot. to Intervene at 4.  Intel does not quarrel with that proposition.  But Movants overlook a critical point, which is fatal to their motion:  It is also established beyond dispute in this Circuit that the right of public access does

*not* attach to "discovery motions and their supporting documents." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2nd 157, 165 (3d Cir. 1993).

In *Leucadia*, the Third Circuit held that while "there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive," there is no such right as to "motions that are merely part of discovery proceedings." *Id.* at 164 (internal quotations omitted). The Third Circuit gave four reasons for its decision. First, pretrial discovery proceedings such as depositions and interrogatories are "not public components of a civil trial" and "[s]uch proceedings were not open to the public at common law." *Id.* (quoting *Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984) (internal quotations omitted)). Second, no principled line can be drawn between discovery motions and raw discovery: Extending the right of access to discovery motions and supporting materials "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." *Id.* Third, making discovery motions presumptively accessible could have serious implications on the discovery process itself. *Id.* at 164-65 (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986) (permitting public access to discovery might actually make the civil discovery process "more complicated and burdensome than it already is")). Finally, the *Leucadia* Court reasoned that there was little need to extend the presumption of public access to discovery motions because Rule 26(c) already supplies "the normative rules governing public access to discovery materials." *Id.* at 165.

The Preliminary Pretrial Briefs fall squarely within the category of "discovery motions and their supporting documents," which the Third Circuit has held is not subject to the common law right of public access. *Id.* The Preliminary Pretrial Briefs were precipitated by the Parties' dispute over the proper limits of deposition discovery. To provide the Special Master "with a tool for which to focus, frame and define the boundaries of the deposition discovery process in this case," the Parties were ordered to submit their competing deposition plans, supported by excerpts from document discovery. DM 9 Order (D.I. 600). Making such discovery materials

presumptively accessible, simply because they had to be included in discovery filings, would create a perverse incentive for the Parties to unnecessarily bring discovery motions, and gratuitously include confidential discovery materials in those motions, as a backdoor way of publicizing confidential information.

Such a rule would severely undercut the district court's role and discretion in fashioning protective orders under Rule 26(c) – a key reason why the Third Circuit rejected that alternative in *Leucadia*. *See also Seattle Times*, 467 U.S. at 36 (emphasizing that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery," and that "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders"); *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders.").

In short, it is clear under Third Circuit authority that Movants have no common law right of access to the Preliminary Pretrial Briefs. Nor does the First Amendment afford them such a right. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 n.14 (3d Cir. 1988) (concluding that "[t]he first amendment does not require us to hold that a document never specifically referred to at trial or admitted into evidence became a part of the public record subject to presumptive public access"); *see also Anderson*, 805 F.2d at 13 ("[T]here is no presumptive first amendment public right of access to documents submitted to a court in connection with discovery motions. Instead, the same good cause standard is to be applied that must be met for protective orders in general."). Accordingly, the "higher standard" pressed by Movants (*see* Mot. to Intervene at 4-5)

– articulated in cases involving motions of a *non*discovery nature, to which the right of public access was found to apply[6] – is simply inapplicable here.

> **2.    The Preliminary Pretrial Briefs were filed under seal pursuant to a valid protective order.**

Movants also cite a couple of unpublished district court cases for the proposition that parties to a litigation cannot privately agree to file materials under seal.  *See* Mot. to Intervene at 5-6.  Those cases, however, involved motions for a protective order that were denied for failing to satisfy the Rule 26(c) standard.  *See Gumowitz v. First Fed. Sav. & Loan Ass'n of Roanoke*, No. 90 Civ. 8083, 1994 WL 683431, at *1 (S.D.N.Y. Dec. 6, 1994); *Shaw v. Mgmt. & Training Corp.*, No. 04-2394-KHV-DJW, 2004 WL 2823229, at *1 (D. Kan. Dec. 8, 2004).  Here, the Protective Order is already in place and has been for some time.  Entry of the Protective Order was not a decision that this Court took lightly:  Every interested party, including the Reporter's Committee, was afforded an opportunity to weigh in.  It would be fair to say that the process and effort that went into the entry of the Protective Order in this case was unprecedented in this Court, in order to fairly meet the needs and concerns of all interested parties and third parties.  Given the massive nature of the anticipated document production, the Court approved an umbrella framework, under which the producing party has the ability to designate non-public materials as confidential.  But the receiving party may challenge that designation at any time, triggering an obligation on the producing party's part to "make a good faith determination of

---

[6]   *See, e.g.*, *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001) (bids "essentially submitted in the form of motions to be appointed lead counsel" in class action); *Littlejohn*, 851 F.2d at 675 (evidence admitted at an open civil trial); *Crandall v. City and County of Denver, Colorado*, No. 05-cv-00242-MSK-MEH, 2007 WL 1548968, at *1 (D. Colo. May 24, 2007) (exhibits to motion for preliminary injunction); *see also Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792, 802 (9th Cir. 2007) (applying "compelling interest" standard to documents attached to a cross-motion for summary judgment, but noting that the "good cause" standard applies to nondispositive materials because "[a]pplying the 'compelling interest' standard under these circumstances would needlessly 'undermine a district court's power to fashion effective protective orders'").

whether the Discovery Material is entitled to be treated as Confidential Discovery Materials."
Protective Order, ¶ 16(b).  If the receiving party is still dissatisfied, it "may apply to the Court for
relief from the Protective Order as to the contested designations," at which point the producing
party must "demonstrate that the designated Discovery Material qualifies as Confidential
Discovery Material."  *Id.*, ¶¶ 16(c), (d).  In approving the Protective Order, the Court specifically
found that this framework provided an adequate "mechanism for challenging confidential
designations while preserving a flexible approach to such challenges consistent with Third
Circuit case law."  D.I. 217.  *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122-23 (3d
Cir. 1986) (recognizing that "the umbrella order approach has several advantages over the
document-by-document method . . . in a complex case" and that "[t]he caselaw also supports the
view that the use of umbrella orders in the district court is a useful method of dealing with large-
scale discovery").

      Movants do not move to vacate the Protective Order, nor have they made the necessary
showing to do so.[7]  Under Third Circuit law, a party seeking to vacate or modify an existing
protective order bears the initial burden of articulating "a reason to modify the order."  *Pansy v.
Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994).  "Once" a sufficient reason is given,
the district court should "balance the interests, including the reliance by the original parties to the
order, to determine whether good cause still exists for the order."  *Id.*  Movants do not refer to
*Pansy*, let alone satisfy its requirements.  On the other side of the equation, it is clear that the
Parties and Third Parties have relied heavily on the Protective Order in readily producing –
indeed, over-producing – their confidential commercial information without availing themselves
of the available judicial remedies.  If Movants were free to intervene at any point and demand
access to confidential discovery materials, including those that are referenced in a filing, simply

---

[7]  The Local Rules bar Movants from attempting to make this showing in their reply.  D. Del.
L. R. 7.1.3 ("The party filing the opening brief shall not reserve material for the reply brief
which should have been included in a full and fair brief.").

because they were included in a discovery filing, "cooperation in discovery would be compromised" and the discovery process would undoubtedly become significantly more burdensome for all involved.  Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to Courts*, 105 Harv. L. Rev. 427, 501 (1991); *see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 905 (E.D. Pa. 1981) ("Enormous cases like this one cannot be fairly and expeditiously adjudicated unless parties are assured that their legitimate interests will be protected.  Often that assurance cannot be given unless parties are permitted to rely on guarantees of confidentiality.").   This is of particular concern now, as the parties are the midst of a massive deposition discovery effort, including numerous third party witnesses.

In conclusion, because the Preliminary Pretrial Briefs were filed under seal in accordance with a valid Protective Order, and in connection with a discovery proceeding, Movants can assert no right of access to them.  *See Phillips*, 307 F.3d at 1213 (holding that the presumption of access does not apply to materials filed under seal pursuant to a valid protective order); *accord United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989).  The absence of a right notwithstanding, Intel remains willing to meet and discuss unredacting additional portions of the Preliminary Pretrial Briefs.[8]  But as this Court recognized in connection with the Protective Order proceedings, it is essential that any negotiation involve both Parties, as well as the Third Parties whose materials are implicated.  It is not a simple matter.  Therefore, Intel requests that the Court deny the motion to unseal the Preliminary Pretrial Briefs, and direct both Parties, the Movants, and any interested Third Parties to meet and confer further on this issue.  Intel has carefully reviewed all of the relevant material, and is prepared to meet promptly to address the

---

[8]   To be clear, Intel's willingness to negotiate in this one instance is not a concession or agreement to engage in a similar negotiation for any other discovery filing – which would result in undue burden and delay.  Intel is only willing to do it here because of the nature of the filings that were made.

issue.  If the Movants are unwilling to engage in a real meet and confer process, however, their motion should be denied.

     **B.**     **The motion to unseal the transcripts of the *ex parte* teleconferences on the Weil Materials should also be denied.**

     In addition to the Preliminary Pretrial Briefs, Movants seek access to the sealed transcripts of certain *ex parte* teleconferences that Special Master Poppiti conducted *in camera*. As explained below, Movants have failed to establish a right of access to these teleconferences, which related to a *discovery* motion – Plaintiffs' motion to compel the production of the Weil Materials.  Moreover, because the unsealing of the transcripts would disclose the substance of the core work product contained in the Weil Materials, which this Court has ruled is protected and nondiscoverable, Movants' motion should be denied.

     The Supreme Court has established a two-part "experience and logic" test for determining whether a particular proceeding is one to which the First Amendment right of access attaches.  *Press Enterprise Co. v. Superior Court of Cal. for the County of Riverside*, 478 U.S. 1, 8 (1986) (*Press Enterprise II*).  Under the "experience" prong, the court must consider "'whether the place and process have historically been open to the press and the general public.'"  *United States v. Smith*, 123 F.3d 140, 147 (3d Cir. 1997) (quoting *Press Enterprise II*, 478 U.S. at 8).  The "logic" prong requires the court to determine whether "'public access plays a significant positive role in the functioning of the particular process in question.'"  *Id.* (quoting *Press Enterprise II*, 478 U.S. at 8).[9]

---

[9]  The Third Circuit has identified six societal interests relevant in assessing the "logic" prong: (1) promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; (2) promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; (3) providing a significant community therapeutic value as an outlet for community concern, hostility, and emotion; (4) serving as a check on corrupt practices by exposing the judicial process to public scrutiny; (5) enhancement of the performance of all involved; and (6) discouragement of perjury.  *Smith*, 123 F.3d at 146-47.

While the Third Circuit has recognized a First Amendment right of access to civil trials and at least certain civil proceedings, *see Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 1067-71 (3d Cir. 1984) (addressing trials and hearing on motions for preliminary injunction), it has not squarely decided whether this right extends to pretrial *discovery* hearings. *Cf. In re Cendant Corp.*, 260 F.3d 183, 198 n.13 (3d Cir. 2001) (noting that "the parameters of the First Amendment right of access to civil proceedings are undefined"). Experience and logic counsel that it should not. The civil discovery process has not historically been open to the public. *Seattle Times*, 467 U.S. at 33; *see also Gannett Co. v. DePasquale*, 443 U.S. 368, 396 (1978) (Burger, C.J., concurring) (explaining that written interrogatories were used in 18th-century litigation, but "no one ever suggested that there was any 'right' of the public to be present at such pretrial proceedings as were available in that time; until the trial it could not be known whether and to what extent the pretrial evidence would be offered or received"). Nor would public access significantly enhance the performance of the discovery process. "Indeed, if such access were to be mandated, the civil discovery process might actually be made more complicated and burdensome than it already is." *Anderson*, 805 F.2d at 12.

Even assuming, however, that the right of access does apply to discovery proceedings, the Supreme Court has long upheld the trial court's traditional authority to conduct *in camera* conferences. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring) (stating that "the presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interest of decorum," including a trial court judge's "ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings"). The Third Circuit has held that a district court acts properly in closing a proceeding when necessary to preserve the potentially privileged or secret nature of certain material. *See, e.g., Smith*, 123 F.3d at 143-44 (concluding, where grand jury secrets could have been "disclosed by the briefs and hearing to which the newspapers s[ought] access,"

14

that the district court acted properly in conducting the hearing *in camera* and sealing the transcripts).

That was the case here:  The purpose of the *ex parte* teleconferences was to discuss which portions of the Weil Materials constituted core work product.  The Special Master properly conducted these teleconferences *in camera*, as public access would have "undermine[d] the very purposes of such review."  *In re Ford Motor Co.*, 110 F.3d 954, 966 n.11 (3d Cir. 1997). Furthermore, this Court has concluded that the Weil Materials contain core work product, which is protected from discovery.  *In re Intel Corp. Microprocessor Antitrust Litig.*, C. A. No. 05-1717-JJF, 2008 WL 2310288, at *18 (D. Del. June 4, 2008).  Unsealing the transcripts of the teleconferences would destroy that protection and would gut the Court's ruling of effect.  *Cf. Haines v. Liggett Group*, 975 F.2d 81, 97 (3d Cir. 1992) (in light of the "sensitivity surrounding the attorney-client privilege," advising district courts to keep even matters they determine are covered by an exception "under seal or appropriate court-imposed privacy procedures").  It is significant to note that neither AMD nor Class counsel challenged the Special Master's decision to keep these proceedings *ex parte* – if the opposing parties agreed to this process it is hard to imagine how the public could have a right to the transcripts.  For these reasons, Movants' motion for access to these transcripts should be denied.

**C.    The Court should deny Movants' request to have this motion reassigned to a judge with no knowledge of this case.**

Finally, Movants argue that in light of their right to immediate access and the Court's heavy docket, the Court should reassign the case to another judge for purposes of this motion only.  (Mot. to Intervene at 7.)  This argument fails for a number of reasons.  First, as discussed above, Movants have failed to establish a right of access to the discovery filings they seek. *Compare Republic of Philippines v. Westinghouse*, 949 F.2d 653, 664 (3d Cir. 1991) (holding that "the public interest encompasses the public's ability to make a contemporaneous review of the basis of *an important decision*," specifically referring to the district court's decision on a motion for summary judgment (emphasis added)).  Second, to relieve some of the burden, this

Court has specially appointed the Special Master to address discovery matters.  The Special Master has handled matters expeditiously.  *Compare Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 127 (2nd Cir. 2006) (involving a situation where "the Newspapers had to wait for months during which the district court and magistrate judge seemingly took no action on their motion to intervene, and the underlying motion on whose indeterminate resolution the district court and magistrate judge relied ha[d] been pending for a year and a half").  And even if there is a slight delay, there is no guarantee that reassignment to another district court judge would result in speedier resolution.  Movants' attempt to have this motion decided by another judge, with no familiarity with the facts of this case or the proceedings behind the Protective Order, should be rejected.  Either the Court could address this motion, or, because it clearly involves discovery materials, it could be referred to the Special Master, which Intel submits would be the appropriate course to take.

## IV.    CONCLUSION

Based on the foregoing, Intel respectfully requests that the Court (1) deny the motion for partial reassignment; (2) deny the motion to unseal the transcripts of the *ex parte* teleconferences on the Weil Materials; (3) deny the motion to unseal the Preliminary Pretrial Briefs and direct Movants, both Parties, and any interested Third Parties to meet and confer further on this issue.

OF COUNSEL:

Robert E. Cooper
Daniel S. Floyd
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 900071
(213) 229-7000

Joseph Kattan, PC
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036-5306
(202) 955-8500

Darren B. Bernhard
Howrey LLP
1299 Pennsylvania Avenue
N.W. Washington, DC 20004
(202) 783-0800

Dated:  September 8, 2008

881427/29282

POTTER ANDERSON & CORROON LLP


By: */s/ W. Harding Drane, Jr.*
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com

Attorneys for Defendants
Intel Corporation and Intel Kabushiki Kaisha